UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| DALE KAYMARK, individually and on behalf of other similarly situated current and former homeowners in Pennsylvania,<br><br>                Plaintiff,<br><br>v.<br><br>BANK OF AMERICA, N.A. and UDREN LAW OFFICES, P.C.,<br><br>                Defendants. | No.: _____<br><br>Electronically Filed |

## NOTICE OF REMOVAL

Defendant Bank of America, N.A. ("BOA"), by its undersigned counsel, hereby removes the above-captioned action from the Court of Common Pleas of Allegheny County in which it is now pending to the United States District Court for the Western District of Pennsylvania.

Removal is based on 28 U.S.C. §§ 1332 and 1441, as amended in relevant part by the Class Action Fairness Act of 2005 ("CAFA"), and authorized by 28 U.S.C. § 1453. Removal is also based on 28 U.S.C. §§ 1331 and 1441.

As grounds for removal, BOA states as follows:

## BACKGROUND

1. This putative class action was commenced by a Complaint filed on February 11, 2013, in the Court of Common Pleas of Allegheny County and docketed at No. GD-13-002739. A true and correct copy of the Complaint and its exhibits is attached hereto as Exhibit A.

2. Plaintiff Dale Kaymark served the Complaint by certified mail, and service upon BOA was completed on February 19, 2013. This Notice of Removal is being filed with the United States District Court for the Western District of Pennsylvania within 30 days after service of the Complaint.

3.  Mr. Kaymark is a citizen of the Commonwealth of Pennsylvania and resides at 108 Economy Grade Road, Coraopolis, Pennsylvania.  Complaint ¶ 1.  Therefore, Mr. Kaymark is deemed a citizen of Pennsylvania for purposes of diversity jurisdiction pursuant to 28 U.S.C. § 1332.

4.  Defendant BOA is a national bank with its OCC charter location and principal place of business in Charlotte, North Carolina.  Therefore, BOA is deemed a citizen of North Carolina for purposes of diversity jurisdiction pursuant to 28 U.S.C. § 1332.

5.  Defendant Udren Law Offices, P.C. ("Udren") is incorporated in the State of New Jersey and maintains its principal place of business at 111 Woodcrest Road, Suite 200, Cherry Hill, New Jersey.  Therefore, Udren is deemed a citizen of New Jersey for purposes of diversity jurisdiction pursuant to 28 U.S.C. § 1332.

## THE ALLEGATIONS OF THE COMPLAINT

6.  The Complaint alleges that Mr. Kaymark refinanced his home and granted a mortgage to BOA in December 2006.  Complaint ¶ 4.

7.  According to the Complaint, Mr. Kaymark defaulted on his mortgage payments in June 2011.  *Id.* ¶ 5.

8.  The Complaint asserts that "[u]nder the terms of the Housing Finance Agency Law ("Act 91"), 35 P.S. § 1680.403c," prior to initiating foreclosure proceedings, a mortgage holder must "send homeowners a notice meeting specific statutory requirements."  Complaint ¶ 8.  In particular, according to the Complaint, the "statutory notification requirements include, *inter alia*, that the homeowner receive an accurate, itemized breakdown of the total amount past due as of the date of the notice; that the homeowner be informed she is entitled to thirty-three (33) days to have a face-to-face meeting with a consumer credit counseling agency; and that the

homeowner be made aware she can apply for financial assistance under the state-funded Homeowner's Emergency Mortgage Assistance Program ("HEMAP")." *Id.* ¶ 9.

9. The Complaint alleges that on or about August 1, 2011, BOA sent Mr. Kaymark an Act 91 Notice that was improper in two respects. *Id.* ¶¶ 7, 10.

10. Specifically, the Complaint alleges that BOA's notice violated Act 91 by "misrepresent[ing] the outstanding amount due and owing… as of the date of mailing" the notice. *Id.* ¶ 10. The Complaint avers that at the time the notice was mailed, Mr. Kaymark was two months in arrears, but the notice "attempted to collect three months' worth of payments." *Id.* ¶ 11.

