# EXHIBIT A

IN THE COURT OF COMMON PLEAS
OF ALLEGHENY COUNTY, PENNSYLVANIA

| | | |
|---|---|---|
| DALE KAYMARK, individually and on behalf of other similarly situated current and former homeowners in Pennsylvania, | : : : : : | CIVIL DIVISION |
| | : | |
| Plaintiffs, | : : | No.    GD 13-_____ |
| | : | |
| vs. | : : | **COMPLAINT – CLASS ACTION** |
| | : | |
| BANK OF AMERICA, N.A. and UDREN LAW OFFICES, P.C., | : : : | Filed on behalf of Plaintiff, DALE KAYMARK, individually and on behalf |
| Defendants. | : : | of other similarly situated current and former homeowners in Pennsylvania |
| | : : | MICHAEL P. MALAKOFF, Esq. PA ID # 11048 |
| | : : | EMILY S. GOMEZ, Esq. PA ID # 206926 |
| | : : : : : : : | MICHAEL P. MALAKOFF, P.C. 437 Grant St., Suite 200 Pittsburgh, PA 15219 Tel: (412) 281-4217 Facsimile: 412-282-3262 malakoff@mpmalakoff.com egomez@mpmalakoff.com |
| | : : | **JURY TRIAL DEMANDED** |
| | : : : : : : | |

IN THE COURT OF COMMON PLEAS
OF ALLEGHENY COUNTY, PENNSYLVANIA

| | | |
|---|---|---|
| DALE KAYMARK, individually and on behalf of other similarly situated current and former homeowners in Pennsylvania, | : : : : | CIVIL DIVISION |
| | : | |
| Plaintiffs, | : : | No.   GD 13-_____ |
| | : | |
| vs. | : : | |
| | : | |
| BANK OF AMERICA, N.A. and UDREN LAW OFFICES, P.C., | : : : | |
| | : | |
| Defendants. | : : : : : | |

## **NOTICE TO DEFEND**

YOU HAVE BEEN SUED IN COURT.  If you wish to defend against the claims set forth in the following pages, you must take action within twenty (20) days after this Complaint and Notice are served, by entering a written appearance personally or by an attorney and filing in writing with the Court your defenses or objections to the claims set forth against you.  You are warned that if you fail to do so, the case may proceed without you and a judgment may be entered against you by the Court without further notice for any money claimed in the Complaint or for any other claim or relief requested by the Plaintiff.  You may lose money or property or other rights important to you.

YOU SHOULD TAKE THIS PAPER TO YOUR LAWYER AT ONCE.  IF YOU DO NOT HAVE A LAWYER OR CANNOT AFFORD ONE, GO TO OR TELEPHONE THE OFFICE SET FORTH BELOW TO FIND OUT WHERE YOU CAN GET LEGAL HELP:

Lawyer Referral Service
11th Floor, Koppers Building
436 Seventh Avenue
Pittsburgh, PA 15219
(412) 261-5555

IN THE COURT OF COMMON PLEAS
OF ALLEGHENY COUNTY, PENNSYLVANIA

| | | |
|---|---|---|
| DALE KAYMARK, individually and on behalf of other similarly situated current and former homeowners in Pennsylvania, | : : : : | CIVIL DIVISION |
| | : | |
| Plaintiffs, | : : | No.    GD 13-_____ |
| | : | |
| vs. | : : | |
| | : | |
| BANK OF AMERICA, N.A. and UDREN LAW OFFICES, P.C., | : : : | |
| | : | |
| Defendants. | : : : : : | |

## VERIFIED CLASS ACTION COMPLAINT

Dale Kaymark ("Plaintiff") brings this class action pursuant to the Fair Credit

Extension Uniformity Act ("FCEUA"), 73 P.S. § 2270.1 *et. seq.*, the Fair Debt Collection

Practices Act ("FDCPA"), 15 U.S.C. § 1692 *et. seq.*; and the Unfair Trade Practices and

Consumer Protection Law ("UTPCPL"), 73 P.S. § 201-1 *et. seq.*, on behalf of himself

and all others similarly situated, for his Class Action Complaint ("Complaint") against

Bank of America, N.A. and Udren Law Offices, P.C.("Defendants"). Upon information

and belief, Plaintiff alleges as follows:

### THE PARTIES

1.    Plaintiff Dale Kaymark is a natural person residing at 108 Economy Grade

Road, Coraopolis, Pennsylvania. He is a "consumer" as defined by § 1692a(3) of the

FDCPA. Mr. Kaymark brings this action on his own behalf and on behalf of the putative

class defined herein.

2.   Defendant Bank of America N.A. ("BOA"), is a national bank with its principal place of business at 450 American Way, Simi Valley, California.  BOA is the holder of Mr. Kaymark's mortgage.

3.   Defendant, Udren Law Offices, P.C. ("Udren") is a professional corporation with a law office located at 123 South Broad Street, Suite 2080, Philadelphia PA.  Udren is a "debt collector" as defined by the FDCPA, 15 U.S.C. § 1692a(6).

## FACTUAL ALLEGATIONS

### A.   Several Years After Refinancing His Home, Mr. Kaymark Falls on Hard Times

4.   In December 2006, Mr. Kaymark decided to refinance his home, located at 108 Economy Grade Road, Coraopolis PA (the "home"), to consolidate his finances and pay off a few debts.  In consideration for the funds to refinance, Mr. Kaymark granted a mortgage to lender Bank of America, N.A.

5.   In June 2011, after suffering a steep drop in income due to lower customer demand at his business, Mr. Kaymark was unable to maintain his monthly mortgage payments.

6.   Despite his best efforts to attract more business, Mr. Kaymark has since been unable to replace his lost income and catch up on his arrearages.

### B.   Defendant BOA Sends Mr. Kaymark a Defective Act 91 Notice Containing False and Misleading Information

7.   On or about August 1, 2011, BOA sent Mr. Kaymark a document that purported to be an Act 91 Notice.  Exhibit A.

8.   Under the terms of the Housing Finance Agency Law ("Act 91"), 35 P.S. § 1680.403c, mortgage holders considering foreclosure are required to send homeowners

a notice meeting specific statutory requirements as a prerequisite to initiating any legal
action.

9.    These statutory notification requirements include, *inter alia*, that the
homeowner receive an accurate, itemized breakdown of the total amount past due as of
the date of the notice; that the homeowner be informed she is entitled to thirty-three (33)
days to have a face-to-face meeting with a consumer credit counseling agency; and that
the homeowner be made aware she can apply for financial assistance under the state-
funded Homeowner's Emergency Mortgage Assistance Program ("HEMAP").

10.   The notice that BOA sent Mr. Kaymark failed to satisfy the Act 91
requirements in two important respects. First, BOA's notice misrepresented the
outstanding amount due and owing. A true Act 91 notice must provide an accurate
default amount due **as of the date of mailing**, to enable the homeowner to make good
on the arrearage.

11.   As of the date of mailing, Mr. Kaymark was 2 months in arrears on his
mortgage. BOA's notice, however, attempted to collect 3 months' worth of payments.
In a clever bid to conceal the attempt to collect a month not in arrears, BOA indicated an
amount due and owing of $4,599.98 for July 2011, in contrast to an amount due and
owing of $2,306.94 for June 2011. Exhibit A. This attempt to collect an amount not due
and owing violated several provisions of the Fair Credit Extension Uniformity Act, 73
P.S. § 2270 *et. seq.* ("FCEUA"), which broadly prohibits unfair or deceptive debt
collection acts or practices by creditors.

12.   Second, BOA's notice misrepresented the amount of time Mr. Kaymark had to
meet with a consumer credit counseling agency. BOA informed Mr. Kaymark that he

had 30 days to meet with a credit counseling agency, as opposed to the 33 days he was entitled to by statute.  35 P.S. § 1680.403c.

13.  To add insult to injury, BOA also threatened to initiate legal action if Mr. Kaymark did not pay the inaccurate amount claimed to be owed within 30 days.  Exhibit A.  As noted *supra*, no legal action may be initiated unless and until (1) the mortgagee sends the homeowner a notice meeting the statutory requirements of Act 91, and (2) at least 33 days pass without the homeowner applying for financial assistance from HEMAP.  If a homeowner does apply for assistance through HEMAP, the lender will be unable to initiate any legal action for an even longer period, lasting at least until the results of the application for assistance are known.

14.  Because BOA did not send Mr. Kaymark a notice complying with the provisions of Act 91 and because 33 days had not elapsed, BOA's threat to initiate legal action could not lawfully be taken.  This threat constituted a separate violation of the FCEUA, 73 P.S. § 2270.4(b)(5)(v).

## C.    Defendants BOA and Udren File a Foreclosure Complaint Containing False Information and Demand Illegal Fees

15.  On September 13, 2012, BOA filed a foreclosure complaint against Mr. Kaymark in Allegheny County, Pennsylvania through its attorney, Udren.  Exhibit B. BOA verified the complaint on August 28, 2012.

16.  The complaint demanded a total of $230,839.92, broken down into several categories:

| Unpaid Principal Balance | $213,224.26 |
|---|---|
| Accumulated Interest (07/01/2011-07/12/2012) | $13,452.47 |

| Accumulated Late Charges | $177.74 |
| Escrow Deficit/(Reserve) | $1,935.45 |
| Title Report | $325.00 |
| Attorney Fees | $1,650.00 |
| Property Inspection | $75.00 |
| GRAND TOTAL | $230,839.92 |

17.   The complaint failed, however, to provide any documentation that the demanded expenses and fees were incurred, despite the rule that any documents relied upon must be attached. Pa.R.Civ.P. 1019(i).  Consequently, it is believed, and therefore averred, that BOA never incurred the alleged professional services claimed.

18.   With respect to attorneys' fees, 41 P.S. § 406(3) ("Act 6") prohibits flat rate or percentage-based attorney fee demands in mortgage foreclosure complaints.  In addition, attorneys' fees and legal expenses prior to the commencement of a foreclosure complaint may not exceed $50.  Despite this, the complaint demands a flat amount of $1,650.00 in attorneys' fees, $325.00 for a title report, and $75.00 for a property inspection.  Not only are these sums not alleged to reflect work Udren performed, but there is no indication that BOA ever paid them.

19.   For these reasons, Mr. Kaymark's current account balance (payoff amount) was overstated upon the filing of the foreclosure complaint.  Currently, it reflects paid (or liened) and unpaid foreclosure-related fees and legal expenses.  Mr. Kaymark has paid at least a portion of these illegal charges, or had such charges liened against his property.

## CLASS ALLEGATIONS

20. The Class consists of all former or current homeowners ("Homeowners") who obtained financing secured by a first mortgage on residential property located within the Commonwealth of Pennsylvania, where Defendant BOA sent a purported Act 91 Notice containing a 30-day (instead of a 33-day) time period to arrange a meeting with a credit counselor within 6 years of the filing of this Complaint, and where a foreclosure complaint was subsequently filed. A sub-class exists where Defendant Udren caused a foreclosure complaint to be filed on behalf of BOA within 1 year of the filing of this Complaint.

### A.   Numerosity

21. The class is so numerous that it is impracticable to bring all Homeowners before the Court. The exact number of Homeowners is unknown, but is believed to be over 5,000. The exact number can be determined from Defendants' records.

### B.   Predominance and Commonality

22. There are questions of law and fact that are common to the Class and which predominate over any issues affecting only individual members. Fed. R. Civ. P. 23(a)(2), (b)(3). Without limitation, the focus of the litigation will be Defendants' uniform conduct and procedures, including their standardized billing practices with respect to their Pennsylvania foreclosure cases; whether Defendants' practices violate Act 6 or Act 91; whether Defendants' practices violate the UTPCPL; whether Defendants' practices violate the FCEUA; and whether Defendants' practices violate the FDCPA.

### C.   Typicality

23. Mr. Kaymark's claims are identical, or at least typical, to the class claims. Mr.

Kaymark and the class of Homeowners have sustained virtually identical types of damages, have been subjected to identical illegal foreclosure-related collection attempts, and their claims are based on identical statutory theories. Damages can be mechanically and mathematically determined from business records maintained by Defendants. Fed. R. Civ. P. 23(a)(3).

## D.   Adequacy of Representation

24.   Mr. Kaymark is an adequate class representative because his interests coincide with, and are not antagonistic to, the interests of the Class. Furthermore, class counsel is competent and experienced in such litigation. Fed. R. Civ. P. 23(a)(4).

## E.   Superiority

25.   A class action is superior to other available methods for the fair and efficient adjudication of this controversy. Fed. R. Civ. P. 23(b)(3). The damages sought by each member are such that individual prosecution would prove burdensome and expensive, given the complex and extensive litigation necessitated by Defendants' conduct. It would be virtually impossible for members of the class to individually redress the wrongs done to them in an economic and effective manner. Many class members are not even aware they have been harmed. Furthermore, individualized litigation presents an extra burden on the courts, holds potential for inconsistent or contradictory judgments, and increases the delay and expense to all parties and to the court system. By contrast, the class action device will result in substantial benefits to the litigants and the Court by allowing the Court to resolve numerous individual claims based upon a single set of proof in just one case.

## **COUNT 1 – FCEUA**

### **(Bank of America, N.A.)**

26. The preceding paragraphs are incorporated by reference.

27. This Count is brought against Defendant BOA as a creditor under the FCEUA, 73 P.S. § 2270.4(b). The FCEUA prohibits, *inter alia*, creditors from using "any false, deceptive or misleading representation or means in connection with the collection of any debt," 73 P.S. § 2270.4(b)(5), or any "unfair or unconscionable means to collect or attempt to collect any debt," 73 P.S. § 2270.4(b)(6).

28. BOA's actions violated both of these provisions in several respects. First, the purported Act 91 notice BOA sent to Mr. Kaymark attempted to collect an amount not due and owing, thereby overstating the amount owed. Such an attempt constitutes a false representation of the character, amount, or legal status of a debt in violation of 73 P.S. § 2270.4(b)(5)(ii), as well as a false representation or deceptive means to attempt to collect a debt in violation of 73 P.S. § 2270.4(b)(5)(x).

29. Second, BOA's Act 91 notice threatened legal action if Mr. Kaymark did not cure his default within 30 days, as opposed to the 33 days he was statutorily entitled to. This threat to take action that could not legally be taken both violated 73 P.S. § 2270.4(b)(5)(v), and constituted a "false representation or deceptive means to attempt to collect a debt" in violation of 73 P.S. § 2270.4(b)(5)(x).

30. Third, the complaint BOA filed against Mr. Kaymark sought attorneys' fees and legal costs in excess of those permitted by law. As noted *supra*, in mortgage foreclosure cases Act 6 prohibits charging attorneys' fees and legal costs in excess of $50 prior to the filing of a complaint. Even then, those fees must be reasonable and

actually incurred.  41 P.S. § 406(3).

31.  BOA's attempt to charge Mr. Kaymark $1,650 in attorneys' fees and an additional $400 in legal costs thus violates Act 6, and overstates the amount in arrears. Such an attempt constitutes a false representation of the character, amount, or legal status of a debt in violation of 73 P.S. § 2270.4(b)(5)(ii), as well as a false representation or deceptive means to attempt to collect a debt in violation of 73 P.S. § 2270.4(b)(5)(x).  Because the attorneys' fees BOA seeks to charge are unlawful, BOA's attempt to impose the fees constitutes a threat to take an action that cannot legally be taken in violation of 73 P.S. § 2270.4(b)(5)(v), and an attempt to collect an amount incidental to the principal obligation not permitted by law, in violation of 73 P.S. § 2270.4(b)(6)(i).

## COUNT 2 - FDCPA

### (Udren Law Offices, P.C.)

32.  The preceding paragraphs are incorporated by reference.

33.  This Count is brought under Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692, *et seq.*, against Defendant Udren as a debt collector.  The FDCPA prohibits, *inter alia*, debt collectors from using "any false, deceptive or misleading representation or means in connection with the collection of any debt," 15 U.S.C. § 1692e, or any "unfair or unconscionable means to collect or attempt to collect any debt," 15 U.S.C. § 1692f.

34.  As noted *supra,* Act 6 provides that only $50 may be charged for attorneys' fees and legal costs that are "reasonably and actually incurred" during the period immediately following the expiration of the 33-day notice period but prior to the

commencement of foreclosure. 41 P.S. § 406(3).

35.   Defendant Udren violated the above-cited sections of the FDCPA by demanding and collecting fees prohibited by Act 6.  In the foreclosure complaint filed against Mr. Kaymark, Udren demanded $1,650 in attorneys' fees, $325.00 for a title report, and $75.00 for a property inspection; sums well in excess of the $50 maximum. Such sums could only have been incurred, if at all, prior to the commencement of foreclosure proceedings.  In addition, such amounts were neither reasonably calculated nor actually incurred.

36.   Including the unlawful attorneys' fees and legal costs in the complaint caused Udren to violate § 1692e of the FDCPA, because the inflated amount falsely represented the "character, amount or legal status" of Mr. Kaymark's debt, thereby rendering the complaint a "false, deceptive or misleading representation." 15 U.S.C. § 1692e(2)(A). The inclusion of such fees also violated § 1692e(10), which prohibits "the use of any false representation or deceptive means to collect or attempt to collect any debt," and § 1692e(5), which prohibits "the threat to take any action that cannot legally be taken."

