## UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF PENNSYLVANIA

------------------------------------------------------------

DALE KAYMARK, Individually and on behalf
of other similarly situated current and former
homeowners in Pennsylvania,

               Plaintiff,

v.

BANK OF AMERICA, N.A. and UDREN
LAW OFFICES, P.C.,

               Defendants.

NO.  2:13:cv-00419-CRE

------------------------------------------------------------

## MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT UDREN LAW OFFICES, P.C.'S MOTION TO DISMISS THE COMPLAINT PURSUANT TO RULE 12(b)(6) OF THE FEDERAL RULES OF CIVIL PROCEDURE

Defendant Udren Law Offices, P.C. ("Udren"), by its undersigned counsel, respectfully

submits this Memorandum of Law in Support of its Motion to Dismiss the Complaint of

Plaintiff Dale Kaymark ("Kaymark") with prejudice for failure to state a claim upon which

relief may be granted pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.

## I.      PRELIMINARY STATEMENT

In this action, Kaymark attempts to bring suit against a law firm simply for the "crime"

of filing a Foreclosure Complaint seeking damages with which he disagrees.  This is a

continuing effort on behalf of a small segment of our bar to create law where none exists and

make the practice of representing lenders in foreclosure actions so expensive as to be

uneconomical.[1]  What makes this case particularly disturbing is that Kaymark alleges as the

basis of his Fair Debt Collection Practices Act ("FDCPA") and Unfair Trade Practices Act

("UTPCPL") claims against Udren an alleged violation of Section 406 of Pennsylvania's Loan

Interest Protection Act ("LIPA" or "Act 6").  However, not only does the subsection relied

upon (41 P.S. §406) **specifically** apply only to residential mortgage lenders and **not** attorneys,

**Kaymark's mortgage exceeds the maximum "base line" loan amount to qualify as a**

**"residential mortgage" under Act 6.**  Accordingly, the entire claim against Udren is

predicated upon an Act which does not apply to this mortgage.  Whether or not this represents a

lack of investigation into the claim or an attempt to "fit the square peg into the round hole", is

immaterial - - Kaymark is not a residential mortgage debtor under Act 6 and Act 6 therefore is

completely inapplicable to this action.  Even were Section 406 of Act 6 the basis for a viable

claim, it is never the basis for a viable claim as against an attorney, nor has Kaymark even

attempted to satisfy the other elements of such a claim, i.e., that the fees sought in the

Foreclosure Complaint were either contracted for or collected.  This action truly is not based on

a good faith viable legal theory as against Udren.  All Udren did was file a foreclosure

complaint.

　　　　Served with that foreclosure complaint was a Validation Notice and the failure of

Kaymark to allege that he disputed the debt via the FDCPA's validation procedures is a

---

[1] This Court may take judicial notice of the fact that counsel for Kaymark has repeatedly brought actions against foreclosure firms in this district and in the state courts on virtually identical theories - - all of which have been dismissed for failure to state viable theories. *See, Glover v. Udren*, No. GD-11-018015 (CCP Allegheny Co. 2012) (Exhibit "E" hereto); *Glover v. Udren*, 698 F.3d 139 (3d Cir. 2012); *Salvati v. Deutsche Bank Nat. Trust Co.*, 2013 U.S. Dist. LEXIS 46991 (W.D. Pa. 2013); *Johnson v. Phelan Hallinan & Schmieg*, No. GD-12-005395 (CCP. Allegheny Co. 2012).  All of these cases have one thing in common - - the foreclosure law firm defendant is alleged to have done nothing more than file a pleading.  As discussed in greater detail below, while the FDCPA does not exempt the actions of lawyers, the FDCPA is not intended to create a cause of action for the mere filing of pleadings.

separate and independent basis for dismissal of the FDCPA claim.  That foreclosure complaint

(Exhibit "A" hereto) was the subject of an Answer (Exhibit "B" hereto) in which Kaymark

(represented by counsel - - see, Docket, Exhibit "C" hereto) has alleged many of the same

arguments that are alleged in the instant complaint, thus rendering this an impermissible

parallel proceeding as the foreclosure still is active and pending.  Irrespective of that fact,

however, Plaintiff's assertions that the mere filing of a foreclosure complaint against a party

represented by counsel constitutes debt collection activity subject to the FDCPA is simply

wrong.  The law is uniform that where, as here, a party is fully protected by a procedural

mechanism for objecting to a creditor's claim, such as bankruptcy or foreclosure, the FDCPA

does not apply.  Kaymark has had every opportunity, and indeed has availed himself of the

defenses and procedural protections afforded by the Pennsylvania Rules of Civil Procedure in

his foreclosure action.  The mere filing of a pleading under the circumstances is not subject to

the FDCPA as a matter of law.  The UTPCPL claims are equally deficient, as an attorney may

not be sued under that statute as a result of his actions in filing pleadings and because there is

no allegation that Kaymark relied on any statement in the complaint, that Udren collected any

fees from Kaymark or that Kaymark suffered any damages.

Accordingly, this action is seriously deficient both on the law and the facts as against

Udren and should be dismissed with prejudice.

