## UNITED STATES DISTRICT COURT FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| DALE A. KAYMARK, individually and on behalf of other similarly situated current and former homeowners in Pennsylvania,<br><br>Plaintiffs,<br><br>v.<br><br>BANK OF AMERICA, N.A. and UDREN LAW OFFICES, P.C.<br><br>Defendants. | Civil Action #2:13-cv-00419-CRE |

## AMENDED COMPLAINT

Dale Kaymark ("Mr. Kaymark") brings this class action pursuant to the Fair Credit Extension Uniformity Act ("FCEUA"), 73 P.S. §2270.1, *et seq.*, the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. §1692, *et seq.*, the Unfair Trade Practices and Consumer Protection Law ("UTPCPL"), 73 P.S. §201-1, *et seq.*, and for breach of contract on behalf of himself and all others similarly situated, and makes this his Amended Class Action Complaint ("Amended Complaint") against Bank of America, N.A. ("BOA") and Udren Law Offices, P.C. ("Udren") ( collectively "Defendants").  Mr. Kaymark alleges as follows.

### I.   THE PARTIES

1.   Plaintiff, Dale Kaymark, is a natural person residing at 108 Economy Grade Road, Coraopolis, Pennsylvania.  He is a consumer as defined by §1692a(3) of the FDCPA.  Mr. Kaymark brings this action on his own behalf and on behalf of the putative class defined herein.

2.   Defendant Bank of America, N.A., is a national bank with its principal place of business at 450 American Way, Simi Valley, California.  BOA is the holder of Mr. Kaymark's Mortgage.

3.  Defendant, Udren Law Offices, P.C., is a professional corporation with a law office located at 123 South Broad Street, Suite 2080, Philadelphia, Pennsylvania.  Udren is a debt collector as defined by the FDCPA, 15 U.S.C. §1692a(6).

**II.   FACTUAL ALLEGATIONS**

   ***A.  Several Years After Refinancing His Home, Mr. Kaymark Falls on Hard Times***

4.  In December 2006, Mr. Kaymark refinanced his home, located at 108 Economy Grade Road, Coraopolis Pennsylvania (the "home"), to consolidate his finances and pay off a few debts.   To this end, he executed a Note for $245,600.00.   In consideration for the funds to refinance, Mr. Kaymark granted a Mortgage to lender Bank of America, N.A.

5.  In June 2011, after suffering a steep drop in income due to lower customer demand for his truck driving services, Mr. Kaymark was unable to maintain his monthly mortgage payments.

6.  Despite his best efforts to attract more business, Mr. Kaymark has since been unable to replace his lost income and catch-up on his arrearages.

   ***B.  BOA Sends Mr. Kaymark a Defective Act 91 Notice Containing False and Misleading Information***

7.  On or about August 1, 2011, BOA sent Mr. Kaymark a document that purported to be an Act 91 Notice.  See Exhibit A, attached hereto.

8.  Under the terms of the Housing Finance Agency Law ("Act 91"), 35 P.S. §1680.403c, mortgage holders considering foreclosure are required to send homeowners a notice meeting specific statutory requirements as a prerequisite to initiating any legal action.

9.  These statutory notification requirements include, *inter alia*, that the homeowner receive an accurate, itemized breakdown of the total amount past due as of the date of the notice; that the homeowner be informed that (s)he is entitled to thirty-three (33) days to have a face-to-face

meeting with a consumer credit counseling agency; and that the homeowner be made aware (s)he can apply for financial assistance under the state-funded Homeowner's Emergency Mortgage Assistance Program ("HEMAP").

10. The Act 91 Notice that BOA sent Mr. Kaymark failed to satisfy the Act 91 requirements in two important respects.  First, BOA's Notice misrepresented the outstanding amount due and owing.  A true Act 91 Notice must provide an accurate default amount due **as of the date of mailing**, to enable the homeowner to identify the default or delinquency.

