UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

------------------------------------------------------------
DALE KAYMARK, Individually and on behalf
of other similarly situated current and former
homeowners in Pennsylvania,

        Plaintiff,

v.

BANK OF AMERICA, N.A. and UDREN
LAW OFFICES, P.C.,

        Defendants.

------------------------------------------------------------

NO. 2:13:cv-00419-CRE

# DEFENDANT UDREN LAW OFFICES, P.C.'S
# REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF ITS
# MOTION TO DISMISS THE AMENDED COMPLAINT

Daniel S. Bernheim 3d, Esquire
Jonathan J. Bart, Esquire

Wilentz Goldman & Spitzer, P.A.
Two Penn Ctr., Ste 910
Philadelphia, PA  19102
215-636-4466
215-636-3999 (fax)
jbart@wilentz.com

#7041532.1(148845.009)

I.     **PRELIMINARY STATEMENT**

In his original Complaint, Kaymark asserted a theory, which if supportable, may have stated a valid claim, in that it was alleged that the Defendants violated the express provisions of Pennsylvania's Loan Interest Protection Act with respect to the Foreclosure Complaint filed by Udren, on behalf of Co-Defendant Bank of America ("BOA"). While Udren strenuously denied those allegations, it pointed out that Plaintiff's mortgage exceeded the statutory cap for inclusion under the LIPA and accordingly, no claim was stated under that statute. Kaymark, having previously not done his homework on the prerequisites for a claim under LIPA, scrambled to come up with a new theory. What has now been alleged are claims which previously were not deemed by Kaymark to be sufficient to constitute claims under the Fair Debt Collection Practices Act ("FDCPA") and Pennsylvania Unfair Trade Practices and Consumer Protection Law ("UTPCPL") but now suddenly have morphed into claims under those statutes. Simply stated, Kaymark is wrong.

The vast majority of the arguments set forth in Udren's prior brief in support of its motion to dismiss have been simply ignored, or are the subject of frivolous distinctions.[1] With respect to the FDCPA, as well as the UTPCPL (as to which Kaymark is incapable of distinguishing the Supreme Court's *Beyers* ruling[2]), Kaymark has failed to articulate any

---

[1] For example, in response to the large body of law which now holds that complaints in foreclosure, due to their strong statutory protection of debtors, are not subject to the FDCPA (*see*, Udren's main memorandum at pp. 12-14), Kaymark simply relies on the *Heintz v. Jenkins* case, 514 U.S. 219 (1995) which merely states that litigating activities may be the subject of an FDCPA claim. Not a <u>single</u> case is cited regarding foreclosure proceedings nor bankruptcy proceedings, which are the two statutory regiments which were held by the Second Circuit in *Gabriele* to provide sufficient protection to consumers such that the FDCPA is not implicated. The so-called "distinction" of *Gabriele* contained in footnote 7 of Kaymark's brief is simply conclusory and drawn out of thin air. *Gabriele* is precisely on point as are the other cases cited by Udren.

[2] The alleged distinction to third-party claims is completely without merit, as recognized by Judge Wettick (who ironically authored the Opinion mis-cited by Kaymark for the proposition that flat fees are not permitted to be sought in a foreclosure proceeding) in his Opinion dismissing Kaymark's counsel's mirror image case in *Glover v. Udren* (Exhibit "C" to Udren's motion to dismiss).

#7041532.1(148845.009)

legitimate argument with respect to the application of the FDCPA to foreclosure complaints or that the charges were not authorized by the underlying mortgage documents with Bank of America.[3]  In this Reply, Udren will address the two arguments made most forcefully by Kaymark, namely, that (1) flat fee attorneys fees sought in a foreclosure complaint are violative of the UTPCPL and FDCPA, and (2) that Kaymark is entitled to ignore an entirely proper FDCPA Validation Notice and then sue under the FDCPA for alleged errors in the claim without seeking verification or validation of the debt.  Udren incorporates by reference BOA's arguments concerning the lack of merit of Kaymark's "lien theory" of damages and lack of justifiable reliance.  As discussed below, Kaymark's arguments on these two threshold issues are of no merit whatsoever.

