IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| DALE KAYMARK, individually and on | ) | Civil Action No. 13-CV-0419 |
| behalf of other similarly situated and former | ) | |
| homeowners in Pennsylvania, | ) | United States District Judge |
|     Plaintiffs, | ) | Cathy Bissoon |
| | ) | United States Magistrate Judge |
|     v. | ) | Cynthia Reed Eddy |
| | ) | |
| BANK OF AMERICA, N.A., and | ) | |
| UDREN LAW OFFICES, P.C., | ) | |
|     Defendants. | ) | |

## REPORT AND RECOMMENDATION

### I.        RECOMMENDATION

Plaintiff Dale Kaymark defaulted on a mortgage held by Bank of America, N.A. ("BOA"). On September 13, 2012, Udren Law Offices, P.C. ("Udren"), acting on BOA's behalf, filed a Foreclosure Complaint in the Court of Common Pleas of Allegheny County, Pennsylvania. Represented by counsel, Plaintiff is contesting the foreclosure, and adversary proceedings are currently pending in state court.

On March 31, 2013, Plaintiff filed a putative class action complaint seeking declaratory and monetary relief in the Court of Common Pleas of Allegheny County, Pennsylvania, alleging BOA and Udren violated several complimentary state and federal fair debt collection laws, and that BOA breached its mortgage contract. Defendants filed a Notice of Removal (ECF No. 1) in this Court, invoking two bases of federal court jurisdiction: federal question jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1441, and diversity jurisdiction pursuant to the Class Action Fairness Act of 2005 ("CAFA"), 28 U.S.C. § 1453(b), and 28 U.S.C. §§ 1332 and 1441.

Defendants filed separate motions to dismiss the removed complaint, which became moot when Plaintiff filed an Amended Complaint (ECF No. 23) on May 20, 2013. The Amended

Complaint, filed on Plaintiff's own behalf and that of the putative class, states four counts: Count I, against BOA only, for violating the Pennsylvania Fair Credit Extension Uniformity Act ("FCEUA"), 73 P.S. §2270.4(b)(5) and §2270.4(b)(6); Count II, against Udren only, for violating the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. §1692e(2)(A), e(5) and e(10) and §1692f; Count III, against BOA and Udren, for violating the Pennsylvania Unfair Trade Practices and Consumer Protection Law ("UTPCPL"), 73 P.S. §201-2(4); and Count IV, against BOA only, for common law breach of contract (the Mortgage).

Udren and BOA each filed a Motion to Dismiss the Amended Complaint (ECF Nos. 24 and 26, respectively), which are ripe for recommendation. For the foregoing reasons, after careful consideration of the record before the Court, the motions and responses, and the briefs in support and in opposition, the Court recommends that the motions to dismiss be granted, and that the case be dismissed with prejudice.

## II.    REPORT

### A.    Facts Averred in Amended Complaint (ECF No. 23)

The well-plead facts averred in the Amended Complaint, accepted as true with all reasonable inferences taken in the light most favorable to Plaintiff, the non-moving party, set forth the following.[1] Plaintiff is a resident and citizen of Pennsylvania. BOA, the holder of Mr. Kaymark's Mortgage, is a national bank having its principal place of business in California. The

---

[1] Defendants make much of the fact that Plaintiff abandoned what they deem to have been "the crux" of his initial state court complaint, a claim brought pursuant to the Pennsylvania Loan Interest and Protection Law (also known as "Act 6"), 41 Pa. Stat. § 403, when he realized he did not meet the jurisdictional threshold for such a claim. Defendants see this as a sign of weakness of the current four counts that made the final cut to the Amended Complaint. Defendants attempt to diminish the cogency of the current, "weaker," claims made in the Amended Complaint by comparing them to the "stronger" claim Plaintiff abandoned, but this is of no more than historical interest adding no assistance in the Court's determination of whether the operative Amended Complaint sets forth claims with sufficient specificity to withstand *Twombley/Iqbal* scrutiny and survive the motions to dismiss.

Udren law firm is a Pennsylvania professional corporation with its principal office in Philadelphia.

In December 2006, Mr. Kaymark refinanced his home in Coraopolis, Pennsylvania, executing a Note for $245,600.00 and granting BOA a Mortgage. Amended Complaint, (ECF No. 23), at ¶ 4. On or about August 1, 2011, BOA sent Plaintiff a document that purported to be an "Act 91 Notice" required by the Housing Finance Agency Law ("Act 91"), 35 P.S. §1680.403c, which requires mortgage holders considering foreclosure to send homeowners a notice that includes, among other things, an accurate, itemized breakdown of the total amount past due as of the date of the notice, informs the homeowner he is entitled to thirty-three (33) days to have a face-to-face meeting with a consumer credit counseling agency, and advises the homeowner he can apply for financial assistance under the state-funded Homeowner's Emergency Mortgage Assistance Program. Amended Complaint, (ECF No. 23), at ¶¶ 7-9, and Exhibit A thereto (ECF No. 23-1). Plaintiff alleges BOA's Notice failed to satisfy Act 91 "in two important respects. First, BOA's Notice misrepresented the outstanding amount due and owing [and did not] provide an accurate default amount due as of the date of mailing . . . ." *Id*. at ¶¶ 10-11. "Second, BOA's Notice misrepresented the amount of time Mr. Kaymark had to meet with a consumer credit counseling agency" as "thirty (30) days . . . [as] opposed to the thirty-three (33) days he was entitled to by the statute. *See* Act 91, §1680.403c." *Id*. at ¶ 12.

Udren's involvement began on September 13, 2012, when it filed a Verified Foreclosure Complaint for BOA against Kaymark in state court. *Id*. at ¶ 15; Foreclosure Complaint, Exhibit B to Amended Complaint, (ECF No. 23-2). Plaintiff challenges the accuracy of the Foreclosure Complaint as follows:

16. The Foreclosure Complaint, ¶6, stated that as of the pre-foreclosure date of July 12, 2012, a total of $230,839.92, divided into several categories, was due and owing.

| | |
|---|---|
| Unpaid Principal Balance | $213,224.26 |
| Accumulated Interest (07/01/2011-07/12/2012) | $13,452.47 |
| Accumulated Late Charges | $177.74 |
| Escrow Deficit/(Reserve) | $1,935.45 |
| **Title Report** | **$325.00** |
| **Attorney Fees** | **$1,650.00** |
| **Property Inspection** | **$75.00** |
| GRAND TOTAL | $230,839.92 |

The bolded amounts are the complained about foreclosure fees and costs. Furthermore, the attorneys' fees of $1,650.00 and the foreclosure costs, as demanded, were not due or owing as of July 12, 2012.

