### UNITED STATES DISTRICT COURT FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| DALE A. KAYMARK, individually and on behalf of other similarly situated current and former homeowners in Pennsylvania, | Civil Action #2:13-cv-00419-CB-CRE |
| Plaintiffs, | |
| v. | |
| BANK OF AMERICA, N.A. and UDREN LAW OFFICES, P.C. | |
| Defendants. | |

## <u>OBJECTIONS TO THE MAGISTRATE'S REPORT AND RECOMMENDATION</u>

MICHAEL P. MALAKOFF, P.C.
Michael P. Malakoff, Esquire
Pennsylvania Attorney I.D. #11048
Ralph N. Feldman, Esquire
Pennsylvania Attorney I.D. #207507
Jonathan R. Burns, Esquire
Pennsylvania Attorney I.D. #315206
Suite 200, The Frick Building
Pittsburgh, PA 15219
Telephone: (412) 281-4217
Facsimile: (412) 281-3262
malakoff@mpmalakoff.com
*Attorneys for Named Plaintiff, Dale A. Kaymark, individually and on behalf of other similarly situated former and current homeowners in Pennsylvania*

### TABLE OF CONTENTS

I.      INTRODUCTION.................................................................................................. 1

II.     STANDARD OF REVIEW ................................................................................. 7

III.    STATEMENT OF FACTS ................................................................................. 7

IV.     OBJECTIONS...................................................................................................... 10

    *A.*     ***The FDCPA Claims*** ....................................................................................... ***10***

        *i.*     *Pennsylvania State Law Requires a System Debt Collectors Must Use to Pursue Their Fee Post-Foreclosure; a System Echoed By the FNMA Servicing Agreement* ....................................................................................... *11*

           *a)*     FNMA Servicing Guide Require Debt Collectors to Follow State Law ................. 12

        *ii.*     *The Reasonableness of an Unliquidated, Reasonable Fee Cannot be Determined by BOA or its Counsel at the Beginning of a Foreclosure Proceeding, but Only by the Court at the End* ......................................................... *14*

        *iii.*     *Falsely Representing that Attorneys' Fees Were Incurred When They Have Not Been Violates the FDCPA* .................................................................................. *17*

        *iv.*     *Demanding Liquidated or Sum Certain Fees in the Body of a Foreclosure Complaint is Not Legal* ........................................................................................ *20*

        *v.*     *BOA's Fee Demands Were Material* ...................................................................... *23*

        *vi.*     *Mr. Kaymark has Pled Additional FCEUA Claims (Against BOA), Arising Out of BOA's Misleading Act 91 Notice That Were Not Addressed in the R&R*............................................................................................................................. *25*

        *vii.*     *Adoption of the Magistrate's R&R Would be the Death Knell to Consumer Protection Laws in Pennsylvania*............................................................................ *26*

    *B.*     ***State Law Claims***............................................................................................... ***28***

        *i.*     *The Magistrate's Findings that Each State Law Count Fails for Want of Allegation of an Ascertainable Loss Constitutes Legal Error* ................................. *28*

        *ii.*     *Mr. Kaymark has Plead an Ascertainable Loss that is Neither Vague Nor Speculative and can be "Reasonably Determined, Without Conjecture" and Established with "Reasonable Certainty"*................................................................ *28*

        *iii.*     *Mr. Kaymark's Claims Based on the Wrongful, Inflation of a Lien Constitutes an Ascertainable Loss And Are Viable* .................................................................... *36*

**V.      CONCLUSION** ................................................................................................................ **39**

## <u>TABLE OF AUTHORITIES</u>

**Cases**

*Andrews v. S. Coast Legal Servs., Inc.*, 582 F. Supp.2d 82 (D. Mass. 2008) .............................. 22

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009)................................................................................ 7, 19, 39

*Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007)............................................................. 19, 39

*Belmont v. MB Inv. Partners, Inc.*, 708 F.3d 470 (3d Cir. 2013) .................................................. 30

*Beneficial Consumer Discount Company v. Vukman*, 77 A.3d 547 (Pa. 2013) ................... 25, 31

*Benner v. Bank of America, N.A.*, 917 F.Supp.2d 338 (E.D.Pa. 2013) ................................. 32, 36

*Bennett v. A.T. Masterpiece Homes at Broadsprings, LLC*, 40 A.3d 145 (Pa.Super. 2012)............................................................................................................................... 30

*Bird v. Pressler & Pressler, L.L.P.*, No. 12–3007, 2013 WL 2316601 (E.D.N.Y. May 28, 2013) ............................................................................................................................... 22

*Bradley v. Franklin*, No. 13-12276, 2014 WL 23738 (11th Cir. Jan. 2, 2014)............................. 5

*Burns v. Pennsylvania Dep't of Correction*, 544 F.3d 279 (3d Cir. 2008) ................................... 37

*Case of the State Tax on Foreign-Held Bonds*, 82 U.S. 300 (1872)............................................ 37

*Connecticut v. Doehr*, 501 U.S. 1 (1991) ............................................................................... 6, 36

*Corvello v. Wells Fargo Bank, N.A.*, 728 F.3d 878 (9th Cir. 2013)...................................... 14, 20

*Cresci Const. Services, Inc. v. Martin*, 64 A.3d 254 (Pa.Super. 2013)........................................ 9

*D'Agostino v. Maldonada*, 78 A.3d 527 (N.J. 2013)....................................................... 31, 35, 36

*Daniels v. Davis Davis Attorneys, P.C.*, No. AR-10-006276, 2011 WL 601699 (C.P.Allegheny Feb. 18, 2011) .............................................................................. 5, 9, 15, 27

*DeArmitt v. New York Live Ins. Co.*, 73 A.3d 578 (Pa.Super. 2013)........................................ 35

*Delaware v. New York*, 507 U.S. 490 (1993).............................................................................. 37

*Durso v. Samsung Electronics America, Inc.*, No. 12-5352, 2013 WL 5947005 (D.N.J. Nov. 6, 2013)........................................................................................................... 3

*Ernst v. Hoskins*, 100 Pa. 551 (1882) ................................................................................. 33, 38

*Fowler v. Equitable*, 141 U.S. 384 (1891) ................................................................................. 33

Fowler v. UPMC Shadyside, 578 F.3d 203 (3d Cir. 2009) ........................................... 7

Glover v. FDIC, et al., 698 F.3d 129 (3d Cir. 2012)................................................. 27

Grimes v. Enterprise Leasing Co. of Philadelphia, LLC, 66 A.3d 330 (Pa.Super. 2013) ................................................................................................................ passim

Haas v. Pittsburgh Nat. Bank, 526 F.2d 1083 (3d Cir. 1975) .................................. 3, 26

Hahn v. Triumph Partnerships LLC, 557 F.3d 755 (7th Cir. 2009) ........................ 23, 24

Hall v. Leone Halpin & Konopinski, LLP, No. 06-343, 2008 WL 608609 (N.D.Ind. Feb. 28, 2008) ................................................................................................... 21

Hallmark v. Cohen & Slamowitz, LLP, 293 F.R.D. 410 (W.D.N.Y. 2013)................................ 22

Huyer v. Wells Fargo & Co., No. 08-507, 2013 WL 5754885 (S.D.Iowa Oct. 23, 2013) .................................................................................................................. 3

In re Hydrogen Peroxide Antitrust Litig., 552 F.3d 305 (3d Cir. 2008)....................................... 31

In re Insurance Brokerage Antitrust Litigation, 618 F.3d 300 (3d Cir. 2010)................................ 7

In re U.S. Foodservice Inc. Pricing Litigation, 729 F.3d 108 (2nd Cir. 2013) ............................ 30

Jerman v. Carlisle, McNellie, Rini, Kramer & Ulrich LPA, 559 U.S. 573, (2010)...................... 25

Jessamey v. Norfolk Fin. Corp., 2006 Mass.App. Div. 82, 2006 WL 1211029 (Mass.App.Div. Apr. 28, 2006) ............................................................................ 22

Kelter v. American Bankers' Fin. Co., 160 A. 127 (Pa. 1931)...................................... 38

Manufacturers and Trades Trust Co. v. Luzerne County Tax Claim Bureau, 56 A.3d 36 (Pa.Commw. 2012) ....................................................................................... 37

Mell v. GNC Corp., No. 10-945, 2010 WL 4668966 (W.D.Pa. Nov. 9, 2010)............................ 7

Messner v. Northshore University Healthsystem, 669 F.3d 802 (7th Cir. 2012) .................... 9, 31

Michaels Bldg. Co v. Ameritrust Co., N.A., 848 F.2d 674 (6th Cir. 1988)................................. 30

NECA-IBEW Health & Welfare Fund v. Goldman, 693 F.3d 145 (2nd Cir. 2012) ............... 3, 26

New-Howard v. JPMorgan Chase Bank, N.A., No. 11-2855, 2013 WL 6096232 (E.D.Pa. Nov. 20, 2013)....................................................................................... 30

Petro-Tech Inc. v. Western Co. of North America, 824 F.2d 1349 (3d Cir. 1987) ..................... 30

Pettway v. Harmon Law Offices, P.C., 03-10932, 2005 WL 2365331 (D.Mass. Sept. 27, 2005) ........................................................................................... 12, 17, 18, 19

Pierce v. Calvary SPV I, LLC, No. 13-588, 2013 WL 6773632 (W.D.Pa. Dec. 20, 2013) ......................................................................................................... passim

Salvati v. Deutsche Bank  Nat. Trust Co., et al., No. 12-0971, 2013 WL 1314777 (W.D.Pa. Mar. 28, 2013), appeal pending No. 13-1972 (3d. Cir. 2013) .......................... 31, 36

Saunders v. Resnick, 16 A.2d 676 (Pa.Super. 1940) ..................................................... 33

Scott v. Lloyd, 34 U.S. 418 (1834) ............................................................................ 33

Shula v. Lawent, 359 F.3d 489 (7th Cir. 2004) .................................................... 21, 23

Simon v. FIA Card Servicers, N.A., 732 F.3d 259 (3d Cir. 2013) ............................... 25

Som v. Daniels Law Offices, P.C., 573 F. Supp. 2d 349 (D. Mass. 2008) ...................... 14, 17, 19

Spencer v. Hendersen-Webb, Inc., 81 F.Supp.2d 582 (D.Md. 1999) .............................. 12, 17, 19

Stolicker v. Muller, Muller, Richmond, Harms, Myers, & Sgroi, P.C., No. 04-733, 2005 WL 2180481 (W.D.Mich. Sept.9, 2005) ........................................................... 14, 15, 16

Toth v. Northwest Savings Bank, No. GD-12-008014, pp.7-15 (C.P.Allegheny June 25, 2013) ...................................................................................................... 30

Wal-Mart Stores, Inc. v. Dukes, 131 S.Ct. 2541 (2011).......................................... 9, 31

