**UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

---------------------------------------------------------

DALE KAYMARK, Individually and on behalf of
other similarly situated current and former
homeowners in Pennsylvania,

                       Plaintiff,

v.

BANK OF AMERICA, N.A. and UDREN
LAW OFFICES, P.C.,

                       Defendants.

NO.  2:13-cv-00419-CRE

---------------------------------------------------------

**RESPONSE OF DEFENDANT UDREN LAW OFFICES, P.C. TO PLAINTIFF'S**
**OBJECTIONS TO THE MAGISTRATE'S REPORT AND RECOMMENDATION**

       Defendant Udren Law Offices, P.C. ("Udren"), by its undersigned counsel, hereby

responds to the Objections filed by Plaintiff Dale A. Kaymark ("Kaymark") to the Report and

Recommendation of the Honorable Cynthia Reed Eddy, U.S.M.J. dated December 11, 2013 (the

"R&R").

## I.  PRELIMINARY STATEMENT

       This case is a manifestation of what has been characterized as a "cottage industry"

which has sprung up to capitalize on the attorney fee provisions of the Fair Debt

Collection Act.  *Federal Home Loan Mortgage Corp. v. Lamar*, 503 F.3d 504, 513 (6th

Cir. 2007).  *Also see, Jerman v. Carlisle, McNellie, Rini, Kramer & Urich, L.P.A.*,

55905573, 617 (2010) (Kennedy, J., dissenting).  Faced with a mortgage foreclosure suit

as to which there is no defense on the merits, in order to create leverage, a foreclosure

defendant in this case has manufactured an FDCPA claim based upon an alleged "error"

in the foreclosure complaint.  In so doing, he ignored an FDCPA Validation Notice

giving him the right to dispute the computation of the debt, as well as ignore the fact that by entering an appearance of counsel and contesting the foreclosure, he has done <u>exactly</u> what the FDCPA intends - - put the consumer on the same level of expertise as the lender and allow him to defend himself.

In this case, Udren, on behalf of its client, Bank of America, N.A. ("BOA"), filed a foreclosure complaint which Kaymark frankly admits is meritorious.[1]  That foreclosure complaint was served with an FDCPA Validation Notice, giving Kaymark the opportunity to dispute the amount of his debt and obtain verification thereof.  *See*, Exhibit "B" to Amended Complaint at p. 5.  Absent such a dispute, the Validation Notice provided, consistent with the express language of the FDCPA, that Udren (in its role as debt collector) would assume (and have the right to assume) that the debt was valid.  15 U.S.C. §1692g(a)(3).

Seeking leverage for his foreclosure defense, and despite being represented not by one (1), but two (2) sets of attorneys[2], Kaymark ignored the Validation Notice, proffered no dispute which might easily have been resolved and filed a putative class action complaint alleging that the foreclosure complaint violated Pennsylvania's Loan Interest and Protection Law ("LIPL").  After a motion to dismiss was filed correctly pointing out that Kaymark's mortgage exceeded the maximum face amount to fall within LIPL, the current amended complaint was filed with a completely different theory.  As to Udren, Kaymark asserts that the allegation in the foreclosure complaint that the "figures" setting forth his mortgage obligations stated to be "calculated as of 07/12/2012", somehow is

---

[1] *See*, Amended Complaint, ¶¶5-6 (admitting payment default and inability to cure).
[2] The Law Firm of Michael P. Malakoff, P.C. and the Law Office of Lance Denha (foreclosure action).

false and misleading as to the least sophisticated consumer because as of that date, attorneys fees were not yet incurred.[3]  Whether or not the least sophisticated consumer might could be confused by this (and certainly the answer is "no" as properly determined in the R&R), Kaymark was not confused.  He obtained counsel and entered a defense to the claim.  As noted in the R&R, Kaymark is represented by counsel and contesting the foreclosure.  *See*, R&R, p. 1.  And, as demonstrated in the foreclosure complaint and answer (Exhibits "A" and "B" hereto), Kaymark has denied the allegations pertaining to the computation of the debt.  *See*, Complaint, ¶6 and Answer, ¶3.  As this Court will notice immediately, that Answer denies the allegations of Paragraph 6 of the Complaint, containing the allegations of default, including the attorneys fees.  Therefore, there can be no question that at a minimum, <u>Kaymark</u> understood the purpose of the Complaint and was not confused or misled about the allegations.  Rather, he knew to retain counsel and defend his interests.  The purpose of the FDCPA is not to create a damages cause of action for any inaccuracy in a pleading, however immaterial.  Rather, it is designed to prevent confusion and compulsion.

