UNITED STATES DISTRICT COURT FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| DALE A. KAYMARK, individually and on behalf of other similarly situated current and former homeowners in Pennsylvania,<br><br>    Plaintiffs,<br><br>v.<br><br>BANK OF AMERICA, N.A. and UDREN LAW OFFICES, P.C.<br><br>    Defendants. | Civil Action #2:13-cv-00419-CRE |

**REPLY TO SUPPORT OF OBJECTIONS (OPPOSITION TO BOA'S RESPONSE)**

*A.  Charges for Attorneys' Fees Not Incurred for Services Performed are Illegal*

BOA's Foreclosure Complaint demanded foreclosure-related attorneys' fees and costs (hereinafter "fees") as required to satisfy its lien.  These charges were not calculated on the basis of services performed or incurred, but on a flat/percentage basis.  When the foreclosure action was filed, the fees did not represent fees for services actually performed and incurred.  BOA recognizes that Mr. Kaymark's Complaint factually alleged that it charged fees before they were incurred.  Document 51, p. 13.  It does not dispute that the totality of the fees charged was $2,050 ($1,650 for attorneys' fees, $325 per title report and $75 for property inspection).  Id., p. 12. Significantly, all Parties recognize that Fannie Mae's **maximum** fees for a complete foreclosure proceeding is $1,650[1] in Pennsylvania.  BOA suggests that the $2,050 had not been incurred, but represented actual and estimated or anticipated fees.  Document 51, p. 12 fn. 7.  BOA even recognized that there were additional legal services and charges that were yet to be incurred that would be subject to the ceiling amount.

---

[1] The $1,650 fee may appear to be reasonable to some but such firms employ few lawyers and legions of paralegals that fill out form foreclosure complaints, with little to no attorney oversight, with data fed directly from Defendants database with generally no client contact.  See In re Taylor, 655 F.3d 274 (3d Cir. 2011).

BOA confuses and convolutes very different issues. Here, no one disputes that BOA is entitled to recover incurred and reasonable foreclosure fees and costs awarded by a court pursuant to the Mortgage contract and Act 6, §406. Act 6, §408 does not allow the parties to waive this statutory provision in their mortgage contracts. Nothing in the FNMA Guidelines preempt, supersede or conflict with Act 6. In fact, the FNMA Guidelines, when read in their entirety, also require services to be actually performed and incurred before charged. Nonetheless, Mr. Kaymark's Mortgage, ¶¶7, 14 and 22, as in Act 6, only authorized fees as already incurred and determined and awarded by a court. Here, BOA wants the Court to assume that at the time it filed its Foreclosure Complaint it, or its counsel, had already paid or already incurred a legal obligation to pay the fixed fee amount demanded. No one could reasonably dispute that other fee setting methods (such as flat, fixed or percentage fees) not prohibited by statute are otherwise widely used, reasonable and may be agreed upon by contracting parties. Document 51, p. 14. If BOA or its counsel, as evidenced by their retainer, required BOA to pay its counsel a fixed $2,050 up front irrespective of the actual legal services performed (as an actual fee not a retainer) then the court would be called upon to determine the legality of utilizing this fee paying system under non-waivable Act 6, §406 and/or the FNMA Guidelines capping these fees at $1,650.

However, BOA's retainer agreement with its counsel is not in the record. The record consists of what has been pled alone. Curiously, Wells Fargo relies on In re Crystian, 210 B.R. 956 (Bankr. W.D. Pa. 1997). The mortgage in Crystian was not a residential property and therefore is not subject to Act 6. Id., 958. Moreover, Crystian was called upon to focus on the term "incurred." Therefore, even if this was an Act 6 mortgage, the definition of this term was not contested. The lack of a need for Crystian to decide this issue in a contested forum means

that it lacks relevance.  See Webster v. Fall, 266 U.S. 507, 511 (1925) and Soyka v. Alldredge, 481 F.2d 303, 306 (3d Cir. 1973) (a non-contested issue assumed by the court is of no legal relevance).  BOA overlooks that the Mortgage contract calls for the work to be **performed**.  See Mortgage¶14 ("Lender may charge Borrower fees for services performed [for] attorneys' fees").

