IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| DALE KAYMARK, Individually and on behalf of other similarly situated current and former homeowners in Pennsylvania<br><br>Plaintiff,<br><br>v.<br><br>UDREN LAW OFFICES, P.C.,<br><br>Defendant. | Civil Action No. 13-419<br><br>Judge Cathy Bissoon |

## **MEMORANDUM ORDER**

Pending before the Court is a Renewed Motion to Dismiss (**Doc. 75**), filed by Defendant Udren Law Offices, P.C. ("Udren") pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. For the reasons that follow, Udren's Motion will be DENIED.

### I. MEMORANDUM

#### A. Factual Background

The well-pled facts averred in the Amended Complaint (Doc. 23), accepted as true with all reasonable inferences taken in the light most favorable to Plaintiff as the non-moving party, set forth the following. Plaintiff Dale Kaymark ("Kaymark" or "Plaintiff") refinanced his home in Coraopolis, Pennsylvania, in December 2006, executing a note for $245,600 and granting Bank of America, N.A. ("BOA") a mortgage. The mortgage was insured by Fannie Mae ("FNMA"). The terms of the mortgage state, in relevant part:

> Lender may charge Borrower fees for services *performed in connection with* Borrower's default and for the purpose of protecting Lender's interest in the Property and rights under this Security Agreement, including, but not limited to, attorneys' fees, property inspection and valuation fees.
> . . . .

1

> If the default is not cured as specified, . . . Lender shall be entitled to collect all expenses *incurred* in pursuing the remedies provided in this Section [ ], including, but not limited to, attorneys' fees and costs of title evidence to the extent permitted by Applicable Law.

(Doc. 23-3, ¶¶ 14, 22) (emphasis added).

Kaymark experienced a drop in income in June of 2011, and failed to make his mortgage payments. On August 1, 2011, BOA sent Kaymark an "Act 91 Notice" of pre-foreclosure delinquency pursuant to Pennsylvania's Housing Finance Agency Law, 35 P.S. § 1680.403c, which requires mortgage-holders considering foreclosure to send homeowners a notice as a prerequisite to initiating formal action. An Act 91 notice must, among other things, include an itemized breakdown of the total amount past due as of the date of the notice and inform the homeowner that he is entitled to thirty days plus three additional days for mailing to meet with a consumer credit counseling agency to attempt to resolve the delinquency. Id.; see (Doc. 23-1).

Over a year later, on September 13, 2012, Udren, on behalf of BOA, filed a verified Foreclosure Complaint against Kaymark in the Court of Common Pleas of Allegheny County, Pennsylvania. (Doc. 23-2). The body of the Foreclosure Complaint included an itemized list of the total debt, stating that the following items were due as of July 12, 2012:

| | |
|---|---|
| Unpaid Principal Balance | $213,224.26 |
| Accumulated Interest (07/01/2011–07/12/2012) | $13,452.47 |
| Accumulated Late Charges | $177.74 |
| Escrow Deficit / (Reserve) | $1,935.45 |
| Title Report | $325.00 |
| Attorney Fees | $1,650.00 |
| Property Inspection | $75.00 |
| Grand Total | $230,839.92 |

Id. at ¶ 6. Immediately following this itemized list, the Foreclosure Complaint stated that "[t]he above figures are calculated as of 07/12/2012[.]" Id. Kaymark alleges that the $1,650 in attorneys' fees, $325 in title report fees, and $75 in property inspection fees (or $2,050 total) were not actually incurred as of July 12, two months before the foreclosure action was filed on September 13, 2012.

Kaymark contested the foreclosure action, which, at the time of the Amended Complaint, was still pending in the Allegheny County Court of Common Pleas.[1] As such, Kaymark has never paid the disputed fees.

**B. Procedural Background**

In February 2013, Kaymark filed a complaint on behalf of himself and a putative class against BOA and Udren in the Court of Common Pleas of Allegheny County. In the original complaint, Kaymark alleged that BOA and Udren violated the Pennsylvania Loan Interest and Protection Law ("Act 6"), 41 P.S. § 101 *et seq.,* because the Foreclosure Complaint sought attorneys' fees which were not "actually incurred" upon commencement of the foreclosure action. Id. § 406. BOA and Udren removed the case to this Court and filed motions to dismiss on the grounds that Kaymark's mortgage exceeded the maximum baseline figure to be governed under Act 6.