11. The Complaint also alleges that BOA's notice violated Act 91 by "misrepresent[ing] the amount of time Mr. Kaymark had to meet with a consumer credit counseling agency." The Complaint avers that the notice "informed Mr. Kaymark that he had 30 days to meet with a credit counseling agency, as opposed to the 33 days he was entitled to by statute." *Id.* ¶ 12.

12. According to the Complaint, the notice's "threat to initiate legal action" also violated the Pennsylvania Fair Credit Extension Uniformity Act ("FCEUA"), 73 P.S. § 2270.4(b)(5)(v), because the notice allegedly did not comply with Act 91. Complaint ¶¶ 13-14.

13. The Complaint alleges that BOA initiated foreclosure proceedings against Mr. Kaymark on September 13, 2012. *Id.* ¶ 15.

14. According to the Complaint, the foreclosure complaint improperly demanded $1,650 in attorneys' fees, $325 for a title report, and $75 for a property inspection. *Id.* ¶ 18. The Complaint alleges that, in violation of 41 P.S. § 406(3) ("Act 6"), these fees were not substantiated by documentation and that "BOA never incurred the alleged professional services claimed." Complaint ¶¶ 17-18.

15.     Count I of the Complaint avers that BOA violated the FCEUA by "attempt[ing] to collect an amount not due and owing," by "threaten[ing] legal action if Mr. Kaymark did not cure his default within 30 days, as opposed to [33 days]," and by seeking "attorneys' fees and legal costs in excess of those permitted" by "Act 6."  *Id.* ¶¶ 28-31.

16.     Count II of the Complaint alleges that Udren violated the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692 *et seq.*, by "demanding and/or collecting fees prohibited by Act 6," when it included "unlawful attorneys' fees and legal costs" in the foreclosure complaint against Mr. Kaymark.  Complaint ¶¶ 33-37.

17.     Count III of the Complaint alleges that BOA and Udren violated the Pennsylvania Unfair Trade Practices and Consumer Protection Law ("UTPCPL"), 73 P.S. § 201 *et seq.*, by "overcharging Homeowners for attorneys' fees and legal costs, thereby misrepresenting the amount that they actually owed."  Complaint ¶ 41.  The Complaint avers that "Homeowners paid the misrepresented and overcharged amounts in whole or part, thereby incurring damages," or "the unauthorized charges were liened against their homes, thereby decreasing the value of their property."  *Id.* ¶ 42.  The Complaint also alleges that BOA's purported violation of the FCEUA constitutes a *per se* violation of the UTPCPL.  *Id.* ¶ 39.

18.     Finally, Count IV of the Complaint alleges that BOA breached Mr. Kaymark's mortgage contract by charging and/or collecting legal fees and costs prohibited by Act 6.  *Id.* ¶¶ 44-47.

19.     Mr. Kaymark seeks a declaration that Defendants' actions violated the FCEUA, FDCPA, UTPCPL, and Mr. Kaymark's mortgage contract.  Complaint Request for Relief.  Mr. Kaymark also seeks an award of actual damages, costs, and reasonable attorneys' fees pursuant to § 1691(a) of the FDCPA and § 201-9.2 of the UTPCPL, and treble damages pursuant to § 201-9.2 of the UTPCPL.  *Id.*

## CLASS ALLEGATIONS

20. The Complaint purports to be brought on behalf of a putative class consisting of "all former or current homeowners ("Homeowners") who obtained financing secured by a first mortgage on residential property located within the Commonwealth of Pennsylvania, where Defendant BOA sent a purported Act 91 Notice containing a 30-day (instead of a 33-day) time period to arrange a meeting with a credit counselor within 6 years of the filing of this Complaint, and where a foreclosure complaint was subsequently filed." Complaint ¶ 20. The Complaint also asserts that a "sub-class exists where Defendant Udren caused a foreclosure complaint to be filed on behalf of BOA within 1 year" of the filing of the Complaint. *Id.*

21. The putative class is alleged to consist of "over 5,000" Homeowners. *Id.* ¶ 21.

## FEDERAL QUESTION JURISDICTION

22. This Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1331 because certain of Plaintiff's claims raise questions of federal law. Specifically, Count II of the Complaint is brought under the FDCPA. Complaint ¶¶ 32-37.