37.   Similarly, Udren's attempt to collect unlawful attorneys' fees and legal costs violated § 1692f of the FDCPA because the attempted collection "of any amount," where such amount is not permitted by law, constitutes an "unfair or unconscionable means" to collect a debt. 15 U.S.C. § 1692f(1).

### COUNT 3 - UTPCPL

### (Bank of America, N.A. and Udren Law Offices, P.C.)

38.   The preceding paragraphs are incorporated by reference.

39.   This Count arises under the UTPCPL, 73 P.S. § 201-1 *et. seq.*  Defendant

BOA violated the UTPCPL by virtue of its violations of the FCEUA, as set forth in Count

1.  Violations of the FCEUA are *per se* violations of the UTPCPL.  73 P.S. § 2270.5(a).

40.   In addition, both Defendants BOA and Udren violated the UTPCPL by virtue

of their violations of § 201-2(4), which prohibits the following unfair and deceptive

practices:

> (v) Representing that goods or services have sponsorship,
> approval, characteristics, ingredients, uses, benefits or
> quantities that they do not have or that a person has a
> sponsorship, approval, status, affiliation or connection that
> he does not have;
>
> ......
>
> (xxi) Engaging in any other fraudulent or deceptive conduct
> which creates a likelihood of confusion or of
> misunderstanding.

41.   Defendants violated the UTPCPL by overcharging Homeowners for attorneys'

fees and legal costs, thereby misrepresenting the amount that they actually owed.

These actions violated the above-cited portions of § 201-2(4), by "representing

that…services have…characteristics…that they do not have," and by "engaging

in…fraudulent or deceptive conduct which creates a likelihood of confusion or of

misunderstanding."

42.   Homeowners paid the misrepresented and overcharged amounts in whole or

part, thereby incurring damages.  Where Homeowners did not pay, the unauthorized

charges were liened against their homes, thereby decreasing the value of their property.

The fact of the Homeowners' payments, in part for the unauthorized charges added to

their debt, established "reliance" on Defendants' overcharges and misrepresentations.

## COUNT 4 – BREACH OF CONTRACT

### (Bank of America, N.A.)

43.  The preceding paragraphs are incorporated by reference.

44.  Defendant BOA breached its contractual obligations to Mr. Kaymark and the class by charging and/or collecting legal fees and costs in violation of the terms of the standardized mortgage contracts it entered into.

45.  Mr. Kaymark's mortgage contract states, *inter alia*, that the lender "may not charge fees that are expressly prohibited…by law." Exhibit C, ¶ 14. The mortgage further specifies that, in instances of a borrower's default, the lender may only charge fees for "services *performed*" in connection with that default. Exhibit C, ¶ 14 (emphasis added). Finally, in the context of attorneys' fees and related costs, the mortgage only permits the lender to collect "expenses *incurred*." Exhibit C, ¶ 14 (emphasis added). These provisions are standard terms found in most, if not all, residential mortgages.

46.  BOA violated all three provisions by charging and/or collecting legal fees and costs that violated Act 6. As noted *infra*, Act 6 only authorizes a mortgagee to collect "reasonable" and "actually incurred" legal fees as awarded by a court. 41 P.S. § 406(2). Prior to the commencement of a foreclosure action, these "reasonable" fees which were "actually incurred" are capped at $50. 41 P.S. § 406(3).

47.  BOA far exceeded Act 6's statutory cap and violated Act 6's requirement that fees be actually incurred when it attempted to impose a flat attorney's fee of $1,650.00 and $400.00 in legal costs. These actions thereby amounted to charging fees "expressly prohibited" by law, in violation of Mr. Kaymark's standard mortgage contract. These actions also amounted to charging fees for services not performed, in contrast to

the mortgage contract's explicit language requiring that any fees be for services actually performed.

## REQUEST FOR RELIEF

Wherefore Plaintiff Dale Kaymark, individually and on behalf of all those similarly situated, hereby requests that this Court:

1. Declare that the Defendants' actions violated the FCEUA, FDCPA, and UTPCPL;

2. Declare that the Defendants' actions breached the mortgage contracts BOA entered into with Plaintiffs;

3. Enter judgment in Plaintiffs' favor for actual damages, costs, and reasonable attorneys' fees as provided by § 1691(a) of the FDCPA and § 201-9.2 of the UTPCPL;

4. Enter judgment in Plaintiffs' favor for treble damages as provided by § 201-9.2 of the UTPCPL; and

5. Grant any further relief as deemed just.

**PLAINTIFFS DEMAND A TRIAL BY JURY.**

Respectfully submitted,

MICHAEL P. MALAKOFF, P.C.

*/s/ Michael P. Malakoff*
Michael P. Malakoff, Esquire
Pennsylvania I.D. #11048
/s/ Emily S. Gomez
Emily S. Gomez, Esquire
Pennsylvania I.D. #206926
437 Grant Street, Suite 200
Pittsburgh, PA 15219
Telephone: 412-281-4217
Facsimile: 412-281-3262
malakoff@mpmalakoff.com

egomez@mpmalakoff.com

*Attorneys for Dale Kaymark, individually
and on behalf of other similarly situated
current and former homeowners in
Pennsylvania*

## VERIFICATION

I have read the foregoing Class Action Complaint, and the facts contained therein are true and correct to the best of my knowledge, information and belief. I understand that false statements are made subject to the penalties of 18 Pa.C.S.A. § 4904, relating to unsworn falsification to authorities.


Dated:_____          _____

                                                  Dale Kaymark

IN THE COURT OF COMMON PLEAS
OF ALLEGHENY COUNTY, PENNSYLVANIA

| | | |
|---|---|---|
| DALE KAYMARK, individually and on<br>behalf of other similarly situated<br>current and former homeowners in<br>Pennsylvania, | : | CIVIL DIVISION |
| | : | |
| | : | No.    GD 13-_____ |
| Plaintiff, | : | |
| | : | |
| vs. | : | |
| | : | |
| BANK OF AMERICA, N.A. and<br>UDREN LAW OFFICES, P.C., | : | |
| | : | |
| Defendants. | : | |

## CERTIFICATE OF SERVICE

I hereby certify that I have served or caused to be served a true and correct copy

of the within Class Action Complaint on the parties listed below. Service was made by

certified mail on the date indicated.

| Bank of America, N.A.<br>400 National Way<br>Simi Valley, CA 93065 | Udren Law Offices, P.C.<br>111 Woodcrest Road<br>Cherry Hill, NJ 08003 |
|---|---|

2/11/13                                    /s/ Emily S. Gomez
Date                                        Emily S. Gomez, Esq.

## VERIFICATION

I have read the foregoing Class Action Complaint, and the facts contained therein are true and correct to the best of my knowledge, information and belief. I understand that false statements are made subject to the penalties of 18 Pa.C.S.A. § 4904, relating to unsworn falsification to authorities.

Dated: 2-5-2013

Dale Kaymark



**Bank of America**

Home Loans
PO Box 5048
Temecula, CA, 92589-9044



2252815184

*Send Payments to:*
P.O. Box 15222
Wilmington, DE  19886-5222

*Send Correspondence to:*
PO Box 5170, MS SV3148
Simi Valley, CA  93065

20110854-7

Dale A Kaymark
108 Economy Grade Rd
Imperial, PA  15108-8950



Exhibit A

BLGPA1 12873 12/29/2078

Exhibit A



**Bank of America**

Home Loans
P.O. Box 660934
Dallas, TX 75266-0934

Send Payments to:
P.O. Box 15222
Wilmington, DE 19886-5222

August 1, 2011

Account No.: ▮▮▮▮▮
Property Address:
108 Economy Grade Rd
Imperial, PA 15108-8950

Dale A Kaymark
108 Economy Grade Rd
Imperial, PA 15108-8950

Current Servicer:
Bank of America, N.A.

# ACT 91 NOTICE
# TAKE ACTION TO SAVE
# YOUR HOME FROM
# FORECLOSURE

This is an official notice that the mortgage on your home is in default, and the lender intends to foreclose. Specific information about the nature of the default is provided in the attached pages.

The HOMEOWNER'S EMERGENCY MORTGAGE ASSISTANCE PROGRAM (HEMAP) may be able to help to save your home. This Notice explains how the program works.

To see if HEMAP can help, you must MEET WITH A CONSUMER CREDIT COUNSELING AGENCY WITHIN 30 DAYS OF THE DATE OF THIS NOTICE. Take this Notice with you when you meet with the Counseling Agency

The names, addresses and phone numbers of Consumer Credit Counseling Agencies serving your County are listed at the end of this Notice. If you have any questions, you may call the Pennsylvania Housing Finance Agency toll free at 1-800-342-2397. (Persons with impaired hearing can call 1-717-780-1869)

This Notice contains important legal information. If you have any questions, representatives at the Consumer Credit Counseling Agency may be able to help explain it. You may also want to contact an attorney in your area. The local bar association may be able to help you find a lawyer.

LA NOTIFICACIÓN EN ADJUNTO ES DE SUMA IMPORTANCIA, PUES AFECTA SU DERECHO A CONTINUAR VIVIENDO EN SU CASA. SI NO COMPRENDE EL CONTENIDO DE ESTA NOTIFICACIÓN OBTENGA UNA TRADUCCIÓN INMEDIATAMENTE LLAMANDO ESTA AGENCIA (PENNSYLVANIA HOUSING FINANCE AGENCY) SIN CARGOS AL NÚMERO MENCIONADO ARRIBA. PUEDE SER ELEGIBLE PARA UN PRÉSTAMO POR EL PROGRAMA LLAMADO "HOMEOWNER'S EMERGENCY MORTGAGE ASSISTANCE PROGRAM" EL CUAL PUEDE SALVAR SU CASA DE LA PÉRDIDA DEL DERECHO A REDIMIR SU HIPOTECA.

HOMEOWNER'S NAME(S):
PROPERTY ADDRESS:

Dale A Kaymark
108 Economy Grade Rd
Imperial, PA 15108-8950

LOAN ACCT. NO.:
ORIGINAL LENDER:
CURRENT LENDER/SERVICER:

▮▮▮▮▮▮

Bank of America, N.A.

## HOMEOWNER'S EMERGENCY MORTGAGE ASSISTANCE PROGRAM

YOU MAY BE ELIGIBLE FOR FINANCIAL ASSISTANCE WHICH CAN SAVE YOUR HOME FROM FORECLOSURE AND HELP YOU MAKE FUTURE MORTGAGE PAYMENTS.

This communication is from Bank of America, N.A., the servicer of your home loan.

Please write your account number on all checks and correspondence.
We may charge you a fee (of up to $40.00) for any payment returned or rejected by your financial institution, subject to applicable law.

BLOPAY1 12570 12/23/2010

| Payment Instructions: | Account Number: ▮▮▮▮▮ | | |
|---|---|---|---|
| • Make your check payable to Bank of America, N.A.<br>• Don't send cash<br>• Please include coupon with your payment | Dale A Kaymark<br>108 Economy Grade Rd<br>Imperial, PA 15108-8950 | Balance Due for charges listed above: $7,094.45 as of August 1, 2011.<br>Please update a next information on the reverse side of this coupon. | Additional<br>Principal |
| | | BLOPA1 | Additional<br>Escrow |
| For all full month payment periods, interest is calculated on a monthly basis. Accordingly, interest for all full months, including February, is calculated as 30/360 of annual interest, irrespective of the actual number of days in the month. For partial months, interest is calculated daily as the basis of a 365 day year. | ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮<br>Bank of America, N.A.<br>PO BOX 15222<br>Wilmington, DE 19886-5222<br>1-800-669-6654 | | Check<br>Date |



Exhibit A

IF YOU COMPLY WITH THE PROVISIONS OF THE HOMEOWNER'S EMERGENCY MORTGAGE ASSISTANCE ACT OF 1983 (THE "ACT"), YOU MAY BE ELIGIBLE FOR EMERGENCY MORTGAGE ASSISTANCE:

IF YOUR DEFAULT HAS BEEN CAUSED BY CIRCUMSTANCES BEYOND YOUR CONTROL,

IF YOU HAVE A REASONABLE PROSPECT OF BEING ABLE TO PAY YOUR MORTGAGE PAYMENTS, AND

IF YOU MEET OTHER ELIGIBILITY REQUIREMENTS ESTABLISHED BY THE PENNSYLVANIA HOUSING FINANCE AGENCY.

**TEMPORARY STAY OF FORECLOSURE** - Under the Act, you are entitled to a temporary stay of foreclosure on your mortgage for Thirty (30) days from the date of this Notice. During that time you must arrange and attend a "face-to-face" meeting with one of the consumer credit counseling agencies listed at the end of this Notice. **THIS MEETING MUST OCCUR WITHIN THE NEXT THIRTY (30) DAYS. IF YOU DO NOT APPLY FOR EMERGENCY MORTGAGE ASSISTANCE, YOU MUST BRING YOUR MORTGAGE UP TO DATE. THE PART OF THIS NOTICE CALLED "HOW TO CURE YOUR MORTGAGE DEFAULT" EXPLAINS HOW TO BRING YOUR MORTGAGE UP TO DATE.**

**CONSUMER CREDIT COUNSELING AGENCIES** - If you meet with one of the consumer credit counseling agencies listed at the end of this notice, the lender may NOT take action against you for Thirty (30) days after the date of this meeting. The names, addresses and telephone numbers of designated consumer credit counseling agencies for the county in which the property is located are set forth at the end of this Notice. It is only necessary to schedule one face-to-face meeting. Advise your lender immediately of your intentions.

**APPLICATION FOR MORTGAGE ASSISTANCE** - Your mortgage is in default for the reasons set forth later in this Notice (see following pages for specific information about the nature of your default.) If you have tried and are unable to resolve this problem with the lender, you have the right to apply for financial assistance from the Homeowner's Emergency Mortgage Assistance Program. To do so, you must fill out, sign and file a completed Homeowner's Emergency Assistance Program Application with one of the designated consumer credit counseling agencies listed at the end of this Notice. Only consumer credit counseling agencies have applications for the program and they will assist you in submitting a complete application to the Pennsylvania Housing Finance Agency. Your application MUST be filed or postmarked within Thirty (30) days of your face-to-face meeting.

**YOU MUST FILE YOUR APPLICATION PROMPTLY. IF YOU FAIL TO DO SO OR IF YOU DO NOT FOLLOW THE OTHER TIME PERIODS SET FORTH IN THIS LETTER, FORECLOSURE MAY PROCEED AGAINST YOUR HOME IMMEDIATELY AND YOUR APPLICATION FOR MORTGAGE ASSISTANCE WILL BE DENIED.**

**AGENCY ACTION** - Available funds for emergency mortgage assistance are very limited. They will be disbursed by the Agency under the eligibility criteria established by the Act. The Pennsylvania Housing Finance Agency has sixty (60) days to make a decision after it receives your application. During that time, no foreclosure proceedings will be pursued against you if you have met the time requirements set forth above. You will be notified directly by the Pennsylvania Housing Finance Agency of its decision on your application.

**NOTE: IF YOU ARE CURRENTLY PROTECTED BY THE FILING OF A PETITION IN BANKRUPTCY, THE FOLLOWING PART OF THIS NOTICE IS FOR INFORMATION PURPOSES ONLY AND SHOULD NOT BE CONSIDERED AS AN ATTEMPT TO COLLECT THE DEBT.**

**(If you have filed bankruptcy you can still apply for Emergency Mortgage Assistance.)**

NOTICE OF INTENT TO FORECLOSE YOUR HOME LOAN IS IN A STATE OF DEFAULT DUE TO THE REASONS MENTIONED IN THIS NOTICE. YOU MUST TAKE ACTION TO SAVE YOUR HOME FROM FORECLOSURE.

**NATURE OF THE DEFAULT** - The MORTGAGE debt held by the above lender on your property located at:

108 Economy Grade Rd Imperial, PA 15108-8950

IS SERIOUSLY IN DEFAULT because

**YOU HAVE NOT MADE MONTHLY MORTGAGE PAYMENTS** for the following months and the following amounts are now past due:

| Monthly Charges: | 06/01/2011 | | $2,306.74 |
|---|---|---|---|
| | 07/01/2011 | | $4,599.98 |
| Late Charges: | 06/01/2011 | | $177.74 |
| Other Charges: | Uncollected Late Charges: | | $0.00 |
| | Uncollected Costs: | | $0.00 |
| | Partial Payment Balance: | | ($0.00) |
| | | TOTAL DUE: | $7,084.46 |

YOU HAVE FAILED TO TAKE THE FOLLOWING ACTION (Do not use if not applicable)

**HOW TO CURE THE DEFAULT** - You may cure the default within THIRTY (30) DAYS of the date of this notice BY PAYING THE TOTAL AMOUNT PAST DUE TO THE LENDER, WHICH IS $7,084.46 PLUS ANY MORTGAGE PAYMENTS AND LATE CHARGES WHICH BECOME DUE DURING THE THIRTY (30) DAY PERIOD.

This communication is from Bank of America, N.A., the servicer of your home loan.

E-mail use: Providing your e-mail address below will allow us to send you information on your account.
Account Number: ▮▮▮▮▮▮▮▮
Date A Represent. E-mail address:

How we post your payments: All accepted payments of principal and interest will be applied to the longest outstanding installment due, unless otherwise expressly prohibited or limited by law. If you submit an amount in addition to your scheduled monthly amount, we will apply your payments as follows: (i) to outstanding monthly payments of principal and interest, (ii) escrow deficiencies, (iii) late charges and other amounts you owe in connection with your loan and (iv) to reduce the outstanding principal balance of your loan. Please specify if you want an additional amount applied to future payments, rather than principal reduction.