## II.      STANDARDS FOR THIS MOTION

On a motion to dismiss a complaint for failure to state a claim for relief pursuant to Fed.

R. C. P. 12(b)(6), all well-pleaded facts in the Complaint are deemed to be true.  *McNamara v.*

*County Council of Sussex County,* 738 F. Supp. 134, 137 (D. Del.), *aff'd,* 922 F.2d 832 (3d Cir.

1990); *Bethlehem Plaza v. Campbell,* 403 F. Supp. 966, 967 (E.D. Pa. 1975). However,

unsupported conclusions without a factual basis and sweeping conclusions of law cannot be

utilized by a plaintiff to defeat a motion to dismiss. *Schatz v. Rosenberg*, 943 F.2d 485, 489

(4th Cir. 1991), *cert. denied*, 112 S.Ct. 1475 (1992); *Randolph County Federal Savings & Loan*

*Assn. v. Sutliffe*, 775 F. Supp. 1113, 1115-16 (S.D. Ohio 1991). In order to avoid dismissal, a

complaint must contain either direct or inferential allegations respecting all the material

elements to sustain a recovery under some viable legal theory. *Car Carriers, Inc. v. Ford*

*Motor Co.*, 745 F.2d 1101, 1106 (7th Cir. 1984), *cert. denied*, 470 U.S. 1054 (1985); *In re*

*Plywood Antitrust Litigation*, 655 F.2d 627, 641 (5th Cir. 1981) *cert. dismissed*, 462 U.S. 1125

(1983). As stated by the Sixth Circuit:

> [W]e are not holding the pleader to an impossibly high standard;
> we recognize the policies behind Rule 8 and the concept of notice
> pleading. A plaintiff will not be thrown out of court for failing to
> plead facts in support of every arcane element of his claim. But
> when a complaint omits facts that, if they existed, would clearly
> dominate the case, it seems fair to assume that those facts do not
> exist.

*Scheid v. Fanny Farmer Candy Shops, Inc.*, 859 F.2d 434, 437 (6th Cir. 1988). As noted in

*Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007), the pleader must allege sufficient facts as

to each claim such that it is "plausible on its face." *Id.*, 550 U.S. at 530.

In the consideration of a motion to dismiss pursuant to Rule 12(b)(6), the court must

limit itself to facts stated in the Complaint, in documents attached to the Complaint, and

matters of which judicial notice may be taken under Fed. R. Evid. 201. *Kramer v. Time*

*Warner, Inc.*, 937 F.2d 767, 773 (2d Cir. 1991); *Mack v. South Bay Beer Distributors, Inc.*, 798

F.2d 1279, 1282 (9th Cir. 1986); *Commonwealth of Pennsylvania v. Brown*, 373 F.2d 771, 778

(3d Cir. 1967). Judicial notice may be taken of matters of public record without converting a

motion to dismiss to a summary judgment motion. 5A Wright & Miller, Federal Practice and

Procedure. §1364 at p. 479 (1990); *Kramer v. Time Warner, Inc., supra.* 937 F. 2d at 773 (3d

Cir. 1991); *DiNicola v. DiPaolo*, 945 F. Supp. 848, 855 n.2 (W.D. Pa. 1996). Where facts

alleged to be true in the Complaint are contradicted by facts that can be judicially noticed, those

facts (in the Complaint) will not be deemed to be true for the purposes of a Rule 12(b)(6)

motion. 5A Wright & Miller, *Federal Practice and Procedure*, §1363 at p. 464 and n. 38

(1990) (and cases cited therein).

　　　As discussed below, the Complaint as against Udren is without merit.  There are two

claims asserted against Udren.  The first claim (Count II) is an FDCPA claim based on alleged

violations of Section 406 of Pennsylvania's Loan Interest Protection Act ("Act 6").  41 P.S.

§406 fails to state a claim because the mortgage at issue exceeded the "base line" maximum for

coverage under Act 6 and therefore is not a "residential mortgage" under Act 6.  Kaymark is

not a "residential mortgage debtor" and the provisions of Section 406 of Act 6 are not

applicable to him.  The FDCPA claims against Udren, which are <u>entirely</u> based on alleged

violations of Act 6, therefore fail for that reason alone.  Moreover, the particular section under

which the claim arises, 41 P.S. §406 applies only to residential mortgage lenders, not attorneys.

Thus, the FDCPA claim against Udren (Count II) which is predicated on the mere allegations in

a foreclosure complaint that Kaymark's *in rem* obligation under his mortgage included

attorneys fees and costs violated the FDCPA, is wholly without merit.  Moreover, Kaymark

fails to allege that he availed himself of the mandatory dispute procedures under 15 U.S.C.

§1692g, thus barring any FDCPA claim based on alleged misstatements concerning the validity

or amount of the debt.  Finally, recent court opinions have made clear that the intent of the

FDCPA is not to impose liability for positions taken in pleadings in foreclosure cases, where a

party, represented by counsel (as here) has the opportunity to and does take advantage of the

procedural protections provided in the court system.  Count II must therefore be dismissed.