11. As of the date of mailing, Mr. Kaymark was two months in arrears on his Mortgage payments.  BOA's Notice, however, attempted to collect three months' worth of payments.  In a clever bid to conceal the attempt to collect a month not in arrears, BOA indicated an amount due and owing of $4,599.98 for July 2011, in contrast to an amount due and owing of $2,306.94 for June 2011.  See Exhibit A.  This attempt to collect an amount not due and owing violated several provisions of the FCEUA, 73 P.S. §2270, *et seq*., which broadly prohibits unfair or deceptive debt collection acts or practices by creditors.

12. Second, BOA's Notice misrepresented the amount of time Mr. Kaymark had to meet with a consumer credit counseling agency.  BOA informed Mr. Kaymark that he had thirty (30) days to meet with a consumer credit counseling agency, opposed to the thirty-three (33) days he was entitled to by the statute.  See Act 91, §1680.403c.

13. To add insult to injury, BOA also threatened to initiate legal action if Mr. Kaymark did not pay the inaccurate amount claimed to be owed within thirty (30) days.  See Exhibit A.  As noted *supra*, no legal action may be initiated unless and until: (1) the mortgagee sends the homeowner a notice meeting the statutory requirements of Act 91; and, (2) at least thirty-three (33) days pass without the homeowner applying for financial assistance from HEMAP.  If a

homeowner does apply for assistance through HEMAP, the lender will be unable to initiate any legal action for an even longer period, lasting at least sixty (60) days.

14. Because BOA did not send Mr. Kaymark a Notice complying with the provisions of Act 91 and because thirty-three (33) days had not elapsed, BOA's threat to initiate legal action could not lawfully be taken.   This threat constituted a separate violation of the FCEUA, §2270.4(b)(5)(v).

### C.  BOA and Udren Filed a Foreclosure Complaint Containing False and Misleading Information and Demand Illegal Fees

15. On September 13, 2012, BOA filed a Verified Foreclosure Complaint against Mr. Kaymark in Allegheny County, Pennsylvania through its attorney, Udren.   See Exhibit B, attached hereto.  BOA verified the Foreclosure Complaint on August 28, 2012.

16. The Foreclosure Complaint, ¶6, stated that as of the pre-foreclosure date of July 12, 2012, a total of $230,839.92, divided into several categories, was due and owing.

| | |
|---|---|
| Unpaid Principal Balance | $213,224.26 |
| Accumulated      Interest      (07/01/2011-07/12/2012) | $13,452.47 |
| Accumulated Late Charges | $177.74 |
| Escrow Deficit/(Reserve) | $1,935.45 |
| **Title Report** | **$325.00** |
| **Attorney Fees** | **$1,650.00** |
| **Property Inspection** | **$75.00** |
| GRAND TOTAL | $230,839.92 |

The bolded amounts are the complained about foreclosure fees and costs.  Furthermore, the attorneys' fees of $1,650.00 and the foreclosure costs, as demanded, were not due or owning as of July 12, 2012.

17. In addition, the Foreclosure Complaint failed to provide any loan contract documentation that the demanded fixed expenses and fees were authorized by any agreement between the

parties or were incurred, despite the Rule that any such documents relied upon must be attached. See Pa.R.Civ.P. 1019(i).  No such documentation exists.  In addition, it is believed, and therefore averred, that BOA never incurred charges for the claimed professional services as of July 12, 2012.

18. With respect to attorneys' fees, the Foreclosure Complaint demanded a flat amount of $1,650.00, $325.00 for a title report, and $75.00 for a property inspection.  Not only are these sums not alleged to reflect work Udren performed, but there is no indication that BOA ever paid them and, if it did, when.  In accord with the loan contracts, only reasonable fees, actually incurred may be recovered.

19. For these reasons, Mr. Kaymark's current account balance (payoff amount) was falsely inflated upon the filing of the Foreclosure Complaint.  Currently, it reflects paid (or liened) and unpaid foreclosure-related fees and legal expenses.  The lien wrongly caused a diminution in the value of Mr. Kaymark's property.  Mr. Kaymark has suffered deprivation of property equal to the charges improperly liened against, and encumbering, his property.