II.     **FLAT FEES ARE NEITHER PROHIBITED BY THE MORTGAGE CONTRACT NOR THE FDCPA**

In a "sleight of hand" argument, Kaymark attempts to equate contingent attorney fees added to credit card debts, with a mortgage contract providing for an unequivocal right of recovery of actual costs should the lender be forced to commence a foreclosure action.  As noted without refutation in Udren's prior memorandum of law, the Note signed by Kaymark (Exhibit "A" to Udren's motion to dismiss) specifically provides that BOA is entitled to recover all of its costs and expenses in enforcing the Note, including reasonable attorneys fees.  The Mortgage permits the lender to charge for all services performed in connection with a default, including attorneys fees and property inspection fees.  Kaymark does not deny (nor can he) that this a Fannie Mae mortgage subject to the Fannie Mae attorney fee guidelines.  Those guidelines, as noted in the prior brief, provide for a $1,650.00 flat fee for the prosecution of a mortgage foreclosure lawsuit.  A flat fee is just that - - it is earned in full upon the engagement.

---

[3] *See*, Reply Memorandum of Bank of America for a fuller statement of how a flat fee of $1,650.00 is specifically authorized by the mortgage documents.

#7041532.1(148845.009)                    2

*See, in re Mansfield*, 394 B.R. 783, 792 (Bankr. E.D.Pa. 2008) (a flat attorneys fee fully accrues at the commencement of the engagement such that it is subject to a bankruptcy discharge) (and cases cited therein).

Unlike all of the credit card cases cited by Kaymark at p. 31 of his Brief, the Fannie Mae flat foreclosure fee is not a percentage based contingent fee unilaterally determined by the lender and/or its attorney. Indeed, in the very case cited by Kaymark, *Stolicker v. Muller, Richman, Harms, Myers and Sgroi, P.C.*, 2005 U.S. Dist. LEXIS 32404 (W.D. Mich. 2005), the Court specifically rejected the Defendants' "logic which would allow [the creditor] and its collection attorney, independent of the debtor, to determine what they believed was a reasonable attorney fee and then request that amount in a suit to collect the debt." While that holding has been subject to substantial criticism (*see, Gathuru v. Credit Control Services, Inc.*, 623 F.Supp. 2nd 113, 119 (D. Mass. 2009)), the situation is completely different in this case. The fee has <u>not</u> been set by either BOA or Udren. Rather, it is administratively mandated by Fannie Mae and constitutes a far smaller fee - - approximately 1% - - than in any of the credit card cases cited by Kaymark where the creditor demanded 25% or more of each collection. In essence, Kaymark asks this court to declare Fannie Mae administrative regulations to be invalid and violative of the FDCPA - - something that would put the entire system of mortgage foreclosures into turmoil. However, the two primary concerns of the cases cited by Kaymark, i.e., that the fees have not yet been earned and that the fees sought represent a unilateral decision by the lender and its attorney, are not present here. Plaintiff has cited absolutely no law holding that flat fees violate any statute nor can Plaintiff allege that the fees have not been earned in this case, since under the mortgage documents, BOA is entitled to recover of all its costs and the Fannie Mae fee was earned as of the time of the referral of the claim and the

#7041532.1(148845.009)                    3

drafting of the foreclosure complaint. Accordingly, Kaymark's assertions concerning the alleged illegality of the flat fee sought to be collected in the foreclosure suit are wholly without merit. Since that is an integral element of the FDCPA claims, those claims must be dismissed.

### III. HAVING FAILED TO SEEK VERIFICATION OF THE DEBT, KAYMARK IS BARRED FROM ASSERTING AN FDCPA CLAIM

In his response to Udren's argument concerning the failure to seek verification, Kaymark initially misinterpreted the argument and filed a "substituted argument" two days ago. It does not deny that Kaymark received the FDCPA Validation Notice attached to the Foreclosure Complaint (Exhibit "B" to Complaint) at p. 4.[4] As noted in Udren's main brief, the purpose of the Validation Notice is to resolve disputes without the necessity of litigation. Accordingly, it has been **universally** held that the failure to contest an alleged debt upon receipt of a proper Validation Notice bars the assertion of FDCPA claims based on alleged errors in the information contained therein. *See*, Udren's main brief at pp. 18-21.

Kaymark cites no cases to the contrary. Rather, Kaymark disingenuously asserts that a Validation Notice providing thirty days to seek verification of a debt is overshadowed by a complaint requiring an answer within twenty days. This exact argument was rejected by the Third Circuit in *Oppong v. First Union Mortgage Corp.,* 566 F.Supp. 2d 395, 402-403 (E.D. Pa. 2008), *aff'd* 326 Fed. Appx. 663, 666 (3d Cir. 2009).[5] (Unsophisticated consumer could understand the difference in dates without confusion).