17. In addition, the Foreclosure Complaint failed to provide any loan contract documentation that the demanded fixed expenses and fees were authorized by any agreement between the parties or were incurred, despite the Rule that any such documents relied upon must be attached. See Pa.R.Civ.P. 1019(i). No such documentation exists. In addition, it is believed, and therefore averred, that BOA never incurred charges for the claimed professional services as of July 12, 2012.

18. With respect to attorneys' fees, the Foreclosure Complaint demanded a flat amount of $1,650.00, $325.00 for a title report, and $75.00 for a property inspection. Not only are these sums not alleged to reflect work Udren performed, but there is no indication that BOA ever paid them and, if it did, when. In accord with the loan contracts, only reasonable fees, actually incurred may be recovered.

19. For these reasons, Mr. Kaymark's current account balance (payoff amount) was falsely inflated upon the filing of the Foreclosure Complaint. Currently, it reflects paid (or liened) and unpaid foreclosure-related fees and legal expenses. The lien wrongly caused a diminution in the value of Mr. Kaymark's property. Mr. Kaymark has suffered deprivation of property equal to the charges improperly liened against, and encumbering, his property.

Amended Complaint, (ECF No. 23), at ¶ 16-19.

Plaintiff attaches the Mortgage to his Amended Complaint, Exhibit C, (ECF No. 23-3), and quotes selections from two of its provisions regarding BOA's manner and priority of posting

and applying payments to the Mortgage balance, and avers that the Act 91 Notice changed the manner of applying payments in derogation of the terms of the Mortgage. *Id.* at ¶¶ 20-21.

Part III of the Amended Complaint makes "class allegations" on behalf of a putative class of homeowners regarding the requisite numerosity, predominance and commonality, typicality, superiority and adequacy of representation to satisfy Rule 23(a), Fed.R.Civ.P. 23(a). *Id.* at ¶¶ 22-27. The class would consist of Pennsylvania homeowners who: received an Act 91 Notice that failed to accurately contain "an itemized breakdown of the total amount past due" and incorrectly informed the delinquent homeowner that he had a thirty (30) day time period to arrange a meeting with a consumer credit agency; were "charged and/or liened foreclosure fees and costs in excess of fifty dollars during a time proceeding [sic] the filing of the foreclosure action;" and "were charged and/or liened foreclosure fees and costs in fixed amounts not authorized." *Id.* at ¶22.

Each count of the Amended Complaint is predicated on the same common nucleus of facts -- that BOA and Udren were not authorized to state in the pre-foreclosure Notice of delinquency, or include in the Foreclosure Complaint, an amount that included fixed and as-yet-to-be-incurred attorneys' fees (in the amount of $1,650.00), cost of a title report (in the amount of $325.00), and cost of a property inspection (in the amount of $75.00).

### Count 1, against BOA only, for violating the Pennsylvania Fair Credit Extension Uniformity Act ("FCEUA"), 73 P.S. §2270.4(b)(5) and §2270.4(b)(6)

Count 1 asserts that BOA's Act 91 Notice was defective and violated the Pennsylvania FCEUA by using "false, deceptive or misleading representation or means in connection with the collection of [a] debt," and "unfair or unconscionable means to collect or attempt to collect [a] debt." *Id.* at ¶ 29. Specifically, Plaintiff alleges that: (a) the Act 91 Notice "was misleading and attempted to collect an amount beyond that required to cure the default, thereby overstating the

amount owed . . . [which] constitutes a false representation of the character, amount, or legal

status of a debt in violation of the FCEUA, §2270.4(b)(5)(ii), as well as a false representation or

deceptive means to attempt to collect a debt in violation of the FCEUA, §2270.4(b)(5)(x)"; (b)

the Act 91 Notice improperly "threatened legal action if Mr. Kaymark did not cure his default

within thirty (30) days, as opposed to the thirty-three (33) days he was statutorily entitled to . . . ,

[which] violated the FCEUA, §2270.4(b)(5)(v), and constituted a 'false representation or

deceptive means to attempt to collect a debt' in violation of the FCUEA, §2270.4(b)(5)(x)"; (c,

d) that the Foreclosure Complaint sought "attorneys' fees and legal costs" that were not

authorized by the "loan contracts" because the fees and costs were "liened against [Plaintiff's]

property before such charges were incurred and before the foreclosure action was commenced";

and (e) that "BOA unilaterally changed how it allocated Homeowners' monthly payments in its

Act 91 Notice and thereby misrepresented the actual terms of its mortgages." *Id*. at ¶ 30(a-e).[2]

**Count 2, against Udren only, for violating the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. §1692e(2)(A), e(5) and e(10) and §1692f**

Count 2 is brought pursuant to the FDCPA, 15 U.S.C. § 1692 *et seq*., against Udren as a

debt collector. Specifically, the Amended Complaint alleges:

> 35. The loan contracts governing the debt at issue prohibit the debt
> collector from collecting either unreasonable flat fees (which, by their nature,
> are not fees for specific services) or fees for services never incurred. The
> Foreclosure Complaint at issue never establishes any loan contract that
> authorizes fixed fee demands and never avers that such fees were actually
> incurred or paid for. Consequently, it is averred that BOA never incurred

---

[2] Plaintiff has made no effort to flesh out his assertion that BOA breached his Mortgage and violated Act 91 and the FCEUA by purporting to "change" the way Plaintiff's payments would be allocated as between interest, principal, late charges, and other fees. Plaintiff does not explain how the allocation provisions in the Mortgage and the Act 91 Notice differ. Plaintiff merely quotes both provisions and concludes that BOA "unilaterally alter[ed] its own Mortgage." *Id*. at ¶¶ 20-21. Plaintiff's conclusory assertion that the Act 91 Notice somehow unilaterally "changed" the terms of and breached the Mortgage is entitled to no weight pursuant to *Iqbal* and *Twombly*. Plaintiff has failed to allege any facts showing that the Act 91 Notice actually changed the allocation method described in the Mortgage, and the Court deems this sub-claim of his FCEUA and breach of contract claims to have been abandoned.

charges for the alleged professional services claimed, and that such charges did not reflect reasonable charges for services actually performed.

36. The non-contractual, and therefore unlawful, attorneys' fees and legal costs in the Foreclosure Complaint caused Udren to violate the FDCPA, §1692e because the inflated amount falsely represented the "character, amount or legal status" of Mr. Kaymark's debt, thereby rendering the complaint a "false, deceptive or misleading representation." FDCPA, §1692e(2)(A). The inclusion of such fees also violated the FDCPA, §1692e(10), which prohibits "the use of any false representation or deceptive means to collect or attempt to collect any debt," and the FDCPA, §1692e(5), which prohibits "the threat to take any action that cannot legally be taken."