West Penn Allegheny Health System, Inc. v. UPMC, 627 F.3d 85 (3d Cir. 2010)..................... 19

Wigod v. Wells Fargo Bank, N.A., 673 F.3d 547 (7th Cir. 2012)........................................ 14, 20

**Statutes**

Consumer Fraud Act, N.J.S.A. §56:8-1, et seq. ........................................................ 31

Fair Credit Extension Uniformity Act, 73 P.S. §2270.1, et seq. ........................................... passim

Fair Debt Collection Practices Act, 15 U.S.C. §1692, et seq. ............................................ passim

Homeowner Assistance Settlement Act, 35 P.S. §1681.1, et seq. ............................................ 26

Housing Finance Agency Law, 35 P.S. §1680.403, et seq. ................................................. passim

Loan Interest and Protection Law, 41 P.S. §101, et seq. ................................................. 3, 14, 26

Unfair Trade Practices and Consumer Protection Law, 73 P.S. §201-1, et seq................... passim

**Rules**

Fed.R.Civ.P. 12 ................................................................................................ 7, 19

Fed.R.Civ.P. 72 ..................................................................................................... 7

Fed.R.Civ.P. 8 ...................................................................................................... 39

Pa.R.Civ.P. Rule 1037 .......................................................................................... 11

**Other Authorities**

42 Pa.B. 5447 (Aug. 18, 2012) ............................................................................ 25

Fannie Mae, *June 2011 Servicing Guide Update, Announcement SVC-2011-10* (Jun. 10, 2011), https://www.fanniemae.com/content/announcement/svc1110.pdf ........................... 4

Fannie Mae, *New Foreclosure and Bankruptcy Attorney Network and Attorneys' Fees and Costs, Announcement 08-19* (Aug. 6, 2008), https://www.fanniemae.com/content/announcement/0819.pdf ............................................. 4, 12

And now comes the Plaintiff, Dale A. Kaymark, individually and on behalf of other similarly situated current and former homeowners in Pennsylvania ("Mr. Kaymark"), and makes this his Objections to the Magistrate's Report and Recommendation ("R&R") recommending that Defendants' Motions to Dismiss be granted with prejudice without leave to amend.  See Document 41.

## I.  __INTRODUCTION__

This action was brought by Mr. Kaymark to challenge, *inter alia*, the Defendants' systematic practice of demanding yet to be incurred foreclosure-related attorneys' fees and costs as due and owing in foreclosure complaints filed against homeowners; a practice that caused homeowner's direct economic damage and loss when said unincurred charges inflated liens against the homeowner's home, reducing their equity by the precise amount of the wrongful fees and costs.  In the current R&R, the Magistrate recommends that all of Mr. Kaymark's claims be dismissed, reasoning that the unincurred charges (demanded as due and owing) would be expected, as a matter of law, to be eventually incurred (R&R, p. 22), and that any ascertainable loss or damage suffered due to an inflated lien were vague, speculative or dependent on conjecture (R&R, p. 15).

In endorsing Defendants' conduct, respectfully, the Magistrate has made serious errors with respect to Mr. Kaymark's Mortgage, federal law and state law.  The Magistrate errs in finding that a debt collector remains compliant with the Fair Debt Collection Practices Act ("FDCPA") and the Mortgage so long as the charges it asserts to be due and owing are "reasonably expected to be" due and owing in the future.  She also errs in finding that a loss of equity, corresponding precisely to the value of improper fees inflating the lien against property, is too vague or speculative to constitute an ascertainable loss or contractual damages.

Instead of applying the objective Mortgage provisions and state law (Unfair Trade Practices and Consumer Protection Law ("UTPCPL")), the Magistrate radically altered these standards and developed her own, unique legal and contractual standards; standards not adopted by any other court.  See R&R, p. 22, wherein the Magistrate concluded that "Nowhere do the loan documents or any state or federal law prohibit listing attorneys' fees and other fixed costs in a foreclosure complaint even if they have not actually been incurred at the time of the filing of the complaint, but are **reasonably expected to be incurred**," (Emphasis added[1]).

There is no "reasonably expected to be incurred" standard that exists under Mr. Kaymark's Mortgage or Pennsylvania law.  Pennsylvania law and Mr. Kaymark's Mortgage do not allow a debt collector to charge whatever amount they unilaterally estimate may be incurred throughout the litigation.

Obviously, neither Defendants nor the Magistrate are clairvoyant.  Defendants cannot conclude what **future** foreclosure-related attorneys' fees and costs would be **sixty days** prior to the commencement of the foreclosure action or even during the litigation.  More importantly, it cannot be determined, as a matter of law, that a fee is "reasonably expected to be incurred."  This is a factual matter requiring evidence going beyond the facts averred in the Complaint.

Such estimated charges are not authorized under the Mortgage.  The Mortgage does not authorize estimated attorneys' fees to be demanded at the outset of a foreclosure action, but only authorizes fees that were actually incurred for services that were actually performed.  Amended Complaint, Exhibit C (the Mortgage), ¶¶9(c), 14 and 22.  The fact that the $1,650 in fees (and other expenses) might be later incurred does not justify charges being levied as already earned at the inception of the litigation.

---

[1] The fees were not merely listed but asserted to be due and owing from sixty days prior to the foreclosure action.

The Mortgage's language tracks the language found in the Loan Interest and Protection Law ("Act 6"), 41 P.S. §406(2),[2] which also establishes the parameters under which a residential mortgage lender may recover incurred and reasonable fees and costs associated with enforcing its security interest.   Those foreclosure fees are strictly limited.   "Upon commencement of foreclosure or other legal action with respect to a residential mortgage, attorney's fees **which are reasonable and actually incurred** by the residential mortgage lender may be charged to the residential mortgage debtor," (Emphasis added).  Act 6, §406(2).  In addition, Mr. Kaymark has pled that his Mortgage does not authorize estimated charges or those based on a flat, percentage or another liquidated basis, but **only hourly based fees that have been incurred and that are reasonable**.   The assertion that fees were established and could be charged before the foreclosure action was commenced is inconsistent with the Mortgage, as well.  See Pierce v. Calvary SPV I, LLC, No. 13-588, 2013 WL 6773632 (W.D.Pa. Dec. 20, 2013) (Bissoon, J.).

The District Court for the Western District of Pennsylvania has interpreted what it means for a fee to be **incurred** under the FDCPA.  See Pierce, *3.   Representing in the body of a foreclosure complaint that a fee has been incurred when, in fact, it has not is a violation of the FDCPA.  See infra.  Moreover, Fannie Mae ("FNMA") itself has issued guidelines that state when it is reasonable for attorneys' fees to be charged, and what fee amount is reasonable.  See Fannie Mae, *New Foreclosure and Bankruptcy Attorney Network and Attorneys' Fees and Costs*,

---

[2] Prior to September 8, 2008, Act 6 covered homeowners who financed amounts up to fifty thousand dollars.   Thereafter, the amount was increased to $217,000.   Mr. Kaymark has no personal Act 6 claim; however, as the named plaintiff, he can represent homeowners who have such claims.  See Haas v. Pittsburgh Nat. Bank, 526 F.2d 1083 (3d Cir. 1975) and NECA-IBEW Health & Welfare Fund v. Goldman, 693 F.3d 145 (2nd Cir. 2012).  Because Act 6 does not apply to Mr. Kaymark individually but for the FNMA guidelines (discussed *infra*), BOA could have contracted for liquidated percentage fees under state law if it had provided for them in the Mortgage, but it did not.  Also see Huyer v. Wells Fargo & Co., No. 08-507, 2013 WL 5754885, *12 (S.D.Iowa Oct. 23, 2013) and Durso v. Samsung Electronics America, Inc., No. 12-5352, 2013 WL 5947005 (D.N.J. Nov. 6, 2013).

*Announcement 08-19* (Aug. 6, 2008), https://www.fanniemae.com/content/announcement/0819.pdf.[3]  The FNMA fee guidelines allows only for a **maximum** fee award of $1,650 (inclusive of fees, costs and expenses) for the **entire** foreclosure process.  FNMA explicitly states, like Pennsylvania law, that these fees may not be charged until they are **incurred**.

Hence, under the FDCPA, the non-contractual, and therefore unlawful, foreclosure-related attorneys' fees and costs demanded by Udren in the Foreclosure Complaint violated the FDCPA because the inflated amount falsely represented the "character, amount or legal status" of Mr. Kaymark's debt, thereby rendering the complaint a "false, deceptive or misleading representation." FDCPA, §1692e(2)(A). The inclusion of such fees also violated §1692e(10), which explicitly prohibits "the use of any false representation or deceptive means to collect or attempt to collect any debt," and §1692e(5), which prohibits "the threat to take any action that cannot legally be taken."

The Mortgage explicitly states that "Lender shall be entitled to collect all expenses **incurred** in pursuing the remedies provided in this Section 22, including, but not limited to, attorneys' fees and costs of title evidence of the extent permitted by Applicable Law," [emphasis added] and those **incurred** fees must be reasonable.  See Mortgage, ¶¶22 and 7.  In other words, the Magistrate's assertion that "nowhere do the loan documents, or any state or federal law prohibit" [R&R, p. 22] a current demand for fees and costs which have not yet been incurred is actually explicitly prohibited under each.

---

[3] Announcement 08-19 was incorporated into the FNMA Servicing Guide though Announcement SVC-2011-10.  The FNMA servicing guide is essentially a contract between FNMA and the servicer and it does not have the force of law except with respect to the contracting parties.  It is chiefly useful here in establishing industry standards, which in turn provide some guidance in determining the reasonableness of particular practices.

All known appellate courts (and most district courts) have held that demanding estimated future fees as currently owed directly violates the FDCPA.  See Pierce, supra; Daniels v. Davis Davis Attorneys, P.C., No. AR-10-006276, 2011 WL 601699, *9 (C.P.Allegheny Feb. 18, 2011); and, Bradley v. Franklin, No. 13-12276, 2014 WL 23738 (11th Cir. Jan. 2, 2014).  Curiously, the Magistrate's R&R does not acknowledge this substantial body of case law, but, without any known support aside from Defendants' filings, concluded that Mr. Kaymark's arguments are hypertechnical.  R&R, p. 23.