The very purpose of a pleading under Pennsylvania's fact pleading system is to "define the issues [and] <u>every</u> act or performance essential to that end must be set forth in the Complaint," in order to "give the defendant notice of what the plaintiff's claim is and the ground upon which it rests, <u>thus allowing the defendant to prepare a defense</u>." *Santiago v. Penn Nat'l Mut. Cas. Ins. Co.*, 418 Pa. Super. 178, 185, 613 A.2d 1235, 1238 (1992); *Sevin v. Kelshaw*, 417 Pa.Super. 1, 7, 611 A.2d 1232, 1235 (1992).  Kaymark

---

[3] Kaymark does not dispute that the attorneys fees sought in the Complaint were the fees allowed under Fannie Mae regulations.  *See*, Exhibit "C" hereto.

understood the allegations and claims in the foreclosure complaint, for he obtained counsel; answered the complaint and that action remains in litigation.  Following the dictates of the Pennsylvania Fact Pleading System, Udren drafted and filed a Complaint which sets forth the events of default under the mortgage and the amount to be sought by way of an *in rem* judgment after trial.  Now, after amending his initial Complaint based on a facially invalid theory, Kaymark seeks to play "gotcha" with respect to an allegation in the Foreclosure Complaint that the amounts due under the mortgage (clearly referring to the mortgage interest, which specifically is identified by date)  were calculated as of a date prior to the filing of the Complaint.  He asserts that this somehow "confused" him, although he cannot articulate how this would be confusing to the least sophisticated consumer who follows the instructions in the Complaint to obtain a lawyer and file an answer setting forth his or her defenses.  Indeed, Kaymark took just that route, as he obtained counsel and filed an Answer.  *See*, Report and Recommendation at p. 1.  The claims set forth in the Amended Complaint are wholly without merit and the R&R properly recommended dismissal.

## II.   <u>STANDARDS FOR THE CONSIDERATION OF THESE OBJECTIONS</u>

Where objections to a Magistrate Judge's Report and Recommendation are filed, the Court must perform a *de novo* review of the contested portions of the Report. *Supinski v. United Parcel Services,* 2009 U.S. Dist. LEXIS 3143 (M.D.Pa. 2009) (at *6), *citing, Sample v. Diecks*, 885 F.2d 1099, 1106 fn.3 (3d Cir. 1989); 28 U.S.C. §636(b)(1)(C).  Although the review is *de novo*, the Court is permitted to rely upon the Magistrate Judge's proposed findings and recommendations to the extent it, in the

-4-

exercise of sound discretion, deems proper.  *Id*.  In this regard, Local Rule 72(D)(2) requires "written objections which shall specifically identify the portions of the proposed recommendations or report to which objection is made and the basis for such objection." As to those portions of a Report and Recommendation to which no specific objection has been posed, the Court need only satisfy itself that there is no "plain error" on the face of the record.  *Markel Am. Ins. Co. v. Leonor Veras,* 2014 U.S. Dist. LEXIS 17957 (D.P.R. 2014) (at *3).

### III.   FACTUAL BACKGROUND

The inquiry begins with the mortgage itself which is appended as Exhibit "C" to Kaymark's Complaint.  That mortgage is in the original principal amount of $245,600.00. *See*, Exhibit "C" to Complaint at p. 3.  The mortgage specifically provides that in the event of default, the Lender may charge Borrower fees for services performed in connection with Borrower's default, including but not limited to attorneys fees, property inspections and valuation fees.  Mortgage, ¶14.  Kaymark, by his own admission, defaulted under the mortgage.  *See*, Amended Complaint, ¶¶5-6 ("Kaymark was unable to maintain his monthly mortgage payments, "and" Mr. Kaymark has since been unable to replace his lost income and catch-up on his arrearages.").

Based on this default, on September 13, 2012, Udren on behalf of BOA filed a Foreclosure Complaint in the Court of Common Pleas of Allegheny County.  *See*, Amended Complaint, ¶15.  A copy of the foreclosure complaint, of which this Court may take judicial notice, is attached as Exhibit "A."  The Foreclosure Complaint sought an *in rem* judgment of $230,839.92, consisting of the unpaid principal balance, accumulated

interest relating to Kaymark's non-payment of his mortgage for one year, late charges, escrow deficiency and attorneys fee of $1,650.00, title report fees of $325.00 and property inspection fees of $75.00.  *See*, Amended Complaint, ¶16 and Exhibit "A" hereto.  While paragraph 17 of the Amended Complaint alleges that the Foreclosure Complaint somehow violated the Pennsylvania Rules of Civil Procedure because of "the rule that any documents relied upon must be attached."  Pa.R.Civ.P. 1019(i) (Complaint, ¶17), that is a conclusion of law which is not entitled to deference.  It also is wrong.  Rule 1019(i) of the Pennsylvania Rules of Civil Procedure provides that where a **claim** is based on a writing, the writing must be attached to the Complaint.  The writing relied upon is the mortgage, which <u>was</u> attached.  A party does not have to plead or attach all his evidence to satisfy this rule.  *See, Maleski by Taylor v. DP Realty Trust*, 653 A.2d 54, 65 (Pa. Cmwlth. 1994) ("Pennsylvania Rules do not require the pleading of evidence"); *Demsi Uniform and Linen Supply, Inc. v. Gracie Baseball LP*, 2011 Pa. Dist. & Cnty. Dec. LEXIS 594 (CCP. Lackawanna Co. 2011) (at *19) (same).[4]

Similarly, Plaintiff alleges that the "loan contracts" prohibit flat rate attorneys fee demands in mortgage foreclosure complaints or demands for fees for services never rendered.[5]  This too is a conclusion of law since the Note and Mortgage both authorize the charging of reasonable fees and costs in enforcing the Note.  There is no law

---

[4] Pennsylvania Rule of Civil Procedure 1147 sets forth the requirements for the contents of a complaint in mortgage foreclosure.  The Rule provides that the plaintiff must identify the parties to and date of the mortgage, a statement of the place of record of the mortgage and assignments; a description of the land subject to the mortgage.  There is no requirement that <u>any</u> other document be attached to the complaint.
[5] This is nothing more than an attempt to re-word plaintiff's original allegation that this violated the LIPL.  Since the LIPL does not apply to this mortgage, plaintiff now simply alleged that flat fees are prohibited by the "loan contracts."  Not surprisingly, there is no citation to the provision of the "loan contracts" containing such a prohibition.  To the contrary, the Mortgage <u>specifically</u> permits BOA to recover attorneys fees and costs and Kaymark acknowledges, as he must, that the foreclosure complaint merely sought to recover Fannie Mae-set attorneys fees for a foreclosure case.