### B. Mr. Kaymark Suffered an Ascertainable Loss in the Form of a Lien

BOA's defense under the broad remedial UTPCPL provisions, is essentially that, another party's right loss of property without more does not equate to an ascertainable loss.  But, another party cannot gain a property right or interest without an equal and opposite reduction in rights or interests on the other side.  Thus, the lien increase represents a dollar-for-dollar diminution of Mr. Kaymark's ownership in his home.  The contention that such a real property loss does not constitute an ascertainable loss of property under the UTPCPL – a consumer protection statute to be liberally construed (Ash v. Continental Ins. Co., 932 A.2d 877, 881 (Pa. 2007)) – is untenable.  Under the nearly identical language of New Jersey's analogous statute [Compare UTPCPL, §201-9.2 and Consumer Fraud Act, N.J.S.A. §56:8-19] it was held that: "[A]n improper debt or lien against a consumer-fraud plaintiff may constitute a loss under the Act, because the consumer is not obligated to pay an indebtedness arising out of conduct that violates the Act."  Cox v. Sears Roebuck & Co., 647 A.2d 454, 464 (N.J. 1994).[2]

A plaintiff must show an ascertainable loss of money or property under the UTPCPL. However, only loss of value must be established.  See DeArmitt v. New York Life Ins. Co., 73 A.3d 578, 593-594 (Pa.Super. 2013) ("other shortfalls").  "A lien on property is sufficient to show damages under Section 504."  Benner v. Bank of Am., N.A., 917 F.Supp.2d 338, 359 (E.D.Pa. 2013).  But, if imposition of a lien on property is sufficient to establish a loss, then so is

---

[2] See also D'Agostino v. Maldonado, 78 A.3d 527, 540-545 (N.J. 2013); Smith v. Caggiano, 421 N.E.2d 473, 476 (Mass.App. 1981).

inflation of an existing lien.  As Benner admits, "a lien on property is sufficient" to establish the requisite loss, then so is an inflation of a lien.[3]  Even a temporary lien constitutes an increased encumbrance and diminution of property interest that prejudice homeowners.  Connecticut v. Doehr, 501 U.S. 1, 11-12 (1991); Arthur D. Little, Inc. v. Dooyang Corp., 147 F.3d 47, 56 (1st Cir. 1998).  Compare In re Estate of Landis, 2014 WL 169842 (Pa.Super. Jan. 15, 2014).

BOA also attempts to distinguish Grimes v. Enterprise Leasing Co. of Philadelphia, LLC, 66 A.3d 330 (Pa.Super. 2013), appeal granted, 2014 WL 349263 (Pa. Jan. 30, 2014).  See Document 51, pp. 4, 5 and 8. Grimes was forced to **incur** legal fees and costs because of defendants' unfair practices.  Grimes, 337, 339 ("Grimes avers that she **incurred** costs and fees associated with asserting her rights and protecting herself against Enterprise's alleged deceptive trade practices... **we conclude the element of loss has been clearly established**," (Emphasis added)).  The damages incurred by Mr. Kaymark – through the diminution of his ownership interest in his home – are more substantial than those in Grimes.  Significantly, Mr. Kaymark, unlike Grimes, presents a post-contract deception of a contracted-for bargain.

C.  *Reliance Need Not be Shown*

Recent appellate authority analyzing the amendment to the catchall provision of the UTPCPL, §201-2(4)(xxi), negates the defense that reliance need be pled under the deceptive prong of the statute.  Bennett v. A.T. Masterpiece Homes at Broadsprings, LLC, 40 A.3d 145, 152 fn.5, 154-155 (Pa.Super. 2012); Compare, Grimes, 337 fn.4.  This reliance issue was analyzed at length in Trunzo v. CitiMortgage, 876 F.Supp.2d 521 (W.D.Pa. 2012), which held

---

[3] Unfortunately, Benner did not reach this conclusion; instead it determined that §504 (requiring only a violation) was narrower in scope that §502.  In Benner's words, "the imposition of property inspection fees was "an increase in [his] mortgage debt and corresponding loss of home equity.""  Benner found this argument to be founded on a fallacy and that Benner himself has no actual loss from this increase in his liabilities.  Id., 360.  This is irreconcilable with the position just taken two footnotes up.  By the same reasoning, imposition of a lien also only produces a possible loss since the property might not be sold while the lien persists.  But both views cannot be right.  Benner was correct in its initial determination that the imposition of a lien does demonstrate a loss.