In response, Kaymark filed an Amended Complaint, asserting the following four counts on the basis of the alleged misrepresentations in the Foreclosure Complaint and/or Act 91 Notice: Count I, against BOA, for violating § 2270.4(b)(5)(ii), (v), (x), and (6)(i) of the Pennsylvania Fair Credit Extension Uniformity Act ("FCEUA"), 73 P.S. § 2270.1 *et seq.*; Count II, against Udren,

---

[1] According to the state court docket sheet, BOA discontinued the foreclosure action against Kaymark without prejudice in March 2016. (Doc. 76-2).

for violating §§ 1692e(2)(A), (5), (10), and 1692f(1) of the Fair Debt Collection Practices Act, 15 U.S.C. § 1692 *et seq.* ("FDCPA"); Count III, against both BOA and Udren, for violating the Pennsylvania Unfair Trade Practices and Consumer Protection Law ("UTPCPL"), 73 P.S. § 201–1 *et seq.,* by virtue of the violations of the FCEUA or by engaging in certain "unfair or deceptive acts or practices," in violation of § 201–2(4)(v) and (xxi); and Count IV, against BOA, for common law breach of contract. (Doc. 23).

BOA and Udren again moved to dismiss the Amended Complaint for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6). The Magistrate Judge issued a Report and Recommendation ("R&R") to grant the motions on December 11, 2013. The R&R reasoned, inter alia, that Kaymark's FDCPA claim that Defendants were not authorized to list not-yet-incurred flat fees in the Foreclosure Complaint was "rather hypertechnical," and that "nowhere do the loan documents or any state or federal law prohibit listing attorneys' fees and other fixed costs at the time of filing the complaint, but are reasonably expected to be incurred." It also explained that Kaymark "pled himself out of the state causes of action" because he did not show any actual loss or damage. (Doc. 41). Therefore, the R&R recommending granting the Motions to Dismiss in their entirety, with prejudice.

On March 31, 2014, the R&R was adopted as the Opinion of the Court. (Doc. 55). Agreeing that the inclusion of not-yet-incurred fees was not prohibited by the mortgage contract or other state or federal laws, the Court dismissed the FDCPA claim. The Court also concluded that Kaymark failed to demonstrate an actual loss as a result of the alleged misrepresentations and, therefore, that he failed to state a claim under the UTPCPL or the FCEUA. For the same reasons (*i.e.*, failure to plead actual loss), the District Court dismissed Kaymark's breach of contract claim against BOA. Id.

4

Kaymark timely appealed the Court's decision to the United States Court of Appeals for the Third Circuit. (Doc. 57). On April 7, 2015, the Court of Appeals affirmed the Court's dismissal of Kaymark's claims under Section 1692e(5) of the FDCPA, and his state law claims for violations of the UTPCPL and FCEUA, and breach of contract. Kaymark v. Bank of Am., N.A., 783 F.3d 168 (3d Cir. 2015); (Doc. 60). However, the Court of Appeals reversed the Court's dismissal of Kaymark's claims against Udren under Sections 1692e(2)(A), (10), and 1692(f)(1) of the FDCPA, and remanded for further proceedings. Id.

On June 5, 2015, at Udren's request, this Court entered an order staying the proceedings pending the filing of a petition for certiorari by Udren. (Doc. 63). On January 11, 2016, the United States Supreme Court denied Udren's certiorari petition. Udren Law Offices, P.C. v. Kaymark, 136 S. Ct. 794 (2016). This court lifted the stay on March 22, 2016. (Doc. 66).

On May 6, 2016, Udren filed the instant Renewed Motion to Dismiss the Amended Complaint and Brief in Support seeking dismissal of the remaining FDCPA claims in their entirety under Federal Rule of Civil Procedure 12(b)(6) on "materiality" grounds. (Docs. 75, 76). Kaymark filed a response in opposition on May 27, 2016. (Doc. 79). Subsequently, Udren filed a reply brief, and both parties filed sur-reply briefs in support of their respective positions. (Docs. 81, 84, 87).