23. The FDCPA is a federal statute, and therefore Count II raises a federal claim. *See, e.g., Armbruster v. Hecker*, No. 3:06-cv-1149, 2010 WL 1643599, at *1 (M.D. Pa. Apr. 22, 2010) ("Because this case arises under the FDCPA, 15 U.S.C. § 1692 *et seq.*, it presents a federal question under 28 U.S.C. § 1331 and gives the court removal jurisdiction pursuant to 28 U.S.C. § 1441(b).").

24. This Court may exercise supplemental jurisdiction under 28 U.S.C. § 1367 with respect to any of Plaintiff's claims that do not arise under federal law.

## JURISDICTION UNDER THE CLASS ACTION FAIRNESS ACT

25. Pursuant to 28 U.S.C. § 1332, as amended by CAFA, a putative class action commenced after the effective date of CAFA may be removed to the appropriate United States District Court if any member of the putative class is a citizen of a state different from any defendant, and the amount in controversy exceeds $5,000,000, exclusive of interest or costs.  28 U.S.C. § 1332(d).

26. CAFA applies to this action because the Complaint was filed after the effective date of the Act.  *See* Notes to 28 U.S.C. §§ 1332 & 1453 ("The amendments made by this Act shall apply to any civil action commenced on or after the date of enactment of this Act," *i.e.*, February 18, 2005), citing Pub. L. 109-2, § 9.

27. The Complaint is a class action within the meaning of CAFA because Plaintiff seeks certification of a putative class with reference to the requirements of Federal Rule of Civil Procedure 23.  *See* Complaint ¶¶ 21-25; 28 U.S.C. §§ 1332(d)(1)(B) & 1453(a).

28. <u>Citizenship of Parties</u>.  The requisite diversity of citizenship exists under 28 U.S.C. §§ 1332(d)(2) and (d)(7).  BOA is a citizen of North Carolina for purposes of 28 U.S.C. § 1332.  By contrast, Plaintiff is a citizen of Pennsylvania who seeks to represent a class consisting of homeowners who obtained residential financing within Pennsylvania.  Complaint ¶¶ 1, 20.  Thus, Plaintiff Kaymark is a citizen of a state different from Defendant BOA.

29. Removal is proper under CAFA because there need only be "minimal" diversity.  In other words, if any class member is a citizen of a different state than any defendant, sufficient diversity exists for removal under CAFA.  28 U.S.C. §§ 1332(d)(2)(A).

30. <u>Amount in Controversy</u>.  There is more than $5 million in controversy in this action.  Under 28 U.S.C. § 1332(d)(6), the amount in controversy in a putative class action is determined by aggregating the amount at issue in the claims of the individual class members.  While BOA

denies that Plaintiff or any putative class member is entitled to recover in any amount, and specifically denies that Plaintiff or any putative class member is entitled to relief in the various forms and amounts sought, the Complaint's allegations of the putative class and the relief sought place an aggregate amount in controversy of more than $5,000,000, exclusive of interest and costs.

31.  Plaintiff seeks to certify a class of "over 5,000" persons who "obtained financing secured by a first mortgage on residential property located within the Commonwealth of Pennsylvania, where Defendant BOA sent a purported Act 91 Notice containing a 30-day (instead of a 33-day) time period to arrange a meeting with a credit counselor within 6 years of the filing of this Complaint, and where a foreclosure complaint was subsequently filed." Complaint ¶ 20.

32.  Plaintiff's alleged damages consist of, among other things, unauthorized and excessive foreclosure-related attorneys' fees, statutory treble damages, his attorneys' fees in prosecuting this action, and costs.  Treble damages and attorneys' fees are included in calculating the aggregate amount in controversy. *See Landsman & Funk PC v. Skinder-Strauss Assoc.*, 640 F.3d 72, 79 (3d Cir. 2011) (considering treble damages); *Kaneff v. Del. Title Loans, Inc.*, 587 F.3d 616, 620 (3d Cir. 2009) (same); *Frederico v. Home Depot*, 507 F.3d 188, 199 (3d Cir. 2007) (considering attorneys' fees); *Lewis v. Ford Motor Co.*, 610 F. Supp. 2d 476, 484 (W.D. Pa. 2009) (same).