Postdated checks: Postdated checks will be processed on the date received unless a loan counselor agree to honor the date written on the check as a condition of a repayment plan.

Exhibit A

Payments must be made either by cashier's check, certified check or money order made payable and sent to:

Bank of America, N.A. at P.O. Box 15222, Wilmington, DE 19886-5222.

You can cure any other default by taking the following action within THIRTY (30) DAYS of the date of this letter. (Do not use if not applicable)

**IF YOU DO NOT CURE THE DEFAULT** - If you do not cure the default within THIRTY (30) DAYS of the date of this Notice, **the lender intends to exercise its rights to accelerate the mortgage debt.** This means that the entire outstanding balance of this debt will be considered due immediately and you may lose the chance to pay the mortgage in monthly installments. If full payment of the total amount past due is not made within THIRTY (30) DAYS, the lender also intends to instruct its attorneys to start legal action to **foreclose upon your mortgaged property.**

**IF THE MORTGAGE IS FORECLOSED UPON** - The mortgaged property will be sold by the Sheriff to pay off the mortgage debt. If the lender refers your case to its attorneys, but you cure the delinquency before the lender begins legal proceedings against you, you will still be required to pay the reasonable attorney's fees that were actually incurred, up to $50.00. However, if legal proceedings are started against you, you will have to pay all reasonable attorney's fees actually incurred by the lender even if they exceed $50.00. Any attorney's fees will be added to the amount you owe the lender, which may also include other reasonable costs. **If you cure the default within the THIRTY (30) DAY period, you will not be required to pay attorney's fees. YOU HAVE THE RIGHT TO REINSTATE AFTER ACCELERATION AND THE RIGHT TO ASSERT IN THE FORECLOSURE PROCEEDING THE NON-EXISTENCE OF A DEFAULT OR ANY OTHER DEFENSE YOU MAY HAVE TO ACCELERATION AND FORECLOSURE.**

**OTHER LENDER REMEDIES** - The lender may also sue you personally for the unpaid principal balance and all other sums due under the mortgage.

**RIGHT TO CURE THE DEFAULT PRIOR TO SHERIFF'S SALE** - If you have not cured the default within the THIRTY (30) DAY period and foreclosure proceedings have begun, you still have the right to cure the default and prevent the sale at any time up to one hour before the Sheriff's Sale. You may do so by paying the total amount then past due, plus any late or other charges then due, reasonable attorney's fees and costs connected with the foreclosure sale and any other costs connected with the Sheriff's Sale as specified in writing by the lender and by performing any other requirements under the mortgage. **Curing your default in the manner set forth in this notice will restore your mortgage to the same position as if you had never defaulted**

**EARLIEST POSSIBLE SHERIFF'S SALE DATE** - It is estimated that the earliest date that such a Sheriff's Sale of the mortgage property could be held would be **approximately six (6) months from the date of this Notice.** A notice of the actual date of the Sheriff's Sale will be sent to you before the sale. Of course, the amount needed to cure the default will increase the longer you wait. You may find out at any time exactly what the required payment or action will be by contacting the lender.

**HOW TO CONTACT THE LENDER:**

| | |
|---|---|
| Name of Lender: | Bank of America, N.A. |
| Address: | P. O. Box 660694 Dallas, TX 75266-0694 |
| Phone Number: | 1-800-669-6654 |
| Fax Number: | 1-817-230-6811 |
| Contact Person: | MS TX2-977-01-13<br>Attention: Loan Counselor |

**We are currently developing a process to ensure secure email communications for your Home Retention inquiries. In the interim, please contact us at the telephone number or address provided.**

**EFFECT OF SHERIFF'S SALE** - You should realize that a Sheriff's Sale will end your ownership of the mortgaged property and your right to occupy it. If you continue to live in the property after the Sheriff's sale, a lawsuit to remove you and your furnishings and other belongings could be started by the lender at any time.

**ASSUMPTION OF MORTGAGE** - You may sell or transfer your home to a buyer or transferee who will assume the mortgage debt, provided that all the outstanding payments, charges and attorney's fees and costs are paid prior to or at the sale and that the other requirements of the mortgage are satisfied.

### YOU MAY ALSO HAVE THE RIGHT:

TO SELL THE PROPERTY TO OBTAIN MONEY TO PAY OFF THE MORTGAGE DEBT OR TO BORROW MONEY FROM ANOTHER LENDING INSTITUTION TO PAY OFF THIS DEBT.

TO HAVE THIS DEFAULT CURED BY ANY THIRD PARTY ACTING ON YOUR BEHALF.

TO HAVE THE MORTGAGE RESTORED TO THE SAME POSITION AS IF NO DEFAULT HAD OCCURRED, IF YOU CURE THE DEFAULT. (HOWEVER, YOU DO NOT HAVE THIS RIGHT TO CURE YOUR DEFAULT MORE THAN THREE TIMES IN ANY CALENDAR YEAR.)

TO ASSERT THE NONEXISTENCE OF A DEFAULT IN ANY FORECLOSURE PROCEEDING OR ANY OTHER LAWSUIT INSTITUTED UNDER THE MORTGAGE DOCUMENTS.

TO ASSERT ANY OTHER DEFENSE YOU BELIEVE YOU MAY HAVE TO SUCH ACTION BY THE LENDER.

TO SEEK PROTECTION UNDER THE FEDERAL BANKRUPTCY LAW.

Your loan is in default. Pursuant to your loan documents, Bank of America, N.A. may, enter upon and conduct an inspection of your property. The purposes of such an inspection are to (i) observe the physical condition of your property, (ii) verify that the property is occupied and/or (iii) determine the identity of the occupant. If you do not cure the default prior to the inspection, other actions to protect the mortgagee's interest in the property (including, but not limited to, winterization, securing the property, and valuation services) may be taken. **The costs of the above-described inspections and property preservation efforts will be charged to your account as provided in your security instrument.**



This communication is from Bank of America, N.A., the servicer of your home loan.

Exhibit A

If you are unable to cure the default on or before August 31, 2011, Bank of America, N.A. wants you to be aware of various options that may be available to you through Bank of America, N.A. to prevent a foreclosure sale of your property. For example:

- Repayment Plan: It is possible that you may be eligible for some form of payment assistance through Bank of America, N.A.. Our basic plan requires that Bank of America, N.A. receive, up front, at least ¼ of the amount necessary to bring the account current, and that the balance of the overdue amount be paid, along with the regular monthly payment, over a defined period of time. Other repayment plans also are available.

- Loan Modification: Or, it is possible that the regular monthly payments can be lowered through a modification of the loan by reducing the interest rate and then adding the delinquent payments to the current loan balance. This foreclosure alternative, however, is limited to certain loan types.

- Sale of Your Property: Or, if you are willing to sell your home in order to avoid foreclosure, it is possible that the sale of your home can be approved through Bank of America, N.A. even if your home is worth less than what is owed on it.

- Deed-in-Lieu: Or, if your property is free from other liens or encumbrances, and if the default is due to a serious financial hardship which is beyond your control, you may be eligible to deed your property directly to the Noteholder and avoid the foreclosure sale.

If you are interested in discussing any of these foreclosure alternatives with Bank of America, N.A., you must contact us immediately. If you request assistance, Bank of America, N.A. will need to evaluate whether that assistance will be extended to you. In the meantime, Bank of America, N.A. will pursue all of its rights and remedies under the loan documents and as permitted by law, unless it agrees otherwise in writing. Failure to bring your loan current or to enter into a written agreement by August 31, 2011 as outlined above will result in the acceleration of your debt.

If your loan is currently being evaluated for a loan modification, forbearance or other loan assistance solution, this notice will not cancel or delay that evaluation process. However, it is important that you promptly respond to all requests made in connection with your evaluation for a loan assistance solution, including all requests for you to contact us and any documentation required. If you do not comply with these requests in a timely manner, it may cause your loan to enter the foreclosure process as indicated in this notice. If your loan is not eligible for a loan assistance program, please note this letter will continue to serve as notice of our right to initiate foreclosure.

Time is of the essence. If you have any questions concerning this notice, please contact Loan Counseling Center immediately at 1-800-669-6654.

Exhibit A

**Attachment: Itemization of Charges and Fees**

| Monthly Charges: | 06/01/2011 | - | 06/30/2011 | @ | $2,306.74 | $2,306.74 |
|---|---|---|---|---|---|---|
| | 07/01/2011 | - | 08/31/2011 | @ | $2,299.99 | $4,599.98 |
| Late Charges: | 08/01/2011 | - | 07/31/2011 | @ | $88.87 | $177.74 |
| Other Charges: | Uncollected Late Charges: | | | | | $0.00 |
| | Partial Payment Balance: | | | | | ($0.00) |
| | | | **TOTAL DUE:** | | | **$7,084.46** |



This communication is from Bank of America, N.A., the servicer of your home loan.

**Exhibit A**

## CONSUMER CREDIT COUNSELING AGENCIES SERVING YOUR COUNTY

ALLEGHENY COUNTY

Action Housing, Inc
425 6th Avenue
Suite 950
Pittsburgh, PA 15219
412.281.2102
800.392.2801

CCCS of Western PA
River Park Commons
2403 Sidney Street, Suite 400
Pittsburgh, PA 16203
888.511.2227
888.511.2227

Community Action Southwest
58 East Greene Street
Waynesburg, PA 15370
724.852.2893

Fair Housing Partnership of Greater
Pittsburgh, Inc.
2840 Liberty Avenue
Suite 205
Pittsburgh, PA 15222
412.391.2535

Garfield Jubilee Associates
5138 Penn Avenue
Pittsburgh, PA 15224
412.665.5200

Mon Valley Unemployment Committee
1600 West Street
3rd Floor
Homestead, PA 15120
412.462.9962

Nazareth Housing Services
301 Bellevue Road
Pittsburgh, PA 15229
412.931.6996

NeighborWorks of Western Pennsylvania
710 5th Avenue
Suite 1000
Pittsburgh, PA 15219
412.281.9773

Pennsylvania Housing Finance Agency
2275 Swallow Hill Road
Bldg 200
Pittsburgh, PA 15220
412.429.2842

The Pittsburgh Community Reinvestment
Group (PCRG)
1901 Centre Avenue
Suite 200
Pittsburgh, PA 15219
412.391.6732

Urban League Of Pittsburgh
618 Wood Street
Pittsburgh, PA 15222
412.227.4802

This communication is from Bank of America, N.A., the servicer of your home loan.

Exhibit A

Options are Available to Help You

# Avoid Foreclosure

## Call the number on the enclosed notice to learn more.

When you call, please have your income and expense information available
so we can discuss which option(s) could work for you.

### Options to consider if your goal is to stay in your home

| Program | Description |
|---|---|
| Home Affordable Modification Program (HAMP) | A federal government program that allows the loan on newly agreed upon terms, which may include lowering the interest rate, placing past due amounts at the end of the loan, and/or extending the term of the loan. You may be eligible for this program if you meet the following requirements:<br><br>• The home is your primary residence and you currently live in it.<br>• The amount you owe on the first mortgage is equal to or less than $729,750 for a single-family home, $934,200 for a 2 unit property, $1,129,250 for a 3 unit property or $1,403,400 for a 4 unit property<br>• You have experienced a hardship that has impacted your income. For example, a significant increase in your mortgage payment OR reduction in your income OR other hardship.<br>• Your mortgage was obtained before Jan. 1, 2009<br>• Your payment on your first mortgage (including principal, interest, taxes, insurance and homeowner's association dues, if applicable) is more than 31% of your current gross income. To calculate this, divide your first mortgage payment by your gross income (income before taxes). |
| Loan Reinstatement | If you can bring your loan payments up to date, we will accept the funds needed to bring the loan up to date until the day of your foreclosure sale. |
| Repayment Plan | A temporary agreement which allows for the repayment of the unpaid, past due amount along with regular mortgage payments. This may include principal, interest, fees, and/or costs assessed to your loan. |
| Temporary Forbearance Agreement | An agreement whereby we agree not to proceed with foreclosure and/or collection of payments for a period of time, to allow you to re-establish your ability to make the required payments. |
| Loan Modification (non-HAMP) | Repay the loan on newly agreed upon terms, which may include lowering the interest rate, placing amounts past due at the end of the loan, and/or extending the term of the loan. |
| Partial Claim (FHA loans Only) | If you have a Federal Housing Administration (FHA) loan and your payments are past due but you are now able to make your regular monthly mortgage payment, this program is designed to bring your loan up to date by creating a second mortgage/lien on your property for the amount that is past due. |

### Options to consider if you cannot or do not wish to stay in your home

| Program | Description |
|---|---|
| Home Affordable Foreclosure Alternatives Program (HAFA) | Designed to help borrowers who are eligible for the Home Affordable Modification Program (HAMP) but were unsuccessful in securing a permanent modification through the program. HAFA provides the option of a short sale and, if unsuccessful, a deed in lieu of foreclosure. A short sale is a transaction in which you sell your property for less than the total amount owed on the loan (subject to agreement by your servicer/lender/investor), resulting in the release of our lien on your home and avoidance of foreclosure. A deed in lieu of foreclosure is a transaction in which you agree to voluntarily transfer ownership of your property to us in order to avoid foreclosure. |
| Short Sale/ Preforeclosure Sale (non-HAFA) | Offered to borrowers who are not eligible for HAMP or other home retention alternatives. With a short sale, you sell your property for less than the total amount owed on the loan (subject to agreement by your servicer/lender/investor), resulting in the release of our lien on your home and avoidance of foreclosure. |
| Deed in Lieu of Foreclosure (non-HAFA) | Offered to borrowers not eligible for HAMP or other home retention alternatives, and who were not able to sell the property through a short sale. With a deed in lieu of foreclosure, you agree to voluntarily transfer ownership of your property to us in order to avoid foreclosure. |



## We are here to help you. Please call us today.

Hay Opciones Disponibles Para Ayudarle a

# Evitar la Ejecución Hipotecaria

## Llame al número que aparece en la notificación adjunta para obtener más información

Cuando llame, tenga la información de sus ingresos y gastos disponibles para que podamos discutir cual opción(es) pueden funcionar para usted.

### Opciones a considerar si su objetivo es permanecer en su casa

| Programa | Descripción |
|---|---|
| Home Affordable Modification Program (HAMP) | Un programa del gobierno federal que le permite pagar el préstamo bajo los nuevos términos acordados, que pueden incluir la reducción de la tasa de interés, agregando la cantidad adeudada al final del préstamo, y / o extender el plazo del préstamo. Usted puede ser elegible para este programa si cumple con los siguientes requisitos:<br><br>• La casa es su residencia principal y actualmente vive en ella.<br>• La cantidad adeudada en la primera hipoteca debe ser igual o menos que $729,750 dólares para una vivienda unifamiliar, $934,200 dólares para una propiedad de 2 unidades, $1,129,250 dólares para una propiedad de 3 unidades o $1,403,400 para una propiedad de 4 unidades<br>• Ha experimentado una dificultad que ha afectado sus ingresos. Por ejemplo, un aumento significativo en su pago hipotecario O reducción de sus ingresos U otras dificultades.<br>• Obtuvo su hipoteca antes del 01 de enero 2009.<br>• Su pago de la primera hipoteca (incluyendo principal, interés, impuestos, seguro y cuotas de asociación de propietarios, si se aplica) debe ser más del 31% de sus ingresos brutos actuales. Para calcular esto, divida su pago hipotecario por sus ingresos brutos (ingresos antes de impuestos). |
| Restablecimiento del Préstamo | Si usted puede traer sus pagos del préstamo hipotecario al día, se le aceptarán los fondos necesarios para que el préstamo este al día hasta la fecha de la venta judicial. |
| Plan de Pago | Un acuerdo temporal que permite el pago de la cantidad adeudada, cantidad del pago atrasado junto con los pagos regulares de la hipoteca. Esto puede incluir principal, interés, honorarios y/o costos aplicados a su préstamo. |
| Acuerdo Temporal de Tolerancia | Un acuerdo por el cual nos comprometemos a no proceder con la ejecución hipotecaria y/o colección de pagos por un periodo de tiempo, para permitirle que restablezca su habilidad de hacer los pagos requeridos. |
| Modificación de Préstamo (no por medio de HAMP) | Pagar el préstamo bajo los nuevos términos acordados, que puede incluir la reducción de la tasa de interés, agregando la cantidad adeudada al final del préstamo, y/o extender el plazo del préstamo. |
| Reclamo Parcial (solamente prestamos de la FHA) | Si usted tiene un préstamo de la Administración Federal de Vivienda (FHA) y sus pagos están vencidos, pero ahora puede hacer sus pagos regulares mensuales de la hipoteca, este programa está diseñado para que su préstamo este al día mediante la creación de una segunda hipoteca / gravamen sobre su propiedad por la cantidad adeudada. |