Count III of Kaymark's Complaint essentially reiterates the allegations of Count II, but

attempts to make them state a claim under the UTPCPL.  However, the Pennsylvania Supreme

Court has held that the UTPCPL does not apply to the actions of lawyers in court proceedings,

such as the foreclosure action below.  *See, Beyers v. Richmond*, 594 Pa. 654, 937 A.2d 1082

(2007).  Thus, the UTPCPL claim against Udren fails for that reason alone.  Moreover, the

allegations of deceptive conduct are frivolous in that Kaymark was represented by counsel in

the foreclosure and opposed the foreclosure.  As a matter of law, there was therefore no

"justifiable reliance" on any allegations in the foreclosure complaint, an essential element of a

UTPCPL claim.  *See, Kimmel v. Phelan Hallinan & Schmieg, P.C.,* 847 F.Supp. 2d 753, 771

(E.D.Pa. 2012) ("[t]he Kimmels' conduct following the defendants' alleged wrongful actions

was, in Judge Robreno's trenchant words, 'the opposite of reliance; it's defiance.  After being

(falsely) told that they were liable on the debt, they hired lawyers and fought . . .'"), *citing,*

*Walter v. Palisades Collection, LLC*, 480 F.Supp. 2d 797, 806 (E.D.Pa. 2007).  Finally, there

was absolutely no payment to Udren or any other damages in that there are no allegedly illegal

or improper fees or costs alleged to have been paid by Kaymark.  Rather, the Plaintiff concocts

a meritless "lien theory", arguing that when Kaymark failed to pay the fees and costs sought in

the foreclosure action, "the unauthorized charges were liened against their homes . . ."

Complaint, ¶42.  While creative, this simply is untrue and it has been recently rejected by Judge

Schwab, ruling on this identical theory in *Salvati v. Deutsche Bank,* 2013 U.S. Dist. LEXIS 46991 (W.D.Pa. 2013). Thus, both claims against Udren fail to state viable claims and the Complaint must be dismissed.

## III.   **FACTUAL BACKGROUND**

Because this motion arises under Rule 12(b)(6), the allegations of the Complaint, the documents appended thereto and documents referenced in the Complaint must be accepted as truthful. With respect to the claims against Udren, the inquiry begins with the mortgage itself which is appended as Exhibit "C" to Kaymark's Complaint. That mortgage is in the original principal amount of $245,600.00. *See*, Exhibit "C" to Complaint at p. 3.[2] On September 13, 2012, Udren on behalf of BOA filed a Foreclosure Complaint in the Court of Common Pleas of Allegheny County. *See*, Complaint, ¶15 and Exhibit "A" hereto. The Complaint sought an *in rem* judgment of $230,839.92, consisting of the unpaid principal balance, accumulated interest relating to Kaymark's non-payment of his mortgage for one year, late charges, escrow deficiency and attorneys fee of $1,650.00, title report fees of $325.00 and property inspection fees of $75.00. *See*, Complaint, ¶16 and Exhibit "A" hereto. While paragraph 17 of the Complaint alleges that the Foreclosure Complaint somehow violated the Pennsylvania Rules of Civil Procedure because of "the rule that any documents relied upon must be attached." Pa.R.Civ.P. 1019(i) (Complaint, ¶17), that is a conclusion of law which is not entitled to deference. It also is wrong. Rule 1019(i) of the Pennsylvania Rules of Civil Procedure provides that where a **claim** is based on a writing, the writing must be attached to the

---

[2] As noted below, the base figure for coverage under Act 6 for calendar year 2013 is $234,692.00. The figure for 2012, when the Foreclosure Complaint was filed, was $230,110.00. *See*, Exhibit "D" hereto. Accordingly, the Kaymark mortgage does not qualify as a "residential mortgage" under Act 6. *See*, pp. 9-12, *infra*.

Complaint. The "writing" upon which the Complaint is based is the mortgage, which **is** attached. A party does not have to plead or attach all his evidence to satisfy this rule. *See, Maleski by Taylor v. DP Realty Trust*, 653 A.2d 54, 65 (Pa. Cmwlth. 1994) ("Pennsylvania Rules do not require the pleading of evidence"); *Demsi Uniform and Linen Supply, Inc. v. Gracie Baseball LP*, 2011 Pa. Dist. & Cnty. Dec. LEXIS 594 (CCP. Lackawanna Co. 2011) (at *19) (same).[3] Similarly, Plaintiff alleges that Act 6 prohibits flat rate or percentage based attorneys fee demands in mortgage foreclosure complaints. This too is a conclusion of law and it is wholly unsupported by any jurisprudence in the Commonwealth of Pennsylvania, either state or federal. Rather, the right of the lender to charge attorneys fees in provided in the mortgage itself and more particularly, as set forth in paragraph 14 of the mortgage (Exhibit "C" to Complaint) which provides that "Lender may charge borrower fees for services performed in connection with borrower's default, for the purpose of protecting lenders interests in the property and rights under this Security Instrument, including, but not limited to, attorneys fees, property inspection and valuation fees. In regard to any other fees, the absence of express authority in the Security Instrument to charge a specific fee to borrower shall not be construed as a prohibition on the charging of such fee."