20. Equally surprising, homeowners and BOA signed mortgages that provide, as to the allocation of monthly payments, that:

> **2. Application of Payments or Proceeds**.  Except as otherwise described in this Section 2, all payments accepted and applied by Lender shall be applied in the following order of priority: (a) interest due under the Note; (b) principal due under the Note; (c) amounts due under Section 3.  Such payments shall be applied to each Periodic Payments in the order in which it became due.  Any remaining amounts shall be applied first to late charges, second to any other amounts due under this Security Instrument, and then to reduce the principal balance on the Note.

See Exhibit C, attached hereto.  The Mortgage continued:

> If Lender receives a payment from Borrower for a delinquent Periodic Payment which includes a sufficient amount to pay any

> late charge due, the payment any be applied to the delinquent payment and the late charge.  If more than one Periodic Payment is outstanding, Lender may apply any payment received from Borrower to the repayment of the Periodic Payment if, and to the extent that, each payment can be paid in full.  To the extent that any excess exists after the payment is applied to the full payment of one or more Periodic Payments, such excess may be applied to any late charges due.  Voluntary prepayments shall be applied first to any prepayment charges and then as described in the Note.
>
> Any application of payments, insurance proceeds, or Miscellaneous Proceeds to principal due under the Note shall not extend or postpone the due date, or change the amount, of the Periodic Payments.

<u>Id</u>.

21. BOA, however, in its Act 91 Notice, purports to unilaterally alter its own Mortgage with respect to how homeowners' monthly payments would be allocated.  <u>See</u> Exhibit A, p. 2, which provides:

> How we post your payments: All accepted payments of principal and interest will be applied to the longest outstanding installment due, unless otherwise expressly prohibited or limited by law.  If you submit an amount in addition to your scheduled monthly amount, we will apply your payments as follows: (i) to outstanding monthly payments of principal and interest, (ii) escrow deficiencies, (iii) late charges and other amounts you owe in connection with your loan and (iv) to reduce the outstanding principal balance of your loan.  Please specify if you want an additional amount applied to future payments, rather than principal reduction.

## III.   <u>CLASS ALLEGATIONS</u>

22. The class consists of all former or current homeowners ("Homeowners") who obtained financing secured by a first mortgage on residential property located within the Commonwealth of Pennsylvania, where Defendant BOA, within six (6) years of the filing of the original Complaint, sent an Act 91 Notice and where a foreclosure complaint was subsequently filed.  The class also includes Homeowners that:

(1) received an Act 91 Notice that failed to accurately contain "an itemized breakdown of the total amount past due" (see Act 91, §1680.403c);

(2) received an Act 91 Notice that containing a thirty (30) day time period to arrange a meeting with a consumer credit counseling agency to attempt to resolve the delinquency or default by restructuring the loan payment schedule or otherwise (see Act 91, §1680.403c);

(3) were charged and/or liened foreclosure fees and costs in excess of fifty dollars during a time proceeding the filing of the foreclosure action; and/or

(4) were charged and/or liened foreclosure fees and costs in fixed amounts not authorized.

A sub-class exists where Udren caused a foreclosure complaint to be filed on behalf of BOA within one year of the filing of the original Complaint.

### A.  Numerosity

23. The class is so numerous that it is impracticable to bring all Homeowners before the Court.  The exact number of Homeowners is unknown, but is believed to be over five thousand (5,000).  The exact number can be determined from Udren's records.

### B.  Predominance and Commonality

24. There are questions of law and fact that are common to the class and which predominate over any issues affecting only individual members.  See Fed.R.Civ.P. 23(b)(3).  Without limitation, the focus of the litigation will be Defendants' uniform collection conduct and procedures, including its standardized billing practices with respect to its Pennsylvania foreclosure cases; whether Defendants' practices violate Act 91; whether Defendants' practices violate the UTPCPL; whether Defendants' practices violate the FCEUA; and whether Defendants' practices violate the FDCPA.