Finally, Kaymark alleges that in *McLaughlin v. Phelan Hallinan & Schmieg*, 2013 U.S. Dist. LEXIS 33255 (W.D.Pa. 2013), the late Chief Judge Lancaster's holding dismissing

---

[4] Kaymark frivolously contends that this is not of record. **Of course**, it is of record - - it is an exhibit to Kaymark's own Complaint.

[5] Plaintiff also argues that the 2006 amendment to the FDCPA providing that a complaint is no longer is an "initial communication" somehow defeats the claim. If anything, it does the opposite. Plaintiff's claim is based upon the complaint in the foreclosure action and if it is not deemed a communication under the FDCPA, Kaymark's claim is fatally defective. If it is, then the Validation Notice requires a response or Kaymark was barred from bringing an action on alleged errors therein.

#7041532.1(148845.009)                                            4

FDCPA claims based on errors in an account after a party fails to respond to a Validation Notice was limited to Section 1692(g) of the FDCPA.  This statement is egregiously incorrect.  There was no Section 1692g claim in *McLaughlin*.[6]  Judge Lancaster's reference to Section 1692g in the Opinion was to the failure of the Plaintiff to seek verification under Section 1692g.  However, he followed the rule that the failure to seek verification precludes any claims under Section 1692e and f relating to alleged errors in the claim.  As stated by Judge Lancaster:

> As the Court previously recognized, numerous courts have held that a Plaintiff who does not follow the statutory debt validation procedure may not assert an FDCPA claim based solely on an allegation that the debt collector has attempted to collect an invalid debt.

*Id*. at *8, fn.3 (and cases cited therein).

The situation is the same here, and Plaintiff, as in *McLaughlin*, has failed to allege that he availed himself of the statutory validation procedure.  *McLaughlin* is controlling and the FDCPA claim must be dismissed with prejudice.

                                          Respectfully submitted,

                                          WILENTZ GOLDMAN & SPITZER, P.A.

Dated:  July 26, 2013             By: /s/ Jonathan J. Bart
                                          Daniel S. Bernheim, 3d, Esquire
                                          Jonathan J. Bart, Esquire
                                          Attorneys for Defendant,
                                          Udren Law Offices, P.C.
                                          Two Penn Center, Suite 910
                                          Philadelphia, PA  19102
                                          215-636-4466
                                          jbart@wilentz.com

---

[6] Candor requires Udren's counsel to reveal that he was counsel in *McLaughlin*.  The Court is respectfully referred to the amended complaint, which is document no. 38 in that case (10-1406-GLL).  There is no Section 1692g claim.  Judge Lancaster previously had dismissed all Section 1692e and f(1) claims which alleged that the law firm sought to collect sums which were set forth in a Validation Notice when no verification of the debt was sought by the Plaintiff.  Judge Lancaster, held that it was the Plaintiff's burden to allege that he availed himself of the statutory verification procedure where, as here, the Validation Notice was of record.  *McLaughlin v. Phelan*, 2011 U.S. Dist. LEXIS 41175 (W.D. Pa. 2011) (at *9).   Because McLaughlin could not do so, all of his claims relating to the alleged attempt to collect an invalid debt were precluded.  The situation is identical here.

### CERTIFICATE OF SERVICE

I, JONATHAN J. BART, certify that on July 26, 2013, I caused a true and correct copy of the foregoing pleading to be served in accordance with the electronic notification system upon the following:

Emily S. Gomez, Esquire
Law Office of Emily Gomez, LLC
239 Fourth Avenue
Suite 1602
Pittsburgh, PA 15222

Michael P. Malakoff, Esquire
437 Grant Street
Suite 200, The Frick Bldg.
Pittsburgh, PA 15219

Thomas L. Allen, Esquire
Nellie E. Hestin, Esquire
Reed Smith
Reed Smith Centre
225 Fifth Avenue, Suite 1200
Pittsburgh, PA 15222

Andrew J. Soven, Esquire
Marc A. Goldich, Esquire
Reed Smith
1650 Market Street
2500 One Liberty Place
Philadelphia, PA 19103

WILENTZ GOLDMAN & SPITZER, P.A.

By: /s/ Jonathan J. Bart
Jonathan J. Bart, Esquire
Attorney for Defendant,
Udren Law Offices, P.C.

#7041532.1(148845.009)