37. Similarly, Udren's attempt to collect unlawful attorneys' fees and legal costs violated the FDCPA, §1692f because the attempted collection "of any amount (including any interest, fee, charge, or expense incidental to the principal obligation) unless such amount is expressly authorized by the agreement creating the debt" constitutes an "unfair or unconscionable means" to collect a debt. See FDCPA, §1692f(1).

*Id*. at ¶¶ 35-37.

**Count 3, against BOA and Udren, for violating the Pennsylvania Unfair Trade Practices and Consumer Protection Law ("UTPCPL"), 73 P.S. §201-2(4)**

Count 3 alleges that both Defendants misrepresented the characteristics of their services and engaged in "fraudulent or deceptive conduct which creates a likelihood of confusion or of misunderstanding," in violation of the UTPCPL, 73 P.S. §201-2(4), by charging Plaintiff and similarly situated homeowners attorneys' fees and legal costs that were not authorized by their loan contracts. *Id*. at ¶ 41. Additionally, Plaintiff claims BOA "unilaterally changed how it allocated homeowners' monthly payments in its Act 91 Notice and thereby misrepresented the actual terms of its mortgages." *Id*. at ¶ 42. Plaintiff claims that he and the other homeowners

suffered an ascertainable loss by either paying the misrepresented and overcharged amounts in whole or in part, or, where Homeowners did not make an actual monetary payment, Homeowners suffered an ascertainable loss of property when the unauthorized charges were liened against their homes, thereby decreasing the value of their property. The fact of the Homeowners' payments, in part for the unauthorized charges added to their debt, established reliance on Defendants' overcharges and misrepresentations.

*Id.* at ¶ 43.

### Count 4, against BOA only, for common law breach of contract

Count 4 asserts that BOA "changed how it allocated Homeowners' monthly payments" (*see* note 2, *supra*) and breached its contractual obligations to Mr. Kaymark and the class by charging and/or collecting legal fees and costs in violation of the terms of the standardized mortgages it entered into . . ." by charging flat attorneys' fees for work that had not yet been performed and costs that had not yet been incurred. *Id.* at ¶ 45-46, 48. Moreover, Plaintiff avers that the "fees enumerated in the Foreclosure Complaint were never established to be specific charges actually incurred for services actually performed. Yet those fees were charged to and liened against his property. . . [and] amounted to charging fees for services not performed, in contrast to the mortgage's explicit language requiring that any fees be for services actually performed." *Id.* at ¶ 47.

Plaintiff requests the Court declare that the conduct complained of violates the various state and federal debt collection laws, declare BOA to have breached the Mortgage contract, and to award monetary and exemplary damages, attorneys' fees and costs.

### B.      The Motions to Dismiss

Udren filed a Motion to Dismiss the Amended Complaint (ECF No. 24) against it at Counts 2 (FDCPA) and 3 (UTPCPL), for failure to state a claim under Fed.R.Civ.P. 12(b)(6). BOA filed a Motion to Dismiss the Amended Complaint (ECF No. 26) against it at Counts 1 (FCEUA), 3 (UTPCPL), and 4 (breach of contract) for failure to state a claim under Fed.R.Civ.P. 12(b)(6).  For the reasons set forth below, this Court finds that the motions to dismiss have merit and should be granted, and that all claims should be dismissed.

### C.  Rule 12(b)(6) Standards

In light of the Supreme Court's decision in *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007), a complaint may be dismissed pursuant to Rule 12(b)(6) if it does not allege "enough facts to state a claim to relief that is plausible on its face." *Phillips v. Co. of Allegheny*, 515 F.3d 224, 234 (3d Cir. 2008) (quoting *Twombly*, 550 U.S. at 570). While *Conley v. Gibson*, 355 U.S. 41, 45–46 (1957) allowed dismissal of a claim only if "no set of facts" could support it, under *Twombly*, and *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), a claim for relief under Rule 12(b)(6) now "requires more than labels and conclusions" or "a formulaic recitation of the elements of a cause of action." *Twombly*, 550 U.S. at 555; *Iqbal*, 556 U.S. at 678.

In *Iqbal*, the Supreme Court held that a claim is facially plausible when its factual content allows the court to draw a reasonable inference that the defendants are liable for the misconduct alleged. *Fowler v. UPMC Shadyside*, 578 F.3d 203 (3d Cir. 2009) (citing *Iqbal*, 556 U.S. at 678). The plausibility standard in *Iqbal* "asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678. While well-pleaded factual content is accepted as true for purposes of whether the complaint states a plausible claim for relief, legal conclusions couched as factual allegations or "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements," are not entitled to an assumption of truth. *Iqbal*, 566 U.S. at 678. "Where the well-pleaded facts do not permit the court to infer more than a mere possibility of misconduct, the complaint has alleged - but it has not 'show[n]' - 'that the pleader is entitled to relief.'" *Iqbal*, 566 U.S. at 679 (quoting Fed.R.Civ.P. 8(a)(2)). In order to satisfy the requirement of Fed.R.Civ.P. 8(a)(2) that a plaintiff include a "short and plain statement of the claim showing that the pleader is entitled to relief," a plaintiff must aver sufficient factual allegations which "nudge" its claims "across the line from conceivable to plausible." *Id*.

As the Court of Appeals for the Third Circuit explained in *Fowler*, 578 F.3d at 210–11:

> . . . The Supreme Court's opinion in *Iqbal* extends the reach of *Twombly*, instructing that all civil complaints must contain "more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Iqbal*, 129 S.Ct. at 1949.

> Therefore, after *Iqbal*, when presented with a motion to dismiss for failure to state a claim, district courts should conduct a two-part analysis. First, the factual and legal elements of a claim should be separated. The District Court must accept all of the complaint's well-pleaded facts as true, but may disregard any legal conclusions. *Id*. Second, a District Court must then determine whether the facts alleged in the complaint are sufficient to show that the plaintiff has a "plausible claim for relief." *Id*. at 1950. In other words, a complaint must do more than allege the plaintiff's entitlement to relief. A complaint has to "show" such an entitlement with its facts. *See Phillips*, 515 F.3d at 234–35. As the Supreme Court instructed in *Iqbal*, ... [the] "plausibility" determination will be "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id*.

*See also Santiago v. Warminster Twp*., 629 F.3d 121, 130 (3d Cir. 2010) (quoting *Iqbal*, 556 U.S. at 674, 679); *Burch v. Milberg Factors, Inc.,* 662 F.3d 212, 221 (3d Cir. 2011), *cert. denied*, ––– U.S., –––– 132 S.Ct. 1861 (2012); *Malleus v. George*, 641 F.3d 560, 563 (3d Cir. 2011).