In this regard, it is of great importance to be clear about what Mr. Kaymark's claim is about.  Mr. Kaymark, facing the loss of his home was presented, in a formal foreclosure complaint, with a demand for payment including over $2,000 for fees that were allegedly incurred two months prior to the action.  The fees could not have been incurred two months prior to the action and were not incurred at the time the initial Complaint was filed.  Yet, paying this $2,000 fee was demanded as necessary to save his home.  However, paying these fees, under law and contract, was not necessary to save his home.  By law and contract he was only required to pay reasonable fees already incurred for services performed.  For a distressed homeowner trying to save his home, every dollar counts.  A bill inflated by a couple of thousand dollars is not a hyper-technicality.  That the bill might later be justified is of little conciliation.  At the time of the foreclosure filing it was not, with the result that any problem curing default at the early stage, before real costs were actually incurred, was needlessly exacerbated.[4]

As to the state law claims, (which, according to the Magistrate, all turn on the issue of the existence of an ascertainable loss or the existence of actual damages), the Magistrate errs in

---

[4] In this context, the demand for 4,599.98 to bring the loan out of default (and avoid foreclosure altogether) when only $2,306.94 was actually necessary is equally egregious (and non-hypertechnical).  Amended Complaint, ¶11.

finding something vague or speculative about the ascertainable loss suffered when the encumbrance on real property increases.  In the Magistrate's view, the detriment suffered when the encumbrance on property expands does not represent an actual loss or damage, but this is inconsistent with the entire edifice of the law of property and secured transactions.  Significantly, lenders view their mortgage portfolios as assets.

Mr. Kaymark has not simply speculated that buyers might find the house less valuable with an inflated lien or based his assertion of damage or loss on any intangible elements like emotional distress.  Rather, he has grounded his assertion of loss on simple math.  If the amount required to clear the lien on his property is increased by a dollar, then Mr. Kaymark's interest in his home declines by a dollar.  If he sells his home, his net proceeds will be a dollar less, and if he tries to use it for security on a loan, the amount he can borrow will decline by one dollar.  If this one dollar increase was as the result of a violation of law (state or federal) and/or the Mortgage, then as a result of this violation, Mr. Kaymark has suffered an ascertainable loss and actual damage of at least one dollar.  It matters not if the loss is by a **temporary lien**.  See Connecticut v. Doehr, 501 U.S. 1, 11-12 (1991) (recognizing that a temporary lien also constitutes a loss of property).  That no cash changed hands, is irrelevant.  A clearly ascertainable economic loss has still occurred, and that is all that is required to satisfy the ascertainable loss elements of the UTPCPL and the Fair Credit Extension Uniformity Act ("FCEUA") (and, the damage requirement needed to recover under a breach of the Mortgage).

The Magistrate's findings, if adopted, will have severe consequences to financially distressed homeowners.  The imposition of inflated charges will deprive homeowners (because of their limited finances) of the opportunity to cure defaults and save their homes.  In essence, it

will allow lenders, servicers and debt collectors to hold up and extort a homeowner as a precondition to save their homes.

## II.   **STANDARD OF REVIEW**

The Magistrate heavily relies on and quotes Fowler v. UPMC Shadyside, 578 F.3d 203, 211 (3d Cir. 2009) citing Ashcroft v. Iqbal, 556 U.S. 662 (2009) as representing the Fed.R.Civ.P. 12(b) pleading standard in the Third Circuit.  She overlooked, however, that the dictum in Fowler was subsequently rejected by the Third Circuit in In re Insurance Brokerage Antitrust Litigation, 618 F.3d 300, 319, fn. 17-18 (3d Cir. 2010).  See Mell v. GNC Corp., No. 10-945, 2010 WL 4668966, *3 fn. 2 (W.D.Pa. Nov. 9, 2010) (Standish, J.).  The scope of review is *de novo*.  See Fed.R.Civ.P. 72.  None of the post-Fowler decisions relied on by the Magistrate made this mistake and, therefore, none of those decisions cite Fowler.  R&R, p. 10.

## III.   **STATEMENT OF FACTS**

The relevant facts have been ably summarized by the Magistrate and, will be briefly summarized here.  In December 2006, Mr. Kaymark refinanced his Pennsylvania home, executing a Note for $245,600 and granting BOA a Mortgage.  Amended Complaint, ¶4. The loan contracts permit only reasonable fees, **incurred** for services performed.  Amended Complaint, Exhibit C ¶¶9(c), 14 and 22. On or about August 1, 2011, BOA sent Mr. Kaymark an *Act 91 Notice* that failed to satisfy Act 91 in two distinct respects.   BOA's Notice misrepresented the outstanding amount due and owing  and did not provide an accurate default amount due as of the date of mailing (charging for three months' worth of payments instead of the two he was behind), and BOA's Notice misrepresented the amount of time Mr. Kaymark had to meet with a  consumer credit counseling agency as thirty days instead of the thirty-three days

he was entitled to by the statute.  <u>See</u> the Housing Finance Agency Law ("Act 91"), 35 P.S. §1680.403c.  <u>Also see</u> Amended Complaint, ¶¶ 10-12.

Udren, on behalf of BOA, then filed a verified Foreclosure Complaint against Mr. Kaymark in state court.  <u>Id.</u>, ¶15 and Exhibit B thereto.  The Foreclosure Complaint demanded amounts without differentiating which were the liquidated and which were the unliquidated amounts.

> The following **amounts are due** on the said Mortgage or modification agreement **as of the date stated below**
> …
> Title Report                                                    $325.00
> Attorney Fees                                                 $1,650.00
> Property Inspection                                          $75.00
> GRAND TOTAL                                           $230,839.92
> **The above figures are calculated as of 07/12/2012**   (Emphasis added)

With regard to the title report, attorneys' fees and property inspection, Mr. Kaymark pled that these charges were not performed or incurred by BOA as of July 12, 2012.  Though the charges were alleged to be incurred, the amount demanded to clear the lien on Mr. Kaymark's property was nevertheless elevated to $2,050, reducing Mr. Kaymark's equity in his property by the same, i.e., $2,050.

Mr. Kaymark pled that these facts (i.e., being charged for unincurred *per se* unreasonable, flat or liquidated foreclosure-related attorneys' fees and costs, which significantly inflated the lien on his property) give rise to the following causes of action.  Mr. Kaymark's counts include:

1. Breach of Mortgage with respect to BOA: As the contract supports only **incurred** fees for services performed, BOA breached the Mortgage causing Mr. Kaymark to suffer an ascertainable loss and actual, economic damages.  <u>See</u> Amended Complaint, Count IV.

2.   Violations of the UTPCPL with respect to Udren and BOA: The attempt to collect the inflated fees and costs, not currently due or owing, constitutes deceptive conduct causing Mr. Kaymark to suffer an ascertainable loss; a decline in equity in his property; and, actual damages. See Amended Complaint, Count III.

3.   FDCPA violations by Udren (and FCEUA violations by BOA): Representing the said inflated fees and costs as due and owing when such charges were, when demanded, prohibited by both the Mortgage and law, was a violation of the FDCPA (and, as to BOA, of the FCEUA).[5] With respect to the FCEUA, the inflation of the lien on Mr. Kaymark's property caused an ascertainable economic loss equal to the decline in Mr. Kaymark's net interest in the property. See Amended Complaint, Counts I and II.[6]  [The FDCPA and the FCEUA are virtually the same in that the FCEUA incorporates the FDCPA.   See §2270.4(a).   These statutes are somewhat different because the FCEUA excludes litigation but includes other debt collection.   See FCEUA, §2270.3.  The FCEUA also has a two year statute of limitations.  Id., §2270.5(b). While the FDCPA has a one year statute of limitations.  See FDCPA, §1692k.]

In addition, the pled false communications (false debt collection representations) sent to Mr. Kaymark indicate the following.

1.   A verified statement that as of July 12, 2012, $1,650 in foreclosure-related attorneys' fees were owed even though the foreclosure action was not commenced until September 13, 2012. Amended Complaint, ¶16.

---

[5] The foreclosure fees and costs must be incurred and the amount charged must be reasonable. See Pierce, supra; Daniels, supra; and, Cresci Const. Services, Inc. v. Martin, 64 A.3d 254 (Pa.Super. 2013).   Here there are also violations of the Mortgage, FCEUA, UTPCPL and FDCPA.

[6] Of the liability issues, only the existence of an ascertainable loss is before this Court, not the precise value of actual damages or for recovery.   See Messner v. Northshore University Healthsystem, 669 F.3d 802, 815, 819 (7th Cir. 2012) quoting Wal-Mart Stores, Inc. v. Dukes, 131 S.Ct. 2541, 2558 (2011).

2.   As of July 12, 2012, a statement that $325 was due for a title report and $75.00 was due for a property inspection even though the foreclosure action was not commenced and even though those charges were not incurred or due and owing.  Amended Complaint, ¶16.

3.   A statement that, as of June 2011, $4,599.98 was due and owing even though only two monthly payments (totaling $2,306.94) were actually due.   Amended Complaint, ¶11.  [This claim was not acknowledged or discussed in the R&R.]

4.   A statement that a foreclosure action could be commenced within thirty days of the date of the Act 91 Notice even though state law dictates that thirty-three days be provided.  Amended Complaint, ¶¶ 9 and 12-14.  [This claim was acknowledged, but not discussed in the R&R.]

5.   A statement that BOA was altering the way that the Mortgage dictates payments be allocated.  Amended Complaint, ¶21.

Thus, with respect to four of the five alleged types of false communications acknowledged in the R&R, only three of them were analyzed in the R&R.

IV.   **OBJECTIONS**

*A.  The FDCPA Claims*

The Magistrate has recommended the dismissal of Mr. Kaymark's FDCPA claim largely on the ground that there was nothing improper about demanding unincurred fees as presently due and owing in the body of a foreclosure complaint so long as the fees would be reasonably expected to be incurred eventually.  This is inconsistent with state law, BOA's own servicing contract (which harmonizes with the envisioned state system) and the dominant interpretation of the FDCPA.

i.   *Pennsylvania State Law Requires a System Debt Collectors Must Use to Pursue Their Fee Post-Foreclosure; a System Echoed By the FNMA Servicing Agreement*

In finding the Defendants' fee practices to be lawful, the Magistrate glosses over the standard procedure implemented by the state courts to ensure that only liquidated damages can be determined without a judicial determination.  Where liquidated damages are not provided for under contract, a judicial determination is required before damages are established.  Here, there is no provision for liquidated or fixed attorneys' fees.

Under Pa.R.Civ.P. Rule 1037(b)(1), a clerk may enter a default judgment for only liquidated (incurred) amounts.  That Rule provides:

> [D]amages for the amount to which the plaintiff is entitled if it is a **sum certain** or which can be made certain by computation, but if it is not, the damages shall be assessed at a trial at which the issues shall be limited to the amount of the damages.  (Emphasis added)

If the plaintiff's claim is for an amount other than a sum certain, or an amount that by computation can be made certain, judgment by default may not be entered by the clerk of the court.   Rather, judgment must be entered by the court, which shall take such evidence as is necessary to determine the damages.

With respect to rules allowing a clerk to enter judgment by default when the claim is for a sum certain, the term sum certain contemplates a situation where the amount due cannot be disputed and has been held to have a meaning similar to a liquidated amount.  Judicial action of the court is required where the damages recoverable are unliquidated, indefinite, and uncertain.  Debt collectors that contract for unliquidated fees, but charge liquidated ones, are falsely asserting those fees as liquidated to deceptively obtain an award and avoid a judicial determination.