<u>anywhere</u> that flat fees, especially those mandated by Fannie Mae, are illegal or unreasonable.

Nonetheless, Kaymark alleges that the mere allegation of *in rem* damages including title report fees, attorneys fees, and property inspection fees are "unreasonable" or prohibited by "the loan contracts governing the debt at issue" (Amended Complaint, ¶35) and thus "inflated" Kaymark's account balance in the Foreclosure Complaint. Amended Complaint, ¶36. Those were the <u>only</u> factual allegations as against Udren.[6] Thus, the sole legal basis for a case alleged to affect a "numerous" class exceeding 5000 homeowners is that Udren alleged in a Foreclosure Complaint that its client was owed attorneys fees, property inspection fees and title insurance fees, all of which are specifically authorized charges under the mortgage. The foreclosure action has been contested and remains pending in the Court of Common Pleas of Allegheny County. Plaintiff's theory is that he may assert class action allegations against an attorney whose sole action complained of is the filing of a legal pleading which is admitted to be meritorious. Moreover, Kaymark does not and cannot deny that he holds a Fannie Mae mortgage and that the attorney fee component of the amount sought in the complaint is exactly what Fannie Mae sets as the allowable attorney fee (Exhibit "C" to motion to dismiss and reprinted here as Exhibit "C."). Thus, Kaymark's arguments boil down to the assertions that (1) flat fees set by Fannie Mae are illegal under Pennsylvania law, (2) that a straightforward foreclosure complaint informing a debtor of the Lender's claims and informing him to obtain a lawyer somehow is confusing to the least sophisticated

---

[6] In that Kaymark does not set forth specifically how they violate the "loan contracts," it is submitted that the Magistrate's decision should be reviewed under the "clear error" standard.

consumer, (3) that he may sue a debt collector simply for alleged errors in a pleading without disputing the debt as required by 15 U.S.C. §1692g and (4) that the filing of a complaint constitutes some form of "lien" amounting to an ascertainable loss despite the absence of payment. These theories are frivolous on their face. Yet that is all that was presented to the Magistrate as the basis for this claim. The well-reasoned Opinion of Judge Eddy was correct in all aspects and should be confirmed. Because BOA has addressed Kaymark's his theories regarding ascertainable loss, Udren incorporates those responses and will focus here on the FDCPA claims and attorney considerations for a claim under the Unfair Trade Practices Act.

IV.   **ARGUMENT**

    A.    **The Foreclosure Lawsuit May Not Constitute The Basis For An FDCPA Claim Under The Facts Alleged In The Complaint**

As a general matter, a lawsuit, standing alone, is not grounds for a federal action under the FDCPA. *Gonzalez v. Erskine,* 2008 U.S. Dist. LEXIS 109928 (S.D.Fla. 2008) (at *3 (and cases cited therein). It is proper for a collection law firm to file a Complaint and the Defendant has the right to challenge the claim or seek details about the claim through formal pleadings or discovery. *Id.* Indeed, there is a substantial body of law, emanating from the Federal Trade Commission 1989 commentary stating that "a debt collector's institution of a formal legal action against a consumer (including the filing of a Complaint or service of legal papers by an attorney in connection with a lawsuit to collect a debt) . . . is not a communication in connection with the collection of any debt", (53 F.R. 50097, 50100, 50101, 50108) and holding that allegations in the Complaint simply are not communications which can support an FDCPA claim. *See, McKnight v.*

*Benitez*, 176 F.Supp. 2d 1301, 1305-06 (M.D. Fla. 2001) (and cases cited therein).  While admittedly, there have been decisions basing liability on allegations of damages in legal complaints, they appear all to have arisen in the revolving credit context and involve claims that a law firm unilaterally demanded fees on a percentage basis where the credit agreement permitted "reasonable fees."  *See*, discussion at p. 8, *infra*.  No cases have been cited by Kaymark arising out of a mortgage foreclosure.  Accordingly, no FDCPA claim should be based upon the mere filing of a Foreclosure Complaint, standing alone.