"this Court is satisfied that section 201-2(4)(xxi) does not require a litigant to plead the elements of common law fraud." Id., 543. See also Toth v. Northwest Savings Bank, No. GD-12-008014, pp.7-15 (C.P.Allegheny June 25, 2013).[4] Moreover, a violation of state law (i.e., Act 6/Act 91) can also constitute a violation of the UTPCPL, §201-9.2a. See Corvello v. Wells Fargo Bank, N.A., 728 F.3d 878 (9th Cir. 2013). Therefore, the Act 6/Act 91 violation which does not require reliance can also be remedied under the UTPCPL. See Act 6, §§502 ("otherwise by law"). A violation of the FDCPA can also constitute an UTPCPL violation. See Cave v. Saxon Mortg. Services, Inc., 2013 WL 460082, *2 fn.1 (E.D.Pa. Feb. 6, 2013). Since the FDCPA does not require a cash or in-kind payment (i.e., lien) to establish a loss, neither does the UTPCPL.

### D. Mr. Kaymark has Suffered Damages from the Lien

The amount of the inflated lien encumbering Mr. Kaymark's property constituted a contractual breach and damage. See Saunders v. Resnick, 16 A.2d 676, 678 (Pa.Super 1940); Richman v. Watkins, 103 A.2d 688, 691 (Pa. 1954). In reducing his property interest in his home through the lien increase, Mr. Kaymark has incurred a compensable loss of property. BOA's restrictive interpretation of loss defense conflicts with Marra v. Stocker, 615 A.2d 326, 329 (Pa. 1992), which held that, "Prejudice… is evident in the interest, court and sheriff costs, attorney's fees, etc., which attached upon the commencement of the mortgage foreclosure action." That is, the mere imposition of fees attendant to the foreclosure commencement, without regard to cash payment, establishes a detrimental change in property interest. Marra's "attached" is equivalent to the lien here.

---

[4] BOA relies extensively on Hunt v. U.S. Tobacco Co., 538 F.3d 217 (3d Cir. 2008); a case no longer relevant. See Belmont v. MB Inv. Partners, Inc., 708 F.3d 470, 478-500 (3d Cir. 2013) (not acknowledging Hunt). The Court in New-Howard v. JPMorgan Chase Bank, N.A., 2013 WL 6096232, **6-7 (E.D.Pa. Nov. 20, 2013) acknowledged Belmont's UTPCPL focus on the wrongdoing conduct and not the state of mind of the victim. If a state's highest court has not decided a state issue, a federal court must predict how that court would resolve the issue. See Holmes v. Kimco Realty Corp., 598 F.3d 115, 118 (3d Cir. 2010). Now that the Pennsylvania appellate courts holdings are on the same page, this Court's prediction should be much easier. See Bennett, 152.

6 | P a g e

> Respectfully Submitted,
> MICHAEL P. MALAKOFF, P.C.
> */s/Michael P. Malakoff*
> Michael P. Malakoff, Esquire
> Pennsylvania Attorney I.D. #11048
> Suite 200, The Frick Building
> Pittsburgh, PA 15219
> Telephone: (412) 281-4217
> Facsimile:  (412) 281-3262
> malakoff@mpmalakoff.com
> *Attorneys for Named Plaintiff Dale A. Kaymark, individually and on behalf of other similarly situated former and current homeowners in Pennsylvania*

**CERTIFICATE OF SERVICE**

I hereby certify that on the **4th** day of **March**, **2014**, a true and correct copy of the foregoing **Reply in Support of Objections (Opposition to BOA's Response)** was served upon the following parties of interest via the Court's Electronic Filing System:

Thomas L. Allen, Esquire
Nellie E. Hestin, Esquire
REED SMITH, LLP
225 Fifth Avenue
Pittsburgh, PA 15222

Jonathan J. Bart, Esquire
WILENTZ GOLDMAN & SPITZER, PA
Two Penn Center, Suite 910
Philadelphia, PA 19102

      */s/Michael P. Malakoff*
      Michael P. Malakoff, Esquire