In addition, on May 18, 2016, Udren filed a Notice of Supplemental Authority attaching a copy of the United States Supreme Court's May 16, 2016 opinion in Spokeo, Inc. v. Robins, __ U.S.___, 136 S. Ct. 1540 (2016). (Doc. 78). Udren contends that Spokeo undermines Kaymark's Article III standing in this case and further supports the alleged lack of materiality of the remaining FDCPA claims. Id. at 1-2. Kaymark filed a response in opposition to the notice of supplemental authority on June 3, 2016. (Doc. 80). On July 7, 2016, Udren filed a second

Notice of Supplemental Authority attaching an opinion from the Court of Appeals for the Second Circuit remanding a case alleging a violation of the Fair and Accurate Credit Transactions Act ("FACTA") to allow the plaintiffs an opportunity to comport with the pleading standards set forth in Spokeo and to allow the district court to address any standing questions in the first instance. See (Doc. 88) (attaching Cruper-Weinmann v. Paris Baguette Am., Inc., et al., 653 F. App'x 81 (2d Cir. 2016)).[2] On July 8, 2016, Kaymark filed a Response to Notice of Supplemental Authority attaching a copy of In re Nickelodeon Consumer Privacy Litigation, 827 F.3d 262 (3d Cir. 2016), a June 2016 decision of the United States Court of Appeals for the Third Circuit interpreting Spokeo. (Doc. 89).

The Motion to Dismiss and related issues are now fully briefed and ripe for disposition. For the reasons set forth below, the Court will deny Defendant's Motion to Dismiss.

C. **Legal Analysis**

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007)). When faced with a motion to dismiss, a court "must accept all of the complaint's well-pleaded facts as true, but may disregard any legal conclusions." Fowler v. UPMC Shadyside, 578 F.3d 203, 210-11 (3d Cir. 2009). In deciding a Rule 12(b)(6) motion to dismiss, the Court may consider "the allegations in the complaint, exhibits attached to the complaint, matters of public

---

[2] Notably, Udren's citation to Cruper-Weinmann in its second Notice of Supplemental Authority (Doc. 88) does not provide any additional substantive support for Udren's standing argument. Cruper-Weinmann involved two FACTA class actions alleging that certain retailers unlawfully printed credit card numbers and/or expiration dates on customers' store receipts. In Cruper-Weinmann, the Court reversed district court orders dismissing plaintiffs' claims, permitted plaintiffs to replead their claims to comport with Spokeo, and allowed the district court to determine standing in the first instance.

6

record, and documents that form the basis of a claim." Lum v. Bank of Am., 361 F.3d 217, 222 n.3 (3d Cir. 2004).

### 1. **Standing**

In a Notice of Supplemental Authority, Udren argues that the United States Supreme Court's May 16, 2016 opinion in Spokeo, Inc. v. Robins, 136 S. Ct. 1540 (2016), undermines Kaymark's Article III standing in this case because the Amended Complaint does not allege a "concrete injury" as required by Spokeo. (Doc. 78).

Standing is "an essential and unchanging part of the case-or-controversy requirement of Article III" of the United States Constitution. Lujan v. Defenders of Wildlife, 504 U.S. 555, 560 (1992). The standing doctrine "developed in our case law to ensure that federal courts do not exceed their authority as it has been traditionally understood." Spokeo, 136 S. Ct. at 1547. Article III standing requires the party invoking jurisdiction to meet three elements:

> First, the plaintiff must have suffered an "injury in fact" – an invasion of a legally protected interest which is (a) concrete and particularized, and (b) actual or imminent, not conjectural or hypothetical[.]  Second, there must be a causal connection between the injury and the conduct complained of . . . .  Third, it must be likely . . . that the injury will be redressed by a favorable decision.

Bock v. Pressler & Pressler, LLP, ___ F. App'x ___, 2016 WL 4011150, at *1 (3d Cir. July 27, 2016) (quoting Lujan, 504 U.S. at 560-61 (alterations in original)); Spokeo, 136 S. Ct. at 1547. In Spokeo, the Supreme Court addressed "whether the violation of a procedural right granted by statute presents an injury sufficient to constitute an 'injury in fact' and satisfy the '[f]irst and foremost of standing's three elements.'" Bock, 2016 WL 4011150, at *1 (quoting Spokeo, 136. S. Ct. at 1547).

Although the Supreme Court in Spokeo did not change the rule for establishing standing, "it used strong language indicating that a thorough discussion of concreteness is necessary in