33.  The aggregate amount in controversy is met.  Based on BOA's investigation and the allegations in the Complaint, more than $5,000,000 is in controversy in this case.  BOA evaluated the number of putative class members based on a class as alleged by Plaintiff and the dollar amount of the damages asserted in the Complaint.

34.  Based on BOA's investigation, the putative class consists of more than 1,000 members.

35.     The Complaint alleges that Plaintiff's individual actual damages consist of at least $2,050 in unauthorized and excessive attorneys' fees, and that the putative class consists of at least 5,000 persons.  Complaint ¶¶ 18, 21, 31, 35, 47.  On the face of the Complaint, the amount in controversy exceeds $10,250,000 ($2,050 x 5,000), prior to trebling and without Plaintiff's claim for attorneys' fees.

36.     Utilizing BOA's assessment that the putative class consists of more than 1,000 members, and given that Plaintiff has alleged entitlement to treble damages, the amount in controversy would still exceed $5 million based on the damages alleged in the Complaint ($6,150 x 1,000 = $6,150,000), even without considering Plaintiff's request for his attorneys' fees in prosecuting this action.

## PROCEDURAL REQUIREMENTS

37.     <u>Removal to Proper Court</u>.  This case was filed in Allegheny County, Pennsylvania, which is within this Court's "district and division" pursuant to 28 U.S.C. § 1446(a).

38.     <u>Timely Removal</u>.  Plaintiff served the Complaint on BOA on February 19, 2013.  This Notice of Removal is being filed with the United States District Court for the Western District of Pennsylvania on March 21, 2013, within 30 days after service of the Complaint.

39.     <u>Pleadings and Process</u>.  Attached hereto as Exhibit A is the Complaint.  Attached hereto as Exhibit B is a copy of all other process, pleadings, and orders served upon BOA in the state court action.  *See* 28 U.S.C. § 1446(a).

40.     <u>Notice</u>.  Attached hereto as Exhibit C is a copy of the Notice of Filing of Notice of Removal which will be promptly served upon Plaintiff's counsel and filed with the Clerk of the Court of Common Pleas, Allegheny County, Pennsylvania.  *See* 28 U.S.C. §§ 1446(d).

41.   <u>Signature</u>.   This Notice of Removal is signed pursuant to Fed. R. Civ. P. 11.  *See* 28 U.S.C. § 1446(a).

42.   <u>Consent</u>.  Defendant Udren's consent to removal is reflected in the document attached hereto as Exhibit D.

43.   Based upon the foregoing, this Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1332(d), and the claims may be removed to this Court under 28 U.S.C. § 1453.  This Court also has jurisdiction under 28 U.S.C. § 1331, and this matter may be removed to this Court under 28 U.S.C. § 1441.

WHEREFORE, Defendant Bank of America, N.A. requests that this action be removed from the Court of Common Pleas of Allegheny County to the United States District Court for the Western District of Pennsylvania.

Date:  March 21, 2013

*/s/ Thomas L. Allen*
Thomas L. Allen (SBN 33243)
   tallen@reedsmith.com
Nellie E. Hestin (SBN 311788)
   nhestin@reedsmith.com
REED SMITH LLP
Reed Smith Centre
225 Fifth Avenue
Pittsburgh, PA  15222-2716
Telephone: +1 412 288 3131
Facsimile: +1 412 288 3063

*Counsel for Defendant Bank of America, N.A.*

**CERTIFICATE OF SERVICE**

I hereby certify that I caused to be served a true and correct copy of the foregoing Defendant Bank of America, N.A.'s Notice of Removal and all accompanying papers on March 21, 2013, by mailing same via First Class U.S. Mail, postage prepaid, upon the following counsel of record:

Michael P. Malakoff
The Frick Building
437 Grant Street, Suite 200
Pittsburgh, PA 15219


Jonathan J. Bart
Two Penn Center, Suite 910
Philadelphia, PA 19102

REED SMITH LLP

By: */s/ Thomas L. Allen*
     Thomas L. Allen