### Opciones a considerar si no puede o no desea quedarse en su casa

| Programa | Descripción |
|---|---|
| Home Affordable Foreclosure Alternatives Program (HAFA) | Diseñado para ayudar a los prestatarios que son elegibles para el Programa de Home Affordable Modification (HAMP), pero no tuvieron éxito en obtener una modificación permanente a través del programa. HAFA ofrece la posibilidad de una venta corta y, si no tiene éxito, una entrega de escritura para evitar juicio hipotecario. Una venta corta es una transacción en la que usted vende su propiedad por menos de la cantidad adeudada en el préstamo (sujeto a previo acuerdo de su administrador / prestamista / inversionista), resultando en la liberación de nuestro derecho de retención sobre su propiedad y evitar la ejecución hipotecaria. Una entrega de escritura para evitar juicio hipotecario es una transacción en la que usted está de acuerdo de transferir voluntariamente las escrituras de su propiedad a nosotros con el fin de evitar la ejecución hipotecaria. |
| Venta Corta/ Venta antes de Ejecución Hipotecaria (no por medio de HAFA) | Se ofrece a los prestatarios que no son elegibles para HAMP u otras alternativas de retención de hogar.  Con una venta corta, usted vende su propiedad por menos de la cantidad total adeudada en el préstamo (sujeto a un acuerdo por su administrador / prestamista / inversionista), resultando en la liberación de nuestro derecho de retención sobre su propiedad y evitando la ejecución hipotecaria. |
| Entrega de Escritura Para Evitar Juicio Hipotecario (no por medio de HAFA) | Se ofrece a los prestatarios que no son elegibles para HAMP u otras alternativas de retención de hogar, y que no pudieron vender la propiedad a través de una venta corta. Con una entrega de escritura para evitar juicio hipotecario, usted está de acuerdo a transferir voluntariamente las escrituras de su propiedad a nosotros para evitar la ejecución hipotecaria. |

**Estamos aquí para ayudarle. Por favor llámenos hoy.**

## IN THE COURT OF COMMON PLEAS OF ALLEGHENY COUNTY, PENNSYLVANIA
### CIVIL DIVISION

COVER SHEET (ONLY for cases involving mortgage foreclosure)

| | |
|---|---|
| Plaintiff(s)<br><br>Bank of America, N.A. | |
| | Case Number : |
| Vs | Type of pleading :<br><br>Complaint in Mortgage<br>Foreclosure |
| Defendant(s)<br><br>Dale A. Kaymark | |
| | Code and Classification : |
| | Filed on behalf of |
| If Case involves real estate please enter the<br>Property Information. | Bank of America, N.A. |
| **Certificate of Location**<br>I hereby certify that the location of the real estate is: | |
| Findlay Township<br>  City, Boro or Township | (Name of the filing party) |
| Parcel ID: 9910 -X- 269 Tiebreaker: | ✓ Counsel of Record |
| | ☐ Individual, If Pro Se |
| Address :<br><br>108 Economy Grade Road, Imperial, PA 15108 a/k/a<br>108 Economy Grade Road, Coraopolis, PA 15108 | Name, Address and Telephone Number :<br><br>Udren Law Offices, P.C.<br>Woodcrest Corporate Center<br>111 Woodcrest Road<br>Cherry Hill, NJ 08003<br>(856)669-5400 |
| **YOU MUST CHECK ONE SELECTION IN EACH BOX**<br>✓ OWNER OCCUPIED RESIDENTIAL<br>☐ NON-OWNER OCCUPIED RESIDENTIAL<br>☐ COMMERCIAL<br>☐ OTHER (explain          ) | |
| | Attorney's State ID :   20919 7 |
| ✓ FOUR UNITS OR LESS<br>☐ OVER FOUR UNITS | Attorney's Firm ID : |

IF RESIDENTIAL: Name address and telephone number of representative of lending institution with authority to discuss this action.

Daniel Skidell   16001 North Dallas Parkway, Addison, TX 75006   818-251-7532

By _____
    Elana B. Flehinger, Esq.

**Exhibit B**

UDREN LAW OFFICES, P.C.                        **ATTORNEY FOR PLAINTIFF**
BY: MARK J. UDREN, ESQUIRE - ID #04302
STUART WINNEG, ESQUIRE - ID#45362
LORRAINE GAZZARA DOYLE, ESQUIRE - ID#34576
SHERRI J. BRAUNSTEIN, ESQUIRE - ID#90675
SALVATORE CAROLLO, ESQUIRE - ID#311050
PAIGE M. BELLINO, ESQUIRE - ID#309091
HARRY B. REESE, ESQUIRE - ID#310501
KASSIA FIALKOFF, ESQUIRE - ID#310530
ELIZABETH L. WASSALL, ESQUIRE - ID#77788
AGNES MOMBRUN, ESQUIRE - ID#309356
ELANA B. FLEHINGER, ESQUIRE - ID#209197
KATHERINE E. KNOWLTON, ESQUIRE - ID#311713
WOODCREST CORPORATE CENTER
111 WOODCREST ROAD, SUITE 200
CHERRY HILL, NJ 08003-3620
856-669-5400 pleadings@udren.com

| | |
|---|---|
| Bank of America, N.A.<br>C/O Bank of America, N.A., as successor<br>by merger to BAC Home Loans<br>, LP<br>16001 North Dallas Parkway<br>Addison, TX 75006<br><br>       Plaintiff<br><br>    v.<br><br>DALE A. KAYMARK<br>108 ECONOMY GRADE ROAD, IMPERIAL,<br>PA 15108 A/K/A 108 ECONOMY GRADE<br>ROAD<br>CORAOPOLIS, PA 15108<br><br>      Defendant(s) | COURT OF COMMON PLEAS<br>CIVIL DIVISION<br>ALLEGHENY County<br><br><br>NO. |

COMPLAINT IN MORTGAGE FORECLOSURE

YOU HAVE BEEN SUED IN COURT.  If you wish to defend against the claims set forth in the

# URGENT  NOTICE

Under a new Pilot Project of the Court of Common
Pleas of Allegheny County:

## You may be able to get help
## with your Mortgage.

## Call the "Save Your Home" Hotline
## at
## 1-866-298-8020

You will be put in touch with a non-profit housing
counselor FREE OF CHARGE to help you try to
work out arrangements with your mortgage company.

The housing counselor will schedule a conference
under the Court's supervision to determine whether a
work out can be arranged.

To get this help you must call the Hotline and go to a
housing counselor. They will tell you what to do next.

Call the Hotline immediately.  Call 1-866-298-8020.

Make this call to save your home!
## THIS PROJECT IS FREE

Exhibit B

following pages, you must take action within twenty (20) days after this Complaint and Notice are served, by entering a written appearance personally or by attorney and filing in writing with the Court your defenses or objections to the claims set forth against you. You are warned that if you fail to do so the case may proceed without you and a judgment may be entered against you by the Court without further notice for any money claimed in the Complaint or for any other claim or relief requested by the Plaintiff. You may lose money or property or other rights important to you.

**YOU SHOULD TAKE THIS PAPER TO YOUR LAWYER AT ONCE. IF YOU DO NOT HAVE A LAWYER GO TO OR TELEPHONE THE OFFICE SET FORTH BELOW. THIS OFFICE CAN PROVIDE YOU WITH INFORMATION ABOUT HIRING A LAWYER. IF YOU CANNOT AFFORD TO HIRE A LAWYER, THIS OFFICE MAY BE ABLE TO PROVIDE YOU WITH INFORMATION ABOUT AGENCIES THAT MAY OFFER LEGAL SERVICES TO ELIGIBLE PERSONS AT A REDUCED FEE OR NO FEE.**

LAWYERS REFERRAL SERVICE
**Allegheny County Bar Association**
**11th Floor Koppers Building**
**436 Seventh Avenue**
**Pittsburgh, PA 15219**
**(412) 261-5555**

### AVISO

Le han demandado a usted en la corte. Si usted quiere defenderse de estas demandas expuestas en las paginas siguientes, usted tiene veinte (20) dias de plazo al partir de la fecha de la demanda y la notificacion. Hace falta ascentar una comparencia escrita o en persona o con un abogado y entregar a la corte en forma escrita sus defensas o sus objeciones a las demandas en contra de su persona. Sea avisado que si usted no se dafiende, la corte tomara medidas y puede continuar la demanda en contra suya sin previo aviso o notificacion. Ademas, la corte puede decidir a favor del demandante y requiere que usted cumpla con todas las provisiones de esta demanda. Usted puede perder dinero o sus propiedades u otros derechos importantes para usted.

**LLEVE ESTA DEMANDA A UN ABOGADO IMMEDIATAMENTE, SI NO TIENE ABOGADO O SI NO TIENE EL DINERO SUFICIENTE DE PAGAR TAL SERVICIO, VAYA EN PERSONA O LLAME POR TELEFONO A LA OFICINA CUYA DIRECCION SE ENCUENTRA ESCRITA ABAJO PARA AVERIGUAR DONDE SE PUEDE CONSEGUIR ASISTENCIA LEGAL.**

**Allegheny County Bar Association**
**11th Floor Koppers Building**
**436 Seventh Avenue**
**Pittsburgh, PA 15219**
**(412) 261-5555**

## NOTICE

The amount of your debt is as stated in the attached document. The name of the creditor to whom the debt is owed is as named in the attached document. Unless you notify us within 30 days after receipt of this Notice and the attached document that the validity of the stated debt, or any portion of it, is disputed, we will assume that the debt is valid. If you do notify us in writing of a dispute within the 30 day period, we will obtain verification of the debt or a copy of a judgment against you, and mail it to you. If you do not dispute the debt, it is not an admission of liability on your part. Also, upon your written request within the 30 day period, we will provide you with the name and address of the original creditor if different from the current creditor.

If you notify us in writing within the 30 day period as stated above, we will cease collection of your debt, or any disputed portion of it, until we obtain the information that is required and mail it to you. Once we have mailed to you the required information, we will then continue the collection of your debt.

This law firm is deemed to be a debt collector and this Notice and the attached document is an attempt to collect a debt, and any information obtained will be used for that purpose.

UDREN LAW OFFICES, P.C.
/s/ Mark J. Udren, Esquire
Woodcrest Corporate Center
111 Woodcrest Road, Suite 200
Cherry Hill, NJ 08003-3620
(856) 669-5400

Exhibit B

1.  Plaintiff is **Bank of America, N.A.**. Plaintiff is the legal holder of the Mortgage that is the subject of this Action. Plaintiff is either the current mortgagee of record, is the legal holder of the Mortgage by virtue of being successor in interest to the current mortgagee of record, or is the legal holder of the Mortgage by virtue of Assignment of Mortgage. If Plaintiff is the legal holder of the Mortgage by virtue of Assignment of Mortgage, it is by the following Assignments of Mortgage, all of which have either been recorded or Plaintiff is in the process of formalizing the actual Assignment of Mortgage in Plaintiff's favor:

Assignor: N/A
Assignee: **N/A**
Date of Assignment: **N/A**
Recorded Date: **N/A**
Book/Instrument #: **N/A**
Page: **N/A**

2.  Upon information and belief Defendant(s) and/or their predecessor:

    **Dale A. Kaymark**

    (hereinafter "Defendants"), are the owners of property located at **108 Economy Grade Road, Imperial, PA 15108 a/k/a 108 Economy Grade Road, (Findlay Township), Coraopolis, PA 15108** , by virtue of Deed dated **12/15/2006** and recorded **12/21/2006** in Official Records Book **13095** at Page **91** of the Public Records of **Allegheny** County, Pennsylvania (hereinafter the "Property").

3.  On **12/26/2006** , Defendant(s) and/or their predecessor:

    **DALE A. KAYMARK**

    promised to pay to the order of **Bank of America, N.A.** , the principal sum of **$ 245,600.00** payable with interest thereon provided in the Note.

4.  By Mortgage dated **12/26/2006** , Defendant(s) and/or their predecessor:

**DALE A. KAYMARK**

to secure the Note, mortgaged to **Bank of America, N.A.,** the Property which is the subject of this action. The Mortgage was recorded on **01/10/2007** in Official Records Book **33222** at Page **221.** Said Mortgage is incorporated herein by referenced in accordance with Pa.R.C.P 1019(g). A legal description of the mortgage premises is attached hereto and made a part hereof.

5.   Said mortgage is in default in that the payment due **08/01/2011**, and all subsequent payments have not been made, and by its terms, upon breach and failure to cure said breach after notice, all sums secured by said Mortgage, together with the other charges authorized by said Mortgage and itemized below, shall be immediately due.

6.   After demand, the Defendant(s) continues to fail or refused to comply with the terms of the Mortgage as follows:

   (a) By failing or refusing to pay the installments of principal and interest when due in the amounts indicated below;

   (b) By failing or refusing to pay other charges, if any, indicated below.

   The following amounts are due on the said Mortgage or modification agreement as of the date stated below

| | |
|---|---|
| Unpaid Principal Balance | $213,224.26 |
| Accumulated Interest (07/01/2011-07/12/2012) | $13,452.47 |
| Accumulated Late Charges | $177.74 |
| Escrow Deficit/(Reserve) | $1,935.45 |
| Title Report | $325.00 |
| Attorney Fees | $1,650.00 |
| Property Inspection | $75.00 |
| Grand Total | $230,839.92 |

The above figures are calculated as of **07/12/2012**:

   The interest rate is subject to adjustment if more fully described as such in the note and mortgage. The interest rate on the subject note is at **6.12500 %.** The per diem interest accruing on this debt is **$35.6830** and that sum should be added each day after the above date.

Exhibit B

The late charge is subject to adjustment if more fully described as such in the note and mortgage. The late charge rate on the subject note should be added in accordance to the terms of the note and mortgage charged monthly at **$88.87**.

7.  Breach letters have been sent to Defendant(s) in accordance with the requirements of the subject mortgage and/or The Pennsylvania Act 6 of 1974 of the Commonwealth of Pennsylvania and, if applicable, Act 91 of 1983.  Copies of the breach letters are attached hereto as Exhibit "A"

WHEREFORE, the Plaintiff demands judgment, in rem,  against the Defendant(s) herein in the sum of **$230,839.92** plus ongoing interest, costs and attorneys fees and for sale of the Mortgaged premises.

UDREN LAW OFFICES, P.C.

BY:

Elana B. Flehinger, Esq
PA ID 209197

05/13/2012   06:04   4123611655        NORUTH                PAGE   25/28
553/ Page 3 of 18

ALL that certain lot or piece of ground situate in the Township of Findlay, County of Allegheny and Commonwealth of Pennsylvania, being bounded and described more particularly as follows:

BEGINNING at a point in the center line of the Clinton and Economy Grade Road, at the line of land now or formerly of Joseph Kachik, et ux; thence along said Kachik line North 39° 40' East, a distance of 252.44 feet to a point; thence by a line through property now or formerly of Edward L. Boggs, et ux, of which the herein described parcel was a part, North 4° East a distance of 171.64 feet to a point on the line of land now or formerly of E. K. Hicks, et ux; thence along said Hicks line of North 64° 37' West, a distance of 234.75 feet to a point; thence continuing along said Hicks line North 10° 56' West, a distance of 56.65 feet to a point; thence still along the same South 73° 07' West, a distance of 158.30 feet to a point in the center line of the Clinton and Economy Grade Road; thence along the center line of said Road the following three courses and distances, South 12° 55' East, 272 feet; South 25° 39' East, 134 feet and South 42° 28' East, 121.93 feet to the point at the place of beginning.

TAX IDENTIFICATION NO.: 9910-x-269

(KAYMARK20081204.PFD/KAYMARK20061204/12)

Exhibit B



Bank of America

Home Loans
PO Box 5048
Temecula, CA  92589-9041



2252815184

**Send Payments to:**
P.O. Box 15222
Wilmington, DE  19886-5222

**Send Correspondence to:**
PO Box 5170, MS SV3145
Simi Valley, CA  93065

20110884-7

Dale A Kaymark
108 Economy Grade Rd
Imperial, PA  15108-8950



*Exhibit A*

BLGPA1 12ST1 12/29/2018

**Exhibit B**



**Bank of America**

**Home Loans**
P.O. Box 660694
Dallas, TX 75266-0694

Dale A Kaymark
108 Economy Grade Rd
Imperial, PA 15108-8950

Send Payments to:
P.O. Box 15222
Wilmington, DE 19886-5222

August 1, 2011

Account No.: ▮▮▮▮▮▮
Property Address:
108 Economy Grade Rd
Imperial, PA 15108-8950

Current Servicer:
Bank of America, N.A.

# ACT 91 NOTICE
# TAKE ACTION TO SAVE
# YOUR HOME FROM
# FORECLOSURE

This is an official notice that the mortgage on your home is in default, and the lender intends to foreclose. Specific information about the nature of the default is provided in the attached pages.

The HOMEOWNER'S EMERGENCY MORTGAGE ASSISTANCE PROGRAM (HEMAP) may be able to help to save your home. This Notice explains how the program works.

To see if HEMAP can help, you must MEET WITH A CONSUMER CREDIT COUNSELING AGENCY WITHIN 30 DAYS OF THE DATE OF THIS NOTICE. Take this Notice with you when you meet with the Counseling Agency

The names, addresses and phone numbers of Consumer Credit Counseling Agencies serving your County are listed at the end of this Notice. If you have any questions, you may call the Pennsylvania Housing Finance Agency toll free at 1-800-342-2397. (Persons with impaired hearing can call 1-717-780-1869)

This Notice contains important legal information. If you have any questions, representatives at the Consumer Credit Counseling Agency may be able to help explain it. You may also want to contact an attorney in your area. The local bar association may be able to help you find a lawyer.