Nonetheless, Kaymark alleges that the mere allegation of *in rem* damages including title report fees, attorneys fees, and property inspection fees violate Act 6 and thus, "overstated" Kaymark's account balance in the Foreclosure Complaint. Complaint, ¶19. That is the sum total of factual allegations as against Udren. Thus, the sole legal basis for a case alleged to

---

[3] Pennsylvania Rule of Civil Procedure 1147 sets forth the requirements for the contents of a complaint in mortgage foreclosure. The Rule provides that the plaintiff must identify the parties to and date of the mortgage, a statement of the place of record of the mortgage and assignments; a description of the land subject to the mortgage. There is no requirement that <u>any</u> document be attached to the complaint.

affect a "numerous" class exceeding 5000 homeowners is that Udren alleged that its client was

owed attorneys fees, property inspection fees and title insurance fees **in a contested**

**Foreclosure Complaint** which remains pending in the Court of Common Pleas of Allegheny

County.  Plaintiff's theory is that he may assert class action allegations against an attorney

whose sole action complained of is the filing of a legal pleading.  For the reasons set forth

below, this is nothing less than an unwarranted and completely unjustified attack on a segment

of our Bar and is wholly without legal support.  What is even worse is that the factual

underpinning of the claim, i.e., that Kaymark is a residential mortgage debtor under Act 6, is

false - - something that easily could have been ascertained prior to the filing of a pleading.

This Complaint should be dismissed with prejudice.

## IV.  THE FDCPA CLAIM AGAINST UDREN (COUNT II) IS WHOLLY WITHOUT MERIT

The purpose of the FDCPA is "to eliminate abusive debt collection practices by debt

collectors, to insure that those debt collectors who refrain from using abusive debt collection

practices are not competitively disadvantaged, and to promote consistent state action to protect

consumers against debt collection abuses." 15 U.S.C. §1692(e); *Gonzalez v. Erskine*, 2008 WL

6822207 (S.D. Fla. 2008) (at *2).  In order to state a claim under the FDCPA, it is essential that

the Plaintiff allege a communication in furtherance of the collection of a debt.  *Trunzo v.*

*CitiMortgage*, 876 F.Supp. 2d. 521, 535 (W.D.Pa. 2012), *citing, Piper v. Portnoff Law*

*Associates, Ltd.,* 396 F.3d 227, 233 (3d Cir. 2005).  *Also see, Gillespie v. Chase Home*

*Financial, LLC,* 2009 U.S. Dist. LEXIS 108837 (N.D. Ind. 2009) (at *11-12); *Porter v.*

*Fairbanks Capital Corp.,* 2003 U.S. Dist. LEXIS 8636 (N.D. Ill. 2003) (at *3).  As discussed in

greater detail below, the prevailing trend in the case law is that a legal pleading in a foreclosure

case does <u>not</u> constitute a communication subject to the FDCPA. *See, Gabriele v. Amer. Home Mortgage Servicing, Inc.,* 2012 U.S. App. LEXIS 24478 (2d Cir. 2012) (at *14, fn.1). Assuming for the purpose of argument that a mere legal pleading may constitute a violation of the FDCPA, however, the claim here fails because (1) there was no Act 6 violation - - the sole alleged basis for the FDCPA claim and (2) there is no allegation that Kaymark contested the debt in response to the Validation Notice he received.

      A.     **Kaymark Is Not A "Residential Mortgage Debtor" Under Act 6 And Udren Is Not A "Residential Mortgage Lender" Under 41 P.S. §406 And Accordingly, The FDCPA Claim Based On Alleged Violations Of Act 6 Are Without Merit:**

Count II of the Complaint asserts a claim against Udren predicated on an alleged violation of the FDCPA. Kaymark alleges that mere <u>allegations</u> of damages in a foreclosure complaint violates 15 U.S.C. §§1692e and 1692f because Pennsylvania's Act 6 prohibits such a demand <u>and</u> the collection of fees prior to the commencement of foreclosure. Of course, this theory is self-contradictory. Since Udren only could have instituted its foreclosure action by the filing of that action, it is clear that the fees were not demanded from Kaymark until after the commencement of the foreclosure action and the service of the Complaint. There is not a **single** case holding that a law firm may not make a demand in a Complaint for the fees and costs of a legal proceeding where the underlying contract permits the collection of attorneys fees, such as Kaymark's mortgage. Simply stated, counsel for Kaymark is making up this theory. Following this logic, any demand in a Complaint for legal fees and costs which will be incurred in the course of a legal proceeding would violate Pennsylvania law and that is a baseless theory.