### C.  Typicality

25. Mr. Kaymark's claims are identical, or at least typical, to the class claims.  Mr. Kaymark and the class of Homeowners have sustained virtually identical types of damages, have been subjected to identical illegal foreclosure-related collection attempts and their claims are based on identical statutory theories.  Damages can be mechanically and mathematically determined from business records maintained by Defendants.  See Fed.R.Civ.P. 23(a)(3).

### D.  Adequacy of Representation

26. Mr. Kaymark is an adequate class representative because his interests coincide with, and are not antagonistic to, the interests of the class.  Furthermore, class counsel is competent and experienced in such litigation.  See Fed.R.Civ.P. 23(a)(4).

### E.  Superiority

27. A class action is superior to other available methods for the fair and efficient adjudication of this controversy.  Fed.R.Civ.P. 23(b)(3).  The damages sought by each member are such that individual prosecution would prove burdensome and expensive, given the complex and extensive litigation necessitated by Defendants' conduct.  It would be virtually impossible for members of the class to individually redress the wrongs done to them in an economic and effective manner. Many class members are not even aware they have been harmed.  Furthermore, individualized litigation presents an extra burden on the courts, holds potential for inconsistent or contradictory judgments, and increases the delay and expense to all parties and to the court system.  By contrast, the class action device will result in substantial benefits to the litigants and the Court by allowing the Court to resolve numerous individual claims based upon proof of the facts in just one case.  The answer to one question will answer the same question for the class of Homeowners.

## COUNT 1 – FCEUA

### (Bank of America, N.A.)

28. The preceding paragraphs are incorporated by reference.

29. This Count is brought against BOA as a creditor under the FCEUA, §2270.4(b).   The FCEUA prohibits, *inter alia*, creditors from using "any false, deceptive or misleading representation or means in connection with the collection of any debt," [FCEUA, §2270.4(b)(5)] or any "unfair or unconscionable means to collect or attempt to collect any debt," [FCEUA, §2270.4(b)(6)].

30. BOA's actions violated both of these provisions in several respects.

   a. The purported Act 91 Notice BOA sent to Mr. Kaymark was misleading and attempted to collect an amount beyond that required to cure the default, thereby overstating the amount owed.   Such an attempt constitutes a false representation of the character, amount, or legal status of a debt in violation of the FCEUA, §2270.4(b)(5)(ii), as well as a false representation or deceptive means to attempt to collect a debt in violation of the FCEUA, §2270.4(b)(5)(x).

   b. BOA's Act 91 Notice threatened legal action if Mr. Kaymark did not cure his default within thirty (30) days, as opposed to the thirty-three (33) days he was statutorily entitled to.   This threat to take action that could not legally be taken both violated the FCEUA, §2270.4(b)(5)(v), and constituted a "false representation or deceptive means to attempt to collect a debt" in violation of the FCUEA, §2270.4(b)(5)(x).

   c. The Foreclosure Complaint filed against Mr. Kaymark sought attorneys' fees and legal costs that are not authorized by the loan contracts governing the debt at issue

by seeking payment of unreasonable flat fees, or fees for services that were never incurred.

d.   The foreclosure fees and costs were charged against Mr. Kaymark's account and liened against his property before such charges were incurred and before the foreclosure action was commenced.

e.   BOA unilaterally changed how it allocated Homeowners' monthly payments in its Act 91 Notice and thereby misrepresented the actual terms of its mortgages.

31. BOA's charges to Mr. Kaymark of $1,650.00 for attorneys' fees and $400.00 for legal costs as of July 12, 2012, thus, overstate the amount in arrears.  Such an attempt constitutes a false representation of the character, amount, or legal status of a debt in violation of the FCEUA, §2270.4(b)(5)(ii), as well as a false representation or deceptive means to attempt to collect a debt in violation of the FCEUA, §2270.4(b)(5)(x).