In considering a Rule 12(b)(6) motion, a court accepts all of the plaintiff's allegations as true and construes all inferences in the light most favorable to the non-moving party. *Umland v. Planco Fin. Servs.*, 542 F.3d 59, 64 (3d Cir. 2008) (citing *Buck v. Hampton Twp. Sch. Dist.,* 452 F.3d 256, 260 (3d Cir. 2006)). However, a court will not accept bald assertions, unwarranted inferences, or sweeping legal conclusions cast in the form of factual allegations. *See In re Rockefeller Ctr. Props., Inc. Sec. Litig.*, 311 F.3d 198, 215 (3d Cir. 2002); *Morse v. Lower Merion Sch. Dist.*, 132 F.3d 902, 906 n. 8 (3d Cir. 1997). A court is not required to consider legal conclusions; rather, it should determine whether the plaintiff should be permitted to offer evidence in support of the allegations. *Maio v. Aetna*, 221 F.3d 472, 482 (3d Cir. 2000).

Therefore, a plaintiff must put forth sufficient facts that, when taken as true, suggest the required elements of a particular legal theory. *See Wilkerson v. New Media Tech. Charter Sch., Inc.*, 522 F.3d 315 (3d Cir. 2008) (citing *Phillips*, 515 F.3d at 224). This standard does not impose a heightened burden on the claimant above that already required by Rule 8, but instead calls for fair notice of the factual basis of a claim while raising a "reasonable expectation that discovery will reveal evidence of the necessary element." *Weaver v. UPMC*, 2008 WL 2942139, *3 (W.D.Pa. 2008) (citing *Phillips*, 515 F.3d at 234; and *Twombly*, 550 U.S. at 555).

In deciding a motion to dismiss, the Court should consider the allegations in the complaint, exhibits attached to the complaint and matters of public record. *Pension Benefit Guar. Corp. v. White Consol. Indus., Inc.*, 998 F.2d 1192, 1196 (3d Cir. 1993), *cert. denied*, 510 U.S. 1042 (1994). The Court may also consider "undisputedly authentic" documents where the plaintiff's claims are based on the documents and the defendant has attached a copy of the document to the motion to dismiss. *Id. See also Benner v. Bank of America, N.A.*, 917 F.Supp.2d 338, 345 n.6 (E.D.Pa. 2013) ("In deciding a motion to dismiss, a court may consider documents that are attached to or submitted with the complaint, and any matters incorporated by reference or integral to the claim, items subject to judicial notice, matters of public record, orders, [and] items appearing in the record of the case.") (internal quotations omitted) (quoting *Buck v. Hampton Twp. Sch. Dist.*, 452 F.3d 256, 260 (3d Cir. 2006) and 5B Charles A. Wright & Arthur R. Miller, Federal Practice & Procedure § 1357 (3d ed. 2004)). The Court need not assume that the plaintiff can prove facts that were not alleged in the complaint, *see City of Pittsburgh v. West Penn Power Co.*, 147 F.3d 256, 263 (3d Cir. 1998), nor credit a complaint's "bald assertions" or "legal conclusions." *Morse v. Lower Merion Sch. Dist.,* 132 F.3d 902, 906 (3d Cir. 1997).

### III.    LEGAL ANALYSIS

### A.  The Pennsylvania Claims

Because these claims share essential common elements, the Court will address the state claims together. To recap, Count 1 alleges BOA violated the Pennsylvania Fair Credit Extension Uniformity Act ("FCEUA"), 73 P.S. §2270.4(b)(5) and §2270.4(b)(6); Count 3 alleges both BOA and Udren violated the Pennsylvania Unfair Trade Practices and Consumer Protection Law ("UTPCPL"), 73 P.S. §201-2(4), and Count 4 alleges BOA breached its mortgage contract. Each of the Pennsylvania claims requires a plaintiff to aver, *inter alia*, that Defendants' conduct caused ascertainable loss or damages resulting from the conduct. Plaintiff's own averments have affirmatively pled himself out of the state causes of action as they show he did not, in fact, sustain any actual loss or damage.

### 1.  Counts 1 and 3 - the Statutory Claims

The Pennsylvania FCEUA, 73 Pa. Stat. § 2270.1 *et seq*., is enforced by the remedial provision of the Pennsylvania UTPCPL, 73 Pa. Stat. § 201–9.2. Section 2270.4(a) of the FCEUA states that it "shall constitute an unfair or deceptive debt collection act or practice under this act if a debt collector violates any of the provisions of the Fair Debt Collection Practices Act. . . ."

As recently explained by a colleague in the Eastern District of Pennsylvania,

> a violation of the FCEUA "shall constitute a violation of the . . . ["UTPCPL"]." *Id*. § 2270.5(a). Since the FCEUA does not provide individuals with the right to institute private causes of action for violations, individual plaintiffs must use 73 Pa. Stat. § 201–9.2, the remedial provision of the UTPCPL, to obtain relief. Therefore, the law governing UTPCPL claims also governs Plaintiff's FCEUA claim in this case.

*Benner v. Bank of America, N.A*., 917 F.Supp.2d 338, 359 (E.D.Pa. 2013).

The elements of a private UTPCPL claim are as follows:

In order to maintain a private right of action under the UTPCPL, a plaintiff must show that he 1) purchased or leased goods or services primarily for a personal, family, or household purpose; 2) suffered an ascertainable loss of money or property; and 3) the loss occurred as a result of the use or employment by a person of a method, act, or practice declared unlawful by the UTPCPL. 73 P.S. § 201–9.2(a). The plaintiff must offer evidence of one of the statutorily delineated "unfair methods of competition" found at 73 P.S. § 201–2(4), or evidence which fits the "catch-all provision" found at 73 P.S. § 201–2(4)(xxi).

*Baynes v. George E. Mason Funeral Home, Inc.,* 2011 WL 2181469, *4 (W.D.Pa. 2011)

Thus, key elements of any UTPCPL claim are that Plaintiff suffered an *ascertainable loss* and that the loss occurred *as a result of* (i.e., *in reliance* upon) the defendant's conduct, as the *Benner* decision spells out:

"[T]he UTPCPL is to be liberally construed to effectuate its objective of protecting the consumers of this Commonwealth from fraud and unfair or deceptive business practices." *Ash v. Cont'l Ins. Co.*, 593 Pa. 523, 932 A.2d 877, 881 (2007). In a private UTPCPL action, a plaintiff must prove that he "suffer[ed] [an] ascertainable loss of money or property, real or personal, as a result" of defendant's actions. 73 Pa. Stat. § 201–9.2; *see also Weinberg v. Sun Co.*, 565 Pa. 612, 777 A.2d 442, 446 (2001). While the Pennsylvania Supreme Court mandates a liberal construction of the UTPCPL, lower court cases and the plain language of the statute *indicate an actual loss of money or property must have occurred to state a cognizable UTPCPL claim.*

*Benner*, at 359-60 (emphasis added) (numerous additional citations omitted).