Here, the Amended Complaint states that Defendants have systemically applied a fixed fee to homeowners' foreclosure complaints, regardless of the amount actually due or work

incurred at the time of filing.  In other words, they are requesting a sum certain, but that sum certain has been arrived at by a defendant, not the court.  Virtually all district courts have recognized that defendants blindly adding fees systematically to each debtor's account violates the FDCPA as they create a windfall for defendants in unearned fees.  <u>Spencer v. Hendersen-Webb, Inc.</u>, 81 F.Supp.2d 582, 592 (D.Md. 1999) ("procedures were woefully inadequate in preventing collection of unjustified fees.  Indeed, the company's computer program added a 15 percent fee to *every* account without regard to the agreement or document underlying the debt.").

A fee collecting system that allows for defendant to collect a fixed fee without a showing of proof that that fee was actually incurred and earned would shift the burden of proof that attorney fees were reasonable and incurred and requires debtors to show the attorneys' fees and costs charged were not earned.  <u>See</u> <u>Pettway v. Harmon Law Offices, P.C.</u>, 03-10932, 2005 WL 2365331, *12 fn. 2 (D.Mass. Sept. 27, 2005) (where the court noted one of the more troubling aspects of this type of fee system was that Plaintiff "was reimbursed for the unaccrued fees and costs **only after this lawsuit was filed**"(emphasis added)).  This is simply not the system state law contemplated.

a)   FNMA Servicing Guide Require Debt Collectors to Follow State Law

The FNMA Servicing Guide authorizes a $1,650 **maximum** for foreclosure-related attorneys' fee, costs and expenses.  <u>See</u> Udren's Brief in Support of its Motion for Summary Judgment (Document 25), pp. 3-4, 6-7 and 15 fn. 8.  <u>Also see</u> its Reply in Support of its Motion for Summary Judgment (Document 34), p. 2.   In 2008, Fannie Mae issues a servicing announcement stating that these fees shall cover, "all legal actions necessary to complete the standard foreclosure in Pennsylvania, including motions to postpone or relist a sale and motions to reassess damages."  <u>See</u> Servicing Announcement 08-19, p. 3 fn. 10.  This fee is to be "**prorated** to reasonably relate to the amount of **work actually performed**," (Emphasis added).

Id., p. 5.  That same guide recognizes that "requirements governing attorneys' fees, include[s] the requirements that fees charged to borrowers be permitted under the terms of the note, security instrument, and **applicable laws**," (emphasis added).  Id.   Thus, even if the issue in contention was whether or not a $1,650 demand for attorneys' fee being reasonable was the issue, the FNMA servicing guide, and state law, would still require the fees charged be for work performed.

Although the FNMA fee schedule allows for a **maximum** fee of $1,650 for the entire foreclosure process (inclusive of fees, costs and expenses), that does not establish that a $1,650 charged at inception of the process is reasonable, or that the fee represents charges incurred for services performed.  Amended Complaint, ¶16.  At best, it indicates that the fee is unreasonable at the outset of a foreclosure action because it is the maximum amount authorized to be charged.  Respectfully, the contention that the FNMA maximum fee is *per se* reasonable in all cases is without merit.  This is the maximum fee permitted for any **completed case**.  Anything above it is unreasonable, but this in no way implies that this fee will always be reasonable, reasonable at the outset of the same or (as here) two months before the foreclosure action was actually commenced.

Nevertheless, the Magistrate has found that charging the maximum $1,650 before it is incurred is reasonable.  No one disputes that the FNMA servicing guide themselves say that, in some circumstances, $1,650 is a reasonable fee.  However, under the servicing guide, $1,650 is not a reasonable fee at the outset of a case.

Furthermore, the announcement states, "All attorneys must submit their statements for all fees and expenses directly to the servicer."  Id., p. 5.   Therefore, it is the servicer in the first instance that must submit the fees.  Under the FNMA servicing guide, an attorney cannot

unilaterally charge any fees to a homeowner, but rather they must bill the servicer.   If the servicer and debt collector have an agreement in which the servicer pays the debt collector a flat $1,650 fee per case, so be it.   However, that flat-fee cannot be systemically pushed on each individual homeowner.   Thus, in contrast to the Magistrate's R&R, the FNMA servicing guide require homeowners to only be liable for their individual fees and costs, which are capped at $1,650 and which fees must be authorized by the Mortgage.   See Wigod v. Wells Fargo Bank, N.A., 673 F.3d 547 (7th Cir. 2012) and Corvello v. Wells Fargo Bank, N.A., 728 F.3d 878 (9th Cir. 2013) (finding that the failure to follow federal guidelines constitutes an UTPCPL violation).   Act 6/Act 91 violations can also be addressed under the UTPCPL. See Act 6, §§502 and 502.

> ii.   *The Reasonableness of an Unliquidated, Reasonable Fee Cannot be Determined by BOA or its Counsel at the Beginning of a Foreclosure Proceeding, but Only by the Court at the End*

In Pierce, the plaintiff alleged that the agreement with the defendant did not permit collection of liquidated attorney fees fixed upon a percentage of the debt or that defendants could state in the complaint a liquidated demand for attorney fees.   This is precisely what Mr. Kaymark alleged here.

Peirce held that **the demand for liquidated attorney's fees, when the underlying agreement does not provide for such fees, is a violation of the FDCPA** citing Stolicker v. Muller, Muller, Richmond, Harms, Myers, & Sgroi, P.C., No. 04-733, 2005 WL 2180481, *4 (W.D.Mich. Sept.9, 2005) ("The inclusion of a liquidated sum as attorney fees with the principal debt owed altered the terms of the [underlying] contract... and violated the FDCPA."); Som v. Daniels Law Offices, P.C., 573 F. Supp. 2d 349, 357-358 (D. Mass. 2008) (finding a violation of the FDCPA when debt collectors sought a percentage-based attorney's fee that was not authorized by the language of the contract).   Id., *3.

Where homeowners have contractual rights to pay only reasonable, incurred fees for services performed, it is without merit to object to being levied a fixed fee with no specific bearing on the charges incurred or performed.  See Daniels, supra, citing Stolicker.

The fixed-fee defenses advanced and rejected in Pierce; Daniels and Stolicker, are identical to Udren's.  The presence of a contract that reasonable and incurred attorneys' fees can be collected somehow **unilaterally bestows on a defendant the legal right to determine the amount of its own fees** is not authorized by the Mortgage and is prohibited by Pennsylvania law.

In Stolicker the central issue was whether the Muller law firm violated the FDCPA by filing a complaint and affidavit in support of a default judgment which included a request for liquidated attorneys' fees.   The court recognized that the FDCPA would provide little protection to a debtor if, in agreeing to pay "reasonable collection costs," a debtor was held to have agreed to pay whatever percentage fee a debt collection service happened to charge.  Id. The court stated:

> [Defendant's] argument misconstrues the issue in this case. The issue is not whether the requested attorney fee is in fact reasonable…The central issue in this case, which [Defendant] repeatedly overlooks, is whether the request of a liquidated amount as an attorney fee is false or misleading when the contract authorizing the fee permits only a "reasonable attorney fee."

Id., *5.  Going on, Stolicker recognized that:

> A "reasonable attorney fee" cannot be a "sum certain" because, under State law, the trial court must determine the reasonableness of the attorney fee amount based on evidence provided to the court. See In re Howarth's Estate, 310 N.W.2d 255, 257 (Mich.App. 1981) (holding that to establish a claim for attorney fees "the better rule is to require introduction of evidence."); Zeeland Farm Services, Inc. v. JBL Enterprises, 555 N.W.2d 733, 736 (Mich.App. 1996) (noting that while a contract may include a provision requiring the breaching party to pay the other side's

> attorney fees, recovery is limited to reasonable attorney fees and the party requesting the fee must introduce evidence of reasonableness).

<u>Id</u>. Finally, the <u>Stolicker</u> held that:

> **Claiming that a "reasonable attorney fee" is a "sum certain," as Muller did in this case, is a false representation.** Although the Muller law firm fails to appreciate the falsity of its statement, it is clear to the Court that a "reasonable attorney fee" cannot be a "sum certain." A reasonable attorney fee requires a judicial evaluation of the evidence regarding the fee. A sum certain, is just that, a liquidated amount that requires nothing further. Cases discussing whether a reasonable attorney fee is a sum certain in the context of the federal rules of civil procedure are instructive and establish that a "reasonable attorney fee" is not a "sum certain." (Emphasis added)

<u>Id</u>. <u>See also</u> <u>Kojetin v. C U Recovery, Inc.</u>, No. 97-2273, 1999 WL 1847329, *2 fn. 3 (D.Minn. March 29, 1999) ("The FDCPA would provide little protection to a debtor... if, in agreeing to pay 'reasonable collection costs,' a debtor was held to have agreed to pay whatever percentage fee a debt collection service happened to charge a lender."), <u>aff'd</u>, 212 F.3d 1318 (8th Cir. 2000).

Here, the Amended Complaint pled Defendants have systemically applied a fixed fee to homeowners' foreclosure complaints, regardless of the amount actually due or work incurred at the time of filing. These fixed fees are clearly in violation of the mortgage, state law, and the FDCPA. A system that allows for defendant to collect a fixed fee without a showing of proof that that fee was actually incurred or earned would shift the burden in showing that their fee was reasonable and earned.

iii.  *Falsely Representing that Attorneys' Fees Were Incurred When They Have Not Been Violates the FDCPA*

The Magistrate found that Mr. Kaymark's FDCPA positions are hypertechnical and, in that process, she disregards Mr. Kaymark's argument both factually and legally.  She states that:

> Plaintiff does not dispute that BOA would be entitled to collect such fees and costs at the successful conclusion of the foreclosure proceeding, nor that the fees and costs are not permitted by the loan instruments... Instead, he makes the rather hypertechnical argument that the contract only provides for reasonable incurred charges for services performed.

R&R, pp. 22-23.  In fact, Mr. Kaymark does not dispute the amount of the fees that BOA could be entitled to at all so long as those fees were actually incurred and reasonable, in accordance with the Mortgage.  The Magistrate stopped her analysis short of the real issue in her R&R.  Not only did the plain reading of the contract state that only reasonable charges for work incurred was allowed, all known courts considering cases like this have held that debt collectors violated the FDCPA.  See Pierce, supra; Som, supra; Pettway, supra (citing Fields v. Wilber Law Firm, P.C., 383 F.3d 562, 565 (7th Cir.2004) (attorney violated FDCPA by stating the amount of a debt as an estimate of future liability rather than as a statement of the current amount of the debt)); see also Spencer, 591   (violation of FDCPA to collect attorney's fees that have not yet been incurred).   What Mr. Kaymark pled gives rise to his misrepresentation and overcharge claims, include:

1.  the fees and costs demanded as due and owing as of July, 2012, were not;

2.  the fees and costs demanded were demanded as due and owning, but were not;

3.  the fees and costs that the Mortgage contract authorized could be charged must be unliquidated, reasonable and incurred, but the fees and costs demanded were not;

4.  the fee and costs demanded were a liquidated, fixed fee and, thus, were false; and,

5.  the Mortgage only authorizes incurred fees.