In a recent decision, the Second Circuit took on directly the issue of whether FDCPA claims may be based upon alleged errors in foreclosure complaints.  *See, Gabriele v. American Home Mortgage Servicing, Inc.,* 2012 U.S. App. LEXIS 24478 (2d Cir. November 22, 2012).  In *Gabriele*, the Plaintiff brought an FDCPA claim based upon the lender's attorney's pleadings and procedures in a state court foreclosure action. While noting that statements made and actions taken in furtherance of a legal action are not in and of themselves exempt from liability under the FDCPA, the Court held that alleged misstatements in a Foreclosure Complaint and premature attempts to obtain a default judgment did not constitute a violation of the FDCPA.  The Court noted, in particular, as is the case with this claim, the foreclosure Defendant (Plaintiff in the FDCPA suit) was represented by counsel and thus, filings, even if false, would not have misled the least sophisticated consumer, **"particularly represented by counsel."**  As the Second Circuit stated, "within the context of an adversary proceeding in state court between two represented parties, these allegations simply do not state plausible claims under the FDCPA."  In so ruling, the Second Circuit went further and noted that the

purpose of the FDCPA was not to provide an alternate remedy when the debt collector

has asserted its client's claim in a legal proceeding, in which the debtor has all of the

protections afforded to it under that statutory scheme.  As declared by the Second Circuit:

> As we have recognized in past decisions, the protective
> purposes of the FDCPA typically are not implicated "when
> a debtor is instead protected by the court system and its
> officers." *Simmons v. Roundup Funding LLC,* 622 F.3d 93,
> 96 (2d Cir. 2010) (holding that inflated proof of claim in
> bankruptcy court cannot form basis of FDCPA action).  In
> Connecticut, the state foreclosure process is highly
> regulated and court controlled.  *Derisme v. Hunt Leibert
> Jacobson, P.C.,* 2012 U.S. Dist. LEXIS 101922 (D.Conn.
> July 23, 2012).  When that is the case, the state court's
> authority to discipline will usually be sufficient to protect
> putative debtors like Gabriele from legitimately abusive or
> harassing litigation conduct.

*Id.* at *14 fn.1.  *Accord:  Pellachia v. One West Bank, FSB*, 2013 U.S. Dist. LEXIS

(D.Conn. 2013) (at *14) ("Because litigants in state court already enjoy myriad

procedural and substantive protections from fraudulent and deceptive practices, resort to

the FDCPA is unnecessary."); *Derisme v. Hunt Leibert Jacobson, P.C.*, 2013 U.S. Dist.

LEXIS 38967 (D.Conn. 2013) (at *5) (citing *Garbriele* for the proposition that "the filing

of a state foreclosure action did not constitute the kind of abusive debt collection

practices proscribed by the FDCPA."); *Cocco v. Bank of Amer. Home Loans*, 2012 U.S.

Dist. LEXIS 173663 (N.D.N.Y. 2012) ("Plaintiffs' interest in the property can be (or

should have been) protected through any foreclosure proceeding").

As is the case in Connecticut, Pennsylvania's foreclosure practice is tightly

controlled and subject to specific rules under the Pennsylvania Rules of Civil Procedure.

*See*, Pa.R.C.P. 1141-1150; *Delaware Trust Company v. Amrit Lal*, 1997 U.S. Dist.

LEXIS 6212 (E.D.Pa. 1997) (at *10) ("in Pennsylvania mortgage foreclosure is governed

by the Rules of Civil Procedure, the requirements of which must be strictly followed.");

*First Fed. Savings & Loan Association v. Porter,* 408 Pa. 236, 183 A.2d 318, 324 (1962)

(same).  Kaymark was and is represented in the underlying and pending foreclosure

action by competent counsel and has all of the protections of the Pennsylvania Rules of

Civil Procedure and the Court's control over attorney conduct.  The purpose of a lawsuit

is not "unfair or unconscionable"; rather, it is designed to allow a court to resolve a

contested issue.  *Beeler-Lopez v. Dodeka*, 711 F.Supp. 2d 679, 682 (E.D.Tex. 2010).

        The <u>only</u> two cases involving pleadings cited by Kaymark in support of his

position involve percentage fees unilaterally sought by attorneys in credit card litigation

where the credit card agreement merely calls for reasonable fees.  *See, Pierce v. Calvary*

*SPVI, LLC*, 2013 U.S. Dist. LEXIS 178572 (W.D.Pa. 2013) (credit card case in which

consumer alleged that card agreement did not allow for collection of attorneys fees or

percentage fees the consumer was charged); *Som v. Daniels Law Offices, P.C.,* 573

F.Supp.2d 349 (D.Mass. 2008) (percentage fee may not be authorized where credit card

agreement authorized actual costs only).  The other cases cited by Kaymark do not arise

out of legal pleadings.  *See*, *Pettway v. Harmon Law Offices, P.C.,* 2005 U.S. Dist.

LEXIS 21341 (D. Mass. 2005) (involved reinstatement and payoff letters - - not litigation

pleadings - - in which attorneys fees were improperly lumped with other charges; *Fields*

*v. Wilbur Law Firm, P.C.,* 383 F.2d 562 (7th Cir. 2004) (dunning letters lumping debt and

attorneys fees violates FDCPA - - specifically authorized debt collector to specify a fee

without obtaining court determination as to the reasonableness); *Spencer v. Henderson-*

*Webb, Inc.,* 81 F.Supp. 2d 582 (D.Md. 1999) (dunning letter charging for attorney fees when no attorney worked on cases violates FDCPA).