7

order for a court to determine whether there has been an injury-in-fact." Id. (citing Spokeo, 136 S. Ct. at 1545). The Court emphasized that "the requirements of particularization and concreteness required separate analyses and that neither requirement alone was sufficient." Id.; see also Spokeo, 136 S. Ct. at 1548 ("Particularization is necessary to establish injury in fact, but it is not sufficient. An injury in fact must also be 'concrete.'"). An alleged statutory violation is not always sufficient to demonstrate a concrete injury. Spokeo, 136 S. Ct. at 1549. A plaintiff "could not, for example, allege a bare procedural violation, divorced from any concrete harm, and satisfy the injury-in-fact requirement of Article III." Id. The Court confirmed, however, that "because Congress is well positioned to identify intangible harms that meet minimum Article III requirements . . . . [it] may elevat[e] to the status of legally cognizable injuries concrete, *de facto* injuries that were previously inadequate in law." Id. (internal quotations omitted); see also id. ("'Concrete' is not, however, necessarily synonymous with 'tangible.' Although tangible injuries are perhaps easier to recognize, we have confirmed in many of our previous cases that intangible injuries can nevertheless be concrete."); Bock, 2016 WL 4011150, at *1. In the case of alleged procedural violations, the question is "whether the particular procedural violations alleged . . . entail a degree of risk sufficient to meet the concreteness requirement." Spokeo, 136 S. Ct. at 1550.

The Court of Appeals for the Third Circuit recently addressed Spokeo's impact on Article III standing in In re Nickelodeon Consumer Privacy Litigation, 827 F.3d 262 (3d Cir. 2016); see also (Doc. 89) (addressing In re Nickelodeon). In that case, the Court of Appeals acknowledged that under Spokeo, "even certain kinds of 'intangible' harms can be 'concrete' for purposes of Article III . . . . What a plaintiff cannot do . . . is treat a 'bare procedural violation . . . [that] may result in no harm' as an Article III injury-in-fact." In re Nickelodeon, 827 F.3d at 273-74

(quoting Spokeo, 136 S. Ct. at 1550). The Court of Appeals stated that "in some cases an injury-in-fact may exist solely by virtue of statutes creating legal rights, the invasion of which creates standing." Id. at 273. The Court of Appeals noted the Supreme Court's deference to Congress, stating that "Spokeo directs us to consider whether an alleged injury-in-fact 'has traditionally been regarded as providing a basis for lawsuit,'" and that "Congress's judgment on such matters is . . . 'instructive and important.'" Id. (quoting Spokeo, 136 S. Ct. at 154); see also Bock, 2016 WL 4011150, at *2.

It is the district court's duty to determine in the first instance whether a plaintiff has Article III standing, including whether the elements of concreteness and particularization are satisfied. See, e.g., Bock, 2016 WL 4011150, at *2 (remanding case to district court to determine standing); Church v. Accretive Health, Inc., 654 F. App'x 990, 992-93 (11th Cir. July 7, 2016) (noting that standing is a jurisdictional issue that must be addressed prior to and independent of the merits of plaintiff's claims); Cruper-Weinmann, 653 F. App'x at 81-82; see also Fed. R. Civ. P. 12(h)(3) ("If the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action."). "The plaintiff, as the party invoking federal jurisdiction, bears the burden of establishing" standing. Spokeo, 136 S. Ct. at 1547.

Udren contends that Spokeo undermines Kaymark's Article III standing in this case because Kaymark "has merely alleged a bare statutory violation of the FDCPA" and, therefore, has not alleged a "concrete" injury and was never at risk of a concrete injury. (Doc. 78). Udren describes the alleged FDCPA violation as a "technical error in a court pleading" that will "result, at most, in the plaintiff not receiving what he has demanded." Id. Udren attempts to distinguish a court pleading from a collection letter, stating that the former, "while not immune from the FDCPA, has a different purpose." Id. Udren contends that "[a]ny error in a pleading

9

concerning the timing of a calculation which is undisputedly due upon judgment states no 'concrete' injury, in contrast to an error concerning a statement of the defendants' rights." Id.

Kaymark disagrees that the alleged FDCPA violation is a "mere technicality," stating that the violation "does not concern the timing of a calculation at all," but the "misrepresentation of the legal status and amount of the debt." (Doc. 80). Kaymark disputes that the attorneys' fees at issue would become "indisputably due upon judgment" because the amount alleged represents the maximum allowable fee, not the actual fee or a guaranteed fee. Id. Kaymark also rejects Udren's distinction between a formal pleading and a debt collection letter, reasoning that, if a misrepresentation of the status of a debt contained in a debt collection letter violates the FDCPA, then "the same holding is required when the misrepresentations are made in a more formal foreclosure complaint." Id. In this regard, Kaymark points out the Notice at the beginning of the Foreclosure Complaint informing Kaymark, inter alia, that the amount of his debt "is as stated in the attached document [the Foreclosure Complaint itself]," that Udren "is deemed to be a debt collector," and that "this Notice and the attached document [the Foreclosure Complaint] is an attempt to collect a debt." Id. (citing Doc. 23-2, at 5). Kaymark describes the FDCPA violation at issue as substantive and not the type of "bare procedural violation" eschewed in Spokeo.[3]

After careful review, the Court agrees with Kaymark that the Amended Complaint pleads a "concrete" injury sufficient to satisfy the injury-in-fact standard clarified in Spokeo.[4] Although the Court of Appeals for the Third Circuit has not applied Spokeo in a case alleging

---

[3] Kaymark also argues that the Court of Appeals implicitly found Article III standing as a precondition for reaching the merits of Udren's first appeal in this case. See (Doc. 89, at 1) (citing Kaymark v Bank of Am., 783 F.3d 168 (3d Cir. 2015)).