LA NOTIFICACIÓN EN ADJUNTO ES DE SUMA IMPORTANCIA, PUES AFECTA SU DERECHO A CONTINUAR VIVIENDO EN SU CASA. SI NO COMPRENDE EL CONTENIDO DE ESTA NOTIFICACIÓN OBTENGA UNA TRADUCCIÓN INMEDIATAMENTE LLAMANDO ESTA AGENCIA (PENNSYLVANIA HOUSING FINANCE AGENCY) SIN CARGOS AL NÚMERO MENCIONADO ARRIBA. PUEDE SER ELEGIBLE PARA UN PRÉSTAMO POR EL PROGRAMA LLAMADO "HOMEOWNER'S EMERGENCY MORTGAGE ASSISTANCE PROGRAM" EL CUAL PUEDE SALVAR SU CASA DE LA PERDIDA DEL DERECHO A REDIMIR SU HIPOTECA.

HOMEOWNER'S NAME(S):
PROPERTY ADDRESS:

Dale A Kaymark
108 Economy Grade Rd
Imperial, PA 15108-8950

LOAN ACCT. NO.:
ORIGINAL LENDER:
CURRENT LENDER/SERVICER:       Bank of America, N.A.

## HOMEOWNER'S EMERGENCY MORTGAGE ASSISTANCE PROGRAM

YOU MAY BE ELIGIBLE FOR FINANCIAL ASSISTANCE WHICH CAN SAVE YOUR HOME FROM FORECLOSURE AND HELP YOU MAKE FUTURE MORTGAGE PAYMENTS.

This communication is from Bank of America, N.A., the servicer of your home loan.

Please write your account number on all checks and correspondence.
We may charge you a fee (of up to $40.00) for any payment returned or rejected by your financial institution, subject to applicable law.

BLDPA1 12570 12/23/2010

**Payment Instructions:**

- Make your check payable to Bank of America, N.A.
- Don't send cash
- Please include coupon with your payment

For all full month payment periods, interest is calculated on a monthly basis. Accordingly, interest for all full months, including February, is calculated as 30/360 of annual interest, irrespective of the actual number of days in the month. For partial months, interest is calculated daily on the basis of a 365 day year.



Account Number: ▮▮▮▮▮▮
Dale A Kaymark
108 Economy Grade Rd
Imperial, PA 15108-8950

BLDPA1

Balance Due for charges listed above: $7,094.46 as of August 1, 2011.
Please update to next information on the reverse side of this coupon.

| | Additional Principal |
| --- | --- |
| | Additional Escrow |
| | Check Date |

Bank of America, N.A.
PO BOX 15222
Wilmington, DE 19886-5222
1-800-669-6654

**Exhibit B**

IF YOU COMPLY WITH THE PROVISIONS OF THE HOMEOWNER'S EMERGENCY MORTGAGE ASSISTANCE ACT OF 1983 (THE "ACT"), YOU MAY BE ELIGIBLE FOR EMERGENCY MORTGAGE ASSISTANCE:

IF YOUR DEFAULT HAS BEEN CAUSED BY CIRCUMSTANCES BEYOND YOUR CONTROL,

IF YOU HAVE A REASONABLE PROSPECT OF BEING ABLE TO PAY YOUR MORTGAGE PAYMENTS, AND

IF YOU MEET OTHER ELIGIBILITY REQUIREMENTS ESTABLISHED BY THE PENNSYLVANIA HOUSING FINANCE AGENCY.

**TEMPORARY STAY OF FORECLOSURE** - Under the Act, you are entitled to a temporary stay of foreclosure on your mortgage for Thirty (30) days from the date of this Notice. During that time you must arrange and attend a "face-to-face" meeting with one of the consumer credit counseling agencies listed at the end of this Notice. **THIS MEETING MUST OCCUR WITHIN THE NEXT THIRTY (30) DAYS.** IF YOU DO NOT APPLY FOR EMERGENCY MORTGAGE ASSISTANCE, YOU MUST BRING YOUR MORTGAGE UP TO DATE. THE PART OF THIS NOTICE CALLED "HOW TO CURE YOUR MORTGAGE DEFAULT" EXPLAINS HOW TO BRING YOUR MORTGAGE UP TO DATE.

**CONSUMER CREDIT COUNSELING AGENCIES** - If you meet with one of the consumer credit counseling agencies listed at the end of this notice, the lender may NOT take action against you for Thirty (30) days after the date of this meeting. The names, addresses and telephone numbers of designated consumer credit counseling agencies for the county in which the property is located are set forth at the end of this Notice. It is only necessary to schedule one face-to-face meeting. Advise your lender immediately of your intentions.

**APPLICATION FOR MORTGAGE ASSISTANCE** - Your mortgage is in default for the reasons set forth later in this Notice (see following pages for specific information about the nature of your default.) If you have tried and are unable to resolve this problem with the lender, you have the right to apply for financial assistance from the Homeowner's Emergency Mortgage Assistance Program. To do so, you must fill out, sign and file a completed Homeowner's Emergency Assistance Program Application with one of the designated consumer credit counseling agencies listed at the end of this Notice. Only consumer credit counseling agencies have applications for the program and they will assist you in submitting a complete application to the Pennsylvania Housing Finance Agency. Your application MUST be filed or postmarked within Thirty (30) days of your face-to-face meeting.

**YOU MUST FILE YOUR APPLICATION PROMPTLY. IF YOU FAIL TO DO SO OR IF YOU DO NOT FOLLOW THE OTHER TIME PERIODS SET FORTH IN THIS LETTER, FORECLOSURE MAY PROCEED AGAINST YOUR HOME IMMEDIATELY AND YOUR APPLICATION FOR MORTGAGE ASSISTANCE WILL BE DENIED.**

**AGENCY ACTION** - Available funds for emergency mortgage assistance are very limited. They will be disbursed by the Agency under the eligibility criteria established by the Act. The Pennsylvania Housing Finance Agency has sixty (60) days to make a decision after it receives your application. During that time, no foreclosure proceedings will be pursued against you if you have met the time requirements set forth above. You will be notified directly by the Pennsylvania Housing Finance Agency of its decision on your application.

**NOTE: IF YOU ARE CURRENTLY PROTECTED BY THE FILING OF A PETITION IN BANKRUPTCY, THE FOLLOWING PART OF THIS NOTICE IS FOR INFORMATION PURPOSES ONLY AND SHOULD NOT BE CONSIDERED AS AN ATTEMPT TO COLLECT THE DEBT.**

**(If you have filed bankruptcy you can still apply for Emergency Mortgage Assistance.)**

**NOTICE OF INTENT TO FORECLOSE YOUR HOME LOAN IS IN A STATE OF DEFAULT DUE TO THE REASONS MENTIONED IN THIS NOTICE. YOU MUST TAKE ACTION TO SAVE YOUR HOME FROM FORECLOSURE.**

**NATURE OF THE DEFAULT** - The MORTGAGE debt held by the above lender on your property located at:

108 Economy Grade Rd Imperial, PA  15108-8950

IS SERIOUSLY IN DEFAULT because

**YOU HAVE NOT MADE MONTHLY MORTGAGE PAYMENTS** for the following months and the following amounts are now past due:

| Monthly Charges: | 06/01/2011 | | $2,306.74 |
| | 07/01/2011 | | $4,599.98 |
| Late Charges: | 06/01/2011 | | $177.74 |
| Other Charges: | Uncollected Late Charges: | | $0.00 |
| | Uncollected Costs: | | $0.00 |
| | Partial Payment Balance: | | ($0.00) |
| | | TOTAL DUE: | $7,084.46 |

YOU HAVE FAILED TO TAKE THE FOLLOWING ACTION (Do not use if not applicable)

**HOW TO CURE THE DEFAULT** - You may cure the default within THIRTY (30) DAYS of the date of this notice **BY PAYING THE TOTAL AMOUNT PAST DUE TO THE LENDER, WHICH IS $7,084.46** PLUS ANY MORTGAGE PAYMENTS AND LATE CHARGES WHICH BECOME DUE DURING THE THIRTY (30) DAY PERIOD.

This communication is from Bank of America, N.A., the servicer of your home loan.

E-mail use: Providing your e-mail address below will allow us to send you information on your account.
Account Number ■■■■
Date A Represent E-mail address:

How we post your payments: All accepted payments of principal and interest will be applied to the longest outstanding installment due, unless otherwise expressly prohibited or limited by law. If you submit an amount in addition to your scheduled monthly amount, we will apply your payments as follows: (i) to outstanding monthly payments of principal and interest, (ii) escrow deficiencies, (iii) late charges and other amounts you owe in connection with your loan and (iv) to reduce the outstanding principal balance of your loan. Please specify if you want an additional amount applied to future payments, rather than principal reduction.

Postdated checks: Postdated checks will be processed on the date received unless a loan counselor agrees to honor the date written on the check as a condition of a repayment plan.

**Exhibit B**

Payments must be made either by cashier's check, certified check or money order made payable and sent to:

Bank of America, N.A. at P.O. Box 15222, Wilmington, DE 19886-5222.

You can cure any other default by taking the following action within THIRTY (30) DAYS of the date of this letter. (Do not use if not applicable)

**IF YOU DO NOT CURE THE DEFAULT** - If you do not cure the default within THIRTY (30) DAYS of the date of this Notice, the lender intends to exercise its rights to accelerate the mortgage debt. This means that the entire outstanding balance of this debt will be considered due immediately and you may lose the chance to pay the mortgage in monthly installments. If full payment of the total amount past due is not made within THIRTY (30) DAYS, the lender also intends to instruct its attorneys to start legal action to foreclose upon your mortgaged property.

**IF THE MORTGAGE IS FORECLOSED UPON** - The mortgaged property will be sold by the Sheriff to pay off the mortgage debt. If the lender refers your case to its attorneys, but you cure the delinquency before the lender begins legal proceedings against you, you will still be required to pay the reasonable attorney's fees that were actually incurred, up to $50.00. However, if legal proceedings are started against you, you will have to pay all reasonable attorney's fees actually incurred by the lender even if they exceed $50.00. Any attorney's fees will be added to the amount you owe the lender, which may also include other reasonable costs. **If you cure the default within the THIRTY (30) DAY period, you will not be required to pay attorney's fees. YOU HAVE THE RIGHT TO REINSTATE AFTER ACCELERATION AND THE RIGHT TO ASSERT IN THE FORECLOSURE PROCEEDING THE NON-EXISTENCE OF A DEFAULT OR ANY OTHER DEFENSE YOU MAY HAVE TO ACCELERATION AND FORECLOSURE.**

**OTHER LENDER REMEDIES** - The lender may also sue you personally for the unpaid principal balance and all other sums due under the mortgage.

**RIGHT TO CURE THE DEFAULT PRIOR TO SHERIFF'S SALE** - If you have not cured the default within the THIRTY (30) DAY period and foreclosure proceedings have begun, you still have the right to cure the default and prevent the sale at any time up to one hour before the Sheriff's Sale. You may do so by paying the total amount then past due, plus any late or other charges then due, reasonable attorney's fees and costs connected with the foreclosure sale and any other costs connected with the Sheriff's Sale as specified in writing by the lender and by performing any other requirements under the mortgage. **Curing your default in the manner set forth in this notice will restore your mortgage to the same position as if you had never defaulted**

**EARLIEST POSSIBLE SHERIFF'S SALE DATE** - It is estimated that the earliest date that such a Sheriff's Sale of the mortgage property could be held would be **approximately six (6) months from the date of this Notice.** A notice of the actual date of the Sheriff's Sale will be sent to you before the sale. Of course, the amount needed to cure the default will increase the longer you wait. You may find out at any time exactly what the required payment or action will be by contacting the lender.

**HOW TO CONTACT THE LENDER:**

| | |
|---|---|
| Name of Lender: | Bank of America, N.A. |
| Address: | P. O. Box 660694 Dallas, TX 75266-0694 |
| Phone Number: | 1-800-669-6654 |
| Fax Number: | 1-817-230-6811 |
| Contact Person: | MS TX2-977-01-13 |
| | Attention: Loan Counselor |

**We are currently developing a process to ensure secure email communications for your Home Retention inquiries. In the interim, please contact us at the telephone number or address provided.**

**EFFECT OF SHERIFF'S SALE** - You should realize that a Sheriff's Sale will end your ownership of the mortgaged property and your right to occupy it. If you continue to live in the property after the Sheriff's sale, a lawsuit to remove you and your furnishings and other belongings could be started by the lender at any time.

**ASSUMPTION OF MORTGAGE** - You may sell or transfer your home to a buyer or transferee who will assume the mortgage debt, provided that all the outstanding payments, charges and attorney's fees and costs are paid prior to or at the sale and that the other requirements of the mortgage are satisfied.

## YOU MAY ALSO HAVE THE RIGHT:

TO SELL THE PROPERTY TO OBTAIN MONEY TO PAY OFF THE MORTGAGE DEBT OR TO BORROW MONEY FROM ANOTHER LENDING INSTITUTION TO PAY OFF THIS DEBT.

TO HAVE THIS DEFAULT CURED BY ANY THIRD PARTY ACTING ON YOUR BEHALF.

TO HAVE THE MORTGAGE RESTORED TO THE SAME POSITION AS IF NO DEFAULT HAD OCCURRED, IF YOU CURE THE DEFAULT. (HOWEVER, YOU DO NOT HAVE THIS RIGHT TO CURE YOUR DEFAULT MORE THAN THREE TIMES IN ANY CALENDAR YEAR.)

TO ASSERT THE NONEXISTENCE OF A DEFAULT IN ANY FORECLOSURE PROCEEDING OR ANY OTHER LAWSUIT INSTITUTED UNDER THE MORTGAGE DOCUMENTS.

TO ASSERT ANY OTHER DEFENSE YOU BELIEVE YOU MAY HAVE TO SUCH ACTION BY THE LENDER.

TO SEEK PROTECTION UNDER THE FEDERAL BANKRUPTCY LAW.

Your loan is in default. Pursuant to your loan documents, Bank of America, N.A. may, enter upon and conduct an inspection of your property. The purposes of such an inspection are to (i) observe the physical condition of your property, (ii) verify that the property is occupied and/or (iii) determine the identity of the occupant. If you do not cure the default prior to the inspection, other actions to protect the mortgagee's interest in the property (including, but not limited to, winterization, securing the property, and valuation services) may be taken. **The costs of the above-described inspections and property preservation efforts will be charged to your account as provided in your security instrument.**



This communication is from Bank of America, N.A., the servicer of your home loan.

Exhibit B

If you are unable to cure the default on or before August 31, 2011, Bank of America, N.A. wants you to be aware of various options that may be available to you through Bank of America, N.A. to prevent a foreclosure sale of your property.  For example:

- Repayment Plan: It is possible that you may be eligible for some form of payment assistance through Bank of America, N.A..  Our basic plan requires that Bank of America, N.A. receive, up front, at least ¼ of the amount necessary to bring the account current, and that the balance of the overdue amount be paid, along with the regular monthly payment, over a defined period of time. Other repayment plans also are available.

- Loan Modification: Or, it is possible that the regular monthly payments can be lowered through a modification of the loan by reducing the interest rate and then adding the delinquent payments to the current loan balance. This foreclosure alternative, however, is limited to certain loan types.

- Sale of Your Property: Or, if you are willing to sell your home in order to avoid foreclosure, it is possible that the sale of your home can be approved through Bank of America, N.A. even if your home is worth less than what is owed on it.

- Deed-in-Lieu: Or, if your property is free from other liens or encumbrances, and if the default is due to a serious financial hardship which is beyond your control, you may be eligible to deed your property directly to the Noteholder and avoid the foreclosure sale.

If you are interested in discussing any of these foreclosure alternatives with Bank of America, N.A., you must contact us immediately. If you request assistance, Bank of America, N.A. will need to evaluate whether that assistance will be extended to you. In the meantime, Bank of America, N.A. will pursue all of its rights and remedies under the loan documents and as permitted by law, unless it agrees otherwise in writing. Failure to bring your loan current or to enter into a written agreement by August 31, 2011 as outlined above will result in the acceleration of your debt.

If your loan is currently being evaluated for a loan modification, forbearance or other loan assistance solution, this notice will not cancel or delay that evaluation process. However, it is important that you promptly respond to all requests made in connection with your evaluation for a loan assistance solution, including all requests for you to contact us and any documentation required. If you do not comply with these requests in a timely manner, it may cause your loan to enter the foreclosure process as indicated in this notice. If your loan is not eligible for a loan assistance program, please note this letter will continue to serve as notice of our right to initiate foreclosure.

Time is of the essence. If you have any questions concerning this notice, please contact Loan Counseling Center immediately at 1-800-669-6654.