Leaving aside the illogic of the theory[4] for Act 6 to constitute the basis for an FDCPA claim (and there is no authority that the violation of Act 6 constitutes a per se violation of the FDCPA), the mortgage itself must be subject to Act 6 to confer standing to assert such a claim. In this case, Kaymark's mortgage is not subject to Act 6.  Under Act 6, a "residential mortgage debtor" is defined as a "non-corporate borrower who is obligated to a residential mortgage lender to repay in whole or in part the residential mortgage . . .", and a "residential mortgage" is defined as "an obligation to pay a sum of money in the original bonafide principal amount of the base figure or less, evidenced by a security document and secured by a lien upon real property located within this Commonwealth containing two or fewer residential units . . ." 41 P.S. §101.  The mortgage foreclosure action that is the subject of Kaymark's claims was commenced on September 13, 2012.  Complaint, ¶15.  For 2012, the base figure was $230,110.00.  Pa. Bulletin Doc. No. 11-2111.  This sum increased to $234,692.00 in 2013. Pennsylvania Bulletin Doc. No. 12-2143 (Exhibit "D" hereto).  Plaintiff's mortgage, however, was in the original face amount of $245,600.00.  Complaint, Exhibit "C."  Plaintiff's mortgage therefore exceeded the "base figure" and it is not a residential mortgage under Act 6, nor is Plaintiff a residential mortgage debtor under Act 6.  *See*, 41 P.S. §101 (definitions of "residential mortgage" and "residential mortgage debtor").  The section relied upon by Plaintiff for his FDCPA claim in Count II of the Complaint is 41 P.S. §406, which provides as follows:

§406.  Attorney's fees payable.

---

[4] In addition to the illogical assertion that the mere demand for fees in a Complaint violates Act 6, there is equally no logic to the assertion that Plaintiff ever paid those fees, which is another provision of Act 6.  The foreclosure action still is ongoing and there has been no collection of anything.  Under Judge Schwab's Opinion in *Salvati*, *supra*, the absence of payment is fatal to such a claim.  See, 2013 U.S. Dist. LEXIS 46991 at *29 (no claim under Act 6 against law firm where there is no allegation that Plaintiff paid any of the disputed fees or costs).

> With regard to **residential mortgages**, no **residential mortgage lender** shall contract for or receive attorney's fees from a **residential mortgage debtor** except as follows:
>
> (1)  Reasonable fees for services included in actual settlement costs
>
> (2)  Upon commencement of foreclosure or other legal action with respect to a residential mortgage, attorneys fees which are reasonable and actually incurred by the residential mortgage lender may be charged to the residential mortgage debtor
>
> (3)  Prior to commencement of foreclosure or other legal action attorney's fees which are reasonable and actually incurred not in excess of fifty dollars ($50) provided that no attorney's fees may be charged for legal expenses incurred prior to or during the 30-day notice period provided in Section 403 of this Act.

41 P.S. §406 (emphasis added).

Section 406 only prohibits a **residential mortgage lender** from contracting with or collecting from a **residential mortgage debtor** the enumerated fees set forth in subparts 1, 2 or 3 with respect to a "**residential mortgage**". Because Kaymark's mortgage is not subject to Act 6 in that it exceeds the base figure and is not a "residential mortgage", Kaymark is not a "residential mortgage debtor" who has standing to complain of a violation of this section. In addition, this section applies only to residential mortgage lenders and not attorneys. *Glover v. Udren Law Offices, P.C.* (No. GD-11-018015) (June 13, 2012) (Wettick, J.) (Exhibit "E" hereto).[5]

Accordingly, the FDCPA claim against Udren is utterly frivolous. The mortgage in question is not subject to Act 6 since it exceeds the "base figure" and Kaymark is therefore not

---

[5] Kaymark will surely argue that in an earlier proceeding in the *Glover* case in federal court, the Court permitted a Plaintiff to go forward with a claim predicated under Section 406 on a motion to dismiss. It should be noted that decision was vacated for resolution by Judge Wettick in Allegheny County and Judge Wettick made his ruling in the identical case. Thus, the earlier decision is of no precedential value whatsoever. An appeal from Judge Wettick's decision is currently pending before the Superior Court of Pennsylvania.

a "residential mortgage debtor" with standing to assert the claims that he argues are a *per se* violation of the FDCPA. Moreover, there is no allegation of any contract between Udren and Kaymark nor is there any well pleaded allegation that any fees had been collected in violation of Act 6, even were it to apply. That too is fatal to this claim. *Salvati, supra.* Rather, the claim depends on a wholly meritless assertion that a foreclosure complaint somehow increases a lien on Kaymark's property. There is no support for this theory. The mortgage lien is unchanged. Thirdly, Udren is not a residential mortgage lender. Accordingly, even to the extent that a violation of Pennsylvania's Act 6 constitutes a *per se* claim under the FDCPA (and there is no support for this theory either) the factual underpinnings of the claim are factually incorrect in that Kaymark is not a residential mortgage debtor under the Act 6 statute and his mortgage is not a "residential mortgage." Accordingly, the FDCPA claim should be dismissed for this reason alone.