32. Because the attorneys' fees BOA seeks to charge are not authorized by the loan contracts and are therefore unlawful, BOA's attempt to impose the fees constitutes a threat to take an action that cannot legally be taken in violation of the FCEUA, §2270.4(b)(5)(v), and an attempt to collect an amount incidental to the principal obligation not permitted by law, in violation of the FCEUA, §2270.4(b)(6)(i).

## <u>COUNT 2 - FDCPA</u>

### (Udren Law Offices, P.C.)

33. The preceding paragraphs are incorporated by reference.

34. This Count is brought under the FDCPA, 15 U.S.C. §1692, *et seq.*, against Udren as a debt collector.  The FDCPA prohibits, *inter alia*, debt collectors from using "any false, deceptive or misleading representation or means in connection with the collection of any debt," [FDCPA,

§1692e], or any "unfair or unconscionable means to collect or attempt to collect any debt," [FDCPA, §1692f].

35. The loan contracts governing the debt at issue prohibit the debt collector from collecting either unreasonable flat fees (which, by their nature, are not fees for specific services) or fees for services never incurred.  The Foreclosure Complaint at issue never establishes any loan contract that authorizes fixed fee demands and never avers that such fees were actually incurred or paid for.   Consequently, it is averred that BOA never incurred charges for the alleged professional services claimed, and that such charges did not reflect reasonable charges for services actually performed.

36. The non-contractual, and therefore unlawful, attorneys' fees and legal costs in the Foreclosure Complaint caused Udren to violate the FDCPA, §1692e because the inflated amount falsely represented the "character, amount or legal status" of Mr. Kaymark's debt, thereby rendering the complaint a "false, deceptive or misleading representation."   FDCPA, §1692e(2)(A).  The inclusion of such fees also violated the FDCPA, §1692e(10), which prohibits "the use of any false representation or deceptive means to collect or attempt to collect any debt," and the FDCPA, §1692e(5), which prohibits "the threat to take any action that cannot legally be taken."

37. Similarly, Udren's attempt to collect unlawful attorneys' fees and legal costs violated the FDCPA, §1692f because the attempted collection "of any amount (including any interest, fee, charge, or expense incidental to the principal obligation) unless such amount is expressly authorized by the agreement creating the debt" constitutes an "unfair or unconscionable means" to collect a debt.  See FDCPA, §1692f(1).

## COUNT 3 - UTPCPL

### (Bank of America, N.A. and Udren Law Offices, P.C.)

38. The preceding paragraphs are incorporated by reference.

39. This Count arises under the UTPCPL, 73 P.S. §201-1, *et seq.* BOA also violated the UTPCPL by virtue of its violations of the FCEUA, as set forth in Count 1. Violations of the FCEUA are per se violations of the UTPCPL. See FCEUA, §2270.5(a).

40. In addition, BOA and Udren violated the UTPCPL by virtue of their violations of UTPCPL, §201-2(4), which prohibits the following unfair and deceptive practices:

> (v) Representing that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits or quantities that they do not have or that a person has a sponsorship, approval, status, affiliation or connection that he does not have…
> …
> (xxi) Engaging in any other fraudulent or deceptive conduct which creates a likelihood of confusion or of misunderstanding.

41. Defendants violated the UTPCPL by overcharging Homeowners for attorneys' fees and legal costs, thereby misrepresenting the amount that they actually owed. The Defendants also charged Homeowners for attorneys' fees and legal costs that were not authorized by the loan contracts. These actions violated the above-cited portions of the UTPCPL, §201-2(4), by "representing that… services have… characteristics… that they do not have" and by "engaging in… fraudulent or deceptive conduct which creates a likelihood of confusion or of misunderstanding."