In *Benner*, Defendant BOA sent an Act 91 Notice to Mr. Benner informing him of its intention to initiate foreclosure proceedings, which listed specific amounts Plaintiff was required to pay to cure his default, including a fee of $262.50 for property inspections, as provided for by the mortgage contract. The Plaintiff claimed that it was an unfair and deceptive practice for BOA to charge for the property inspections because they were unreasonable and unnecessary. However, Benner never actually paid this fee, nor was his home foreclosed upon. Nevertheless, he filed a complaint against BOA under the FDCPA, FCEUA and the UTPCPL, among other causes of action, claiming that the imposition of property inspection fees was "an increase in his

13

mortgage debt and corresponding loss of home equity" and thus an "ascertainable loss" under the statute. *Id*. at 360, n.16. Rejecting that argument, the *Benner* Court held:

> In this case, Plaintiff has not identified an "ascertainable loss of money or property" that he suffered to establish a UTPCPL claim. Defendant charged Plaintiff $262.50 for property inspections. According to the Amended Complaint, Plaintiff has not paid the $262.50 fee. This fee is an outstanding liability, but does not constitute a "loss of money or property." Without actually paying for the allegedly improper inspection fees, Plaintiff's FCEUA claim, as brought under the UTPCPL, in Count III of the Amended Complaint fails because of his inability to show an "ascertainable loss of money or property" required by the statute.

*Id*. at 360.

Similarly, in *Salvati v. Deutsche Bank Nat. Trust Co., N.A.,* 2013 WL 1314777 (W.D.Pa. 2013), District Judge Schwab rejected the Plaintiff-homeowner's argument that inclusion of yet-to-be-incurred, and therefore unauthorized, attorneys' fees and other costs in an Act 91 Notice and a Foreclosure Complaint caused ascertainable loss, even though Plaintiff admitted he had not actually paid any of the fees or other costs. Plaintiff claimed that, because the Notice and Foreclosure Complaint contained unauthorized fees and costs, his property had been liened in an inflated amount and its value had been correspondingly diminished in like amount. The Court held, however, that because Plaintiff made no payments of foreclosure fees or legal expenses, he "did not suffer an 'ascertainable loss' . . . [and] is unable to sustain a claim under the UTPCPL." *Id*., 2013 WL 1314777 at *12 and *5-*6. *See also Stewart v. Xrimz, LLC*, 2011 WL 2713411, *3 (M.D.Pa. 2011) ("the Court will dismiss Stewart's UTPCPL claim because he has not pled justifiable reliance on MBK's conduct. . . . Because the loss must occur 'as a result' of unlawful conduct under the UTPCPL, 'a private plaintiff pursuing a claim under the statute must prove justifiable reliance' on the unlawful conduct, not merely that the wrongful conduct caused plaintiff's injuries. *Hunt v. U.S. Tobacco Co.*, 538 F.3d 217, 221 (3d Cir. 2008)") (also citing

*Yocca v. Pittsburgh Steelers Sports, Inc.*, 578 Pa. 479, 854 A.2d 425 (2004) (UTPCPL claim requires plaintiff to show he (1) 'justifiably relied on [a] defendant's wrongful conduct or representation' and (2) 'suffered harm as a result of that reliance'"). "The Courts of this Commonwealth have consistently held that, to establish a private right of action under the UTPCPL, a plaintiff must demonstrate that he/she detrimentally relied upon the deceptive practice of the defendant and that the plaintiff suffered harm as a result of this reliance." *Kondratick v. Beneficial Consumer Discount Co.,* 2005 WL 2314042, *10 (E.D.Pa. 2005) (quoting *Toy v. Metro. Life Ins. Co.,* 863 A.2d 1, 9 (Pa.Super. 2004), *aff'd* 593 Pa. 20, 928 A.2d 186 (2007)); *Weinberg v. Sun Co., Inc.*, 565 Pa. 612, 777 A.2d 442, 446 (2001) (UTPCPL, 73 P.S. § 201-4 "clearly requires, in a private action, that a plaintiff suffer an ascertainable loss as a result of the defendant's prohibited action.").

The "ascertainable loss" Plaintiff advances in his Amended Complaint is that the pre-foreclosure Notice and the Foreclosure Complaint unreasonably demanded flat or fixed attorneys' fees of $1,650.00, $325.00 for a title report, and $75.00 for a property inspection, which did not reflect work Udren performed, so that "Mr. Kaymark's current account balance (payoff amount) was falsely inflated . . . [because] it reflects paid (or liened) and unpaid foreclosure-related fees and legal expenses. The lien wrongly caused a diminution in the value of Mr. Kaymark's property . . . equal to the charges improperly liened against, and encumbering, his property." Amended Complaint, (ECF No. 23), at ¶¶ 18-19. As discussed above, any "diminution in value" of Plaintiff's residential property is vague and speculative, and is not an "ascertainable loss" resulting from the flat fees and fixed costs included in Defendants' Notice and Foreclosure Complaint, and Plaintiff offers no direct authority to the contrary.[3]

---

[3] Because Plaintiff cannot prove essential elements of his Pennsylvania fair debt collection and fraud claims, the Court need not address Defendants' arguments that the flat fees and fixed costs are reasonable

Moroever, as to Udren, the FCEUA, "Pennsylvania's analogue" to the FDCPA, makes it a violation of the FCEUA for a debt collector to violate any provision of the FDCPA. 73 P.S. § 2270.4(a). However, the FCEUA explicitly states that the term "debt collector" includes, "[a]n attorney, whenever such attorney attempts to collect a debt, . . . *except in connection with the filing or service of pleadings or discovery or the prosecution of a lawsuit* to reduce a debt to judgment." 73 P.S. § 2270.3 (emphasis added). Udren is exempt from the operation of the FCEUA as all of its conduct took place in connection with the filing or service of pleadings or discovery or the prosecution of a lawsuit to reduce a debt to judgment.

For the foregoing reasons, Counts 1 and 3 of the Amended Complaint do not state viable claims and should be dismissed with prejudice, as Plaintiff cannot amend his complaint to supply the missing but necessary elements.

### 2. Count 4 - Breach of Contract

To state a breach of contract claim under Pennsylvania law, a plaintiff must allege "(1) the existence of a contract, including its essential terms, (2) a breach of a duty imposed by the contract and (3) resultant damages." *Omicron Systems, Inc. v. Weiner*, 860 A.2d 554, 564 (Pa.Super. 2004) (brackets and internal quotation marks omitted).