Including attorneys' fees in the debt, and representing those fees were due prior to the date they were incurred, is a false representation of the character as well as the legal status of the debts in violation of section 1692e(2)(A).   McDermott v. Marcus, Errico, Emmer & Brooks, P.C., 911 F. Supp. 2d 1, 68 (D. Mass. 2012) amended in part, 09-10159, 2013 WL 4539071 (D. Mass. Aug. 26, 2013).

In Gathuru v. Credit Control Servs., Inc., 623 F. Supp.2d 113, 120-121 (D. Mass. 2009), the court held that determining a fee authorized by the agreement does not end the analysis as to whether an FDCPA violation has occurred, especially where the fee has yet to be incurred, holding:

> Where a fee was expressly authorized by the Agreement, and therefore did not violate the FDCPA, is not the end of the analysis. Plaintiff also alleges that defendant violated the FDCPA by attempting to collect a fee that had not yet been incurred. In other words, plaintiff argues in substance that even if the fee was *authorized,* it had not yet been *incurred* at the time the collection letters were sent. The Court agrees that the undisputed facts establish a FDCPA violation… [Defendant] had no right at that point to collect the fee.

Id.  In Pettway, the defendant represented a debt due included a lump sum assessment of legal fees and costs totaling $3,654.93. This figure included only $933.93 in actual expenses.  The bulk of the increase in the bill was explained by the addition of the balance of the flat fee and the costs, most of which had yet to be incurred.  Id., *6.

Nonetheless, Pettway held that the claims could continue past motions to dismiss even though defendant had included (in a footnote) that stated:

> The quoted legal fees and costs are estimated through the date you have requested. If you contact this office immediately prior to the time you intend to mail or deliver the funds, we will provide you with the actual legal fees and costs at that time.

Pettway, *2.  Here, no such disclaimer was made.  It is unknown, given cases like Som, Pettway, Fields, Spencer, McDermott and Gathuru, why the false statements, as pled, failed to violate the FDCPA here.  A consumer could look to the body of the foreclosure complaint, see the amount demanded as due, and reasonably believe that was the amount earned.  If the request for fees and costs were made only in the request for relief, a sophisticated consumer could know it had a responsibility to determine if they were incurred upon entry of judgment.

Finally, the reasonableness of fees is not a question of law that can be determined as a matter a law under Fed.R.Civ.P. 12(b), but are questions of pure fact.  See Pettway, *12 fn. 2 (plaintiff argues fees are unreasonable "but recognized that this argument entails issues of fact incapable of resolution as a matter of law").  In fact, whether or not a demand for attorneys' fees included fees that are incurred or not is similarly a "quintessential jury issue."  Id.  Also see Som, 349 (fee on legal work they had not yet performed could not be resolved at motion to dismiss stage, because of factual dispute as to whether they combined future attorney fees with already-incurred fees).  These are **factual** assertions that at this stage must be accepted as true.  Neither Iqbal, 684 nor Twombly, supra require further factual support for well pled (i.e., purely factual) assertions.  When there are well-pleaded factual allegations, a court (or a magistrate) must assume their veracity and then determine whether they "plausibly give rise to an entitlement to relief."  Iqbal, 679; accord, West Penn Allegheny Health System, Inc. v. UPMC, 627 F.3d 85, 98 (3d Cir. 2010), citing Twombly, 569.

> iv.   *Demanding Liquidated or Sum Certain Fees in the Body of a Foreclosure Complaint is Not Legal*

Respectfully, the Magistrate also errs in her R&R by failing to correctly identify the pled

FDCPA violations.  The Magistrate states that:

> Plaintiff does not seriously challenge the reasonableness of the attorneys' fees and costs if they are incurred and awarded at the conclusion of the foreclosure proceedings, **only that it is misleading and deceptive to inform him of those fees and costs at the inception of the proceeding** in the Foreclosure Complaint… [I]temized fixed fees and costs would not have misled or deceived the least sophisticated debtor… which may be lawfully received.  (Emphasis added[7])

R&R, pp. 23-24.  In fact, Mr. Kaymark does not challenge the potential future reasonableness of

the fees, but only challenges the fee as unincurred and, therefore, in breach of the Mortgage and

in violation of the UTPCPL.  See Wigod, supra and Corvello, supra.

The Magistrate then changes her analysis from what Udren said to what it did not say.

The body of the Foreclosure Complaint, ¶6, *inter alia*, demands:

> The following amounts are due on the said Mortgage or modification agreement **as of the date stated below**
> …
> Title Report                          $325.00
> Attorney Fees                         $1,650.00
> Property Inspection                   $75.00
> GRAND TOTAL                           $230,839.92
> The above figures are calculated as of 07/12/2012 (Emphasis added)

Hence, as of July 12, 2012, a full two **months** before the Foreclosure Complaint was filed, Udren

was demanding the full $1,650 in attorneys' fee charge was due.  It was **not** stating that this

amount was an estimate or that it was the maximum per se reasonable fee under the FNMA

servicing guide.  It simply stated that it was an amount due as of July 12, 2012.  Surely, a

---

[7] The Complaint did not purport to inform Mr. Kaymark of what charges would be at the conclusion, but  to demand from Mr. Kaymark charges that had, purportedly, accrued as of sixty days prior to commencement.

homeowner would never know whether to challenge this amount as incurred post-foreclosure, as it would never have been made aware that this amount was an estimate.

Mr. Kaymark has not argued that it is misleading or deceptive to inform him at the inception of what the fees and costs had been incurred.  To the contrary, Mr. Kaymark has argued that the foreclosing lender does not have the authority to represent those fees and costs as due and owing at all under his Mortgage.  The difference is quite significant.  While, in some other circumstances, it may be allowable to place estimated attorneys' fees and costs in the request for relief, it is certainly not allowable to represent that those fees are due and owing in the body of a foreclosure complaint under the FDCPA.[8]

Another FDCPA violation here was representing an amount owing as of July 12, 2012, could not have been owed unless and until judgment was entered.  In Shula v. Lawent, 359 F.3d 489, 492-493 (7th Cir. 2004), it was held that an FDCPA plaintiff can show a §1692f(1) violation where the money demanded was **incidental** to a claimed debt, but where fees and costs are represented to be a part of the debt owed.  As the Shula stated:

> Had it not been for the suit against Shula to collect the debt he owed the doctor, no claim for costs would have arisen. And of course there was no agreement by Shula to pay the costs and of course no debt arose by operation of law, since, as we said earlier, that **would have required the entry of a judicial order commanding him to pay the costs**. Therefore section 1692f(1) was violated as well.  (Emphasis added)

---

[8] It may be proper to ask for a sum certain for attorneys' fees and costs, in the request for relief. That sum would later be reviewed by the court, and proven to be for actual work incurred. See e.g., Hall v. Leone Halpin & Konopinski, LLP, No. 06-343, 2008 WL 608609 (N.D.Ind. Feb. 28, 2008) (making a demand in the state court complaint for fees in an amount certain or otherwise asking the state court for relief that is not categorically barred is okay -- just part of the normal judicial process).  However, here, this was not such a request for relief, could not be mistaken for such a request given its placement in the Foreclosure Complaint, but was instead a plain misrepresentation of the amount currently owing.

Id., 493.  Because the fees and costs demanded here are **incidental** to the principle debt, and not the debt itself, they are in an altogether different category than debts like unpaid principal balances and incurred or accrued interest.  See Andrews v. S. Coast Legal Servs., Inc., 582 F. Supp.2d 82, 87-88 (D. Mass. 2008) ("[h]ad it not been for the suit against [Andrews] to collect the debt [she] owed, no claim would have arisen").  Allegations that there is no mortgage contract that authorizes unincurred fees and costs, and they were not authorized by statute, state a claim for violation of the FDCPA.  Id.  See also Jessamey v. Norfolk Fin. Corp., 2006 Mass.App. Div. 82, 2006 WL 1211029, *3 (Mass.App.Div. Apr. 28, 2006) (claim for attempting to collect unauthorized fees and costs sufficient where "[t]he complaint suggest that [defendant], acting on behalf of [its principle], was not merely seeking to enforce an execution as permitted by statute, but was improperly attempting to use [the property] as leverage to compel [plaintiff] to pay unlawful fees to which [defendant] was not entitled").

Where, as here, the mortgage explicitly authorizes foreclosure fees and costs that are reasonable and incurred, but the amounts represented as due include the opposite, there is an FDCPA violation.  Mixing unliquidated fees and costs with the principle debt and/or accrued interest distorts the true amount due, and can easily mislead the least sophisticated consumer. See Hallmark v. Cohen & Slamowitz, LLP, 293 F.R.D. 410 (W.D.N.Y. 2013) (inclusion of fee, to which Defendants may not have been entitled, would serve to mislead the "least sophisticated consumer" as to the true amount of the debt); Bird v. Pressler & Pressler, L.L.P., No. 12–3007, 2013 WL 2316601, *3 (E.D.N.Y. May 28, 2013) (impermissible attempted recovery of fees, if correctly pleaded, states a claim under §1692e(2)(B)). [9]

---

[9] In footnote 6 of the R&R, it appears the Magistrate has misunderstood the debt validation process and its protections.  Debt validation is a separate and unique claim under the FDCPA. See FDCPA, §1692g.  Mr. Kaymark has brought no such claim here.  Hence, any protections

*v.    BOA's Fee Demands Were Material*

Respectfully, the Magistrate also misunderstands Mr. Kaymark's position when discussing, *in dicta*, materiality.   R&R, pp. 24-26.   Here, the Defendant-debt collector has represented the amount due and owing included attorneys' fees which were false because those fees were not incurred.   This is a very different situation from those materiality cases cited by the Magistrate.   While the Magistrate hones in on the fact that these estimated fees may, in the end, become reasonable, has nothing to do with whether the doctrine materiality would apply.

Being that the demanded fees are represented to be due as of July 12, 2012, when they are not, the demand is false and violates the FDCPA.   This case is not a case of a debt collector placing a debt that is actually due in the wrong place on its form.   Here, the debt collector has placed an amount **that is not due at all** on its form (i.e., the Foreclosure Complaint) at the time it was requested.   That representation is an FDCPA violation.   Shula, supra.