Not a <u>single</u> case is cited by Kaymark addressing the issue here, whether the a foreclosure complaint which seeks recovery of the <u>actual</u> fees permitted by Fannie Mae violates the FDCPA.  Udren did <u>not</u> unilaterally determine the fees charged, as in the two cases cited by Kaymark.  Rather, they were set by Fannie Mae pursuant to regulation. There is no law supporting Kaymark's argument that a foreclosure complaint may not seek the <u>actual</u> fees dictated by Fannie Mae regulations.  Accordingly, no claim lies under the FDCPA based solely on the allegations of the intent to collect actual legal fees in a Complaint in a foreclosure action

**B.**    **Even If Allegations In A Foreclosure Complaint Are A Sufficient Basis To State An FDCPA Claim, It Is Not Stated In This Case:**

Another way of analyzing whether FDCPA claims are stated by allegations in a Foreclosure Complaint seeking recovery of attorneys fees and costs specifically permitted in the loan documents may be ascertained by a review of the necessary elements of the FDCPA claims alleged in the Amended Complaint.  Those claims include alleged violations of 15 U.S.C. §1692e(2)(a), e(5) and e(10), as well as 15 U.S.C. §1692f(1). *See*, Amended Complaint, ¶¶36-37.  As Kaymark acknowledges in paragraph 37 of the Amended Complaint, a claim under Section f(1) requires credible allegations that the defendant had no legal right, either under Pennsylvania law or the loan documents to seek recovery of legal fees, inspection costs and title costs.  As noted above, the Mortgage <u>expressly</u> provides for the recovery of actual attorneys fees, inspection fees and costs. Mortgage, ¶14.  There can be no dispute of that.  Additionally, Kaymark simply invents

-12-

the motion that the use of flat attorneys fees set by regulation somehow is unreasonable. There is no law <u>whatsoever</u> to support this contention and the cases cited by plaintiff involve demands for percentage fees not "flat fees".  Moreover, this proposition is absurd on its face.  There is no conceivable circumstance under which an attorney charging an hourly fee would or could charge less than $1,650.00 were it charging by the hour for a highly contested foreclosure action and a percentage fee, as seen in the few cases cited by Kaymark amount to 15% or more, which would equate to over $40,000 in this case. Moreover, the $1,650.00 is a fee set by government regulation - - not Udren.[7]

Though no Third Circuit Court of Appeals decision has yet ruled on this specific issue, at least three other circuits have found that in order to be actionable under Section 1692e, an allegedly false or misleading statement must have been material.  *See, Hahn v. Triumph Partnerships LLC,* 557 F.3d 755, 757-58 (7th Cir. 2009); *Miller v. Javitch, Block & Rathbone,* 561 F.3d 588, 596 (6th Cir. 2009); and *Donohue v. Quick Collect, Inc.,* 592 F.3d 1027, 1033-34 (9th Cir. 2010).  This analysis has been adopted by several district courts in Pennsylvania.  *See, Kromelbein v. Envision Payment Solutions,* 2013 U.S. Dist. LEXIS 107762 (M.D. Pa. 2013) (at *24-25) ("Although the Third Circuit has not yet addressed the matter, several courts in this circuit have read a materiality requirement into §1692 [citing cases]"); *Rogozinski v. NCO Financial Systems, Inc.,* 2012 U.S. Dist. LEXIS 153894 (E.D.Pa. 2012); *Lorandeau v. Capital Collection Services*, 2011 U.S.

---

[7] The mortgage is a Fannie Mae-Freddie Mac Mortgage.  *See*, Exhibit "C" hereto showing the current Fannie Mae allowable attorney and trustee foreclosure fee schedule, which indicates that for Pennsylvania, the judicial foreclosure fee is a flat $1,650.00.  It is frankly outrageous for Kaymark to contend that a statutorily administered flat fee is either illegal or violative of the contract which permits recovery of reasonable attorneys fees.  Kaymark's  theory would necessarily be that all Fannie Mae mortgage foreclosures involve the imposition of unreasonable fees.  This is on its face frivolous.

Dist. LEXIS 101994 (E.D.Pa. 2011) (at *8).  Under this doctrine, an immaterial statement which is false in some technical sense will not mislead the unsophisticated consumer and does not violate the FDCPA.  *Rogozinski, supra* (at *16).  Under this body of law, statements are materially false and misleading only if they influence a consumer's decision or ability to pay or challenge a debt.  *Walsh v. Law Offices of Howard Lee Schiff, P.C.,* 2012 U.S. Dist. LEXIS 136408 (D.Conn.2012) (at *12-13); *Also see, Okyere v. Palisades Collection LLC*, 2013 U.S. Dist. LEXIS 40840 (S.D.N.Y.2013) (at *27).

  Here, there is nothing alleged in the Complaint to plausibly suggest that the date of the calculation for attorneys fees and costs in a foreclosure complaint had any material effect on Kaymark's ability to challenge the debt or the process used to collect it.  He would have done nothing differently had the complaint excluded attorneys fees from the date of calculation reference.  Kaymark and the least sophisticated consumer would take the complaint to a lawyer and answer the complaint.  In fact, Kaymark did participate in the state court process and has contested the foreclosure from the start.  Accordingly, the date of the calculation of attorneys fees and costs in the foreclosure complaint was in no way "material" to any action taken or not taken by Kaymark in the underlying foreclosure case.  Under the long line of cases that has now developed under Section 1692e, the alleged pleading "defect" (i.e., alleging that damages were calculated before the attorneys fees and costs were incurred) therefore is not material and no claim under Section 1692e is therefore viable.