[4] Concreteness is the only element of the standing analysis that Udren has challenged in this case. The Court has reviewed the other elements of standing and finds that the case is otherwise properly before the court.

FDCPA violations, recent decisions from neighboring jurisdictions are instructive. Notably, in Church v. Accretive Health, Inc., 654 F. App'x 990 (11th Cir. 2016), the Court of Appeals for the Eleventh Circuit held that a plaintiff-debtor who had failed to receive required disclosures had sufficiently alleged a concrete injury to confer standing to pursue claims under the FDCPA. Id. at 995. In finding that the plaintiff had satisfied the concreteness requirement, the court of appeals in Church explained:

> Church has alleged that the FDCPA governs the letter at issue, and thus, alleges she had a right to receive the FDCPA-required disclosures. Thus, Church has sufficiently alleged that she has sustained a concrete—*i.e.*, "real"—injury because she did not receive the allegedly required disclosures. The invasion of Church's right to receive the disclosures is not hypothetical or uncertain; Church did not receive information to which she alleges she was entitled. While this injury may not have resulted in tangible economic or physical harm that courts often expect, the Supreme Court has made clear an injury need not be tangible to be concrete. . . . Rather, this injury is one that Congress has elevated to the status of a legally cognizable injury through the FDCPA. Accordingly, Church has sufficiently alleged that she suffered a concrete injury, and thus, satisfies the injury-in-fact requirement.

Id. (internal citations and footnotes omitted). In reasoning that the FDCPA created a statutory right to information, Church likened the case to the Supreme Court's decision in Havens Realty Corp. v. Coleman, 455 U.S. 363 (1982), in which the Court held that the Fair Housing Act ("FHA") created a statutory right to truthful housing information. In Havens, the Supreme Court found that a tester-plaintiff who had been given false information regarding housing availability had sufficiently alleged injury-in-fact to assert a violation of the FHA even though she had never intended to rent an apartment and, thus, the only injury asserted was that she was given the false information. See Havens, 455 U.S. at 373-74. The Havens Court explained that the FHA "establishes an enforceable right to truthful information concerning the availability of housing" and that a "tester who has been the object of a misrepresentation made unlawful under [the FHA]

11

has suffered injury in precisely the form the statute was intended to guard against, and therefore has standing to maintain a claim for damages under the Act's provisions." Id. The Court of Appeals in Church held that "[j]ust as the tester-plaintiff [in Havens] had alleged injury to her statutorily-created right to truthful housing information, so too has Church alleged injury to her statutorily-created right to information pursuant to the FDCPA." Church, 654 F. App'x at 994.

In addition to Church, the wide majority of district courts to address the issue post-Spokeo have found that similar alleged violations of the FDCPA constitute concrete injuries within the meaning of Article III. See, e.g., Munoz v. Cal. Bus. Bureau, Inc., 2016 WL 6517655, at *5 (E.D. Cal. Nov. 1, 2016) ("The goal of the FDCPA is to protect consumers from certain harmful practices; it logically follows that those practices would themselves constitute a concrete injury."); Hill v. Accounts Receivable Servs., LLC, 2016 WL 6462119, at **4-5 (D. Minn. Oct. 31, 2016) (debt collector's alleged violations of plaintiff's rights to truthful information and freedom from efforts to collect unauthorized debt under the FDCPA constituted a concrete injury in fact); Saenz v. Buckeye Check Cashing of Ill., 2016 WL 5080747, at *2 (N.D. Ill. Sept. 20, 2016) (Plaintiff "was harmed by receiving a deficient and allegedly misleading communication from [defendant] – a harm defined and made cognizable by the [FDCPA], but a concrete harm nonetheless."); Bernal v. NRA Group, LLC, 2016 WL 4530321, at *5 (N.D. Ill. Aug. 30, 2016) ("The type of injury alleged here, receiving a debt collection letter that, it is alleged, wrongly assesses percentage-based collection costs, is concrete."); Dittig v. Elevate Recoveries, LLC, 2016 WL 4447818, at *4 n.1 (W.D. Pa. Aug. 24, 2016) (finding "standing based on the alleged violations of the statutorily-created rights set forth in the FDCPA"); Prindle v. Carrington Mortg. Servs., LLC, 2016 WL 4369424, at *11 (M.D. Fla. Aug. 16, 2016) (injury caused by alleged

violation of § 1692e of the FDCPA constituted concrete harm even in the absence of additional harm such as economic loss).