Exhibit B

Attachment: Itemization of Charges and Fees

| Monthly Charges: | 06/01/2011 | - | 06/30/2011 | @ | $2,306.74 | $2,306.74 |
|---|---|---|---|---|---|---|
| | 07/01/2011 | - | 08/31/2011 | @ | $2,299.99 | $4,599.98 |
| Late Charges: | 08/01/2011 | - | 07/31/2011 | @ | $88.87 | $177.74 |
| Other Charges: | Uncollected Late Charges: | | | | | $0.00 |
| | Partial Payment Balance: | | | | | ($0.00) |
| | | | | **TOTAL DUE:** | | **$7,084.46** |



**Exhibit B**

## CONSUMER CREDIT COUNSELING AGENCIES SERVING YOUR COUNTY

### ALLEGHENY COUNTY

Action Housing, Inc
425 6th Avenue
Suite 950
Pittsburgh, PA 15219
412.281.2102
800.792.2801

CCCS of Western PA
River Park Commons
2403 Sidney Street, Suite 400
Pittsburgh, PA 16203
888.511.2227
888.511.2227

Community Action Southwest
56 East Greene Street
Waynesburg, PA 15370
724.852.2893

Fair Housing Partnership of Greater
Pittsburgh, Inc.
2840 Liberty Avenue
Suite 205
Pittsburgh, PA 15222
412.391.2535

Garfield Jubilee Associates
5138 Penn Avenue
Pittsburgh, PA 15224
412.665.5200

Mon Valley Unemployment Committee
1600 West Street
3rd Floor
Homestead, PA 15120
412.462.9962

Nazareth Housing Services
301 Bellevue Road
Pittsburgh, PA 15229
412.931.6996

NeighborWorks of Western Pennsylvania
710 5th Avenue
Suite 1000
Pittsburgh, PA 15219
412.281.9773

Pennsylvania Housing Finance Agency
2275 Swallow Hill Road
Bldg 200
Pittsburgh, PA 15220
412.429.2842

The Pittsburgh Community Reinvestment
Group (PCRG)
1901 Centre Avenue
Suite 200
Pittsburgh, PA 15219
412.391.6732

Urban League Of Pittsburgh
610 Wood Street
Pittsburgh, PA 15222
412.227.4802

Options are Available to Help You

# Avoid Foreclosure

## Call the number on the enclosed notice to learn more.

When you call, please have your income and expense information available

so we can discuss which option(s) could work for you.

### Options to consider if your goal is to stay in your home

| Program | Description |
|---|---|
| Home Affordable Modification Program (HAMP) | A federal government program that allows the loan on newly agreed upon terms, which may include lowering the interest rate, placing past due amounts at the end of the loan, and/or extending the term of the loan. You may be eligible for this program if you meet the following requirements:<br><br>• The home is your primary residence and you currently live in it.<br>• The amount you owe on the first mortgage is equal to or less than $729,750 for a single-family home, $934,200 for a 2 unit property, $1,129,250 for a 3 unit property or $1,403,400 for a 4 unit property<br>• You have experienced a hardship that has impacted your income. For example, a significant increase in your mortgage payment OR reduction in your income OR other hardship.<br>• Your mortgage was obtained before Jan. 1, 2009.<br>• Your payment on your first mortgage (including principal, interest, taxes, insurance and homeowner's association dues, if applicable) is more than 31% of your current gross income. To calculate this, divide your first mortgage payment by your gross income (income before taxes). |
| Loan Reinstatement | If you can bring your loan payments up to date, we will accept the funds needed to bring the loan up to date until the day of your foreclosure sale. |
| Repayment Plan | A temporary agreement which allows for the repayment of the unpaid, past due amount along with regular mortgage payments. This may include principal, interest, fees, and/or costs assessed to your loan. |
| Temporary Forbearance Agreement | An agreement whereby we agree not to proceed with foreclosure and/or collection of payments for a period of time, to allow you to re-establish your ability to make the required payments. |
| Loan Modification (non-HAMP) | Repay the loan on newly agreed upon terms, which may include lowering the interest rate, placing amounts past due at the end of the loan, and/or extending the term of the loan. |
| Partial Claim (FHA loans Only) | If you have a Federal Housing Administration (FHA) loan and your payments are past due but you are now able to make your regular monthly mortgage payment, this program is designed to bring your loan up to date by creating a second mortgage/lien on your property for the amount that is past due. |

### Options to consider if you cannot or do not wish to stay in your home

| Program | Description |
|---|---|
| Home Affordable Foreclosure Alternatives Program (HAFA) | Designed to help borrowers who are eligible for the Home Affordable Modification Program (HAMP) but were unsuccessful in securing a permanent modification through the program. HAFA provides the option of a short sale and, if unsuccessful, a deed in lieu of foreclosure. A short sale is a transaction in which you sell your property for less than the total amount owed on the loan (subject to agreement by your servicer/lender/investor), resulting in the release of our lien on your home and avoidance of foreclosure. A deed in lieu of foreclosure is a transaction in which you agree to voluntarily transfer ownership of your property to us in order to avoid foreclosure. |
| Short Sale/ Preforeclosure Sale (non-HAFA) | Offered to borrowers who are not eligible for HAMP or other home retention alternatives. With a short sale, you sell your property for less than the total amount owed on the loan (subject to agreement by your servicer/lender/investor), resulting in the release of our lien on your home and avoidance of foreclosure. |
| Deed in Lieu of Foreclosure (non-HAFA) | Offered to borrowers not eligible for HAMP or other home retention alternatives, and who were not able to sell the property through a short sale. With a deed in lieu of foreclosure, you agree to voluntarily transfer ownership of your property to us in order to avoid foreclosure. |



## We are here to help you. Please call us today.

Exhibit B

Hay Opciones Disponibles Para Ayudarle a

# Evitar la Ejecución Hipotecaria

## Llame al número que aparece en la notificación adjunta para obtener más información

Cuando llame, tenga la información de sus ingresos y gastos disponibles para que podamos discutir cual opción(es) pueden funcionar para usted.

### Opciones a considerar si su objetivo es permanecer en su casa

| Programa | Descripción |
|---|---|
| Home Affordable Modification Program (HAMP) | Un programa del gobierno federal que le permite pagar el préstamo bajo los nuevos términos acordados, que pueden incluir la reducción de la tasa de interés, agregando la cantidad adeudada al final del préstamo, y / o extender el plazo del préstamo. Usted puede ser elegible para este programa si cumple con los siguientes requisitos:<br><br>• La casa es su residencia principal y actualmente vive en ella.<br>• La cantidad adeudada en la primera hipoteca debe ser igual o menos que $729,750 dólares para una vivienda unifamiliar, $934,200 dólares para una propiedad de 2 unidades, $1,129,250 dólares para una propiedad de 3 unidades o $1,403,400 para una propiedad de 4 unidades<br>• Ha experimentado una dificultad que ha afectado sus ingresos. Por ejemplo, un aumento significativo en su pago hipotecario O reducción de sus ingresos U otras dificultades.<br>• Obtuvo su hipoteca antes del 01 de enero 2009.<br>• Su pago de la primera hipoteca (incluyendo principal, interés, impuestos, seguro y cuotas de asociación de propietarios, si se aplica) debe ser más del 31% de sus ingresos brutos actuales. Para calcular esto, divida su pago hipotecario por sus ingresos brutos (ingresos antes de impuestos). |
| Restablecimiento del Préstamo | Si usted puede traer sus pagos del préstamo hipotecario al día, se le aceptarán los fondos necesarios para que el préstamo este al día hasta la fecha de la venta judicial. |
| Plan de Pago | Un acuerdo temporal que permite el pago de la cantidad adeudada, cantidad del pago atrasado junto con los pagos regulares de la hipoteca. Esto puede incluir principal, interés, honorarios y/o costos aplicados a su préstamo. |
| Acuerdo Temporal de Tolerancia | Un acuerdo por el cual nos comprometemos a no proceder con la ejecución hipotecaria y/o colección de pagos por un periodo de tiempo, para permitirle que restablezca su habilidad de hacer los pagos requeridos. |
| Modificación de Préstamo (no por medio de HAMP) | Pagar el préstamo bajo los nuevos términos acordados, que puede incluir la reducción de la tasa de interés, agregando la cantidad adeudada al final del préstamo, y/o extender el plazo del préstamo. |
| Reclamo Parcial (solamente prestamos de la FHA) | Si usted tiene un préstamo de la Administración Federal de Vivienda (FHA) y sus pagos están vencidos, pero ahora puede hacer sus pagos regulares mensuales de la hipoteca, este programa está diseñado para que su préstamo este al día mediante la creación de una segunda hipoteca / gravamen sobre su propiedad por la cantidad adeudada. |

### Opciones a considerar si no puede o no desea quedarse en su casa

| Programa | Descripción |
|---|---|
| Home Affordable Foreclosure Alternatives Program (HAFA) | Diseñado para ayudar a los prestatarios que son elegibles para el Programa de Home Affordable Modification (HAMP), pero no tuvieron éxito en obtener una modificación permanente a través del programa. HAFA ofrece la posibilidad de una venta corta y, si no tiene éxito, una entrega de escritura para evitar juicio hipotecario. Una venta corta es una transacción en la que usted vende su propiedad por menos de la cantidad adeudada en el préstamo (sujeto a previo acuerdo de su administrador / prestamista / inversionista), resultando en la liberación de nuestro derecho de retención sobre su propiedad y evitar la ejecución hipotecaria. Una entrega de escritura para evitar juicio hipotecario es una transacción en la que usted está de acuerdo de transferir voluntariamente las escrituras de su propiedad a nosotros con el fin de evitar la ejecución hipotecaria. |
| Venta Corta/ Venta antes de Ejecución Hipotecaria (no por medio de HAFA) | Se ofrece a los prestatarios que no son elegibles para HAMP u otras alternativas de retención de hogar. Con una venta corta, usted vende su propiedad por menos de la cantidad total adeudada en el préstamo (sujeto a un acuerdo por su administrador / prestamista / inversionista), resultando en la liberación de nuestro derecho de retención sobre su propiedad y evitando la ejecución hipotecaria. |
| Entrega de Escritura Para Evitar Juicio Hipotecario (no por medio de HAFA) | Se ofrece a los prestatarios que no son elegibles para HAMP u otras alternativas de retención de hogar, y que no pudieron vender la propiedad a través de una venta corta. Con una entrega de escritura para evitar juicio hipotecario, usted está de acuerdo a transferir voluntariamente las escrituras de su propiedad a nosotros para evitar la ejecución hipotecaria. |

**Estamos aquí para ayudarle. Por favor llámenos hoy.**

Exhibit B

UDREN LAW OFFICES, P.C.                          **ATTORNEY FOR PLAINTIFF**
WOODCREST CORPORATE CENTER
111 WOODCREST ROAD, SUITE 200
CHERRY HILL, NJ 08003-3620
856-669-5400 pleadings@udren.com

---

Bank of America, N.A.                    COURT OF COMMON PLEAS
    Plaintiff                          CIVIL DIVISION
                                         ALLEGHENY County

    v.

DALE A. KAYMARK                          NO.
108 ECONOMY GRADE ROAD, IMPERIAL,
PA 15108 A/K/A 108 ECONOMY GRADE
ROAD
CORAOPOLIS, PA 15108


    Defendant(s)

---

## VERIFICATION

_Matthew E Coffman_, hereby states that he/she is

_Assistant Vice President_ of **Bank of America, N.A.,** Plaintiff in this matter, that

he/she is authorized to make this Verification, and verify that the statements made in the

foregoing Civil Action in Mortgage Foreclosure are true and correct to the best of his/her

knowledge, information and belief.

The undersigned understands that this statement is made subject to the penalties of 18 Pa. C.S.

Section 4904 relating to unsworn falsification to authorities.


Date: _August 28, 2012_

Name: _Matthew E. Coffman_
Title: _Assistant Vice President_
Company: _Bank of America NA_


MJU #: 12050577 CASE #: 12050577-1



61 2007 00003337

**Valerie McDonald Roberts**
**Recorder of Deeds**
**Pittsburgh, PA 15219**

**Instrument Number: 2007-3337**

Recorded On: January 10, 2007     **As-Mortgage**

Parties: **KAYMARK DALE A**

To     **BANK AMERICA N A**                                          **# of Pages: 18**

Comment:

## **\*\*DO NOT REMOVE-THIS PAGE IS PART OF THE RECORDED DOCUMENT\*\***

Mortgage                          72.00

            Pages > 4      13
            Names > 4       0

Total:                            72.00

*I hereby certify that the within and foregoing was recorded in the Recorder's Office in  Allegheny County, PA*
## **\*\*DO NOT REMOVE-THIS PAGE IS PART OF THE RECORDED DOCUMENT\*\***

**File Information:**

Document Number: 2007-3337
Receipt Number: 833527
Recorded Date/Time: January 10, 2007 11:04:21A
Book-Vol/Pg: BK-M VL-33222 PG-221
User / Station: B Plake - Cash Station 25

**Record and Return To:**

FALCON CLOSING SERVICES LTD
112 E PIKE ST
HOUSTON PA 15342



Valerie McDonald-Roberts Recorder of Deeds

Exhibit C

17

Prepared By:  ETHAN BYRD
BANK OF AMERICA, N.A.
1201 MAIN STREET, 7TH FLOOR
DALLAS, TX  752020000

*return to:*
*Falcon Closing Services Ltd*
*112 East Pike St.*
*Houston, PA 15342*

Return To:    FL9-700-01-01
JACKSONVILLE POST CLOSING
BANK OF AMERICA
9000 SOUTHSIDE BLVD.
BLDG 700, FILE RECEIPT DEPT.
JACKSONVILLE, FL  32256

Parcel Number:
9910-X-269
Premises:  108 ECONOMY GRADE ROAD
IMPERIAL , PA 15108

———————— [Space Above This Line For Recording Data] ————————
# MORTGAGE

LOAN # 6299353026

## DEFINITIONS
Words used in multiple sections of this document are defined below and other words are defined
in Sections 3, 11, 13, 18, 20 and 21. Certain rules regarding the usage of words used in this
document are also provided in Section 16.
(A) **"Security Instrument"** means this document, which is dated  DECEMBER 26, 2006          ,
together with all Riders to this document.
(B) **"Borrower"** is  DALE A KAYMARK

Borrower is the mortgagor under this Security Instrument.
(C) **"Lender"** is  BANK OF AMERICA, N.A.

Lender is a  NATIONAL BANKING ASSOCIATION
organized and existing under the laws of  THE UNITED STATES OF AMERICA

**PENNSYLVANIA** – Single Family – **Fannie Mae/Freddie Mac UNIFORM INSTRUMENT**

-6(PA) (0508)          Form 3039 1/01
Page 1 of 16          Initials: DAK
VMP Mortgage Solutions, Inc. (800)521-7291

CVPA 12/26/06 8:09 AM 6299353026

Exhibit C

ALL that certain lot or piece of ground situate in the Township of Findlay, County of Allegheny and Commonwealth of Pennsylvania, being bounded and described more particularly as follows:

BEGINNING at a point in the center line of the Clinton and Economy Grade Road, at the line of land now or formerly of Joseph Kachik, et ux; thence along said Kachik line North 39° 40' East, a distance of 252.44 feet to a point; thence by a line through property now or formerly of Edward L. Boggs, et ux, of which the herein described parcel was a part, North 4° East a distance of 171.64 feet to a point on the line of land now or formerly of E. K. Hicks, et ux; thence along said Hicks line of North 64° 37' West, a distance of 234.75 feet to a point; thence continuing along said Hicks line North 10° 56' West, a distance of 56.65 feet to a point; thence still alongthe same South 73° 07' West, a distance of 158.30 feet to a point in the center line of the Clinton and Economy Grade Road; thence along the center line of said Road the following three courses and distances, South 12° 55' East, 272 feet; South 25° 39' East, 134 feet and South 42° 28' East, 121.93 feet to the point at the place of beginning.

TAX IDENTIFICATION NO.: 9910-x-269

Exhibit C

Lender's address is 1201 MAIN STREET, 7TH FLOOR, DALLAS, TX 752020000

Lender is the mortgagee under this Security Instrument.

(D) "Note" means the promissory note signed by Borrower and dated DECEMBER 26, 2006 .
The Note states that Borrower owes Lender TWO HUNDRED FORTY FIVE THOUSAND SIX
HUNDRED AND 00/100                                                                    Dollars
(U.S. $        245,600.00   ) plus interest. Borrower has promised to pay this debt in regular
Periodic Payments and to pay the debt in full not later than FEBRUARY 01, 2027          .

(E) "Property" means the property that is described below under the heading "Transfer of Rights
in the Property."

(F) "Loan" means the debt evidenced by the Note, plus interest, any prepayment charges and late
charges due under the Note, and all sums due under this Security Instrument, plus interest.

(G) "Riders" means all Riders to this Security Instrument that are executed by Borrower. The
following Riders are to be executed by Borrower [check box as applicable]:

| ☐ Adjustable Rate Rider | ☐ Condominium Rider | ☐ Second Home Rider |
| ☐ Balloon Rider | ☐ Planned Unit Development Rider | ☐ 1-4 Family Rider |
| ☐ VA Rider | ☐ Biweekly Payment Rider | ☐ Other(s) [specify] |

(H) "Applicable Law" means all controlling applicable federal, state and local statutes,
regulations, ordinances and administrative rules and orders (that have the effect of law) as well as
all applicable final, non-appealable judicial opinions.

(I) "Community Association Dues, Fees, and Assessments" means all dues, fees,
assessments and other charges that are imposed on Borrower or the Property by a condominium
association, homeowners association or similar organization.

(J) "Electronic Funds Transfer" means any transfer of funds, other than a transaction
originated by check, draft, or similar paper instrument, which is initiated through an electronic
terminal, telephonic instrument, computer, or magnetic tape so as to order, instruct, or authorize
a financial institution to debit or credit an account. Such term includes, but is not limited to,
point-of-sale transfers, automated teller machine transactions, transfers initiated by telephone, wire
transfers, and automated clearinghouse transfers.

(K) "Escrow Items" means those items that are described in Section 3.

(L) "Miscellaneous Proceeds" means any compensation, settlement, award of damages, or
proceeds paid by any third party (other than insurance proceeds paid under the coverages
described in Section 5) for: (i) damage to, or destruction of, the Property; (ii) condemnation or
other taking of all or any part of the Property; (iii) conveyance in lieu of condemnation; or (iv)
misrepresentations of, or omissions as to, the value and/or condition of the Property.