**B.     A Debt Collector Incurs No Liability When It Complies With the Statutory Validation Notice**

The FDCPA sets forth a detailed procedure for disputing the validity of a debt. *Bleich v. Revenue Maximization Group, Inc.,* 233 F.Supp. 2d 496, 500 (E.D.N.Y. 2002). The consumer is given the immediate opportunity to dispute the debt and upon the making of a request for debt verification, all collection efforts must cease. *Id., citing,* 15 U.S.C. §1692g(a). The debt validation procedure must be clearly communicated to the consumer and courts are loathe to allow debt collectors to vary from or contradict the statutory notification. Indeed, the failure to communicate clearly of the validation procedure forms the basis of many FDCPA lawsuits. *Id.* at 500, and cases cited therein. In this case, Plaintiff acknowledges that he received a Validation Notice with his Complaint. *See,* Exhibit "B" to Complaint at p. 4. There

is no allegation that he thereafter invoked the statutory procedure to dispute a debt.  Where, as

here, a Validation Notice is sent and received, the debt collector can incur no liability as a

matter of law where it has complied with the debt validation procedure set forth in the FDCPA.

*McLaughlin v. Phelan Hallinan & Schmieg*, 2011 U.S. Dist. LEXIS 41175 (W.D.Pa. 2011) (at

*9), *clarified*, 2011 U.S. Dist. LEXIS 146280 (W.D.Pa. 2011) (at *2-3) (unless Plaintiff

follows the statutory procedure, he cannot base an FDCPA claim upon a challenge to the

validity and amount of the debt.).  As noted by the Court in *Bleich*, supra:

> [There is no question that Revenue's letter to plaintiff contained a
> proper Validation Notice.  There is also no question that plaintiff
> chose to ignore the debt validation procedure in favor of filing an
> immediate lawsuit.  Had plaintiff exercised her rights under the
> FDCPA to obtain debt verification, it is entirely likely that
> litigation would have been avoided.  Indeed, this is likely the
> reason Congress chose to include the debt validation procedure in
> the Act.  The specific procedure for debt validation must have
> been intended to avoid FDCPA litigation based solely on the
> debts validity as communicated . . . by the creditor. . . .
>
> Revenue's collection letter was in full accord with the
> requirements of the FDCPA and therefore cannot constitute a
> false or misleading action in violation of the statute. . . . Revenue
> can incur no liability where it has complied with the debt
> validation procedures set forth in the FDCPA - - even if the
> actual debt is not in arrears. *Id.* at 500-501 (emphasis added).

*Accord., McLaughlin, supra; Jang v. A.M. Miller & Associates*, 122 F.3d 480, 483-84 (7th Cir.

1997) (where the required debt validation notice is sent, no FDCPA "false and misleading

collection letter" cause of action is stated); *Taylor v. Midland Credit Mgmt.*, 2008 U.S. Dist.

LEXIS 14328 (at *8) (W.D.MI. 2008) ("where a debt collector has included appropriate

language regarding the FDCPA debt validation procedure, the allegation that the debt is

invalid, standing alone, cannot form the basis of a lawsuit alleging fraudulent or deceptive

practices in connection with the collection of a debt."); *Becker v. Genesis Financial Services,* 2007 U.S. Dist. LEXIS 86152 (at *19) (E.D. Wash. 2007) (following *Bleich* and holding where a proper FDCPA debt validation letter is sent, the allegation that the debt is invalid standing alone cannot form the basis for a lawsuit). In *Lindberg v. Transwoprdl Systems, Inc.,* 846 F.Supp. 175, 179 (D.Conn. 1994), the Court held as follows:

> "[u]nder Section 1692g, the debtor bears the responsibility to notify the debt collector of facts which the debt collector would not otherwise be aware . . . the plaintiff has nowhere alleged that defendant failed to comply with the requirements of Section 1692g. Indeed, the record demonstrates the contrary. . . . Furthermore, the plaintiff has not offered any explanation as to why he did not dispute his debt and demand verification in the manner envisioned by Section 1692g or why defendant should not have assumed that the debt was valid by dint of the plaintiff's failure to respond in a timely fashion to its first communication. . . . On this record, the court can only wonder why the plaintiff has chosen to impose the significant burden of litigation on both the defendant and this court, instead of following the cost-effective procedure provided by the FDCPA specifically designed to facilitate the exchange of information between debt collectors and debtors.".

*Id.*

As was the case in *McLaughlin, Bleich, Becker, Lindbergh* and the other cases cited above, Kaymark was given the opportunity to contest the statement of the debt set forth in the Validation Notice and fails to allege that he has done so. Having failed to avail himself of the statutory procedure for resolving disputes at the Validation Notice stage, Kaymark is barred from commencing suit under the FDCPA for alleged errors concerning the debt in the Complaint.

C.     **The Foreclosure Lawsuit May Not Constitute The Basis For An FDCPA Claim Under The Facts Alleged In The Complaint**

As a general matter, a lawsuit, standing alone, is not grounds for a federal action under the FDCPA. *Gonzalez v. Erskine*, 2008 U.S. Dist. LEXIS 109928 (S.D.Fla. 2008) (at *3 (and cases cited therein). It is proper for a collection law firm to file a Complaint and the Defendant has the right to challenge the claim or seek details about the claim through formal pleadings or discovery. *Id.* Indeed, there is a substantial body of law, emanating from the Federal Trade Commission 1989 commentary stating that "a debt collector's institution of a formal legal action against a consumer (including the filing of a Complaint or service of legal papers by an attorney in connection with a lawsuit to collect a debt) . . . is not a communication in connection with the collection of any debt", (53 F.R. 50097, 50100, 501`01, 50108) and holding that allegations in the Complaint simply are not communications which can support an FDCPA claim. *See, McKnight v. Benitez*, 176 F.Supp. 2d 1301, 1305-06 (M.D. Fla. 2001) (and cases cited therein). Accordingly, no claim should be based upon the mere filing of a Foreclosure Complaint, standing alone.