42. In addition, BOA unilaterally changed how it allocated homeowners' monthly payments in its Act 91 Notice and thereby misrepresented the actual terms of its mortgages.

43. Homeowners suffered an ascertainable loss by either paying the misrepresented and overcharged amounts in whole or in part, or, where Homeowners did not make an actual

monetary payment, Homeowners suffered an ascertainable loss of property when the unauthorized charges were liened against their homes, thereby decreasing the value of their property. The fact of the Homeowners' payments, in part for the unauthorized charges added to their debt, established reliance on Defendants' overcharges and misrepresentations.

### COUNT 4 – BREACH OF CONTRACT

**(Bank of America, N.A.)**

44. The preceding paragraphs are incorporated by reference.

45. BOA breached its contractual obligations to Mr. Kaymark and the class by charging and/or collecting legal fees and costs in violation of the terms of the standardized mortgages it entered into.

46. Mr. Kaymark's Mortgage states, *inter alia*, that the lender "may not charge fees that are expressly prohibited… by law." <u>See</u> Exhibit C, ¶14, attached hereto. The Mortgage further specifies that, in instances of a borrower's default, the lender may only charge fees for "services **performed**" in connection with that default. Exhibit C, ¶14 (emphasis added). Finally, in the context of attorneys' fees and related costs, the mortgage only permits the lender to collect "expenses **incurred**." Exhibit C, ¶14 (emphasis added). These provisions are standard terms found in most, if not all, residential mortgages.

47. The fees enumerated in the Foreclosure Complaint were never established to be specific charges actually incurred for services actually performed. Yet those fees were charged to and liened against his property. Accordingly, it is believed, and averred, that these demands amounted to charging fees for services not performed, in contrast to the mortgage's explicit language requiring that any fees be for services actually performed.

48. BOA changed how it allocated Homeowners' monthly payments.  <u>See</u> Exhibit C (quoted above).  <u>Contrast</u> Exhibit A (quoted above).

## IV.   <u>REQUEST FOR RELIEF</u>

Wherefore, Plaintiff, Dale Kaymark, individually and on behalf of all those similarly situated, hereby requests that this Court:

1. declare that the Defendants' actions violated the FCEUA [BOA], FDCPA [Udren], and UTPCPL [BOA and Udren] (Counts I, II and III);

2. declare that the BOA's actions breached the mortgage contracts BOA entered into with Plaintiffs (Count IV);

3. enter judgment in Plaintiffs' favor for actual damages, costs, and reasonable attorneys' fees as provided by the FDCPA, §1691(a) and the UTPCPL, §201-9.2;

4. enter judgment in Plaintiffs' favor for treble damages as provided by the UTPCPL, §201-9.2; and

5. grant any further relief as deemed just.

Respectfully Submitted,
MICHAEL P. MALAKOFF, P.C.
*/s/Michael P. Malakoff*
Michael P. Malakoff, Esquire
Pennsylvania Attorney I.D. #11048
Ralph N. Feldman, Esquire
Pennsylvania Attorney I.D. #207507
Suite 200, The Frick Building
Pittsburgh, PA 15219
Telephone: (412) 281-4217
Facsimile:  (412) 281-3262
malakoff@mpmalakoff.com
*Attorneys for Named Plaintiff Dale A. Kaymark, individually and on behalf of other similarly situated former and current homeowners in Pennsylvania*

**CERTIFICATE OF SERVICE**

I hereby certify that on the **20th** day of **May**, **2013**, a true and correct copy of the foregoing **Amended Complaint** was served upon the following parties of interest via the Court's Electronic Filing System:

Thomas L. Allen, Esquire
Nellie E. Hestin, Esquire
REED SMITH, LLP
225 Fifth Avenue
Pittsburgh, PA 15222

Jonathan J. Bart, Esquire
WILENTZ GOLDMAN & SPITZER, PA
Two Penn Center, Suite 910
Philadelphia, PA 19102

*/s/Michael P. Malakoff*
Michael P. Malakoff, Esquire