"To prove damages, a plaintiff must give a factfinder evidence from which damages may be calculated to a 'reasonable certainty.' *ATACS Corp. v. Trans World Commc'ns, Inc*., 155 F.3d 659, 668 (3d Cir. 1998)). "At a minimum, reasonable certainty embraces a rough calculation that is not 'too speculative, vague or contingent' upon some unknown factor." *ATACS Corp.*, 155 F.3d at 669 (quoting *Spang & Co. v. United States Steel Corp*., 545 A.2d 861, 866 (Pa. 1988)). While mathematical certainty is not required, the plaintiff must introduce sufficient facts upon

because they are provided for in the Mortgage and the Note securing the Mortgage, and that they do not violate any fair debt collection laws. However, the Court notes these arguments appear to have substantial merit.

which the jury can determine the amount of damages "without conjecture." *Delahanty v. First Pa. Bank, N.A.*, 318 Pa.Super. 90, 464 A.2d 1243, 1257 (Pa.Super. 1983). The Pennsylvania Superior Court, in *Pashak v. Barish*, 450 A.2d 67, 69 (Pa.Super. 1982) observed that "the test of whether damages are remote or speculative has nothing to do with the difficulty in calculating the amount, but deals with the more basic question of whether there are identifiable damages. . . . Thus, damages are speculative only if the uncertainty concerns the fact of damages rather than the amount." (quotations omitted). *See also Helpin v. Tr. of Univ. of Pennsylvania*, 10 A.3d 267, 270 (Pa. 2010) ("Where one party to a contract without any legal justification, breaches the contract, the other party is entitled to recover, unless the contract provided otherwise, whatever damages he suffered, provided (1) they were such as would naturally and ordinarily result from the breach, or (2) they were reasonably foreseeable and within the contemplation of the parties at the time they made the contract, and (3) they can be proved with reasonable certainty.")

Plaintiff has not explained how inclusion of "unauthorized" attorneys' fees and other fixed costs in either an Act 91 Notice or the Foreclosure Complaint caused him any actual damages that could be reasonably determined, without conjecture. On the contrary, given that Plaintiff has never paid such fees or costs, is vigorously challenging the foreclosure and those fees and costs, with counsel, and may never have to pay them if he is successful in state court, it is difficult to imagine that he has sustained any actual damages from the alleged breach of the terms of the Mortgage. Assuming, without deciding, that there was a breach of the Mortgage contract, Plaintiff has not suffered any ascertainable loss, nor has he suffered any damages that can be proven with any reasonable certainty.[4] *See Salvati*, 2013 WL 1314777 at \*10 (because he

---

[4] Because Plaintiff cannot prove the essential damage element of his Pennsylvania common law breach of contract claim, the Court need not address Defendant's arguments that there was no breach because the attorneys' fees and other fixed costs itemized in the Foreclosure Complaint were authorized by the

"did not pay any monetary fees, his breach of contract claim . . . fails as Salvati would be unable to satisfy the damages element of a breach of contract claim"); *Johnson v. State Farm Life Ins. Co.,* 2011 WL 3204735, *4 (W.D.Pa. 2011) ("generally a breach of contract claim cannot be sustained where the proceeds of the policy have been paid since the plaintiff would not have suffered any damages").

### B. The Federal Claim

### 1. FDCPA Substantive Standards

The FDCPA was enacted to "eliminate abusive debt collection practices by debt collectors, to ensure that those debt collectors who refrain from using abusive debt collection practices are not competitively disadvantaged, and to promote consistent State action to protect consumers against debt collection abuses." 15 U.S.C. § 1692e. Accordingly, "the Act provides consumers with a private cause of action against debt collectors who fail to comply with the Act." 15 U.S.C. § 1692k. More broadly, the FDCPA was enacted in order to eliminate abusive debt collection practices, which contribute to the number of personal bankruptcies, marital instability, loss of employment, and invasions of privacy. *Caprio v. Healthcare Revenue Recovery Group, LLC*, 709 F.3d 142, 148 (3d Cir. 2013) (citing 15 U.S.C. § 1692(a), (e) and *Lesher v. Law Offices of Mitchell N. Kay, PC*, 650 F.3d 993, 996 (3d Cir. 2011), *cert. denied*, —— U.S. ——, 132 S.Ct. 1143 (2012) (additional citation omitted)).

"The FDCPA establishes a general prohibition against the use of 'false, deceptive, or misleading representation or means in connection with the collection of any debt.'" *Clomon v. Jackson*, 988 F.2d 1314, 1318 (2d Cir. 1993) (quoting 15 U.S.C. § 1692e) (relied upon in

---

Mortgage and the Note securing the Mortgage. However, the Court notes this argument appears to have substantial merit.

*Lesher*). "The sixteen subsections of § 1692e set forth a non-exhaustive list of practices falling within this ban." *Id.*

A "debt collector" is "any person who uses any instrumentality of interstate commerce or the mails in any business, the principal purpose of which is the collection of any debts, or who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another." *Id.* at § 1692a(6). Unlike with the UTPCPL, which explicitly exempts attorneys pursuing foreclosure litigation from its reach, a debt collector for FDCPA purposes may include attorneys regularly involved in the debt collection process, including litigation conduct. Lawyers so engaged must conform to the requirements of the FDCPA – for instance, the lawyer may not falsely represent "the character, amount, or legal status of any debt," section 1692e(2)(A), and may not use various "unfair or unconscionable means to collect or attempt to collect" a consumer debt, section 1692f. *See Heintz v. Jenkins*, 514 U.S. 291, 292-93 (1995).

In *Caprio*, the Court of Appeals for the Third Circuit summarized the "least sophisticated debtor" standard for analyzing FDCPA claims as follows:

> "'The basic purpose of the least-sophisticated [debtor] standard is to ensure that the FDCPA protects all consumers, the gullible as well as the shrewd. This standard is consistent with the norms that courts have traditionally applied in consumer-protection law.'" *Lesher*, 650 F.3d at 997 (quoting *Brown [v. Card Service Center*, 464 F.3d 450, 453 (3rd Cir. 2006)] "As the [Sixth Circuit] explained in [*Smith v. Computer Credit, Inc.*, 167 F.3d 1052 (6th Cir. 1999) ], the 'least sophisticated debtor' standard is 'lower than simply examining whether particular language would deceive or mislead a reasonable debtor.'" *Wilson [v. Quadramed Corp.*, 225 F.3d 350, 354 (3rd Cir. 2000)] (quoting *Smith*, 167 F.3d at 1054). In other words, "[t]his standard is less demanding than one that inquires whether a particular communication would mislead or deceive a reasonable debtor." *Campuzano–Burgos v. Midland Mgmt., Inc.*, 550 F.3d 294, 298–99 (3d Cir. 2008) (citing *Brown*, 464 F.3d at 455). Nevertheless, "the standard does not go so far as to provide solace to the willfully blind or non-observant." *Id.* at 299. The debtor is still held to a quotient of reasonableness, a basic level of understanding, and a willingness to read with care, and the debt collector accordingly cannot be held liable for bizarre or idiosyncratic interpretations. *See, e.g., Wilson*, 225

F.3d at 354–55. For example, even the "least sophisticated debtor" is expected to read any notice in its entirety. *See, e.g., Lesher*, 650 F.3d at 997.