Thus, the Magistrate's reliance on cases like Hahn v. Triumph Partnerships LLC, 557 F.3d 755, 757 (7th Cir. 2009) are misplaced.   R&R, p. 24.   In Hahn, a debt collector communication was attacked for the way that it allocated interest with respect to various owners of the loan.   While the itemization was questioned, the overall sum demanded was not.   Judge Easterbrook correctly found that such a minor technical flaw was not material.   "A dollar due is a dollar due. Applying an incorrect rate of interest would lead to a real injury; reporting interest in

---

Udren seeks are for a claim that simply does not exist in this case.   Moreover, the purpose of a debt validation notice is to allow consumers an opportunity to postpone litigation until the debt is verified.   This cannot be accomplished if a collection suit has been brought simultaneously with the debt validation notice.   Hence, even if Mr. Kaymark had brought a §1692g claim, which he did not, the foreclosure suit would have negated any reason to contest the debt validation notice. Simply put, debt validation has no bearing on this case, today or in the future.   Furthermore, the initial communication at issue here was a foreclosure complaint, and congress has exempted formal pleading from the ambit of §1692g entirely.   These arguments are set forth in more detail in Mr. Kaymark's Substituted Section of the Opposition to Defendants' Motions to Dismiss, which are incorporated.   See Document 32-1, pp. 1-4.

one line item rather than another (or in two line items) harms no one and, for the reasons we have given, may well assist some people."  Hahn, 757.  Mr. Kaymark does not dispute this holding, but it has no application here.  Indeed, a dollar due is a dollar due, but what is at issue here is that Udren has demanded an amount due that is not in fact due.  This is categorically different from the technical violations cited in the materiality cases cited by the Magistrate.  The amount of the debt demanded, where it varies from what is actually owed, is the very archetype of a material debt collection violation.

Where there has been a representation that an amount is currently due, when it is not yet incurred, that creates a situation where FDCPA statutory damages may be claimed.  See Pierce, *8 fn. 4 (while defendants point to Salvati v. Deutsche Bank  Nat. Trust Co., et al., No. 12-0971, 2013 WL 1314777 (W.D.Pa. Mar. 28, 2013), appeal pending No. 13-1972 (3d. Cir. 2013) for the notion that a plaintiff must allege actual damages to prevail in an FDCPA claim, that case did not discuss the availability of actual damages in the form of emotional distress or statutory damages).  In Pierce, the court noted that:

> Defendants argue that Plaintiff has failed to state a claim because, having succeeded in the underlying collection suit, Plaintiff has not suffered any actual damages.  The Court disagrees. The FDCPA provides for the award of "actual damages, attorney's fees and costs, as well as statutory damages up to $1,000." F.T.C. v. Check Investors, Inc., 502 F.3d 159, 166 (3d Cir.2007) (citing 15 U.S.C. § 1692k(a)).
> …
> **The FDCPA does not make actual damages a prerequisite to the recovery of statutory damages**… Plaintiff here also seeks to recoup attorneys' fees expended in the underlying litigation. Therefore, the Court will not dismiss Plaintiff's FDCPA claims. (Emphasis added)

Id., *4.  In other words, as held by the Third Circuit and other courts, even if the fee incurred somehow came out to be $1,650 for every single homeowner, representing that that fee was due

and owing in the body of the foreclosure complaint, as opposed to the request for relief, is a violation of the FDCPA which calls for, at a minimum, statutory damages.

Finally, Udren makes much of the fact that Mr. Kaymark was represented in the foreclosure proceedings, and the Magistrate seems persuaded by this.  However, the United States Supreme Court was not.  Jerman v. Carlisle, McNellie, Rini, Kramer & Ulrich LPA, 559 U.S. 573, (2010).  Jerman makes it clear that this has no bearing on the viability of an FDCPA cause of action.  There is no safe harbor in the FDCPA for debt collectors to overcharge consumers represented by counsel.  See Simon v. FIA Card Servicers, N.A., 732 F.3d 259, 271 (3d Cir. 2013).

### vi.  Mr. Kaymark has Pled Additional FCEUA Claims (Against BOA), Arising Out of BOA's Misleading Act 91 Notice That Were Not Addressed in the R&R

Mr. Kaymark has pled that BOA's purported Act 91 Notice demanded an inflated sum to cure the present default [Amended Complaint, Count I], and advised Mr. Kaymark that he had only thirty days to seek the assistance of credit counselors (as opposed to the thirty-three days required by law) [Amended Complaint, Count I and Act 91, §1680.403c].  The provisions of Act 91 are no mere technicalities, but were carefully crafted to insure distressed homeowners had the clear and correct information required to potentially save their home.  The Pennsylvania Supreme Court, accordingly, strictly interprets the Act 91 notice concluding that any deviation from the required statutory content may constitute a significant defect under Act 91.  See Beneficial Consumer Discount Company v. Vukman, 77 A.3d 547 (Pa. 2013).  Just like the Pennsylvania Supreme Court in Beneficial, the agency in charge of enforcing Act 91, the PHFA, recognized that the notice requirements of Act 91 must be **strictly enforced**.  See 42 Pa.B. 5447 (Aug. 18, 2012), which provides:

> Mortgagees must send all notices required by law. Act 70 makes it very clear that **there are serious consequences when the mortgagee or mortgage servicer does not send an Act 91 notice to homeowners or sends a defective notice** (that is, one that does not meet the requirements of the form notice published by the Agency; one that does not contain all of the information required by the form of the notice; or one that contains confusing, additional, conflicting or inappropriate information). (Emphasis added)

The Act 91 defect claim here was acknowledged by the Magistrate, but not addressed by her. R&R, p. 3 (recognizing that Act 91 requires a thirty-three day notice to the homeowner of their meeting rights). The Magistrate acknowledged that the Act 91 Notice sent to Mr. Kaymark only provided him a thirty day notice.

As described above, both defects implicate the FDCPA prohibition against false, misleading, or confusing communication pursuant to the collection of a debt, and therefore are *per se* violations of the FCEUA. These claims were dismissed *sub silentio* by the Magistrate without any reasoning (or even mention). This *sub silentio* recommendation should be rejected.[10]

> vii.   *Adoption of the Magistrate's R&R Would be the Death Knell to Consumer Protection Laws in Pennsylvania*

If, as found by the Magistrate, federal consumer laws fail to protect homeowners against overcharges, as long as the charges are reasonably expected to eventually be justified, then homeowners will be less able to cure their defaults and save their home before legitimate fees mount. This would likely increase the extortion that now exists in the foreclosure industry. As

---

[10] Outside of the FCEUA counts arising out of the Act 91 notice's status as a communication pursuant to the collection of a debt, Mr. Kaymark's Mortgage (as discussed above in relation to Act 6) falls outside of the ambit of Act 91, and Mr. Kaymark accordingly has no personal claims arising under Act 91 itself. However, class members with mortgages covered under Act 91 may have additional causes of action arising more directly under Act 91, or more precisely Act 70, which amended Act 91. As the named plaintiff, Mr. Kaymark can represent homeowners who have such claims. See <u>Haas</u>, <u>supra</u> and <u>NECA-IBEW</u>, <u>supra</u>.

recognized by <u>Daniels</u>, few homeowners are in a position to object to such overcharges.  Thus, in

<u>Daniels</u>, Judge Wettick found:

> The Davis law firm also contends that courts should not permit claims under the FDCPA to be based on pleadings governing counsel fees because at the end of the day courts will determine the amount of counsel fees that are owed.
> While this will be true when the cardholder is represented by counsel, in most cases the cardholder is not represented by counsel and the inclusion in the complaint of a specific amount not expressly authorized in the cardholder agreement will frequently inure to the benefit of the assignee of the issuer of the credit card. (Footnote omitted)

Judge Wettick continued his analysis.

> Upon receipt of a complaint, some defendants will pay the full amount that is sought.  In this instance, the assignee of the credit card issuer would have collected money to which it is not entitled because of the inclusion within the complaint of an amount that is not specifically authorized by the agreement.
> Receipt of the complaint may trigger negotiations over the amount of money that the assignee of the credit card issuer will accept in order to resolve the claim.  Bargaining that includes significant counsel fees (not expressly provided for in the agreement) will differ from bargaining where a claim does not include attorney fees.
> More than 80% of credit card litigation is resolved through a default judgment.  If the complaint improperly includes claims for counsel fees that are not provided for in the credit card agreement, the amount of the default judgment will very likely include these claims for counsel fees.

Without regulating charges, this constitutes a license to extort.  <u>See</u> <u>Glover v. FDIC, et</u> <u>al.</u>, 698 F.3d 129, 142-143 (3d Cir. 2012).   Yet, the Magistrate's R&R found that such homeowners are entitled to no consumer protections even under their mortgages.

### B.  State Law Claims

> i.   The Magistrate's Findings that Each State Law Count Fails for Want of Allegation of an Ascertainable Loss Constitutes Legal Error

Mr. Kaymark's Complaint advances three counts well-grounded in state law: a Fair Credit Extension Uniformity Act ("FCEUA") count; a breach of contract count restricted to BOA (Counts I and IV); and, an Unfair Trade Practices and Consumer Protection Law ("UTPCPL") count against both BOA and Udren.  The Magistrate recommends the dismissal of all three with prejudice.  She reasons that all three counts fail to establish either of two closely related elements: an allegation of ascertainable loss and contractual damages (which are used interchangeably in the R&R).  Respectfully, these findings are erroneous.  Mr. Kaymark has plead that the encumbrance or lien on his property was inflated by specific unincurred amounts, resulting in a corresponding, precisely quantifiable, diminishment in his interest in property.

> ii.   Mr. Kaymark has Plead an Ascertainable Loss that is Neither Vague Nor Speculative and can be "Reasonably Determined, Without Conjecture" and Established with "Reasonable Certainty"

The Magistrate based her R&R for dismissal of all counts on a supposed absence of any allegation of an UTPCPL ascertainable loss or damages because cash payment of the unincurred flat fees and charges was not made.  Thus, the Magistrate completely adopted Defendants' Motions to Dismiss against Mr. Kaymark, while simultaneously overlooking contrary case law brought to her attention by Mr. Kaymark.