  The only other section of the FDCPA identified in the Complaint, 1692f(1) requires that in order to state a claim, a plaintiff must allege that the specific fees

-14-

demanded in the Complaint were not permitted under the loan documents or applicable

law.  15 U.S.C. §1692f(1); *Shami v. National Enterprise Systems*, 2012 U.S. Dist. LEXIS

182349 (D.Nev. 2012) (at *7).  Thus, in *Owens v. Howe,* 2004 U.S. Dist. LEXIS 22728

(N.D.Ind. 2004) the defendant attorney filed a complaint on behalf of his client seeking

$10,601.71 in principal, pre-judgment interest of $2,643.51 in interest and $2,125.00 in

attorneys fees.  The plaintiff filed an FDCPA claim under Subsection 1692f(1), arguing

that the defendant failed to attach to his state court complaint any agreement specifically

entitling him to an award of fees and that the amount of fees sought was not specifically

authorized by the agreement.  The Court rejected both claims, stating as follows:

> The problem with this first argument is that it attempts to
> engraft Indiana procedural rules, *see* Ind. T.R. 9.2(A), onto
> the requirements of the FDCPA.  As we followed the
> argument, Owens contends that Indiana procedure requires
> that the financing agreement be attached to the state court
> complaint, and when it was omitted, the Act was violated
> because there was no "agreement" expressly authorizing
> fees, Section 1692f(1), and without an agreement, any
> claim for them violated Section 1692e(2)(A).  This
> argument overlooks, however, that reasonable attorneys
> fees were in fact "expressly authorized by the [financing]
> agreement," Section 1692f(1) and were therefore a
> legitimate element of LCC Receivables' claim.  Since
> reasonable attorneys fees were "expressly authorized",
> Howe did not falsely represent their legal status
>
> . . .
>
> Owens further argues, however, that even if Howe had
> attached the agreement to the state-court complaint, he still
> violated the act by claiming entitlement to $2,125.00 in
> attorneys fees, a specific amount not "expressly authorized
> by the agreement", Section 1692f(1) as opposed to an
> amount to be determined by the state court, and that this
> misrepresented the "amount" or "legal status" of the debt in
> violation of 15 U.S.C. §1692e(2)(A).

-15-

In *Fields* [v. *Wilber Law Firm, P.C]*., 383 F.3d 562, 565 (7th Cir. 2004), the Seventh Circuit rejected the notion that debt collectors must seek court approval for a specific amount of attorneys fees before including them in an account balance.  While the Court there was speaking in the context of a collection letter, the same reasoning applies to Howe's state court complaint.  **In short, debt collectors are not obligated to go to court to fix the amount of fees every time they seek to enforce a contractual provision for them.  (Id.).  Similarly here, to follow Owen's reasoning, a debt collector could never recite a specific amount for fees in a complaint until he obtained both a judgment and specific court approval of them.  As in *Fields*, the Act does not require such an extraordinary result.  All that is required to comply with Section 1692e(2)(A) and 1692f(1) is that there be some basic itemization of the various charges that comprise the total amount of debt, *id.* at 566, and since that is what Howe did here, his complaint did not violate the Act on that basis.  If, however, what Owens is arguing is that since the financing agreement did not specify attorneys fees in the exact amount being sought, and because Howe is now seeking that specific amount, he violated the Act, that too, is unpersuasive.  All that is required is that the debt collector state his fees in his communication to the debtor; the act does not require that the underlying agreement anticipate and specify a specific fee. *Id.* at \*44-45.**

*Owens*, is directly on point in this case.  The underlying note and mortgage both permit BOA to charge reasonable attorneys fees, costs and expenses of enforcing the note.  *See*, Exhibit "C" to Amended Complaint (Mortgage t ¶14).  The admitted default of Kaymark under his mortgage required BOA to engage counsel to obtain or  perform property and title inspection/searches and draft a complaint, which caused BOA to incur liability for attorneys fees.  The attorneys fees charged not only are *per se* reasonable, as they are set by Fannie Mae and not Udren, but as discussed above, the mere request for fees in a complaint doe not state a claim under Section 1692f(1).  Accordingly, all of the

-16-

substantive FDCPA claims are without merit, even were the court to conclude that a mere

pleading in a foreclosure case is a sufficient basis upon which a plaintiff may ground an

FDCPA complaint.

> **C.     A Debt Collector Incurs No Liability When It Complies With the Statutory Validation Notice**

The FDCPA sets forth a detailed procedure for disputing the validity of a debt.

*Bleich v. Revenue Maximization Group, Inc.,* 233 F.Supp. 2d 496, 500 (E.D.N.Y. 2002).

The consumer is given the immediate opportunity to dispute the debt and upon the

making of a request for debt verification, all collection efforts must cease.  *Id., citing,* 15

U.S.C. §1692g(a).  The debt validation procedure must be clearly communicated to the

consumer and courts are loathe to allow debt collectors to vary from or contradict the

statutory notification.  Indeed, the failure to communicate clearly of the validation

procedure forms the basis of many FDCPA lawsuits.  *Id*. at 500, and cases cited therein.