In accordance with these well-reasoned decisions, this Court agrees that the injury alleged in the Amended Complaint is one that "Congress has elevated to the status of a legally cognizable injury through the FDCPA." Church, 2016 WL 3611543, at *3. The goal of the FDCPA is to protect consumers from harmful debt-collection practices, and debtors have a statutory right "to be free from being subjected to false, deceptive, unfair or unconscionable means to collect a debt." Munoz, 2016 WL 6517655, at *5; see also Hill, 2016 WL 6462119, at *4 (Section 1692e of the FDCPA establishes a right to truthful information regarding the collection of a debt, and Section 1692f establishes a right to be free from the collection of unauthorized fees.). This is not a case asserting a "bare procedural violation" such as an erroneous zip code or, as Udren suggests, a mere technical error concerning the timing of a calculation. Rather, as Kaymark asserts, this action involves an alleged misrepresentation of the legal status and amount of the debt itself. Under these circumstances, Udren's alleged violation of Kaymark's right to truthful information and freedom from efforts to collect unauthorized debt constitutes a concrete injury and satisfies Article III's injury-in-fact requirement.[5]

---

[5] Contrary to Udren's suggestion, the fact that the alleged misrepresentations at issue occur in a court pleading as opposed to a debt collection letter does not make the alleged harm less concrete or otherwise change this result. As the Court of Appeals for the Third Circuit already concluded in reversing the dismissal of the FDCPA counts at issue, "the fact that the debt collection activity at issue here involves a foreclosure complaint, rather than a debt collection letter, does not remove it from the FDCPA's purview." Kaymark, 783 F.3d at 177; see also Hill, 2016 WL 6462119, at **4-5 (§ 1692e and § 1692f claims satisfied concreteness requirement where defendant allegedly misrepresented amount of interest owed in a complaint filed against plaintiff in conciliation court).

## 2. Failure to State a Claim – Materiality

As set forth above, the Court of Appeals for the Third Circuit reversed this Court's prior dismissal of Kaymark's claims under Sections 1692e(2)(A), (10), and 1692f(1). In so concluding, the court cited its intervening decision in McLaughlin v. Phelan Hallinan & Schmieg, LLP, 756 F.3d 240 (3d Cir. 2014), in which it held that nearly-indistinguishable conduct in a debt-collection letter, rather than a foreclosure complaint, violated the FDCPA. Kaymark, 783 F.3d at 174-75. The court noted that, as in McLaughlin, the Foreclosure Complaint in this case informed Kaymark of specific amounts due for specific items as of a particular date but did not convey that the disputed fees were estimates or imprecise amounts. Id. at 175. Consequently, "the Foreclosure Complaint conceivably misrepresented the amount of the debt owed" in violation of § 1692e(2)(A) and (10), and Kaymark sufficiently alleged that Udren's attempt to collect those misrepresented fees was not "expressly authorized" by the mortgage contract or permitted by law in violation of § 1692f(1). Id. In so holding, the Court explained that the Foreclosure Complaint must be viewed "through the lens of the least-sophisticated consumer and in the light most favorable to Kaymark." Id. The Court further concluded that "a communication cannot be uniquely exempted from the FDCPA because it is a formal pleading or, in particular, a complaint." Id. at 177.

Despite the ruling by our Court of Appeals in this case, Udren again moves to dismiss the same claims under Rule 12(b)(6) (Doc. 75). Specifically, Udren contends that the alleged FDCPA violations are not "material" under the law. Id. In its supporting brief, Udren notes that subsequent to its ruling in Kaymark, our Court of Appeals held for the first time in Jensen v. Pressler & Pressler, 791 F.3d 413, 421 (3d Cir. 2015), that materiality is, in fact, an essential element of an FDCPA claim. (Doc. 76, at 6). See Jensen, 791 F.3d at 416 ("[W]e agree with

14

the District Court's conclusion that misstatements must be material to be actionable under § 1692e."). Although this Court addressed materiality in its first opinion dismissing the Amended Complaint, and the parties raised the materiality issue on appeal of that decision, Udren contends that, because the Court of Appeals did not specifically discuss materiality in deciding to reverse and subsequently adopted a materiality analysis in Jensen, this Court's original materiality analysis remains valid and requires dismissal of Kaymark's remaining FDCPA claims. (Doc. 76, at 5-6). After careful consideration, this Court disagrees.