(M) "Mortgage Insurance" means insurance protecting Lender against the nonpayment of, or
default on, the Loan.

(N) "Periodic Payment" means the regularly scheduled amount due for (i) principal and
interest under the Note, plus (ii) any amounts under Section 3 of this Security Instrument.

Initials: DAL

Exhibit C

(O) "RESPA" means the Real Estate Settlement Procedures Act (12 U.S.C. Section 2601 et seq.) and its implementing regulation, Regulation X (24 C.F.R. Part 3500), as they might be amended from time to time, or any additional or successor legislation or regulation that governs the same subject matter. As used in this Security Instrument, "RESPA" refers to all requirements and restrictions that are imposed in regard to a "federally related mortgage loan" even if the Loan does not qualify as a "federally related mortgage loan" under RESPA.

(P) "Successor in Interest of Borrower" means any party that has taken title to the Property, whether or not that party has assumed Borrower's obligations under the Note and/or this Security Instrument.

TRANSFER OF RIGHTS IN THE PROPERTY

This Security Instrument secures to Lender: (i) the repayment of the Loan, and all renewals, extensions and modifications of the Note; and (ii) the performance of Borrower's covenants and agreements under this Security Instrument and the Note. For this purpose, Borrower does hereby mortgage, grant and convey to Lender the following described property located in the
COUNTY                                    of        ALLEGHENY                                    :
　　　　　[Type of Recording Jurisdiction]　　　　　　　　[Name of Recording Jurisdiction]
"LEGAL DESCRIPTION ATTACHED HERETO AND MADE A PART HEREOF."

which currently has the address of

108 ECONOMY GRADE ROAD                                                    [Street]
IMPERIAL                                        [City], Pennsylvania 15108        [Zip Code]
("Property Address"):

TOGETHER WITH all the improvements now or hereafter erected on the property, and all easements, appurtenances, and fixtures now or hereafter a part of the property. All replacements and additions shall also be covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the "Property."

Initials DAL

-6(PA) (0509)                Page 3 of 15                Form 3039 1/01
CVPA 12/26/06 8:09 AM 6299353028

Exhibit C

BORROWER COVENANTS that Borrower is lawfully seised of the estate hereby conveyed and has the right to mortgage, grant and convey the Property and that the Property is unencumbered, except for encumbrances of record. Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.

THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property.

UNIFORM COVENANTS. Borrower and Lender covenant and agree as follows:

1. **Payment of Principal, Interest, Escrow Items, Prepayment Charges, and Late Charges.** Borrower shall pay when due the principal of, and interest on, the debt evidenced by the Note and any prepayment charges and late charges due under the Note. Borrower shall also pay funds for Escrow Items pursuant to Section 3. Payments due under the Note and this Security Instrument shall be made in U.S. currency. However, if any check or other instrument received by Lender as payment under the Note or this Security Instrument is returned to Lender unpaid, Lender may require that any or all subsequent payments due under the Note and this Security Instrument be made in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality, or entity; or (d) Electronic Funds Transfer.

Payments are deemed received by Lender when received at the location designated in the Note or at such other location as may be designated by Lender in accordance with the notice provisions in Section 15. Lender may return any payment or partial payment if the payment or partial payments are insufficient to bring the Loan current. Lender may accept any payment or partial payment insufficient to bring the Loan current, without waiver of any rights hereunder or prejudice to its rights to refuse such payment or partial payments in the future, but Lender is not obligated to apply such payments at the time such payments are accepted. If each Periodic Payment is applied as of its scheduled due date, then Lender need not pay interest on unapplied funds. Lender may hold such unapplied funds until Borrower makes payment to bring the Loan current. If Borrower does not do so within a reasonable period of time, Lender shall either apply such funds or return them to Borrower. If not applied earlier, such funds will be applied to the outstanding principal balance under the Note immediately prior to foreclosure. No offset or claim which Borrower might have now or in the future against Lender shall relieve Borrower from making payments due under the Note and this Security Instrument or performing the covenants and agreements secured by this Security Instrument.

2. **Application of Payments or Proceeds.** Except as otherwise described in this Section 2, all payments accepted and applied by Lender shall be applied in the following order of priority: (a) interest due under the Note; (b) principal due under the Note; (c) amounts due under Section 3. Such payments shall be applied to each Periodic Payment in the order in which it became due. Any remaining amounts shall be applied first to late charges, second to any other amounts due under this Security Instrument, and then to reduce the principal balance of the Note.

If Lender receives a payment from Borrower for a delinquent Periodic Payment which includes a sufficient amount to pay any late charge due, the payment may be applied to the delinquent payment and the late charge. If more than one Periodic Payment is outstanding, Lender may apply any payment received from Borrower to the repayment of the Periodic Payments if, and to the extent that, each payment can be paid in full. To the extent that any excess exists after the payment is applied to the full payment of one or more Periodic Payments, such excess may be

Initials: DAK

Exhibit C

applied to any late charges due. Voluntary prepayments shall be applied first to any prepayment charges and then as described in the Note.

Any application of payments, insurance proceeds, or Miscellaneous Proceeds to principal due under the Note shall not extend or postpone the due date, or change the amount, of the Periodic Payments.

3. **Funds for Escrow Items.** Borrower shall pay to Lender on the day Periodic Payments are due under the Note, until the Note is paid in full, a sum (the "Funds") to provide for payment of amounts due for: (a) taxes and assessments and other items which can attain priority over this Security Instrument as a lien or encumbrance on the Property; (b) leasehold payments or ground rents on the Property, if any; (c) premiums for any and all insurance required by Lender under Section 5; and (d) Mortgage Insurance premiums, if any, or any sums payable by Borrower to Lender in lieu of the payment of Mortgage Insurance premiums in accordance with the provisions of Section 10. These items are called "Escrow Items." At origination or at any time during the term of the Loan, Lender may require that Community Association Dues, Fees, and Assessments, if any, be escrowed by Borrower, and such dues, fees and assessments shall be an Escrow Item. Borrower shall promptly furnish to Lender all notices of amounts to be paid under this Section. Borrower shall pay Lender the Funds for Escrow Items unless Lender waives Borrower's obligation to pay the Funds for any or all Escrow Items. Lender may waive Borrower's obligation to pay to Lender Funds for any or all Escrow Items at any time. Any such waiver may only be in writing. In the event of such waiver, Borrower shall pay directly, when and where payable, the amounts due for any Escrow Items for which payment of Funds has been waived by Lender and, if Lender requires, shall furnish to Lender receipts evidencing such payment within such time period as Lender may require. Borrower's obligation to make such payments and to provide receipts shall for all purposes be deemed to be a covenant and agreement contained in this Security Instrument, as the phrase "covenant and agreement" is used in Section 9. If Borrower is obligated to pay Escrow Items directly, pursuant to a waiver, and Borrower fails to pay the amount due for an Escrow Item, Lender may exercise its rights under Section 9 and pay such amount and Borrower shall then be obligated under Section 9 to repay to Lender any such amount. Lender may revoke the waiver as to any or all Escrow Items at any time by a notice given in accordance with Section 15 and, upon such revocation, Borrower shall pay to Lender all Funds, and in such amounts, that are then required under this Section 3.

Lender may, at any time, collect and hold Funds in an amount (a) sufficient to permit Lender to apply the Funds at the time specified under RESPA, and (b) not to exceed the maximum amount a lender can require under RESPA. Lender shall estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items or otherwise in accordance with Applicable Law.

The Funds shall be held in an institution whose deposits are insured by a federal agency, instrumentality, or entity (including Lender, if Lender is an institution whose deposits are so insured) or in any Federal Home Loan Bank. Lender shall apply the Funds to pay the Escrow Items no later than the time specified under RESPA. Lender shall not charge Borrower for holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items, unless Lender pays Borrower interest on the Funds and Applicable Law permits Lender to make such a charge. Unless an agreement is made in writing or Applicable Law requires interest to be paid on the Funds, Lender shall not be required to pay Borrower any interest or earnings on the Funds. Borrower and Lender can agree in writing, however, that interest shall be paid on the Funds. Lender shall give to Borrower, without charge, an annual accounting of the Funds as required by RESPA.

Exhibit C

If there is a surplus of Funds held in escrow, as defined under RESPA, Lender shall account to Borrower for the excess funds in accordance with RESPA. If there is a shortage of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the shortage in accordance with RESPA, but in no more than 12 monthly payments. If there is a deficiency of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the deficiency in accordance with RESPA, but in no more than 12 monthly payments.

Upon payment in full of all sums secured by this Security Instrument, Lender shall promptly refund to Borrower any Funds held by Lender.

**4. Charges; Liens.** Borrower shall pay all taxes, assessments, charges, fines, and impositions attributable to the Property which can attain priority over this Security Instrument, leasehold payments or ground rents on the Property, if any, and Community Association Dues, Fees, and Assessments, if any. To the extent that these items are Escrow Items, Borrower shall pay them in the manner provided in Section 3.

Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower: (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender, but only so long as Borrower is performing such agreement; (b) contests the lien in good faith by, or defends against enforcement of the lien in, legal proceedings which in Lender's opinion operate to prevent the enforcement of the lien while those proceedings are pending, but only until such proceedings are concluded; or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to this Security Instrument. If Lender determines that any part of the Property is subject to a lien which can attain priority over this Security Instrument, Lender may give Borrower a notice identifying the lien. Within 10 days of the date on which that notice is given, Borrower shall satisfy the lien or take one or more of the actions set forth above in this Section 4.

Lender may require Borrower to pay a one-time charge for a real estate tax verification and/or reporting service used by Lender in connection with this Loan.

**5. Property Insurance.** Borrower shall keep the improvements now existing or hereafter erected on the Property insured against loss by fire, hazards included within the term "extended coverage," and any other hazards including, but not limited to, earthquakes and floods, for which Lender requires insurance. This insurance shall be maintained in the amounts (including deductible levels) and for the periods that Lender requires. What Lender requires pursuant to the preceding sentences can change during the term of the Loan. The insurance carrier providing the insurance shall be chosen by Borrower subject to Lender's right to disapprove Borrower's choice, which right shall not be exercised unreasonably. Lender may require Borrower to pay, in connection with this Loan, either: (a) a one-time charge for flood zone determination, certification and tracking services; or (b) a one-time charge for flood zone determination and certification services and subsequent charges each time remappings or similar changes occur which reasonably might affect such determination or certification. Borrower shall also be responsible for the payment of any fees imposed by the Federal Emergency Management Agency in connection with the review of any flood zone determination resulting from an objection by Borrower.

If Borrower fails to maintain any of the coverages described above, Lender may obtain insurance coverage, at Lender's option and Borrower's expense. Lender is under no obligation to purchase any particular type or amount of coverage. Therefore, such coverage shall cover Lender, but might or might not protect Borrower, Borrower's equity in the Property, or the contents of

Exhibit C

the Property, against any risk, hazard or liability and might provide greater or lesser coverage than was previously in effect. Borrower acknowledges that the cost of the insurance coverage so obtained might significantly exceed the cost of insurance that Borrower could have obtained. Any amounts disbursed by Lender under this Section 5 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

All insurance policies required by Lender and renewals of such policies shall be subject to Lender's right to disapprove such policies, shall include a standard mortgage clause, and shall name Lender as mortgagee and/or as an additional loss payee. Lender shall have the right to hold the policies and renewal certificates. If Lender requires, Borrower shall promptly give to Lender all receipts of paid premiums and renewal notices. If Borrower obtains any form of insurance coverage, not otherwise required by Lender, for damage to, or destruction of, the Property, such policy shall include a standard mortgage clause and shall name Lender as mortgagee and/or as an additional loss payee.

In the event of loss, Borrower shall give prompt notice to the insurance carrier and Lender. Lender may make proof of loss if not made promptly by Borrower. Unless Lender and Borrower otherwise agree in writing, any insurance proceeds, whether or not the underlying insurance was required by Lender, shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such insurance proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such insurance proceeds, Lender shall not be required to pay Borrower any interest or earnings on such proceeds. Fees for public adjusters, or other third parties, retained by Borrower shall not be paid out of the insurance proceeds and shall be the sole obligation of Borrower. If the restoration or repair is not economically feasible or Lender's security would be lessened, the insurance proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such insurance proceeds shall be applied in the order provided for in Section 2.

If Borrower abandons the Property, Lender may file, negotiate and settle any available insurance claim and related matters. If Borrower does not respond within 30 days to a notice from Lender that the insurance carrier has offered to settle a claim, then Lender may negotiate and settle the claim. The 30-day period will begin when the notice is given. In either event, or if Lender acquires the Property under Section 22 or otherwise, Borrower hereby assigns to Lender (a) Borrower's rights to any insurance proceeds in an amount not to exceed the amounts unpaid under the Note or this Security Instrument, and (b) any other of Borrower's rights (other than the right to any refund of unearned premiums paid by Borrower) under all insurance policies covering the Property, insofar as such rights are applicable to the coverage of the Property. Lender may use the insurance proceeds either to repair or restore the Property or to pay amounts unpaid under the Note or this Security Instrument, whether or not then due.

6. **Occupancy.** Borrower shall occupy, establish, and use the Property as Borrower's principal residence within 60 days after the execution of this Security Instrument and shall continue to occupy the Property as Borrower's principal residence for at least one year after the

Initials DAV

Exhibit C

date of occupancy, unless Lender otherwise agrees in writing, which consent shall not be unreasonably withheld, or unless extenuating circumstances exist which are beyond Borrower's control.

7. **Preservation, Maintenance and Protection of the Property; Inspections.** Borrower shall not destroy, damage or impair the Property, allow the Property to deteriorate or commit waste on the Property. Whether or not Borrower is residing in the Property, Borrower shall maintain the Property in order to prevent the Property from deteriorating or decreasing in value due to its condition. Unless it is determined pursuant to Section 5 that repair or restoration is not economically feasible, Borrower shall promptly repair the Property if damaged to avoid further deterioration or damage. If insurance or condemnation proceeds are paid in connection with damage to, or the taking of, the Property, Borrower shall be responsible for repairing or restoring the Property only if Lender has released proceeds for such purposes. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. If the insurance or condemnation proceeds are not sufficient to repair or restore the Property, Borrower is not relieved of Borrower's obligation for the completion of such repair or restoration.

Lender or its agent may make reasonable entries upon and inspections of the Property. If it has reasonable cause, Lender may inspect the interior of the improvements on the Property. Lender shall give Borrower notice at the time of or prior to such an interior inspection specifying such reasonable cause.

8. **Borrower's Loan Application.** Borrower shall be in default if, during the Loan application process, Borrower or any persons or entities acting at the direction of Borrower or with Borrower's knowledge or consent gave materially false, misleading, or inaccurate information or statements to Lender (or failed to provide Lender with material information) in connection with the Loan. Material representations include, but are not limited to, representations concerning Borrower's occupancy of the Property as Borrower's principal residence.

9. **Protection of Lender's Interest in the Property and Rights Under this Security Instrument.** If (a) Borrower fails to perform the covenants and agreements contained in this Security Instrument, (b) there is a legal proceeding that might significantly affect Lender's interest in the Property and/or rights under this Security Instrument (such as a proceeding in bankruptcy, probate, for condemnation or forfeiture, for enforcement of a lien which may attain priority over this Security Instrument or to enforce laws or regulations), or (c) Borrower has abandoned the Property, then Lender may do and pay for whatever is reasonable or appropriate to protect Lender's interest in the Property and rights under this Security Instrument, including protecting and/or assessing the value of the Property, and securing and/or repairing the Property. Lender's actions can include, but are not limited to: (a) paying any sums secured by a lien which has priority over this Security Instrument; (b) appearing in court; and (c) paying reasonable attorneys' fees to protect its interest in the Property and/or rights under this Security Instrument, including its secured position in a bankruptcy proceeding. Securing the Property includes, but is not limited to, entering the Property to make repairs, change locks, replace or board up doors and windows, drain water from pipes, eliminate building or other code violations or dangerous conditions, and have utilities turned on or off. Although Lender may take action under this Section 9, Lender does not have to do so and is not under any duty or obligation to do so. It is agreed that Lender incurs no liability for not taking any or all actions authorized under this Section 9.

Any amounts disbursed by Lender under this Section 9 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

If this Security Instrument is on a leasehold, Borrower shall comply with all the provisions of the lease. If Borrower acquires fee title to the Property, the leasehold and the fee title shall not merge unless Lender agrees to the merger in writing.

**10. Mortgage Insurance.** If Lender required Mortgage Insurance as a condition of making the Loan, Borrower shall pay the premiums required to maintain the Mortgage Insurance in effect. If, for any reason, the Mortgage Insurance coverage required by Lender ceases to be available from the mortgage insurer that previously provided such insurance and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to obtain coverage substantially equivalent to the Mortgage Insurance previously in effect, at a cost substantially equivalent to the cost to Borrower of the Mortgage Insurance previously in effect, from an alternate mortgage insurer selected by Lender. If substantially equivalent Mortgage Insurance coverage is not available, Borrower shall continue to pay to Lender the amount of the separately designated payments that were due when the insurance coverage ceased to be in effect. Lender will accept, use and retain these payments as a non-refundable loss reserve in lieu of Mortgage Insurance. Such loss reserve shall be non-refundable, notwithstanding the fact that the Loan is ultimately paid in full, and Lender shall not be required to pay Borrower any interest or earnings on such loss reserve. Lender can no longer require loss reserve payments if Mortgage Insurance coverage (in the amount and for the period that Lender requires) provided by an insurer selected by Lender again becomes available, is obtained, and Lender requires separately designated payments toward the premiums for Mortgage Insurance. If Lender required Mortgage Insurance as a condition of making the Loan and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to maintain Mortgage Insurance in effect, or to provide a non-refundable loss reserve, until Lender's requirement for Mortgage Insurance ends in accordance with any written agreement between Borrower and Lender providing for such termination or until termination is required by Applicable Law. Nothing in this Section 10 affects Borrower's obligation to pay interest at the rate provided in the Note.