In a recent decision, the Second Circuit took on directly the issue of whether FDCPA claims may be based upon alleged errors in foreclosure complaints. *See, Gabriele v. American Home Mortgage Servicing, Inc.,* 2012 U.S. App. LEXIS 24478 (2d Cir. November 22, 2012). In *Gabriele*, the Plaintiff brought an FDCPA claim based upon the lender's attorney's pleadings and procedures in a state court foreclosure action. While noting that statements made and actions taken in furtherance of a legal action are not in and of themselves exempt from liability under the FDCPA, the Court held that alleged misstatements in a Foreclosure Complaint and premature attempts to obtain a default judgment did not constitute a violation of

the FDCPA.  The Court noted, in particular, as is the case with this claim, the foreclosure

Defendant (Plaintiff in the FDCPA suit) was represented by counsel and thus, filings, even if

false, would not have misled the least sophisticated consumer, **"particularly represented by**

**counsel."**  As the Second Circuit stated, "within the context of an adversary proceeding in state

court between two represented parties, these allegations simply do not state plausible claims

under the FDCPA."  In so ruling, the Second Circuit went further and noted that the purpose of

the FDCPA was not to provide an alternate remedy when the debt collector has asserted its

client's claim in a legal proceeding, in which the debtor has all of the protections afforded to it

under that statutory scheme.  As declared by the Second Circuit:

> As we have recognized in past decisions, the protective purposes
> of the FDCPA typically are not implicated "when a debtor is
> instead protected by the court system and its officers." *Simmons
> v. Roundup Funding LLC,* 622 F.3d 93, 96 (2d Cir. 2010)
> (holding that inflated proof of claim in bankruptcy court cannot
> form basis of FDCPA action).  In Connecticut, the state
> foreclosure process is highly regulated and court controlled.
> *Derisme v. Hunt Leibert Jacobson, P.C.,* 2012 U.S. Dist. LEXIS
> 101922 (D.Conn. July 23, 2012).  When that is the case, the state
> court's authority to discipline will usually be sufficient to protect
> putative debtors like Gabriele from legitimately abusive or
> harassing litigation conduct.

*Id.* at *14 fn.1.  *Accord: Pellachia v. One West Bank, FSB,* 2013 U.S. Dist. LEXIS (D.Conn.

2013) (at *14) ("Because litigants in state court already enjoy myriad procedural and

substantive protections from fraudulent and deceptive practices, resort to the FDCPA is

unnecessary."); *Cocco v. Bank of Amer. Home Loans,* 2012 U.S. Dist. LEXIS 173663

(N.D.N.Y. 2012) ("Plaintiffs' interest in the property can be (or should have been) protected

through any foreclosure proceeding").

As is the case in Connecticut, Pennsylvania's foreclosure practice is tightly controlled and subject to specific rules under the Pennsylvania Rules of Civil Procedure. See, Pa.R.C.P. 1141-1150; *Delaware Trust Company v. Amrit Lal*, 1997 U.S. Dist. LEXIS 6212 (E.D.Pa. 1997) (at *10) ("in Pennsylvania mortgage foreclosure is governed by the Rules of Civil Procedure, the requirements of which must be strictly followed."); *First Fed. Savings & Loan Association v. Porter*, 408 Pa. 236, 183 A.2d 318, 324 (1962) (same). Kaymark was and is represented in the underlying and pending foreclosure action by competent counsel and has all of the protections of the Pennsylvania Rules of Civil Procedure and the Court's control over attorney conduct. Accordingly, no claim lies under the FDCPA based solely on the allegations of a Complaint in a foreclosure action.

For all three of these reasons, the FDCPA claim asserted against Udren is wholly without merit and should be dismissed.

## V.   KAYMARK'S UPTCPL CLAIMS FAIL TO STATE ANY VIABLE CAUSE OF ACTION

Count III of the Complaint alleges claims arising under the UTPCPL against both Udren and BOA. The claims against Udren are based, solely upon the filing of pleadings in a state court lawsuit. Under the Pennsylvania Supreme Court's ruling in *Beyers v. Richmond, supra*, 937 A.2d at 1091, disciplinary enforcement pursuant to the Pennsylvania Rules of Professional Conduct constitutes the exclusive remedy for alleged attorney misconduct relating to the practice of law. As stated by Chief Justice Cappy in his concurrence in *Beyers*, "[a]s a matter of statutory construction, the Unfair Trade Practices Act and Consumer Protection Law ("UTPCPL"), 73 P.S. §§201-1 *et seq., does not apply to attorneys practicing law.*" *Id.* at 1093. Judge Wettick, in his Opinion dismissing the *Glover* case (Exhibit "E" hereto) held that in

addition to the *Beyers* reasoning, a claim under the UTPCPL against an attorney based upon legal pleadings also is barred because Pennsylvania's Fair Credit Extension Uniformity Act, 73 P.S. §2270.1 *et seq.*, a violation of which is a *per se* violation of the UTPCPL, specifically exempts the acts of an attorney in filing of pleadings or prosecution of a lawsuit from its coverage. Accordingly, such activity must be intended to be excluded from the UPTCPL as well. *See*, Exhibit "E" at pp. 7-11.