709 F.3d at 149.

"Importantly, whether the least sophisticated debtor would be misled by a particular communication is a question of law that may be resolved in a Rule 12(b)(6) motion." *Smith v. Lyons, Doughty & Veldhuius, P.C.,* 2008 WL 2885887, at *3 (D.N.J. 2008) (citing *Wilson*, 225 F.3d at 353 n. 2). *See also Galuska v. Collectors Training Inst. of Ill., Inc.,* 2008 WL 2050809, at *3 (M.D.Pa. 2008) ("Whether a communication is misleading under the FDCPA presents a question of law for the court; disputed facts must be resolved by a jury.").

Plaintiff claims at Count 2 that Udren violated the following provisions of the FDCPA:

Section 1692e. False or misleading representations

A debt collector may not use any false, deceptive, or misleading representation or means in connection with the collection of any debt. Without limiting the general application of the foregoing, the following conduct is a violation of this section:

\* \* \* \*

(2) The false representation of—

(A) the character, amount, or legal status of any debt; . . .

\* \* \* \*

(5) The threat to take any action that cannot legally be taken or that is not intended to be taken.

\* \* \* \*

(10) The use of any false representation or deceptive means to collect or attempt to collect any debt or to obtain information concerning a consumer.

15 U.S.C. § 1692e(2)(A), e(5) and e(10).

Additionally, Count 2 asserts violation of section 1962f, which provides that a debt collector "may not use unfair or unconscionable means to collect or attempt to collect any debt."

15 U.S.C. § 1692f. Specifically, Plaintiff claims that Udren's conduct was an unfair and unconscionable "collection of any amount (including any interest, fee, charge, or expense incidental to the principal obligation) unless such amount is expressly authorized by the agreement creating the debt or permitted by law." 15 U.S.C. § 1692f(1).

### 2. The Foreclosure Complaint is Neither False, Misleading nor Deceptive

Each claimed FDCPA violation stems from the $1,650.00 in flat attorneys' fees and $400.00 in other fixed costs itemized in the Foreclosure Complaint as part of the total debt on the Mortgage of $230,839.92 due and owing. "The loan contracts . . . prohibit the debt collector from collecting either unreasonable flat fees (which, by their nature, are not fees for specific services) or fees for services . . . incurred." Amended Complaint, (ECF No. 23), at ¶ 35. According to Kaymark, the Foreclosure Complaint misleadingly failed to reference a loan contract authorizing a fixed fee or to allege that the fees claimed had been incurred or paid . . . [and] the fees charged were neither reasonable nor incurred." *Id*. "The non-contractual and therefore unlawful, foreclosure-related attorney's fees and costs . . . caused Udren to violate the FDCPA § 1692 because the inflated amount falsely represented the 'character, amount or legal status of Mr. Kaymark's debt.'" *Id*. at ¶36 (quoting section 1692e(2)(5)). This rendered "the [foreclosure] complaint a 'false, deceptive or misleading representation' in violation of 1692e(2)(A)." *Id*.

Kaymark further contends that including the as-yet-to-be-incurred, flat fees and other fixed costs in the Foreclosure Complaint involved the "use of false representation or deceptive means to collect a debt or debts," in violation of section 1692e(10), and violated section 1692e(5) in that it amounted to "the use of [a] false representation or deceptive means to collect or attempt to collect any debt," and was a "threat to take [an] action that [could] not legally be

taken." *Id.* Finally, Plaintiff claims Udren's attempt to collect unlawful attorneys' fees and costs transgressed section 1692f because an attempt to collect "any such amount (including any interest, fee, charge, or expense incidental to the principal obligation) unless such amount is expressly authorized by the agreement creating the debt" constitutes an "unfair or unconscionable means" to collect a debt under Section 1692f. *Id.* at ¶ 37.

All of Plaintiff's arguments collapse upon consideration of the loan documents (the Mortgage and the Note securing it) authorizing reasonable attorneys' fees and other costs for foreclosure proceedings; the maximum amount of attorneys' fees that are authorized by the Federal National Mortgage Association ("Fannie Mae") for legal work related to foreclosure on a Fannie Mae Mortgage (such as Plaintiff's Mortgage), which, in Pennsylvania, was $1650.00, *see* Udren Brief in Support of Motion to Dismiss, Exhibit B, (ECF No. 25-2); and the fact that nowhere do the loan documents or any state or federal law prohibit listing attorneys' fees and other fixed costs in a foreclosure complaint even if they have not actually been incurred at the time of the filing of the complaint, but are reasonably expected to be incurred.

The Court finds that the least sophisticated debtor would not have been misled or deceived by the fixed fees and costs itemized in the Foreclosure Complaint, but would have understood them to be items included in the total amount claimed due and owing if BOA is successful in its lawsuit. Both the Mortgage, attached to Amended Complaint as Exhibit C, (ECF No. 23-3) and the Note, attached to Udren Brief in Support of Motion to Dismiss as Exhibit A, (ECF No. 25-1), permit BOA to charge reasonable attorneys' fees and other costs of enforcing Plaintiff's obligations, although the instruments did not specify the amount of such fees.Plaintiff does not dispute that BOA would be entitled to collect such fees and costs at the successful conclusion of the foreclosure proceeding, nor that the fees and costs are not permitted by the loan

instruments. Plaintiff's Response in Opposition to Defendants' Motion to Dismiss, (ECF No. 31) at 37-38 of 46. Instead, he makes the rather hypertechnical argument that the "contract only provides for reasonable incurred charges for services performed," and therefore the Foreclosure Complaint was misleading because it itemized fees and costs that were yet-to-be-incurred on work that was yet-to-be-performed. Plaintiff's Response in Opposition to Defendants' Motion to Dismiss, (ECF No. 31) at 35 of 46.