For example, in Grimes v. Enterprise Leasing Co. of Philadelphia, LLC, 66 A.3d 330, 336 (Pa.Super. 2013) the plaintiff asserted UTPCPL claims based on disputed rental car charges that had been charged to her by the defendant – **but which she had not paid**.  The Superior Court reversed the trial court's grant of the defendant's motion for judgment on the pleadings, rejecting the defendant's defense that the plaintiff had failed to plead an ascertainable loss and

held, "In what appears to be a classic case of "tail wagging the dog," the trial court granted Enterprise's motion for judgment on the pleadings **on the basis Grimes had no ascertainable loss, where Enterprise had stipulated that it will not seek to collect any money from Grimes**," (Emphasis added). <u>Grimes</u>, 339.   The court then rejected the view of the magistrate in interpreting the UTPCPL:

> Herein, Grimes alleges the same loss as the plaintiff in Jarzyna [v. Home Properties, L.P., 763 F.Supp.2d 742 (E.D. Pa. 2005)]. Grimes alleges that she has incurred costs and fees associated with asserting her rights and preventing Enterprise from collecting its debt. . . . In our view, this is sufficient to allege an "ascertainable loss" under the UTPCPL. **Grimes was not required under the UTPCPL to sit idly by and wait for Enterprise to collect $840.42 from her in order to assert her rights and attempt to stop Enterprise's alleged deceptive trade practices**.   (Emphasis added)

<u>Id</u>.   Yet, Mr. Kaymark's Amended Complaint forthrightly grounds his pleading of an ascertainable loss or damages on a loss in property value associated with an inflated extra value. Amended Complaint, ¶19.  That an increase in the amount required to clear a lien encumbering property constitutes a clearly ascertainable economic loss was supported in Mr. Kaymark's opposition to the current motion with substantial case law.  This body of well-reasoned case law was not distinguished or even acknowledged in the current R&R.  The Magistrate's reasoning, with respect to whether a quantifiable decrease in equity resulting from inflation of the encumbrance on a property, is an ascertainable loss that supports both Mr. Kaymark's UTPCPL and Mortgage claims, but was ignored.  Instead, the Magistrate found:

> The lien [alleged by Plaintiff to be improperly inflated] wrongly caused a diminution in the value of Mr. Kaymark's property . . . equal to the charges improperly liened against, and encumbering, his property." Amended Complaint, (ECF No. 23), at ¶¶ 18-19. As discussed above, **any "diminution in value" of Plaintiff's residential property is vague and speculative**, and is not an "ascertainable loss" resulting from the flat fees and fixed costs

included in Defendants' Notice and Foreclosure Complaint, and Plaintiff offers no direct authority to the contrary.

R&R, p. 15.[11]   Again, there was no analysis by the Magistrate.  Despite the case law, she then concluded that:

> Plaintiff has not explained how inclusion of "unauthorized" attorneys' fees and other fixed costs in … the Foreclosure Complaint **caused him any actual damages that could be reasonably determined, without conjecture**. On the contrary, given that Plaintiff has never paid such fees or costs, is vigorously challenging the foreclosure and those fees and costs, with counsel, and may never have to pay them if he is successful in state court, **it is difficult to imagine that he has sustained any actual damages from the alleged breach of the terms of the Mortgage**. Assuming, without deciding, that there was a breach of the Mortgage contract, Plaintiff has not suffered any ascertainable loss, nor has he suffered any damages that can be proven with any reasonable certainty.  (Emphasis added; Citations omitted)

Id., p. 17.   The short and direct explanation is that a payment in kind is no different than a payment in cash.  To conflate the threshold requirement of ascertainable loss (or, in the contract case, the existence of damages) with the proof of actual damages required at the remedy phase, is

---

[11] The "discussed above" referred to in this quote does not discuss why inflation of the amount needed to clear a lien on property constitutes a vague or speculative loss.  The case law cited by the Magistrate above merely recited the standard case law establishing (in part superseded) the rule that a UTPCPL claim must be supported by allegation of an ascertainable loss caused by a plaintiff's justifiable reliance on a defendant's fraudulent acts.  While ascertainable loss is admittedly required, the justifiable reliance prong is not applicable here, nor did the Magistrate apply it in any way.  This  common law fraud pleading requirement, aside from being irrelevant to whether inflation of a lien causes only a vague or speculative loss, is not applicable to counts under the FCEUA or counts under the deceptive acts provision of the UTPCPL, which have an ascertainable loss requirement, but no justifiable reliance requirement. Bennett v. A.T. Masterpiece Homes at Broadsprings, LLC, 40 A.3d 145 (Pa.Super. 2012); Grimes, supra; and, Trunzo, supra.   Also see Toth v. Northwest Savings Bank, No. GD-12-008014, pp.7-15 (C.P.Allegheny June 25, 2013) ; Belmont v. MB Inv. Partners, Inc., 708 F.3d 470, 498-500 (3d Cir. 2013); and, New-Howard v. JPMorgan Chase Bank, N.A., No. 11-2855, 2013 WL 6096232 (E.D.Pa. Nov. 20, 2013).  Furthermore, in post-contract fraud/deception cases, such as this one, the concept of justifiable reliance is inapplicable.  Michaels Bldg. Co v. Ameritrust Co., N.A., 848 F.2d 674 (6th Cir. 1988); Petro-Tech Inc. v. Western Co. of North America, 824 F.2d 1349 (3d Cir. 1987); and In re U.S. Foodservice Inc. Pricing Litigation, 729 F.3d 108, 123 (2nd Cir. 2013).

erroneous.  See D'Agostino v. Maldonada, 78 A.3d 527, 537, 541-542 (N.J. 2013).[12]   At this stage, all that must be demonstrated is that Mr. Kaymark pled the existence of an ascertainable loss (or the existence of contractual damages).  Proof of the precise amount is not necessary, just that it is greater than zero.    Questions of remedies under the UTPCPL are not currently before this Court.  Nor are questions of precise valuation of damages at issue.  See Messner, 815, 819 quoting Wal-Mart, 2558.  Compare Messner, 818 citing In re Hydrogen Peroxide Antitrust Litig., 552 F.3d 305, 311-312 (3d Cir. 2008).   Under the nearly identical New Jersey statute (Consumer Fraud Act), the New Jersey Supreme Court has determined that either "an out-of-pocket loss or **the loss of value of his or her interest in property**" [emphasis added] is sufficient to establish an ascertainable loss and, specifically, that a decline in equity satisfies the requirement. D'Agostino, 541.

The Magistrate relied on Salvati v. Deutsche Bank  Nat. Trust Co., et al., No. 12-0971, 2013 WL 1314777 (W.D.Pa. Mar. 28, 2013), appeal pending No. 13-1972 (3d. Cir. 2013), wherein Judge Schwab determined that failure to plead a cash payment is fatal to UTPCPL claim. The Salvati court, as here, refused to consider the central lien issue; whether inflation of the encumbrance on real property can constitute an ascertainable loss, actual damage or both. Rather, in Salvati, ignoring the succinct reasoning of the magistrate (Kelly, M.J.), the court concluded that the magistrate's recommendation was premised on a pleading of a cash payment, a pleading error that turned out to be erroneous, and declined to accept the magistrate's recommendation in its totality.  The Salvati court pointedly did not address Salvati's arguments with regard to whether the inflation of the lien constituted an ascertainable loss.  The failure to consider this argument and others are currently the subject of an appeal pending before the Third

---

[12] Frequently, the Pennsylvania Supreme Court looks to New Jersey.  See Beneficial, 77 A.3d 547.

Circuit.  See Salvati v. Deutsche Bank, et al., No. 13-1972 (3d. Cir. 2013).  A district judge in this district has already found Salvati to be erroneous with respect to a damage requirement under the FDCPA.  See Pierce, supra.  The Magistrate here, unfortunately, did not.

The Magistrate also relies on Benner v. Bank of America, N.A., 917 F.Supp.2d 338, 359 (E.D.Pa. 2013), which rejected the argument that a diminution of home equity due to improperly inflated mortgage debt represented an ascertainable loss.  Benner reasoned that since the property was not sold, no actual loss was realized.  But, this fails to account for the increase in encumbrance in property the inflation of the lien represents.

The equity in real property does not become valuable only when it is cashed in through sale.  Equity in property provides real economic value above and beyond potential future sale proceeds.  A homeowner with $10,000 in equity in his home can secure funds for immediate use that might not be secured otherwise.  A homeowner with $20,000 in equity can cash out through a loan and perhaps buy a car, but if this $20,000 in equity is suddenly consumed by a wrongful inflation of the lien, then the homeowner's purchasing power is diminished much as it would be if $20,000 were illegally removed from her bank account.  While the illegal lien persists, the homeowner suffers a distinct negative change in economic position just as a car owner with a Denver boot on his car suffers a negative change in position even if he does not try to sell his car with the boot on it.  The so encumbered car owner suffers a loss of the full use of his property; a clear economic loss.  It is the same as to an encumbered homeowner.  She loses the full use of the benefits attendant to owning her property.

The Magistrate's central damage contention (although not properly before this Court) is that a loss by lien resulting from inflation of the value required to clear a lien encumbering real property is  "vague and speculative" and cannot "be reasonably determined, without conjecture."

R&R, p. 17.  But there is nothing vague and speculative about such a property loss, nor does it require any conjecture to determine its amount.

If a creditor charges a homeowner one dollar in hypothetically wrongful fees, and the homeowner pays in cash, the homeowner suffers an ascertainable loss of one dollar.  If the creditor agrees to accept an apple worth one dollar as payment, the homeowner has still suffered an ascertainable loss and damage loss of one dollar.  This is because payment in goods, or (as in this case) partial ownership of property, can establish a loss just as effectively as payment in cash.  Accordingly, excess interest is broadly defined to prevent disguised interest where the lender contracts or receives any extra **value** for the loan or use of money exceeding the authorized interest or charge in a loan transaction.  See <u>Scott v. Lloyd</u>, 34 U.S. 418, 457-459 (1834) (Marshall, C.J.) (slaves); <u>Fowler v. Equitable</u>, 141 U.S. 384, 401-402 (1891) (horse).  BOA's inflated lien constitutes **extra value** or disguised interest.  <u>See</u> <u>Ernst v. Hoskins</u>, 100 Pa. 551, 557-560 (1882) (land purchase at exorbitant prices); <u>Saunders v. Resnick</u>, 16 A.2d 676, 677-678 (Pa.Super. 1940).  BOA demanded and received disguised value (interest) creating extra value for BOA, at Mr. Kaymark's expense and loss, in excess of that authorized by Mr. Kaymark's Mortgage, state law and federal law and a corresponding loss for Mr. Kaymark.

This loss is not difficult to quantify.  Without regard to any determination of the property's preexisting value, a property worth a thousand dollars after accounting for the original lien will be worth $999.00 after the lien.  If, as a result of the hypothetically wrongful one dollar charge made by a mortgage creditor, the creditor inflates the amount required to clear the lien on the subject property, the homeowner loses one dollar in the net value of his home, and has suffered an ascertainable loss valued at one dollar.  There is nothing vague here; one dollar of improper charges added to the amount to clear the lien on a property causes a loss ascertainable

to be one dollar.  If the property is sold, the proceeds will be one dollar less in order to clear the inflated lien.  If the property is used as security for a loan, it will provide one dollar less security than it otherwise would have in the absence of the lien's inflation.