In this case, Plaintiff acknowledges that he received a Validation Notice with his

Complaint.  *See*, Exhibit "B" to Complaint at p. 4.  There is no allegation that he

thereafter invoked the statutory procedure to dispute the debt.  Where, as here, a

Validation Notice is sent and received, the debt collector can incur no liability as a matter

of law where it has complied with the debt validation procedure set forth in the FDCPA.

*McLaughlin v. Phelan Hallinan & Schmieg*, 2011 U.S. Dist. LEXIS 41175 (W.D.Pa.

2011) (at *9), *clarified*, 2011 U.S. Dist. LEXIS 146280 (W.D.Pa. 2011) (at *2-3) (unless

Plaintiff follows the statutory procedure, he cannot base an FDCPA claim upon a

challenge to the validity and amount of the debt.).  As noted by the Court in *Bleich*,

supra:

-17-

> [There is no question that Revenue's letter to plaintiff contained a proper Validation Notice.  There is also no question that plaintiff chose to ignore the debt validation procedure in favor of filing an immediate lawsuit.  Had plaintiff exercised her rights under the FDCPA to obtain debt verification, it is entirely likely that litigation would have been avoided.  Indeed, this is likely the reason Congress chose to include the debt validation procedure in the Act.  The specific procedure for debt validation must have been intended to avoid FDCPA litigation based solely on the debts validity as communicated . . . by the creditor. . . .
>
> Revenue's collection letter was in full accord with the requirements of the FDCPA and therefore cannot constitute a false or misleading action in violation of the statute. . . . Revenue can incur no liability where it has complied with the debt validation procedures set forth in the FDCPA - - even if the actual debt is not in arrears.  *Id*. at 500-501 (emphasis added).

*Accord., McLaughlin, supra; Jang v. A.M. Miller & Associates*, 122 F.3d 480, 483-84 (7th Cir. 1997) (where the required debt validation notice is sent, no FDCPA "false and misleading collection letter" cause of action is stated); *Taylor v. Midland Credit Mgmt.,* 2008 U.S. Dist. LEXIS 14328 (at *8) (W.D.MI. 2008) ("where a debt collector has included appropriate language regarding the FDCPA debt validation procedure, the allegation that the debt is invalid, standing alone, cannot form the basis of a lawsuit alleging fraudulent or deceptive practices in connection with the collection of a debt."); *Becker v. Genesis Financial Services,* 2007 U.S. Dist. LEXIS 86152 (at *19) (E.D. Wash. 2007) (following *Bleich* and holding where a proper FDCPA debt validation letter is sent, the allegation that the debt is invalid standing alone cannot form the basis for a lawsuit). In *Lindberg v. Transwoprdl Systems, Inc.,* 846 F.Supp. 175, 179 (D.Conn. 1994), the Court held as follows:

-18-

> "[u]nder Section 1692g, the debtor bears the responsibility to notify the debt collector of facts which the debt collector would not otherwise be aware . . . the plaintiff has nowhere alleged that defendant failed to comply with the requirements of Section 1692g.  Indeed, the record demonstrates the contrary. . . . Furthermore, the plaintiff has not offered any explanation as to why he did not dispute his debt and demand verification in the manner envisioned by Section 1692g or why defendant should not have assumed that the debt was valid by dint of the plaintiff's failure to respond in a timely fashion to its first communication. . . . On this record, the court can only wonder why the plaintiff has chosen to impose the significant burden of litigation on both the defendant and this court, instead of following the cost-effective procedure provided by the FDCPA specifically designed to facilitate the exchange of information between debt collectors and debtors.".

*Id.*

As was the case in *McLaughlin, Bleich, Becker, Lindbergh* and the other cases cited above, Kaymark was given the opportunity to contest the statement of the debt set forth in the Validation Notice and fails to allege that he has done so.  Having failed to avail himself of the statutory procedure for resolving disputes at the Validation Notice stage, Kaymark is barred from commencing suit under the FDCPA for alleged errors concerning the debt in the Complaint.

For all three of these reasons, the FDCPA claim asserted against Udren is wholly without merit and should be dismissed.

## V.   KAYMARK'S UPTCPL CLAIMS FAIL TO STATE ANY VIABLE CAUSE OF ACTION

Count III of the Complaint alleges claims arising under the UTPCPL against both Udren and BOA.  The claims against Udren are based solely upon the filing of pleadings

-19-

#7319055.1(148845.009)

in a state court lawsuit.  Under the Pennsylvania Supreme Court's ruling in *Beyers v. Richmond, supra*, 937 A.2d at 1091, disciplinary enforcement pursuant to the Pennsylvania Rules of Professional Conduct constitutes the exclusive remedy for alleged attorney misconduct relating to the practice of law.  As stated by Chief Justice Cappy in his concurrence in *Beyers*, "[a]s a matter of statutory construction, the Unfair Trade Practices Act and Consumer Protection Law ("UTPCPL"), 73 P.S. §§201-1 *et seq., <u>does not apply to attorneys practicing law.</u>" Id*. at 1093.  Judge Wettick, in his Opinion dismissing a similar claim brought by Kaymark's counsel in this case in *Glover v. Udren*, CCP., CCP., Allegheny Co., No: GD-11-018015 (Exhibit "C" hereto) held that in addition to the *Beyers* reasoning, a claim under the UTPCPL against an attorney based upon legal pleadings also is barred because Pennsylvania's Fair Credit Extension Uniformity Act, 73 P.S. §2270.1 *et seq*., a violation of which is a *per se* violation of the UTPCPL, specifically exempts the acts of an attorney in filing of pleadings or prosecution of a lawsuit from its coverage.  Accordingly, such activity must be intended to be excluded from the UPTCPL as well.  *See*, Exhibit "C" at pp. 7-11.