As an initial matter, the Court finds it incongruous that the Court of Appeals would take the time to issue a precedential opinion affirming the dismissal of all but three of Kaymark's original claims only to have those claims dismissed again on the basis of an issue (materiality) already briefed and argued before both Courts and expressly ruled upon by this Court. A more logical reading of Kaymark is that it was not necessary for the Court of Appeals to address the materiality issue because, even if a materiality standard applied, the claims at issue met that standard and therefore were not subject to 12(b)(6) dismissal on that basis. Indeed, as Kaymark notes in its briefing, the Court of Appeals in Jensen cited its decisions in McLaughlin and Kaymark as support for its position that the materiality standard "is not a particularly high bar." Jensen, 791 F.3d at 421-22; see also (Doc. 79, at 2).

Moreover, even if the materiality question remains open, the Court finds that Kaymark has plausibly met that standard in this case. The Court of Appeals in Jensen made clear that the materiality standard "is simply a corollary of the well-established 'least sophisticated debtor' standard, which courts have routinely applied" to FDCPA violations such as those alleged here. Jensen, 791 F.3d at 418. The least sophisticated debtor standard focuses on "whether a debt

15

collector's statement in a communication to a debtor would *deceive* or *mislead* the least sophisticated debtor." Id. at 420. As the Court of Appeals explained:

> [A] false statement is only actionable under the FDCPA if it has the potential to affect the decision-making process of the least sophisticated debtor; in other words, it must be *material* when viewed through the least sophisticated debtor's eyes.
>
> It is therefore clear that the materiality requirement is simply *another way of phrasing* the legal standard we *already* employ when analyzing claims under § 1692e, so that the *same* analysis can be applied to communications containing false statements. . . . Because we view the materiality requirement as *a different way of expressing* the least sophisticated debtor standard, we are satisfied that adopting a materiality requirement for claims brought under § 1692e is consistent with Congress's intent in this regard. Indeed, refusing to adopt this materiality requirement would be inconsistent with decades of our own jurisprudence employing the least sophisticated debtor standard.

Id. at 421 (emphasis added). The Court noted that "our recognition that an element of materiality is subsumed in our analytical framework does nothing to dilute the protection Congress intended. A debtor simply cannot be confused, deceived, or misled by an incorrect statement unless it is material." Id.

Jensen emphasized that "this materiality standard does not turn on what an ordinary individual might reasonably understand from a debt collector's communication." Id. Rather, "[b]ecause the materiality requirement is a corollary of the least sophisticated debtor standard, the relevant 'decisionmaking body' here is the least sophisticated debtor. Thus, a statement in a communication is material if it is capable of influencing the decision of the least sophisticated debtor." Id. Again, the Court of Appeals cited its decisions in both McLaughlin and Kaymark in support of its assertion that the materiality/least sophisticated debtor standard "is not a particularly high bar." Id. at 421-22. The Court of Appeals distinguished cases such as McLaughlin and Kaymark, which involved debt collectors who represented estimates of the

16

amount the debtors ultimately would owe as the *actual* amount owed as of the date of communication, from "claims based on hypertechnical misstatements under § 1692e that would not affect the actions of even the least sophisticated debtor." Id. Only the latter claims are precluded by the materiality requirement.

Despite Udren's arguments, the fact that this action involves a foreclosure complaint as opposed to a debt collection letter does not impact the materiality analysis. Again, the Court of Appeals has already rejected the notion that the distinction is relevant in this case. See Kaymark, 783 F.3d at 179 ("Given our holding in McLaughlin based on nearly-indistinguishable facts, we conclude that the fact that the debt collection activity at issue here involves a foreclosure complaint, rather than a debt collection letter, does not remove it from the FDCPA's purview under McLaughlin."). Moreover, as set forth above, the Court of Appeals cited the FDCPA violations alleged in both McLaughlin and Kaymark as examples of representations that meet the materiality bar. Jensen, 791 F.3d at 421-22.[6]

This Court likewise is not bound, as Udren urges, to the materiality analysis set forth in its original opinion. To the contrary, even if the Court of Appeals did not address the materiality question as Udren contends, this Court's prior analysis of the issue does not comport with the