Mortgage Insurance reimburses Lender (or any entity that purchases the Note) for certain losses it may incur if Borrower does not repay the Loan as agreed. Borrower is not a party to the Mortgage Insurance.

Mortgage insurers evaluate their total risk on all such insurance in force from time to time, and may enter into agreements with other parties that share or modify their risk, or reduce losses. These agreements are on terms and conditions that are satisfactory to the mortgage insurer and the other party (or parties) to these agreements. These agreements may require the mortgage insurer to make payments using any source of funds that the mortgage insurer may have available (which may include funds obtained from Mortgage Insurance premiums).

As a result of these agreements, Lender, any purchaser of the Note, another insurer, any reinsurer, any other entity, or any affiliate of any of the foregoing, may receive (directly or indirectly) amounts that derive from (or might be characterized as) a portion of Borrower's payments for Mortgage Insurance, in exchange for sharing or modifying the mortgage insurer's risk, or reducing losses. If such agreement provides that an affiliate of Lender takes a share of the insurer's risk in exchange for a share of the premiums paid to the insurer, the arrangement is often termed "captive reinsurance." Further:

(a) Any such agreements will not affect the amounts that Borrower has agreed to pay for Mortgage Insurance, or any other terms of the Loan. Such agreements will not increase the amount Borrower will owe for Mortgage Insurance, and they will not entitle Borrower to any refund.

(b) Any such agreements will not affect the rights Borrower has - if any - with respect to the Mortgage Insurance under the Homeowners Protection Act of 1998 or any

Initials: DAK

Exhibit C

other law. These rights may include the right to receive certain disclosures, to request and obtain cancellation of the Mortgage Insurance, to have the Mortgage Insurance terminated automatically, and/or to receive a refund of any Mortgage Insurance premiums that were unearned at the time of such cancellation or termination.

11. Assignment of Miscellaneous Proceeds; Forfeiture. All Miscellaneous Proceeds are hereby assigned to and shall be paid to Lender.

If the Property is damaged, such Miscellaneous Proceeds shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such Miscellaneous Proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may pay for the repairs and restoration in a single disbursement or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such Miscellaneous Proceeds, Lender shall not be required to pay Borrower any interest or earnings on such Miscellaneous Proceeds. If the restoration or repair is not economically feasible or Lender's security would be lessened, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such Miscellaneous Proceeds shall be applied in the order provided for in Section 2.

In the event of a total taking, destruction, or loss in value of the Property, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is equal to or greater than the amount of the sums secured by this Security Instrument immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the sums secured by this Security Instrument shall be reduced by the amount of the Miscellaneous Proceeds multiplied by the following fraction: (a) the total amount of the sums secured immediately before the partial taking, destruction, or loss in value divided by (b) the fair market value of the Property immediately before the partial taking, destruction, or loss in value. Any balance shall be paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is less than the amount of the sums secured immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument whether or not the sums are then due.

If the Property is abandoned by Borrower, or if, after notice by Lender to Borrower that the Opposing Party (as defined in the next sentence) offers to make an award to settle a claim for damages, Borrower fails to respond to Lender within 30 days after the date the notice is given, Lender is authorized to collect and apply the Miscellaneous Proceeds either to restoration or repair of the Property or to the sums secured by this Security Instrument, whether or not then due. "Opposing Party" means the third party that owes Borrower Miscellaneous Proceeds or the party against whom Borrower has a right of action in regard to Miscellaneous Proceeds.

Borrower shall be in default if any action or proceeding, whether civil or criminal, is begun that, in Lender's judgment, could result in forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. Borrower can cure such a default and, if acceleration has occurred, reinstate as provided in Section 19, by causing the action or proceeding to be dismissed with a ruling that, in Lender's judgment, precludes forfeiture of the Property or other material impairment of Lender's interest in the

Initials: DAK

Exhibit C

Property or rights under this Security Instrument. The proceeds of any award or claim for damages that are attributable to the impairment of Lender's interest in the Property are hereby assigned and shall be paid to Lender.

All Miscellaneous Proceeds that are not applied to restoration or repair of the Property shall be applied in the order provided for in Section 2.

**12. Borrower Not Released; Forbearance By Lender Not a Waiver.** Extension of the time for payment or modification of amortization of the sums secured by this Security Instrument granted by Lender to Borrower or any Successor in Interest of Borrower shall not operate to release the liability of Borrower or any Successors in Interest of Borrower. Lender shall not be required to commence proceedings against any Successor in Interest of Borrower or to refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original Borrower or any Successors in Interest of Borrower. Any forbearance by Lender in exercising any right or remedy including, without limitation, Lender's acceptance of payments from third persons, entities or Successors in Interest of Borrower or in amounts less than the amount then due, shall not be a waiver of or preclude the exercise of any right or remedy.

**13. Joint and Several Liability; Co-signers; Successors and Assigns Bound.** Borrower covenants and agrees that Borrower's obligations and liability shall be joint and several. However, any Borrower who co-signs this Security Instrument but does not execute the Note (a "co-signer"): (a) is co-signing this Security Instrument only to mortgage, grant and convey the co-signer's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower can agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without the co-signer's consent.

Subject to the provisions of Section 18, any Successor in Interest of Borrower who assumes Borrower's obligations under this Security Instrument in writing, and is approved by Lender, shall obtain all of Borrower's rights and benefits under this Security Instrument. Borrower shall not be released from Borrower's obligations and liability under this Security Instrument unless Lender agrees to such release in writing. The covenants and agreements of this Security Instrument shall bind (except as provided in Section 20) and benefit the successors and assigns of Lender.

**14. Loan Charges.** Lender may charge Borrower fees for services performed in connection with Borrower's default, for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument, including, but not limited to, attorneys' fees, property inspection and valuation fees. In regard to any other fees, the absence of express authority in this Security Instrument to charge a specific fee to Borrower shall not be construed as a prohibition on the charging of such fee. Lender may not charge fees that are expressly prohibited by this Security Instrument or by Applicable Law.

If the Loan is subject to a law which sets maximum loan charges, and that law is finally interpreted so that the interest or other loan charges collected or to be collected in connection with the Loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from Borrower which exceeded permitted limits will be refunded to Borrower. Lender may choose to make this refund by reducing the principal owed under the Note or by making a direct payment to Borrower. If a refund reduces principal, the reduction will be treated as a partial prepayment without any prepayment charge (whether or not a prepayment charge is provided for under the Note). Borrower's acceptance of any such refund made by direct payment to Borrower will constitute a waiver of any right of action Borrower might have arising out of such overcharge.

**15. Notices.** All notices given by Borrower or Lender in connection with this Security Instrument must be in writing. Any notice to Borrower in connection with this Security

Initials: DALK

Exhibit C

Instrument shall be deemed to have been given to Borrower when mailed by first class mail or when actually delivered to Borrower's notice address if sent by other means. Notice to any one Borrower shall constitute notice to all Borrowers unless Applicable Law expressly requires otherwise. The notice address shall be the Property Address unless Borrower has designated a substitute notice address by notice to Lender. Borrower shall promptly notify Lender of Borrower's change of address. If Lender specifies a procedure for reporting Borrower's change of address, then Borrower shall only report a change of address through that specified procedure. There may be only one designated notice address under this Security Instrument at any one time. Any notice to Lender shall be given by delivering it or by mailing it by first class mail to Lender's address stated herein unless Lender has designated another address by notice to Borrower. Any notice in connection with this Security Instrument shall not be deemed to have been given to Lender until actually received by Lender. If any notice required by this Security Instrument is also required under Applicable Law, the Applicable Law requirement will satisfy the corresponding requirement under this Security Instrument.

16. **Governing Law; Severability; Rules of Construction.** This Security Instrument shall be governed by federal law and the law of the jurisdiction in which the Property is located. All rights and obligations contained in this Security Instrument are subject to any requirements and limitations of Applicable Law. Applicable Law might explicitly or implicitly allow the parties to agree by contract or it might be silent, but such silence shall not be construed as a prohibition against agreement by contract. In the event that any provision or clause of this Security Instrument or the Note conflicts with Applicable Law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision.

As used in this Security Instrument: (a) words of the masculine gender shall mean and include corresponding neuter words or words of the feminine gender; (b) words in the singular shall mean and include the plural and vice versa; and (c) the word "may" gives sole discretion without any obligation to take any action.

17. **Borrower's Copy.** Borrower shall be given one copy of the Note and of this Security Instrument.

18. **Transfer of the Property or a Beneficial Interest in Borrower.** As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

19. **Borrower's Right to Reinstate After Acceleration.** If Borrower meets certain conditions, Borrower shall have the right to have enforcement of this Security Instrument discontinued at any time prior to the earliest of: (a) five days before sale of the Property pursuant to any power of sale contained in this Security Instrument; (b) such other period as Applicable Law might specify for the termination of Borrower's right to reinstate; or (c) entry of a judgment enforcing this Security Instrument. Those conditions are that Borrower: (a) pays Lender all sums

Initials: _DAIC_

Exhibit C

which then would be due under this Security Instrument and the Note as if no acceleration had occurred; (b) cures any default of any other covenants or agreements; (c) pays all expenses incurred in enforcing this Security Instrument, including, but not limited to, reasonable attorneys' fees, property inspection and valuation fees, and other fees incurred for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument; and (d) takes such action as Lender may reasonably require to assure that Lender's interest in the Property and rights under this Security Instrument, and Borrower's obligation to pay the sums secured by this Security Instrument, shall continue unchanged. Lender may require that Borrower pay such reinstatement sums and expenses in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality or entity; or (d) Electronic Funds Transfer. Upon reinstatement by Borrower, this Security Instrument and obligations secured hereby shall remain fully effective as if no acceleration had occurred. However, this right to reinstate shall not apply in the case of acceleration under Section 18.

**20. Sale of Note; Change of Loan Servicer; Notice of Grievance.** The Note or a partial interest in the Note (together with this Security Instrument) can be sold one or more times without prior notice to Borrower. A sale might result in a change in the entity (known as the "Loan Servicer") that collects Periodic Payments due under the Note and this Security Instrument and performs other mortgage loan servicing obligations under the Note, this Security Instrument, and Applicable Law. There also might be one or more changes of the Loan Servicer unrelated to a sale of the Note. If there is a change of the Loan Servicer, Borrower will be given written notice of the change which will state the name and address of the new Loan Servicer, the address to which payments should be made and any other information RESPA requires in connection with a notice of transfer of servicing. If the Note is sold and thereafter the Loan is serviced by a Loan Servicer other than the purchaser of the Note, the mortgage loan servicing obligations to Borrower will remain with the Loan Servicer or be transferred to a successor Loan Servicer and are not assumed by the Note purchaser unless otherwise provided by the Note purchaser.

Neither Borrower nor Lender may commence, join, or be joined to any judicial action (as either an individual litigant or the member of a class) that arises from the other party's actions pursuant to this Security Instrument or that alleges that the other party has breached any provision of, or any duty owed by reason of, this Security Instrument, until such Borrower or Lender has notified the other party (with such notice given in compliance with the requirements of Section 15) of such alleged breach and afforded the other party hereto a reasonable period after the giving of such notice to take corrective action. If Applicable Law provides a time period which must elapse before certain action can be taken, that time period will be deemed to be reasonable for purposes of this paragraph. The notice of acceleration and opportunity to cure given to Borrower pursuant to Section 22 and the notice of acceleration given to Borrower pursuant to Section 18 shall be deemed to satisfy the notice and opportunity to take corrective action provisions of this Section 20.

**21. Hazardous Substances.** As used in this Section 21: (a) "Hazardous Substances" are those substances defined as toxic or hazardous substances, pollutants, or wastes by Environmental Law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials; (b) "Environmental Law" means federal laws and laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection; (c) "Environmental Cleanup" includes any response action, remedial action, or removal action, as defined in Environmental Law; and (d) an "Environmental Condition" means a condition that can cause, contribute to, or otherwise trigger an Environmental Cleanup.

Exhibit C

Borrower shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances, or threaten to release any Hazardous Substances, on or in the Property. Borrower shall not do, nor allow anyone else to do, anything affecting the Property (a) that is in violation of any Environmental Law, (b) which creates an Environmental Condition, or (c) which, due to the presence, use, or release of a Hazardous Substance, creates a condition that adversely affects the value of the Property. The preceding two sentences shall not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property (including, but not limited to, hazardous substances in consumer products).

Borrower shall promptly give Lender written notice of (a) any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which Borrower has actual knowledge, (b) any Environmental Condition, including but not limited to, any spilling, leaking, discharge, release or threat of release of any Hazardous Substance, and (c) any condition caused by the presence, use or release of a Hazardous Substance which adversely affects the value of the Property. If Borrower learns, or is notified by any governmental or regulatory authority, or any private party, that any removal or other remediation of any Hazardous Substance affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with Environmental Law. Nothing herein shall create any obligation on Lender for an Environmental Cleanup.

NON-UNIFORM COVENANTS. Borrower and Lender further covenant and agree as follows:

**22. Acceleration; Remedies. Lender shall give notice to Borrower prior to acceleration following Borrower's breach of any covenant or agreement in this Security Instrument (but not prior to acceleration under Section 18 unless Applicable Law provides otherwise). Lender shall notify Borrower of, among other things: (a) the default; (b) the action required to cure the default; (c) when the default must be cured; and (d) that failure to cure the default as specified may result in acceleration of the sums secured by this Security Instrument, foreclosure by judicial proceeding and sale of the Property. Lender shall further inform Borrower of the right to reinstate after acceleration and the right to assert in the foreclosure proceeding the non-existence of a default or any other defense of Borrower to acceleration and foreclosure. If the default is not cured as specified, Lender at its option may require immediate payment in full of all sums secured by this Security Instrument without further demand and may foreclose this Security Instrument by judicial proceeding. Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this Section 22, including, but not limited to, attorneys' fees and costs of title evidence to the extent permitted by Applicable Law.**

**23. Release.** Upon payment of all sums secured by this Security Instrument, this Security Instrument and the estate conveyed shall terminate and become void. After such occurrence, Lender shall discharge and satisfy this Security Instrument. Borrower shall pay any recordation costs. Lender may charge Borrower a fee for releasing this Security Instrument, but only if the fee is paid to a third party for services rendered and the charging of the fee is permitted under Applicable Law.

**24. Waivers.** Borrower, to the extent permitted by Applicable Law, waives and releases any error or defects in proceedings to enforce this Security Instrument, and hereby waives the benefit of any present or future laws providing for stay of execution, extension of time, exemption from attachment, levy and sale, and homestead exemption.

Initials: DAK

25. **Reinstatement Period.** Borrower's time to reinstate provided in Section 19 shall extend to one hour prior to the commencement of bidding at a sheriff's sale or other sale pursuant to this Security Instrument.

26. **Purchase Money Mortgage.** If any of the debt secured by this Security Instrument is lent to Borrower to acquire title to the Property, this Security Instrument shall be a purchase money mortgage.

27. **Interest Rate After Judgment.** Borrower agrees that the interest rate payable after a judgment is entered on the Note or in an action of mortgage foreclosure shall be the rate payable from time to time under the Note.

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Security Instrument and in any Rider executed by Borrower and recorded with it.

Witnesses:

_____          _____ (Seal)
                                                  DALE A KAYMARK                 -Borrower

_____          _____ (Seal)
                                                                                 -Borrower

_____ (Seal)           _____ (Seal)
                        -Borrower                                                 -Borrower

_____ (Seal)           _____ (Seal)
                        -Borrower                                                 -Borrower

_____ (Seal)           _____ (Seal)
                        -Borrower                                                 -Borrower

Exhibit C

COMMONWEALTH OF PENNSYLVANIA,   Allegheny   County  ss:

On this, the  26  day of  December  2006 , before me, the undersigned officer, personally appeared  Dale A. Kaymark

known to me (or satisfactorily proven) to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged that he/she/they executed the same for the purposes herein contained.

IN WITNESS WHEREOF, I hereunto set my hand and official seal.
My Commission Expires:

COMMONWEALTH OF PENNSYLVANIA
Notarial Seal
Paul E. Hytla, Notary Public
Moon Twp., Allegheny County
My Commission Expires Oct. 16, 2008
Member, Pennsylvania Association of Notaries

Notary Public
Title of Officer

Certificate of Residence
I, ETHAN BYRD  Joy Hill , do hereby certify that the correct address of the within named Mortgagee is  1201 MAIN STREET, 7TH FLOOR, DALLAS, TX 752020000
Witness my hand this   26TH   day of DECEMBER, 2006 .

Agent of Mortgagee

Initials: DDK

Form 3039 1/01
CVPA 12/26/06 8:09 AM 6299353026

-8(PA) (0500)

Exhibit C