Even to the extent that an UTPCPL action could be predicated on a mere legal pleading, which it cannot, it is still incumbent under the private action provisions of the UTPCPL that a plaintiff establish reliance, causation and damages. *Weinberg v. Sun Co. Inc.,* 565 Pa. 612, 615-18, 777 A.2d 442, 446 (2001) ("Nothing in the legislative history suggests that the legislature ever intended statutory language directed against consumer fraud to do away with the traditional common law elements of reliance and causation."); *Williams v. Empire Funding Corp.*, 227 F.R.D. 362, 369-70 (E.D.Pa. 2005) ("Even if an entity violated a Consumer Protection Law such as the Pennsylvania Debt Collection Regulations, such a violation does not automatically entitle an individual to bring a private action under the UTPCPL."). To bring a private cause of action under the UTPCPL, a Plaintiff must show that he justifiably relied on the Defendant's wrongful conduct or representation and that he suffered harm as a result. *Yocca v. Pittsburgh Steelers Sports, Inc.,* 578 Pa. 479, 854 A.2d 425, 438 (2004). Thus, irrespective of the underlying basis for the UTPCPL claim, a private plaintiff must allege that he suffered an ascertainable loss <u>as a result</u> of the defendant's prohibited action; this causation element requiring justifiable reliance by the Plaintiff. *Schwartz v. Rockey*, 593 Pa. 536, 557, 932 A.2d 885, 898 (2007). *Also see, Cave v. Saxon Mortgage Servicing,* 2012 U.S. Dist.

LEXIS 176381 (E.D.Pa. 2012) (at *25) (mortgage servicer not liable under the UTPCPL because Complaint "fails to adequately allege justifiable reliance and ascertainable loss as required to state a claim under the UTPCPL.").

  The Complaint does not even <u>attempt</u> to allege these essential elements of a private UTPCPL claim.  Kaymark never relied on the allegations in the Foreclosure Complaint.  To the contrary, he hired counsel and contested the foreclosure.  *See, Kimmel v. Phelan Hallinan & Schmieg, supra,* 847 F.Supp. 2d at 771.  *Walter v. Palisades Collection, LLC, supra*, 480 F.Supp. 2d at 806 (both holding that there is no satisfaction of the "reliance" element when a party engages counsel to challenge the assertion that a debt is owed).  Kaymark does not allege that he paid a dime to Udren - - indeed the foreclosure case still is pending.  Absent payment, the "damage" element of a UTPCPL claim is not satisfied.  *See Salvati v. Deutsche Bank, supra* 2013 U.S. Dist. LEXIS 46991 at *33-34 (no satisfaction of "ascertainable loss" claim against law firm in virtually identical case where plaintiff made no payment to law firm).  The claims under the UTPCPL are therefore without merit and should be dismissed.

## VI.    **CONCLUSION**

For the reasons set forth herein, it is respectfully submitted that Defendant Udren Law Offices, P.C.'s Motion to Dismiss the Complaint be granted in its entirety.

Respectfully submitted,

WILENTZ GOLDMAN & SPITZER, P.A.

By:  */s/ Jonathan J. Bart*
Daniel S. Bernheim, 3d, Esquire
Jonathan J. Bart, Esquire
Attorneys for Defendant,
Udren Law Offices, P.C

Dated:  April 10, 2013

**CERTIFICATE OF SERVICE**

I, JONATHAN J. BART, certify that on April 10, 2013, I caused a true and correct copy of the foregoing Motion to Dismiss the Complaint to be served in accordance with the electronic notification system upon the following:

**Emily S. Gomez, Esquire**
**Law Office of Emily Gomez, LLC**
**239 Fourth Avenue**
**Suite 1602**
**Pittsburgh, PA 15222**

**Michael P. Malakoff, Esquire**
**437 Grant Street**
**Suite 200, The Frick Bldg.**
**Pittsburgh, PA 15219**

**Thomas L. Allen, Esquire**
**Nellie E. Hestin, Esquire**
**Reed Smith**
**Reed Smith Centre**
**225 Fifth Avenue, Suite 1200**
**Pittsburgh, PA 15222**

WILENTZ GOLDMAN & SPITZER, P.A.

By: /s/ Jonathan J. Bart
　　　Jonathan J. Bart, Esquire
　　　Attorney for Defendant,
　　　Udren Law Offices, P.C.

#6819609.1(148845.009)