"The language of [section 1692e] creates a straightforward, objective standard." *Glover v. Fed. Deposit Ins., Corp.*, 698 F.3d 139, 149 (3d Cir. 2012). Read in a straightforward, objective manner, the loan instruments do not prohibit an estimate of reasonable attorneys' fees and other costs that may be included in a Foreclosure Complaint by a lender attempting to enforce his rights under the instruments. *See McLaughlin v. Phelan Hallinan & Schmeig, LLP*, 2013 WL 941730, *3-*4 (W.D.Pa. 2013) (Lancaster, C.J.; Plaintiff "does not dispute the underlying debt, but rather [the defendant law firm's] practice of charging fees and costs that had not yet been incurred . . . [but the Court has] already held that estimates are proper, especially in a situation where the attorney is charging a flat fee for its services. Indeed, some courts have held that failing to itemize the various charges that comprise the total amount of debt could be construed as falsely stating the amount of the debt." (citing, *inter alia, Fields v. Wilber Law Firm, P.C.*, 383 F.3d 562, 565–66 (7th Cir. 2004)).

Plaintiff does not seriously challenge the reasonableness of the attorneys' fees and costs if they are incurred and awarded at the conclusion of the foreclosure proceedings, only that it is misleading and deceptive to inform him of those fees and costs *at the inception of the proceeding* in the Foreclosure Complaint. The Court finds that inclusion in the Foreclosure Complaint of the itemized fixed fees and costs would not have misled or deceived the least sophisticated debtor as

to the character, amount, or legal status of his mortgage and total debt, or of any services rendered or compensation which may be lawfully received by the debt collector for the collection of the debt.

**Materiality**

Although the Court of Appeals for the Third Circuit has not yet adopted the position, many Circuit Courts of Appeals have recognized a materiality component to FDCPA claims that arise from communications made in the course of a debt collector's litigation. For example, in *Gabriele v. American Home Mortg. Servicing, Inc*., 503 F.App'x 89 (2d Cir. 2012), a mortgagor brought an FDCPA action alleging that a law firm's misstatements in affidavits and motions filed during its representation of mortgagee in a state-court foreclosure proceeding was misleading and deceptive. Reading a materiality requirement into the FDCPA's prohibition of false, deceptive, or misleading practices in the collection of a debt, the Court of Appeals for the Second Circuit held that the Plaintiff was unable to state an FDCPA claim because the "affidavits and motions were not misleading or deceptive as to the nature or legal status of Gabriele's debt, nor would they have prevented the least sophisticated consumer from responding to or disputing the action. Within the context of an adversary proceeding in state court between two represented parties, these allegations simply do not state plausible claims under the FDCPA." *Id*. at 94. In the context of state-court adversary proceedings, "several other circuit courts, as well as a number of district courts in this Circuit, read a materiality requirement into the FDCPA's prohibition of false, deceptive, or misleading practices in the collection of a debt." *Id*. (collecting cases from 4th, 6th, 7th and 9th Circuit Courts of Appeals).[5] This materiality consideration in the context of state court proceedings has gotten some traction within the district

---

[5] *Warren v. Sessoms & Rogers, P.A*., 676 F.3d 365, 374 (4th Cir. 2012); *Miller v. Javitch, Block & Rathbone*, 561 F.3d 588, 596 (6th Cir. 2009); *Hahn v. Triumph P'ships LLC*, 557 F.3d 755, 758 (7th Cir. 2009); *Donohue v. Quick Collect, Inc.,* 592 F.3d 1027, 1034 (9th Cir. 2010).

courts in the Third Circuit. *See, e.g., Donatelli v. Warmbrodt,* 2011 WL 2580442, *8 (W.D.Pa. 2011) (McVerry, J.; "Donatelli has not provided this Court with authority for the proposition that the inclusion of a calculation of state statutory interest in a demand for relief in state court would be confusing to a state court, or that it would it be actionable under the FDCPA in any event. Whether the state court plaintiffs are entitled to this or any other rate of interest is an issue to be resolved in the state court.").

This emerging materiality analysis in FDCPA cases arising from communications made during state court litigation is compelling. Applied in this case, it is apparent that Plaintiff did not alter his position or rely in any way on Defendants' itemization of fixed attorneys' fees and other costs in the Foreclosure Complaint. On the contrary, the record shows Plaintiff retained a lawyer in the foreclosure proceeding and is vigorously contesting BOA's claims made therein, and that it has yet to be determined whether he is obligated to pay any of the total BOA alleges is due and owing, including said fees and costs.

This Court need not predict whether the Court of Appeals for the Third Circuit will join the growing body of Circuit Courts of Appeals that have adopted this position regarding the materiality of communications made during state court litigation, because it has concluded that the complained of statements were not false, misleading or deceptive. The materiality analysis does, however, inform the Court's determination and buttress its finding that Plaintiff, the debtor defendant in the state court foreclosure action, was neither mislead nor deceived by the itemization of fixed fees and other costs in the Foreclosure Complaint, even if he is among the least sophisticated consumers of debt.  Indeed, the Foreclosure Complaint contains large block letter warnings to the foreclosure defendant advising him that he has the right to defend the claims and be represented by counsel, such as "YOU HAVE BEEN SUED IN COURT. . . .

YOU SHOULD TAKE THIS PAPER TO YOUR LAWYER AT ONCE." Foreclosure Complaint, Exhibit B to Amended Complaint, (ECF No. 23-2), at 3-4 of 19. Such warnings, made in the opening document in a state adversary proceeding, offer additional support for the finding that Mr. Kaymark could not have been misled or deceived by the itemization of fixed fees and costs in the Foreclosure Complaint.

Accordingly, the FDCPA claims in Count 2 against Udren should be dismissed with prejudice, as amendment would be futile.[6]

## IV.    CONCLUSION

For the reasons set forth above, it is recommended that the Motions to Dismiss filed by Udren and BOA (ECF Nos. 24, 26) be granted, and the Amended Complaint be dismissed, with prejudice.

In accordance with the Magistrate Judges Act, 28 U.S.C. § 636(b)(1)(B) and (C), and Rule 72(D)(2) of the Local Rules for Magistrate Judges, any Objections to this Report and Recommendation are to be filed no later than December 31, 2013. Responses to Objections are due on or before January 17, 2013. Failure to file Objections will waive the right to appeal. Brightwell v. Lehman, 637 F.3d 187, 193 n.7 (3d Cir. 2011).

December 11, 2013

Respectfully Submitted,

s/ Cynthia Reed Eddy
Cynthia Reed Eddy
United States Magistrate Judge

cc:    All counsel of record

---

[6] Because Plaintiff cannot prove that he was misled or deceived by any falsehood in the foreclosure Complaint, the Court need not address Defendant's argument that a debt collector is insulated from liability where the debtor fails to avail himself of the Validation Procedures built into the FDCPA. However, the Court notes this argument appears to have substantial merit.