The Magistrate appears to have adopted the position that Mr. Kaymark's pled loss is dependent on some future events (i.e., whether the fees will eventually be paid in cash or whether the fees will eventually be earned or incurred) that requires speculation or conjecture. But such future events are not relevant to the loss pled.  While it is true that the lien might later be reduced, or that the actual incurred charges might someday swell to the size of the lien, this does not negate that for a period of time Mr. Kaymark suffered a definite deprivation of property.

And, in any event, it would be no different if cash were at issue.  A cash payment can be refunded, or a contractor that bills (and is paid) prematurely for work not yet performed might eventually perform enough work to justify the charge.  But, this does negate damage or loss.  If a fee-for-service contractor billed for work that was not actually completed for six months, there are still contractual damages.  The counterparty was denied enjoyment of his money for six months. Though he received the principal he is still out the value attendant to the use of his money, which can easily be quantified through some interest collection, a collection which could be applied equally in the case that the deprivation was not in cash but in property.  Thus, a transient loss is no less clearly ascertainable.

If the Magistrate's apparent view was adopted, it would be impossible to ever recover on breach of contract since any defendant might cure a breach of contract through future acts all the while benefiting from its delayed performance.  Here, Defendants could inflate the value of their lien portfolio with impunity until the fees are actually (if ever) earned, receiving, effectively, a free loan.  For this reason, such breach of contract (and other claims) must be determined by the

date of the breach or violation.  DeArmitt v. New York Live Ins. Co., 73 A.3d 578, 592 (Pa.Super. 2013).  D'Agostino, 545 ("the existence of ascertainable loss resulting from a defendant's CFA violation should be determined on the basis of the plaintiffs' position following the defendant's unlawful commercial practice").

If Mr. Kaymark prevails in the foreclosure action, and it is determined that the foreclosure was improper *ab initio*, he will never be required to render a cash payment for the disputed fees.  But this does not negate the fact that for a definite period of time, Mr. Kaymark suffered a diminution of the value of his property and was constrained in his ability to fully and meaningfully enjoy his property.  For instance, he could not use his property during the intervening time to provide security corresponding to the correct value of his equity, and he could not sell his property without money being diverted to clear the improper lien.

And if Udren eventually performed work and BOA eventually incurs the fee, justifying the liquidated fees and charges demanded from the outset does not negate the fact that Mr. Kaymark suffered a diminution of his interest in his property for a definite period before the fees and costs became collectable under the Mortgage and state laws.  Thus, whatever the future holds, Mr. Kaymark suffered an ascertainable loss (namely a decline in the net value of his property corresponding to the amount of the improper fees). If a creditor had free rein to charge anything **at any time**, consumer protection laws would be worth very little.

Nonetheless, the Magistrate again ignores Mr. Kaymark's case law and reasons that:

> [G]iven that Plaintiff has never paid such fees or costs, is vigorously challenging the foreclosure and those fees and costs, with counsel, and may never have to pay them if he is successful in state court, it is difficult to imagine that he has sustained any actual damages from the alleged breach of the terms of the Mortgage.

R&R, p. 17.   The Magistrate appears to be endorsing the Defendants' defense that, since it cannot be known whether a cash payment will ever be made, whether there will be damages is dependent on conjecture.   But, this begs Mr. Kaymark's argument.   Since payment in kind has already been extracted, no conjecture about cash payment is necessary.   Currently, the amount required to clear the lien on Mr. Kaymark's property has been inflated by specific charges and fees.   This has reduced the net value of Mr. Kaymark's property in a precise way.[13]

    iii.    *Mr. Kaymark's Claims Based on the Wrongful, Inflation of a Lien Constitutes an Ascertainable Loss And Are Viable*

Other than reliance on Salvati and Benner, which do not meaningfully address the legal sufficiency of the lien inflation theory, and a conclusory assertion that the loss pled by Mr. Kaymark was vague, or dependent on conjecture or speculation, the Magistrate fails to address any of Mr. Kaymark's legal arguments supporting his lien inflation theory, finding summarily that none of it provides any direct authority.   Where an issue is one of first impression there will be no direct authority.   If no direct authority constitutes a defense, there would be little need for courts like the United States Supreme Court.   Here, aside from direct authority (Grimes, supra and D'Agostino, supra) and the United States Supreme Court decision that a temporary lien can constitute a property loss (Connecticut, supra), Mr. Kaymark, as highlighted herein, has provided substantial authority that firmly establishes the fundamental legal principle that an increase or decrease in interest in real property is routinely cognizable at law, and that a loss of interest in real property is clearly consistent with the UTPCPL's ascertainable loss requirement, and the requirement for damages under the law of contract.

---

[13] Perhaps the actual value of Kaymark's property is subject to uncertainty, but the way that the inflated lien influences the net value is nevertheless certain.   Whatever the property value was initially, it is X dollars less as a result of the inflated lien.

First, it is undisputed that an increase in debt and encumbrance constitutes a detrimental change in position for the debtor and a property interest of the creditor.  Manufacturers and Trades Trust Co. v. Luzerne County Tax Claim Bureau, 56 A.3d 36 (Pa.Commw. 2012) (a lien on property is a property interest of the creditor).  The pled damages consist of diminution of Mr. Kaymark's property interest by a lien, along with a corresponding enhancement in the position of BOA.  See, e.g., Delaware v. New York, 507 U.S. 490, 499 (1993) ("the property interest in any debt belongs to the creditor"); Case of the State Tax on Foreign-Held Bonds, 82 U.S. 300, 320 (1872) ("[D]ebts owing by corporations, like debts owing by individuals, are not property of the debtors in any sense; they are obligations of the debtors, and only possess value in the hands of the creditors. With them they are property, and in their hands they may be taxed. To call debts property of the debtors is simply to misuse terms."); Burns v. Pennsylvania Dep't of Correction, 544 F.3d 279, 286-287, 289-290 (3d Cir. 2008) (the mere threat of seizure of property was a property interest implicating due process, and noted that "the most basic of economic principles teaches that property subject to seizure-even if the probability and timing of such a seizure is unknown-possesses a lesser present day economic value than property not so encumbered" and that "[i]n the context of real property, a simple example of the relationship between an asset's value or utility and the threat of expropriation can be seen in the divergent market values of an estate held in fee simple versus an estate held subject to an encumbrance").  This case law was overlooked by the Magistrate.

The UTPCPL provides remedies to address deceptive or fraudulent practices resulting in an ascertainable loss.  UTPCPL, §201-9.2(a).  The existence of an ascertainable loss is determined by substance, not labels.  An overcharge or overpayment need not consist of money, but can consist of property.  Just as excess interest (value) can constitute an overcharge, an

excessive property interest in indebtedness (i.e., an excessive or unjustified lien) can also constitute an overcharge.  The Pennsylvania Supreme Court has recognized that transferred property interests can constitute an overcharge or usury.  See, e.g., Kelter v. American Bankers' Fin. Co., 160 A. 127, 131 (Pa. 1931) (construction contract assignment); Ernst, 553 (land purchase at exorbitant prices).

If a property loss is sufficient to establish an overpayment or detrimental change in position in other contexts established by Pennsylvania law, it should be deemed sufficient in the context of the UTPCPL, particularly in light of the Supreme Court's admonition to construe the provisions of the UTPCPL liberally.  There is no reason to believe that detrimental change in position attendant to a property loss is any less ascertainable in the UTPCPL context than it is in the myriad other contexts in which allegation of a loss of property is sufficient to satisfy the damage element.  Such a detrimental change in position, resulting from property loss, is easily quantified and is not categorically different from a detrimental change in position resulting from a cash payment.

A construction of the UTPCPL that failed to consider that property loss constitutes a judicial rewrite of the ascertainable loss element of a UTPCPL claim because the UTPCPL includes a specific remedy provision addressing **loss of property** only:

> Any person who purchases or leases goods or services primarily for personal, family or household purposes and thereby suffers any ascertainable loss of money **or property**, real or personal, as a result of the use or employment by any person of a method, act or practice declared unlawful by section 3 of this act, may bring a private action.  (Emphasis added)

UTPCPL, §201-9.2(a).  No more is required.

The Superior Court in Grimes addressed this issue and held that "as a result, because Grimes alleged that Enterprise was attempting to collect $840.42 from her through her insurer or

credit card company, and she has incurred costs and fees to prevent the same, we conclude Grimes properly pled a claim under the UTPCPL." <u>Grimes</u>, 339.

As to the contractual damages issue, BOA argues and the Magistrate agreed, that any breach of contract claim pled by Mr. Kaymark is foreclosed by the fact that no fees were actually paid in cash, leaving Mr. Kaymark unable to satisfy the damages element of a breach of contract claim relying on Fed.R.Civ.P. 8.   As with the loss requirement under the UTPCPL, no payment of cash is necessary.   <u>Bell Atlantic Corp. v. Twombly</u>, 550 U.S. 544 (2007) and <u>Iqbal</u>, <u>supra</u> only require that a plaintiff plead facts that plausibly give rise to an entitlement to relief.   Under a contractual damages perspective, these cases require only that a plaintiff plead a negative change in position as a result of the breach.   Mr. Kaymark pled that the illegal charges were made part of the Mortgage debt, and increased the amount of the lien on the underlying property.   Amended Complaint, ¶19.

**V.    <u>CONCLUSION</u>**

Respectfully, for the reasons stated above, the Magistrate's Report and Recommendation should not be adopted by this Honorable Court.

MICHAEL P. MALAKOFF, P.C.
*/s/Michael P. Malakoff*
Michael P. Malakoff, Esquire
Pennsylvania Attorney I.D. #11048
Ralph N. Feldman, Esquire
Pennsylvania Attorney I.D. #207507
Jonathan R. Burns, Esquire
Pennsylvania Attorney I.D. #315206
Suite 200, The Frick Building
Pittsburgh, PA 15219
Telephone:  (412) 281-4217
Facsimile:  (412) 281-3262
malakoff@mpmalakoff.com

*Attorneys for Named Plaintiff, Dale A. Kaymark, individually and on behalf of other similarly situated former and current homeowners in Pennsylvania*

## CERTIFICATE OF SERVICE

I hereby certify that on the **21st** day of **January**, **2014**, a true and correct copy of the foregoing **Objections to the Magistrate's Report and Recommendation** was served upon the following parties of interest via the Court's Electronic Filing System:

Andrew J. Soven, Esquire
Marc A. Goldich, Esquire
REED SMITH, LLP
2500 One Liberty Place
1650 Market Street
Philadelphia, PA 19103

Thomas L. Allen, Esquire
Nellie E. Hestin, Esquire
REED SMITH, LLP
225 Fifth Avenue
Pittsburgh, PA 15222

Jonathan J. Bart, Esquire
WILENTZ GOLDMAN & SPITZER, PA
Two Penn Center, Suite 910
Philadelphia, PA 19102

*/s/Michael P. Malakoff*
Michael P. Malakoff, Esquire