Even to the extent that an UTPCPL action could be predicated on a mere legal pleading, which it cannot, it is still incumbent under the private action provisions of the UTPCPL that a plaintiff establish reliance, causation and damages.  *Weinberg v. Sun Co. Inc.,* 565 Pa. 612, 615-18, 777 A.2d 442, 446 (2001) ("Nothing in the legislative history suggests that the legislature ever intended statutory language directed against consumer fraud to do away with the traditional common law elements of reliance and causation.");  *Williams v. Empire Funding Corp*., 227 F.R.D. 362, 369-70 (E.D.Pa. 2005) ("Even if an

-20-

entity violated a Consumer Protection Law such as the Pennsylvania Debt Collection Regulations, such a violation does not automatically entitle an individual to bring a private action under the UTPCPL.").  To bring a private cause of action under the UTPCPL, a Plaintiff must show that he justifiably relied on the Defendant's wrongful conduct or representation and that he suffered harm as a result.  *Yocca v. Pittsburgh Steelers Sports, Inc.,* 578 Pa. 479, 854 A.2d 425, 438 (2004).  Thus, irrespective of the underlying basis for the UTPCPL claim, a private plaintiff must allege that he suffered an ascertainable loss <u>as a result</u> of the defendant's prohibited action; this causation element requiring justifiable reliance by the Plaintiff.  *Schwartz v. Rockey*, 593 Pa. 536, 557, 932 A.2d 885, 898 (2007).  *Also see, Cave v. Saxon Mortgage Servicing*, 2012 U.S. Dist. LEXIS 176381 (E.D.Pa. 2012) (at \*25) (mortgage servicer not liable under the UTPCPL because Complaint "fails to adequately allege justifiable reliance and ascertainable loss as required to state a claim under the UTPCPL.").

      The Complaint does not even <u>attempt</u> to allege these essential elements of a private UTPCPL claim.  Kaymark never relied on the allegations in the Foreclosure Complaint.  To the contrary, he hired counsel and contested the foreclosure.  *See, Kimmel v. Phelan Hallinan & Schmieg, supra,* 847 F.Supp. 2d at 771.  *Walter v. Palisades Collection, LLC, supra*, 480 F.Supp. 2d at 806 (both holding that there is no satisfaction of the "reliance" element when a party engages counsel to challenge the assertion that a debt is owed).  Kaymark does not allege that he paid a dime to Udren - - indeed the foreclosure case still is pending.  Absent payment, the "damage" element of a UTPCPL claim is not satisfied.  *See Salvati v. Deutsche Bank, supra* 2013 U.S. Dist. LEXIS 46991

at *33-34 (no satisfaction of "ascertainable loss" claim against law firm in virtually identical case where plaintiff made no payment to law firm).  The claims under the UTPCPL are therefore without merit and should be dismissed.

**VI.    <u>CONCLUSION</u>**

For the reasons set forth herein, it is respectfully submitted that Defendant Udren Law Offices, P.C.'s Motion to Dismiss the Complaint be granted in its entirety.


Respectfully submitted,

WILENTZ, GOLDMAN & SPITZER, P.A.

Date:  February 24, 2014          BY:   /s/ Jonathan J. Bart
                                        Daniel S. Bernheim 3d, Esquire
                                        Jonathan J. Bart, Esquire

                                        Wilentz Goldman & Spitzer
                                        Two Penn Center, Suite 910
                                        Philadelphia, PA 19102
                                        215-636-4466
                                        jbart@wilentz.com

#7319055.1(148845.009)

## CERTIFICATE OF SERVICE

I, JONATHAN J. BART, certify that on February 24, 2014, I caused a true and correct copy of the foregoing Response of Defendant Udren Law Offices, P.C. to Plaintiff's Objections to the Magistrate's Report and Recommendation to be served in accordance with the electronic notification system upon the following:

Emily S. Gomez, Esquire
Law Office of Emily Gomez, LLC
239 Fourth Avenue
Suite 1602
Pittsburgh, PA 15222

Michael P. Malakoff, Esquire
437 Grant Street
Suite 200, The Frick Bldg.
Pittsburgh, PA  15219

Thomas L. Allen, Esquire
Nellie E. Hestin, Esquire
Reed Smith
Reed Smith Centre
225 Fifth Avenue, Suite 1200
Pittsburgh, PA 15222

Andrew J. Soven, Esquire
Marc A. Goldich, Esquire
Reed Smith
1650 Market Street
2500 One Liberty Place
Philadelphia, PA  19103

WILENTZ GOLDMAN & SPITZER, P.A.

By: /s/ Jonathan J. Bart
Jonathan J. Bart, Esquire
Attorney for Defendant,
Udren Law Offices, P.C.

#7319055.1(148845.009)