---

[6] In support of its argument in this regard, Udren cites to several decisions outside of this circuit, including the decision of the Court of Appeals for the Fourth Circuit in Elyazidi v. SunTrust Bank, 780 F.3d 227, 234 (4th Cir. 2015). In Elyazidi, the court of appeals affirmed the dismissal of a debtor's FDCPA claims based on attorney's fees sought in a "warrant in debt" (a form of standardized pleading for debt collectors) on immateriality grounds. Id. Udren contends that the Court of Appeals for the Third Circuit's citation to Elyazidi in Jensen supports dismissal of Kaymark's claims here. This argument is unpersuasive. In addition to the fact that Elyazidi is not binding on this court, it is factually dissimilar in important respects. Moreover, Jensen does not cite Elyazidi for its specific facts, but as an example of a sister court that has recognized a materiality standard in FDCPA cases. Indeed, directly after citing Elyazidi's formulation of the materiality standard, the Jensen court cites McLaughlin and Kaymark as examples of cases that satisfy the standard's "low bar." Jensen, 791 F.3d at 421.

materiality standard announced in Jensen.  In particular, this Court in its prior opinion focused primarily on whether Kaymark himself altered his position or relied in any way on Udren's itemization of fixed attorneys' fees and other costs in the foreclosure complaint.  Kaymark, 11 F. Supp. 3d at 515.  As set forth in Jensen, however, the relevant inquiry "does not turn on what an ordinary individual might reasonably understand from a debt collector's communication." Jensen, 791 F.3d at 421.  Rather, the relevant decision-making body is the least sophisticated debtor.  Id.  Similarly, the pertinent question is not whether the statements at issue actually influenced the debtor, but whether the statements are *capable of* influencing the decision of the least sophisticated debtor.

This Court's prior characterization of Kaymark's FDCPA claims as "rather hypertechnical" also is not dispositive.  Clearly, the Court of Appeals disagrees with this description as evidenced in Jensen when it distinguished the claims asserted in this case (and McLaughlin) from claims based "on hypertechnical misstatements," such as an incorrect signature on a subpoena, that "would not affect the actions of even the least sophisticated debtor." Jensen, 791 F.3d at 422.  Contrary to Udren's repeated assertions, the alleged violations here are not technicalities or mere "scrivener's errors," but misrepresentations of the legal status and amount of the debt.  Udren's persistent attempts to frame the representations at issue in the light most favorable to itself contravene the mandate of the Court of Appeals as well as the 12(b)(6) standard.  See Kaymark, 783 F.3d at 175 ("While such language is arguably capable of more than one meaning, we must view the Foreclosure Complaint through the lens of the least-sophisticated consumer and in the light most favorable to Kaymark."); see also Gorman v.

Messerli & Kramer, P.A., Civil No. 15-1890 (JRT/HB), 2016 WL 755618, at *5 (D. Minn. Feb. 25, 2016).[7]

For the reasons set forth above, when viewed in the light most favorable to Kaymark, the estimated/anticipated, but not-yet-incurred, fee demands in the Foreclosure Complaint are "capable of influencing the decision of the least sophisticated debtor." Accordingly, Udren's motion to dismiss the remaining FDCPA claims on materiality grounds must be denied.

For the reasons set forth above, Udren's Motion to Dismiss is denied.

## II. ORDER

For the reasons stated above, Defendant's Renewed Motion to Dismiss the Amended Complaint (Doc. 75) is DENIED. The case is hereby remanded to Magistrate Judge Cynthia Reed Eddy to conduct all pretrial proceedings in the matter.

IT IS SO ORDERED.


December 12, 2016                                           s/Cathy Bissoon
                                                            Cathy Bissoon
                                                            United States District Judge

CC (via ECF email notification):

All Counsel of Record

---

[7] In Gorman, the court denied a law firm debt collector's 12(b)(6) motion to dismiss debtor's FDCPA claims based on the inclusion in a debt collection letter of $35 in unauthorized costs. Although the court acknowledged that $35 was a small sum in comparison to an "already hefty" bill, it found that inclusion of such an unauthorized charge in the dunning letter was material. The court cited Kaymark favorably in its opinion and explained, inter alia, that "a debt collector's false statements . . . asserting that a debtor owes an amount the debt collector is unauthorized to collect should almost always be considered material because of the FDCPA's stated aim to halt 'the use of abusive, deceptive and unfair debt collection practices by many debt collectors.'" Id. at **4-5 (citing 15 U.S.C. § 1692(a)).