**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| DALE KAYMARK, *individually and on behalf of other similarly situated current and former homeowners in Pennsylvania*, | ) ) ) ) | Civil Action No. 13-419 |
| Plaintiffs, | ) ) | |
| | ) | Judge Cathy Bissoon |
| v. | ) | Magistrate Judge Cynthia Reed Eddy |
| | ) | |
| URDEN LAW OFFICES, P.C., | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION AND ORDER

Before the Court is Attorney Michael P. Malakoff's ("Attorney Malakoff's") Response to the Court's Order to Show Cause (hereinafter, "Response," Doc. 267).

## I.     BACKGROUND

Although this Fair Debt Collection Practices Act ("FDCPA") putative class action has been ongoing for several years, only the developments of the past six months are discussed below.  For the sake of clarity and, most importantly, for the benefit of Attorney Malakoff, far more facts than necessary for resolution of the specific issue before the Court are recounted.

### A.     Preliminary Settlement by the Parties and Return of Attorney Malakoff's Active Role in the Litigation

On July 6, 2018, Attorney John C. Evans ("Attorney Evans") filed a Stipulation on behalf of putative class representative Dale Kaymark ("Mr. Kaymark" or "Plaintiff") indicating that the parties were close to finalizing a Settlement Agreement.  (Doc. 166.)  Shortly thereafter, Attorney Evans filed an executed Settlement Agreement, (Doc. 169), and on August 9, 2018, a Joint Motion for Preliminary Settlement of the Class Claims, (Doc. 176).  Under the Settlement Agreement, "subject to Court approval, Defendant will pay $60,000 to the Settlement Class."

1

(Id. at 1.)  "Class counsel" was defined by the Settlement Agreement to mean "the law firms of

J.C. Evans Law, P.C., Strassburger McKenna Gutnick & Gefsky and Michael P. Malakoff, P.C."

(Doc. 176-1 at ¶ 4.)  The Settlement Agreement also defined the instant lawsuit as a class action.

(Id. at ¶ 3 ("'Class Action' shall mean the lawsuit filed under caption DALE A. KAYMARK,

Individually and on Behalf of other Similarly Situated Current and Former Homeowners in

Pennsylvania, Plaintiffs, v. BANK OF AMERICA, N.A. and UDREN LAW OFFICES, P.C.,

Defendant, Civil Action No. 2:13-cv-00419.").)

However, the parties had not reached closure on the issue of attorneys' fees, and on

August 16, 2018, Magistrate Judge Cynthia Reed Eddy ("Judge Eddy") held a telephonic status

conference with counsel for Plaintiff, Attorney Evans and Trent A. Echard, and counsel for

Defendant, Jonathan J. Bart and Daniel Bernheim.  (Doc. 179.)  Judge Eddy conveyed her

intention to mediate the issue of attorneys' fees in the case, and directed the parties to select an

agreeable date before she issued a pre-mediation order.  (Id.)  The following day, Judge Eddy

entered an Order scheduling the mediation for October 29, 2018.  (Doc. 180.)

A week prior to the mediation, on October 22, 2018, Attorney Malakoff filed a "Renewed

Motion to Enforce the Settlement Agreement."  (Doc. 181.)  The Motion stated that "on October

1, 2018, Udren represented to Kaymark and Class Counsel that it was not in a financial position

to pay" because it was insolvent.  (Id. at ¶ 3.)  The Motion urged the Court to approve the

Settlement Agreement before diving into the issues of attorneys' fees and laid out Plaintiff's

contention that Defendant had concealed its insolvency while negotiating the Settlement

Agreement.  (E.g., id. at ¶¶ 5–6 ("Defendant's [sic] concealed insolvency while simultaneously

mispresenting its insolvency resulted in a substantial economic loss to the class and to Class

Counsel time and money that could have and should have not occurred.").)[1]

In response to Plaintiff's Motion, Judge Eddy scheduled a telephonic status conference.

(Doc. 183.)  Immediately thereafter, Attorney Malakoff filed a Motion to Vacate the Telephone

Conference Scheduled for Today, stating the conference should occur in person and it should be

transcribed.  (Doc. 184.)  Judge Eddy denied the Motion to Vacate the Telephone Conference

and noted that the conference would be transcribed.  (Doc. 186.)

Prior to the telephone conference, Defendant filed a Response to the Motion to Enforce,

which averred that since signing the Settlement Agreement, Defendant had lost important clients,

laid-off employees, and ultimately, closed its doors after it could not make payroll.  (Doc. 185 at

¶ 4.)  Defendant also noted confusion about Attorney Malakoff's role in the litigation, as he had

announced his retirement in April of 2016, and had had little involvement in the proceedings

since that time.  (Id. at n.1.)

At the start of the October 23rd telephone conference, Attorney Malakoff represented that

he was now the only lawyer representing the Plaintiff.  (Doc. 248 at 2:11–2:15 ("THE COURT:

And who will be speaking on behalf of Plaintiff?  I'll have one attorney speak on each side's

behalf.  MR. MALAKOFF:  I'm the only one authorized to – by Mr. Kaymark as of this

weekend to speak for Mr. Kaymark, and I'm the only one that has a retainer agreement with

---

[1] This Court later denied Plaintiff's Motion to Enforce the Settlement Agreement on November
11, 2018, noting that there "is no Settlement Agreement to enforce until one is approved by the
undersigned."  (Doc. 204.)

him.").)[2]  As Judge Eddy began to explain the purpose of the conference, Attorney Malakoff

interjected as follows:

> THE COURT:  Okay.  So I have seen the recent filings with the case; and,
> likewise, I've consulted with Judge Bissoon on case management.  We're at the point in
> the litigation where Judge Bissoon will be ruling on – will be scheduling a time to rule on
> the joint motion for settlement and/or any motions pertaining to settlement.
> I am charged –
> MR. MALAKOFF:  The motions –
> THE COURT: Excuse me, sir.  Mr. Malakoff, you need to wait until I stop
> speaking, sir.  I've got a court reporter here.  I'm going to –
> MR. MALAKOFF:  I'm sorry.
> THE COURT:  I'm going to control this conference.  Do you understand?
> MR. MALAKOFF:  Yes.  I didn't realize that it was the Magistrate speaking.
> THE COURT:  I don't know who you thought was speaking; . . .

(Doc. 248 at 3:6–3:21.)  Judge Eddy explained that "the very narrow issue that we're discussing

today is whether the parties want to endeavor to come to an agreement on the attorney fee

amount, setting aside – or recognizing it's unclear whether there is collectability or not." (Doc.

248 at 4:14–4:17.)  In response, Attorney Malakoff stated:

> MR. MALAKOFF:  We think the Court's idea is excellent.  I would like to
> explore entering a judgment; and if we can enter a judgment and reach agreement as to a
> release in the settlement agreement, that would enable us further to proceed against
> Defendant Udren, its shareholders, and the possible insurer.
> THE COURT:  Okay.  Well, let me interrupt you.  I'm not the judge that would be
> entering a judgment.  I'm not deciding the issue whether a judgment is entered or not
> entered. . . .  The only issue that I now have responsibility for in administration of the
> case is aiding Judge Bissoon to come to the amount of attorneys' fees.

---

[2] On the heels of the telephone conference, on October 26th, every attorney representing the class
other than Attorney Malakoff filed Motions to Withdraw their representation.  (Docs. 191–93.)
Each of these motions indicates that Attorney Evans, co-counsel since January of 2017, spoke
with Mr. Kaymark who "agreed with Mr. Malakoff's recommendation that only Mr. Malakoff
could speak for him going forward."  (E.g., Doc. 191 at ¶ 5.)  Attorney Malakoff also filed a
Declaration stating that on "October 20, 2018, Mr. Kaymark advised the undersigned that no
other counsel was authorized to speak on his behalf"; to this Declaration, Attorney Malakoff
attached an e-mail he had sent to other counsel relaying Mr. Kaymark's wishes and the terms
under which counsel could communicate with the Court without Attorney Malakoff's approval.
(See Doc. 189.)  All three of the Motions to Withdraw were granted.  (See Docs. 194–196.)

(Id. at 4:23–5:9.)  After counsel for Defendant indicated that briefing may be a more appropriate route to pursue in coming to an agreement on attorneys' fees, and Judge Eddy laid out the framework for such a motion, Attorney Malakoff offered the following:

> MR. MALAKOFF:  That's correct, Your Honor.  We've been through that rodeo before as well as all other counsel on this phone call.  It will simply add likely about a hundred thousand dollars of time to this case on our end since we'll have to hire experts to provide testimony on hourly rates; but if that is the direction ordered by the Court, so be it.
> THE COURT:  I'm not ordering experts on hourly rates.

(Id. at 6:17–6:23.)  As the call continued, the record establishes that Attorney Malakoff continued to interrupt Judge Eddy.[3]  After Defendant's counsel sought clarification of the purpose of the proposed mediation and learned it was "can you agree upon an amount requested that you wouldn't contest?" (Doc. 248 at 9:3–9:4), Defendant's counsel asked if he could confirm with Defendant as to whether it would be amenable to participating in the scheduled mediation.  (Id. at 9:3–9:14.)  Judge Eddy agreed to allow Defendant's counsel to do so, and suggested the parties reconvene for another call on Thursday at 9:30 a.m. to find out whether Defendant would participate in that mediation.  (Id. at 9:21–9:23.)  The Court continued:

> THE COURT:  So what that means, Mr. Malakoff, [is] that you're going to have to pertain – you're going to have to provide to Defendants [sic] documentation in detail to support the amount that you would be requesting.  But this would be – this would

---

[3]     THE COURT:  Well, that's what I said, by affidavit.  A declaration, affidavit –
MR. MALKOFF:  I think we're saying the same thing.
THE COURT:  We, I think we are.  I think you're saying exactly what I already said.
MR. MALKOFF:  Okay.  It's a very expensive process whether there are experts or attorneys with affidavits.
THE COURT:  All right.  But in any event, if you don't supply the Court with the information to justify your fee request, then it will be difficult for the Court to grant that.  So it's –
MR. MALAKOFF:  I agree; and is as in Vallies it is required, we were awarded 156,000 hours – dollars for our time to prepare the necessary –
THE COURT:  Excuse me, sir.  That's really not relevant to this case.  So let's – let me take the call back over here.
(Doc. 248 at 7:11–8:2.)

obviously be a compromise number that you could request, that they would say, okay, we wouldn't object to that; but to the extent you can't do that, then we'll have to go into the full briefing and the full backup.

But from what I'm hearing, I believe what Defendant is saying is that they need some backup as to your hours and the amount of work done in order for this to be a successful endeavor.

MR. MALAKOFF: Your Honor, I don't agree, and it can't be done by Thursday. It would probably take 30 days and require tens of thousands of dollars of time. Furthermore, I'm unable to agree to proceeding until the class is fully paid the $60,000. The class settlement agreement should be enforced, and that provides a provision that those settlement discussions will – and proceedings will occur until and unless the settlement agreement has been approved, and it's not been approved.

I believe it's very inappropriate to discuss fees further, knowing that they're insolvent, knowing that we have to compete against our class clients at this time. So I believe that the settlement agreement should be enforced; and if we're ordered to proceed with fee negotiations or anything inconsistent with the settlement agreement, which that is, then we are going to have to oppose it.

And I note that the Court does not have the power to amend or modify the provisions of the settlement agreement. It's, in the first instance, vote up or down, whether it's willing to approve it, so we can take a timely appeal if necessary.

THE COURT: Okay. Well, let me – rest assured, I'm not attempting to modify the settlement agreement.

Based on the representation of Mr. Malakoff, I think it would be a waste of everyone's time to agree to mediate on Monday. And I don't know what material you were planning on coming with on Monday to support your position on attorneys' fees, but you should at least already have your hourly billable records that could be readily produced. So –

MR. MALAKOFF: We do.

THE COURT: Well, that's what I had requested –

MR. MALAKOFF: They can't be readily produced because it has to be filed with the Court; the amounts are accurate.

THE COURT: Okay. Well, I will – you know what? I'm going to enter a briefing schedule as to the requested attorneys' fees. . . .

. . .

To the extent that you wish for my order to be stayed and for Judge Bissoon to first rule on the settlement agreement, you would need to file an order directed – a motion directed to Judge Bissoon to stay my briefing order.

MR. MALAKOFF: Thank you; we will do that and file the Rule 72 objections.

(Id. at 9:24–12:7.) The day after the telephone conference, on October 24, 2018, Judge Eddy

modified the corresponding minute entry as follows: "[T]he Court clarifies that mediation set for

Monday, October 29, 2018 was cancelled due to Attorney Malakoff's adamant refusal to

participate in any mediation." (Doc. 187.)[4] Judge Eddy's Scheduling Order also was issued on October 24th (hereinafter "Scheduling Order," Doc. 190).

Over November 6th and 7th, Attorney Malakoff filed two sets of Objections to the Scheduling Order (Docs. 199, 201) as well as an Emergency Motion to Stay (Doc. 203). In response to the Emergency Motion to Stay, the Court extended the deadlines set by the Scheduling Order for briefing on the issue of attorneys' fees. (Doc. 204.) The Court noted, consistent with Judge Eddy's order, that the Scheduling Order was issued because of Attorney Malakoff's "adamant refusal" to mediate. (Id.; see also Doc. 187 (stating mediation was "cancelled due to Attorney Malakoff's adamant refusal to participate in any mediation."); Doc. 248 at 10:11–10:15 ("MR. MALAKOFF: Your Honor, I don't agree, and it can't be done by Thursday. It would probably take 30 days and require tens of thousands of dollars of time. Furthermore, I'm unable to agree to proceeding until the class is fully paid the $60,000.").)

On November 16th, Defendant filed its Response in Opposition to both sets of Plaintiff's Objections. (Doc. 206.) Defendant's Response in Opposition briefly addressed the Scheduling Order, but focused primarily on recent communications Defendant's counsel received from Attorney Malakoff that were characterized as demonstrating "increasingly erratic and indeed, threatening, behavior." (E.g., id. at 2.) Defense counsel attached the referenced communications to its Response. (See id. at Ex. B.) After reviewing Defendant's filings and the communications, the undersigned issued an order scheduling an in-person status conference for December 11th, citing "Defendant's allegations of exceptionally troubling behavior," and requested that the parties, including class representative Mr. Kaymark, and recently withdrawn

---

[4] This Court explicitly left to Judge Eddy's discretion the sanction, if any, against Attorney Malakoff she deemed appropriate in light of this conduct. (See Doc. 204.) Judge Eddy declined to formally sanction Attorney Malakoff.

Attorney Evans, attend. (Doc. 207.) On November 20th, this Court issued a Memorandum Order overruling Plaintiff's Objections. (Doc. 209.)

### B. The Lead Up to the Court's Hearing on December 11, 2018

Prior to the Court's hearing on Defendant's allegations, Attorney Malakoff filed a Motion for Leave to File Documents under Seal, stating Plaintiff had filed "several motions that rely upon confidential communications between the Parties" and citing his Objections. (Doc. 210.) Defendant promptly opposed the Motion (Doc. 211), and it was denied as not in the interests of justice. (Doc. 212.)

Attorney Malakoff then filed a Motion for Entry of a Preservation Order and a Motion to Compel Production of Insurance-Related Information on November 30, 2018. A few days later, on December 3, 2018, Attorney Malakoff filed a "Status Report," (Doc. 217), and a "Notice of Election Not to Proceed with the Attorney Fee Schedule," (Doc. 218). The Status Report noted that Attorney Malakoff "experienced computer problems over the weekend" and that he would file another document later to explain why he and Plaintiff decided not to file a fee petition. (Doc. 217.) A substantial portion of the Notice of Election Not to Proceed reiterates Plaintiff's arguments previously overruled by the Court's Order on his Objections and repeats arguments concerning Udren's alleged insolvency. (See generally Docs. 209, 218.) However, the Notice concludes with:

> In a subsequent Status Report (s), filed shortly Kaymark will respectfully address the disqualification ethical issues and other raised by Attorneys Bart and Bernheim and will respectfully request the District Court to revisit its sua sponte Order at Document 204, concluding that Attorney Malakoff failed to participate in good faith and/or the unfortunate determination that that irrespective of the respect he had clearly show the Magistrate during the entire 6 years of this litigation, including his timely consent to try the case before this Hon Judge Eddy (document) that on the single day of October 23, 2018 the disrespect of that court. (Which he will respectfully dispute); see Documents 187 and 204

(Doc. 218 at 10 (all errors in original).)

In response to this, the Court issued an Order inviting Attorney Malakoff "to file a Response to Defendant's allegations regarding his behavior (see Doc. 206) . . . on or before 12/7/18." (Doc. 219.) The Order also notified Attorney Malakoff that "[o]ther than this Response, the Court does not desire to review any additional status reports or notices before the scheduled hearing addressing this issue." (Id.)

Notwithstanding the Court's desires, on December 7th, Attorney Malakoff filed a "Notice to Highlight Possible Conference Issues." (Doc. 225.) In his Notice, Attorney Malakoff stated he would respond to the "refusal" issues raised by Doc. 187 "at a later date." (Id. at ¶ 2.) Attorney Malakoff also bizarrely stated: "Respectfully, Attorney Malakoff will elect the option provided by this Honorable Court on December 4, 2018 (Document 219) and, therefore, will not be responding to the 'extortion' allegation placed into Udren's response to Kaymark's Rule 72 objections." (Id. at ¶ 3.) Attorney Malakoff stated he retained ethics counsel to appear at the hearing on December 11th. (Id. at ¶ 4.)

Attorney Malakoff's Notice to Highlight Possible Conference Issues also relayed a belief that "this Honorable Court will likely remove him as the Rule 23(a)(4) stipulated class counsel agreement ¶ 25. Significantly this Honorable Court provides in that order 'John C. Evans must also attend'." (Id. at ¶ 5 (all errors in original).) Attorney Malakoff further stated that given

> the need to protect the class, neither Kaymark or his undersigned counsel, if requested by this Honorable Court, would oppose such substitution of Attorney Evans. Moreover, they would enthusiastically (given the now existing record) such a request by the court to John Evans. It is undisputed that Attorney Evans is an exceptionally well qualified and experienced class attorney under both the FDCPA and Rule 23.

(Id. at ¶ 6 (all errors in original).) Regarding the potential need to replace the named plaintiff, Attorney Malakoff offered:

> Currently, all plaintiff counsel, current and withdraw , including John Evans, and
> the retained claims administrator, have access to a class database consisting of
> 425 class members whose names and addresses are readily available, and if
> allowed by this Honorable Court, could be easily notified of the need to obtain a
> representative plaintiff to continue to represent but will become the "headless"
> stipulated class (i.e., a class without a representative plaintiff requiring such
> substitution).

(Id. at ¶ 7 (all errors in original).)

On the morning of December 11, 2018, the Court held the scheduled status conference. (Doc. 227; see also Doc. 235 (Official Transcript of the Conference).)  At the start of the conference, neither Attorney Malakoff nor Mr. Kaymark were present, and the Court turned to Attorney Evans regarding whether he knew their whereabouts.  (Doc. 235 at 2:17–2:18.)  Attorney Evans stated he called Attorney Malakoff at 9:29 a.m., and Attorney Malakoff stated he was in the building but tending to Mr. Kaymark, who he claimed had had a heart attack.[5]  (Id. at 2:19–2:24.)  The Court expressed that it had been its intention to have both Mr. Kaymark and Attorney Malakoff present at the conference, but nonetheless began to ask each attorney about the status of the case, beginning with Mr. Evans.  (Id. at 3:3–3:11.)

Mr. Evans offered that "I thought the ship seemed to be sailing rather smoothly as we moved toward resolution of the case" prior to the "financial issues" with the Defendant.  (Id. at 3:12 –3:19.)  Mr. Evans continued as follows:

> MR. EVANS: . . . At that point in time, I believe there were some e-mail
> exchanges, e-mails which were eventually filed with the Court that limited our,
> mine and Mr. Echard's – and he is present in court today – ability to speak on
> behalf of Mr. Kaymark.
> THE COURT:  Tell me about that.
> MR. EVANS:  Well, I wish I could because that came as a complete
> surprise, Judge.  Trent and I consulted among ourselves, we consulted with Mr.
> Malakoff and, frankly, made a decision that under those circumstances, we

---

[5] It is unclear to the Court that Mr. Kaymark did actually suffer a heart attack, given that he refused medical care and left on his own.

couldn't – I can't speak on behalf of him, it's very difficult to represent him. I think Mr. Malakoff then – I know this basically from being CC'd on documents, some additional negotiations, including I guess some accusations between defense counsel and Mr. Malakoff, things that I had no input on. I don't think Trent Echard had any input on, e-mails back and forth between Mr. Malakoff and counsel. I think there are accusations flying both ways, which confirm that at that time, we probably needed the Court's direction.

(Id. at 3:19–4:11.)

Defense counsel, Mr. Bart, then spoke, stating he was "almost as much at a loss as to how we got to where we are as Mr. Evans is." (Id. at 4:23–4:24.) Mr. Bart elaborated that while the parties were discussing settlement and the attorneys' fees issues, the following events took place:

> MR. BART: Mr. Malakoff sent out a letter saying that no one had authority to speak for the plaintiff except him. And after that, he started asserting in various e-mails that I personally was part of some conspiracy and that if I did not pay personally the settlement sum, he would seek my disbarment.
> There were at least three back and forths when I told him, I explained that legally, he was not asserting a meritorious position, nor that factually there is any merit to claiming any part of conspiracy, it's unfortunate for everybody involved, and that he should file – that we will be filing the proper motion on how we think that – how this impacts the case, and if he disagrees or feels that anything should be done, he should do the same. At which point you probably saw the response letter where he basically said, it's going to be $5,000 more per week if we don't, and we felt we had to bring it to the attention of the Court.

(Id. at 4:9–4:24.) Mr. Bart elaborated that "I thought my role, especially with the new local rule, was to bring it to Your Honor's attention." (Id. at 5:2–5:3.)

After being told that Attorney Malakoff remained in the lobby with Mr. Kaymark and the paramedics,[6] the Court turned to discussing the role of counsel in the case, inquiring as to whether Attorney Evans would be willing to return to serving as class counsel. (Id. at 7:1–7:10.) As Attorney Evans began to answer, stating that based on the developments in the case since he withdrew and the potential loss of the named plaintiff he would have to look into it

---

[6] Unfortunately, Mr. Kaymark was never able to appear at the hearing.

before answering the Court, Attorney Malakoff joined the proceeding.  (Id. at 7:11–7:18.)

Shortly thereafter, Mr. Evans asked for "30 or 60 [days], to see if the situation is where another

plaintiff needs to be found and discuss it with co-counsel."  In response, the Court stated:

> THE COURT:  I'm amenable to that scenario.  My issue is I have to
> ensure that counsel for the class is at the very least qualified and adequate,
> otherwise, there can be no assurances that counsel is acting in the best interest of
> the class.
>                                      . . .
> So, while I'm happy to give Mr. Malakoff an opportunity to speak to some
> of the allegations that have been put before the Court regarding his behavior in
> this case, particularly as it concerns both the following of orders from the
> magistrate judge in this case, Chief Magistrate Judge Eddy, as well as the
> interactions with defense counsel in the case.
> Certainly there's enough on the record that suggests that perhaps, Mr.
> Malakoff, you are not suited to be class counsel in this case.  So I'm happy to hear
> anything that you'd like to offer on your own behalf, if there is anything.  It
> seemed to me from your last filing that it was not your intention to respond to any
> of the allegations today.
> If you could put that mic right in front of you.
> MR. MALAKOFF:  Thank you, Your Honor.  I appreciate this
> opportunity.
> The Court's sua sponte order found that, as to the most serious charges,
> that I made extortionist threats.
> THE COURT:  First of all, the Court did not do that.
> Secondly, it seems to me you have an [sic] misunderstanding of the word
> [sic] "sua sponte" because the Court has not sua sponte acted on anything.
> Allegations were raised by defense counsel that the Court is addressing.  That is
> clearly not sue [sic] sponte.
> MR. MALAKOFF:  Let me rephrase that.
> Under the Court's local rules, I thought I would have a 14-day period to
> respond.  I did not.  But in any event, in terms of those charges, I think the Court
> should direct charges be filed against me under Rule 83.3 and I will defend.

(Id. at 8:3–9:14.)  Attorney Malakoff elaborated on defense counsel's allegations, and on how he

believed the Court should proceed with respect to Local Rule 83.3.  He restated his position: "In

terms of, again, Local Rule 83.3, I think the Court should proceed as promptly as possible in

bringing those charges since the charges are now on the public record."  (Id. at 10:21–10:23.)

The Court then sought to redirect the hearing:

THE COURT: . . . what you have not yet addressed is your suitability to continue as counsel.

MR. MALAKOFF: I'm not, in light of the Court's two orders at 204 and 206. I made a filing late last night. I'm semi-retired. I don't have an office. I don't have a full time secretary. Excuse my multiple errors, but in any event, once the Court entered certainly its second order, I believe it was November 19th, saying that I had committed exceptionally serious charges – I think the order speaks for itself.

THE COURT: The order does speak for itself and it does not read that way, but go on.

MR. MALAKOFF: Well, I think that's a quote.

In any event, it is what it is. When I got that order, I filed two documents that in light of that order, I no longer felt that I could represent the class under 23(a)(4).

I notified the Court about, I believe it was last week on Friday, and then against late last night, I filed an extensive declaration giving my viewpoint as to where we are today. Last week it was a memo suggesting what issues were for the Court, and nothing has changed since those filings.

So, in terms of sanctions, or whatever disciplinary charges, I think the Court should enter an order that the defendant has 30 days, 20, to file Rule 11, or waive it, file 1927 against me, or waive it. I will certainly be filing 1927 charges against them, as well as a libel suit.

(Id. at 11:2–12:1.) Thereafter, Attorney Malakoff continued to express his opinion regarding how the attorneys' fees issue should be managed, as well as to reference previous litigation he participated in before other judges of this Court. (Id. at 12:2–13:25.) Attorney Malakoff's argument ended as follows:

MR. MALAKOFF: . . . I can produce, and I'm not going to, opinions showing I acted 100 percent properly. But it's not my burden. I'm right now before the Court as a charged defendant and I want all my rights.

THE COURT: Well, you are not here as a charged defendant. You are here to speak to some of the troubling behavior in this case, not limited to your interchanges with defense counsel, but also included is your decision not to follow direct orders of the magistrate judge.

MR. MALAKOFF: That's exactly right. I'll address that, too.

I provided the Court a case I handled in the Tenth Circuit, Martin v. Franklin. I was representing Native Americans who couldn't afford to pay two monthly insurance policies. I was removed to federal court from the state court. There, I experienced an exceptionally hostile judge. Of course, I'm not the easiest person to get along with.

THE COURT: That much is clear.

MR. MALAKOFF: We – so I filed a timely motion to remand. It wasn't remanded.

A year and a half later, I asked the Court to reconsider that. He refused and ordered me to proceed, and I refused. It was an adamant refusal there, unlike here. There it was an adamant refusal. Here, if the Court were to review that, the October 25th record, the motion striking refusal to appear was by Daniel Bernheim. Look at Page 5. He said, quote, it's a wasteful use of my time to proceed. If you look at Page 9, you'll see a similar refusal. If you look at me, the first two magistrate suggestions was, I think that's an excellent idea. I will gladly appear before the Court at any time.

And then at the end, the magistrate may have been confused in that she relies on that – she seems to indicate that I said, used those words, and she repeats them almost verbatim. She says that, you know, it appears that it's a wasteful use of time to proceed with mediation. That term didn't come from me. It came from the mouth of Daniel Bernheim on Page 5 of the transcript.

Okay, back to Martin. The court can't decide whether to hold me in contempt or not. It dismisses the case. Okay. We go to the Tenth Circuit. The Tenth Circuit, we ask the Tenth Circuit to adopt the line of cases calling to stand on your complaint that we argued at the Third Circuit in In Re Westinghouse and the Third Circuit agreed. That's when we refused to move forward in this very court when a complaint was dismissed, dismissing hypothetically $100 million claims, retaining $1 million claims. I'll return to that Third Circuit case in a minute.

Back to Martin. The Tenth Circuit in Denver asked for a supplemental brief. We provided.

THE COURT: With all due respect here, Mr. Malakoff, I am not sure what this has to do with your behavior in this case. I don't really care what the Tenth Circuit held or did or anything like that. I just really need you to address what you have done or haven't done in this case, and that's pretty much it.

MR. MALAKOFF: Okay.

When the court doesn't have jurisdiction, you have an absolute right to refuse to comply. And in Lewis v. Curtis, if you want to talk about Third Circuit law –

THE COURT: Why would the court not have jurisdiction? Why would the magistrate judge in this case not have jurisdiction?

MR. MALAKOFF: I went over that in my objections and if the Court wants me to revisit it, which I'm not asking –

THE COURT: There are a couple of things I'd say about that. Just based upon your decision that the Court doesn't have jurisdiction, that's not a thing. You don't decide, oh, the Court doesn't have jurisdiction, therefore, I will not comply, without some sort of ruling that the court doesn't – that the magistrate judge didn't have jurisdiction in this matter.

MR. MALAKOFF: You're absolutely right. I take a grave risk when I do it. I took that risk basically in Westinghouse. I took the risk in Martin. And more particular, you have to understand, more particular from my standpoint, you begin the analysis at Rule 41(b). 41(b) says specifically that if you're the plaintiff

and you don't want to proceed with your case, you don't have to proceed with the case and that you suffer any nolle consequences, like a dismissal with prejudice, or the remedies provided in Rule 23(d), which are really two fold, that if you refile –

THE COURT: Let's not go too far afield here. . . .

(Id. at 13:22–17:4.)  Shortly thereafter, the Court drew some conclusions:

THE COURT: Well, I will take the issues that have been raised regarding the conduct of Mr. Malakoff and where we should go with respect to discipline in this case under advisement.

I'm not going to dictate that defendant file a Rule 11 motion or a motion pursuant to Section 1927, that's up to the defendant to do, if they wish. I'm not going to suggest or impose those types of sanctions here today.

What I will say is that the record is quite clear that Mr. Malakoff should no longer serve as class counsel in this case, both for the reasons of the allegations made by defense counsel, I find that Mr. Malakoff would certainly not be effective in that role moving forward, regardless whether those are true or false; moreover, his failure to follow orders, what can only be described as rambling and disorganized pleadings and papers that Mr. Malakoff has filed in this case, coupled with his declaration today, given his semi-retirement, that he certainly does not have the resources to represent the case, the class in this case with no staff, no resources, certainly he's not best suited to represent the class.

Having said that, in one of Mr. Malakoff's filing, Mr. Evans, he does indicate that you would be appropriate to handle this case, which is why I engaged in that discussion with you earlier.

Certainly based upon the representations contained in your declaration and the Court's own knowledge of your prior history in this court, you do seem qualified under Rule 23(g) to handle this class. I recognize that there are some outstanding issues with respect to where this whole thing is going at this point, and so I will allow you the time to determine whether or not you want to take on that representation and thereafter see where we are.

So, what I'll do at this point is consistent with everything Mr. Malakoff said today and, obviously, seemingly his desires as well, he'll be removed as class counsel of the case at this juncture.

I recognize defendants have a response due to Mr. Evans' motion for attorneys fees and so that deadline will remain intact, but other than that, the case will be stayed for a period of 30 days in order to secure new class counsel.

What I ask then, Mr. Evans, is if you decide that you are not going to be representing this class, that there be some effort to interface with Mr. Kaymark, assuming he is able, such that new class counsel may be secured.

MR. MALAKOFF: He's not willing to be represented by anybody but me.

THE COURT: He may not be an appropriate class representative in that case. So we will revisit that issue in 30 days.

(Id. at 18:19–20:17.)  Prior to the conclusion of the hearing, Mr. Eberle, Attorney Malakoff's

ethics counsel, sought clarification from the Court:

>    MR. EBERLE:  Your Honor, I just have a clarification.  As I said, I was
> just defining my role, if anything, but I just wanted, as far as sitting here, I saw
> two issues, one, is there a potential disciplinary issue, and with regard to that, I
> believe is what Mr. Malakoff has stated, there are procedures set forth in the rules
> at 83.3 as well as the Rules of Disciplinary Enforcement, that if such a matter
> would take place, that those would be followed, and I think that he was – that's
> what he was trying to say.
>    THE COURT:  I understand.
>    MR. EBERLE:  I didn't see anything take place here today –
>    THE COURT:  That's correct.
>    MR. EBERLE:  – that touched upon that.
>    THE COURT:  That is correct, you did not.
>    MR. EBERLE:  And then the other issue was with regard to Mr. Malakoff
> acting as class counsel, and I believe that's what was addressed today and the
> only thing that was addressed today.
>    THE COURT:  That is correct, Mr. Eberle.
>    MR. EBERLE:  Thank you, Your Honor.

(Id. at 22:15–23:10.)

Shortly after the hearing, the Court issued an Order removing Attorney Malakoff

as class counsel, based on the information in the record, the hearing and Rule 23(g).

(Doc. 228.)  The Court also stayed the case for 30 days in order for Attorney Evans to

determine whether he would, once again, assume the role of class counsel in the case.

(Id.)

Later that week, on December 14, 2018, the Court issued the following Notice:  "In light

of the allegations of misconduct contained in Doc. 206, consistent with the process mandated by

Local Rule 83.3, the Court has informed Chief Judge Mark Hornak of the allegations.  In

response, the Chief Judge has referred this matter to this Court's standing Committee on

Attorney Discipline."  (Doc. 230.)  The Notice was also mailed to Attorney Malakoff at his

address of record, and e-mailed to Attorney Malakoff's ethics counsel, Mr. Eberle. (Staff Notes dated 12/14/18.)

### C. Attorney Malakoff's Post-Hearing Filings and the Court's Order to Show Cause

On January 14, 2019, Attorney Malakoff filed a Notice of Appearance in case, seeking to represent "Dale A. Kaymark, individually, in the above referenced matter." (Doc. 239.) Contemporaneously, Attorney Malakoff filed a Motion for Disqualification (Doc. 240), an Emergency Motion to Reinstate ECF Rights (Doc. 241), a Request for Voluntary Disclosure re: Termination of ECF Rights (Doc. 242), a Motion to Transcribe (Doc. 243), a Motion to Correct Docket Entries (Doc. 244), a Declaration of Michael P. Malakoff Regarding Confidentiality (Doc. 245), a Motion to Vacate (Doc. 246), and a Declaration of Michael P. Malakoff Regarding the October 23 Transcript (Doc. 247).

The following morning, Judge Eddy struck all of these filings from the docket "as Attorney Michael P. Malakoff was terminated by order of District Judge Bissoon. [Doc.] 228." (Doc. 249.)

On January 20, 2019, Attorney Malakoff filed a Motion to Participate,[7] seeking to participate in a telephonic status conference in the case "as counsel for Plaintiff, Kaymark." (Doc. 254.) The Court denied Attorney Malakoff's Motion and stated:

> By Court Order (see Doc. 228) and pursuant to Rule 23(g), Mr. Malakoff is no longer counsel in this case. As Mr. Malakoff is no longer counsel of record, he enjoys none of the benefits of being counsel. Therefore, he is not permitted to attend any conferences. It is also observed that Mr. Malakoff has continued to file a number of notices and motions, and he is reminded that since he is no longer counsel, he is not permitted to file documents in this matter.

---

[7] Contemporaneously with this Motion, Attorney Malakoff filed two additional Notices. (Docs. 252, 253.)

(Doc. 255.)

On February 5, 2019, Attorney Malakoff again filed a Notice of Appearance. (Doc. 260.) Contemporaneously with this filing, Attorney Malakoff filed a "First Objections/Termination/ Motion to Disqualify." (Doc. 261.) In response, the Court struck his filing and ordered that "on or before 2/14/19, Attorney Malakoff shall show good cause as to why he should not be held in contempt of this Court for repeatedly violating its Orders. (See, e.g., Docs. 249, 255.)." (Doc. 262.) On February 19, 2019, Attorney Malakoff filed a "Response to this Court's February 7, 2019 Order Regarding Attorney Malakoff's Alleged Contempt" (Doc. 267), along with a Notice of Joinder (Doc. 268), Notice of Automatic Dismissal (Doc. 269), Notice of Voluntary Conditional Dismissal (Doc. 270), and Motion for Relief Pursuant to Rule 60 (Doc. 271).[8]

II.     **ANALYSIS**

Attorney Malakoff's many filings, while confused and riddled with errors (both substantive and typographical), appear to generally fall into four categories: (1) Attorney Malakoff's demands to appear as "individual" counsel to Mr. Kaymark in this class action lawsuit; (2) Attorney Malakoff's demands to have his "ECF rights" restored; (3) Attorney Malakoff's debate concerning so-called factual findings by this Court concerning his alleged wrongdoing; and (4) Attorney Malakoff's obvious desire to have the undersigned removed from this case. Attorney Malakoff's filings are based upon misconceptions regarding the law, as well as misperceptions regarding the reality of what has transpired in this case. This memorandum is

---

[8] Attorney Malakoff continued to filed even more notices, briefs, motions, and declarations in this case following these filings. (See Docs. 272, 274–78, 280–81, 283–85.) Among these filings was a Notice of Appeal as to the Court's Orders at Docket Entries 255 and 262. (Doc. 272.) On February 28, 2019, Attorney Malakoff filed with this Court the Circuit's Order as to this appeal, which determined that Attorney Malakoff's appeal was premature, as "[n]either order appears to be final within the meaning of 28 U.S.C. § 1291 or otherwise appealable at this time." (Doc. 285.)

an effort by the Court to set the record straight for Attorney Malakoff such that all involved may be on the same page.

First, Attorney Malakoff cannot, as a matter of law, serve as individual counsel to Mr. Kaymark at this juncture. Second, Attorney Malakoff's ECF rights in this Court remain intact. Third, the Court has made no factual findings regarding Defendant's allegations of wrongdoing, as that is for the Court's Disciplinary Committee to decide pursuant to the Court's Local Rules. And, finally, the undersigned has not engaged in any conduct that would require recusal.

## A. Attorney Malakoff's Misconception That He Can Remain Counsel

There is no doubt that Attorney Malakoff believes that he may continue to represent Mr. Kaymark in his individual capacity. (See generally Response, Doc. 283.) The law prohibits Attorney Malakoff from doing so at this time.

Attorney Malakoff and Mr. Kaymark made a decision to bring this lawsuit as a class action lawsuit, and indeed, the settlement reached by the parties contemplates class resolution. Under the terms of the parties' Settlement Agreement, this case does not include individual claims of Mr. Kaymark apart from the class claims. (See Doc. 176-1 at ¶ 3 ("'Class Action' shall mean the lawsuit filed under caption DALE A. KAYMARK, Individually and on Behalf of other Similarly Situated Current and Former Homeowners in Pennsylvania, Plaintiffs, v. BANK OF AMERICA, N.A. and UDREN LAW OFFICES, P.C., Defendant, Civil Action No. 2:13-cv-00419.").) Plaintiff's counsel in the case are class counsel. (Id. at ¶ 4 ("Class counsel" was defined by the Settlement Agreement to mean "the law firms of J.C. Evans Law, P.C., Strassburger McKenna Gutnick & Gefsky and Michael P. Malakoff, P.C.").) Thus, the Settlement Agreement acknowledges that, counsel for the representative plaintiff, Mr. Kaymark, is class counsel.

At present, resolution of this matter depends on only the Court's approval of that Agreement and other motions related to settlement. (See Doc. 176.) And, when considering whether to approve a proposed settlement, the Federal Rules of Civil Procedure require the district court to treat the case as a class action. In re Nazi Era Cases Against German Defendants Litigation, 198 F.R.D. 429, 438 (D.N.J. 2000) (Rule 23(e) requires the district court to do so); Kahan v. Rosenstiel, 424 F.2d 161, 169 (3d Cir. 1970) ("[A] suit brought as a class action should be treated as such for purposes of dismissal or compromise, until there is a full determination that the class action is not proper."). If the Court approves the Settlement Agreement, any individual claims of Mr. Kaymark would be resolved.

This result is precisely what a class action is supposed to achieve. When a plaintiff invokes the procedures of Rule 23, the plaintiff initiates "a truly representative suit designed to avoid, rather than encourage, unnecessary filing of repetitious papers and motions." American Pipe & Const. Co. v. Utah, 414 U.S. 538, 550 (1974); Hansberry v. Lee, 311 U.S. 32, 41 (1940) (equating a "class" suit with a "representative" suit); see also Shady Grove Orthopedic Associates, P.A. v. Allstate Ins. Co., 559 U.S. 393, 402 (2010) (Rule 23 is "designed to invoke procedural fairness and efficiency"). A class action allows "plaintiffs to pool claims which would be uneconomical to litigate individually" and the representative plaintiff in such a suit protects the interests of the other members of the class. Phillips Petroleum Co. v. Shutts, 472 U.S. 797, 809 (1985).

In this case, and at this juncture, the "originating and only named plaintiff" is Mr. Kaymark. (Doc. 269 at ¶ 1; see also Doc. 176-1 at ¶ 12 (defining "Plaintiff" in the class action as "Dale A. Kaymark.").) In this role, Mr. Kaymark acts as a "representative party" to "fairly

and adequately protect the interests of the class." Rule 23(a)(4); see also Rule 23(a) ("One or more members of a class may sue or be sued as representative parties on behalf of all members . . .").) In choosing to bring this lawsuit as a class action, as opposed to solely pursuing his individual claims against Defendant in his individual capacity, Mr. Kaymark elected himself to act as a guardian with respect to the rights of the putative class. Cohen v. Beneficial Indus. Loan Corp., 337 U.S. 541, 548–49 (1949) (describing the representative of a class action as "a self-chosen representative and a volunteer champion" who takes the "interests of all in the redress of wrongs" into his hands); see also Blanchard v. EdgeMark Financial Corp., 175 F.R.D. 293, 298 (N.D. Ill. 1997) ("Thus, as a class representative, by assuming a representative role on behalf of the absent class members, voluntarily accepts a fiduciary obligation toward the class that may not be abandoned at will."). In making the decision to take on that role, Mr. Kaymark gave up the right to pursue his own claims or his own strategy, irrespective of the interests of the class.[9]

Attorney Malakoff appeared to understand this legal landscape prior to the Court's hearing on this issue on December 11th. In his filing the night before, Attorney Malakoff represented to this Court that "neither Kaymark nor his undersigned counsel, if requested by this Honorable Court, would oppose such substitution of Attorney Evans" as class counsel. (Doc. 225 at ¶ 6.) And, if Attorney Evans were to become class counsel, Attorney Malakoff

---

[9] If, however, Mr. Kaymark wishes to file a proper notice or motion to withdraw or opt out of the class and pursue his individual claims with counsel of his choice, including Attorney Malakoff, the Court would certainly take the matter under advisement. The Court would require this filing to be signed by Mr. Kaymark himself. See In re Nat'l Football League Players' Concussion Injury Litigation, 307 F.R.D. 351, 421 (E.D. Pa. 2015) ("A class member's signature is commonly required to object or opt out."). It is unclear whether Attorney Malakoff's Notices of Automatic and Conditional Dismissal are intended to serve this purpose. These documents, generally, are rambling and undecipherable. (See Docs. 269 and 270.)

acknowledged that Mr. Kaymark could easily be replaced with another member of the class because of Mr. Kaymark's desire to be represented only by Attorney Malakoff:

> Currently, all plaintiff counsel, current and withdraw , including John Evans, and the retained claims administrator, have access to a class database consisting of 425 class members whose names and addresses are readily available, and if allowed by this Honorable Court, could be easily notified of the need to obtain a representative plaintiff to continue to represent but will become the 'headless' stipulated class (i.e., a class without a representative plaintiff requiring such substitution).

(Id. at ¶ 7 (all errors in original).)

The next day at the hearing, Attorney Malakoff again represented that Mr. Kaymark was "not willing to be represented by anybody but me." (Doc. 235 at 20:13–20:14.) This was consistent with Attorney Evans's previous withdrawal from the case in October of 2018 at the request of Mr. Kaymark. (Doc. 191 at ¶¶ 4–5; see also Doc. 235 at 3:24–4:3 (Attorney Evans determined he could not represent Mr. Kaymark as the named plaintiff if he "can't speak on behalf of him").)

Since the hearing, however, Attorney Malakoff has asserted that while he conceded to being removed as class counsel, he can still represent Mr. Kaymark in his individual claims at this juncture. However, after the Court's ruling on his removal as class counsel, this simply is not the case under the law.

First, if Mr. Kaymark desires to continue pursuing this class action as the representative plaintiff, he must have counsel other that Attorney Malakoff because Attorney Malakoff is precluded from serving as class counsel under Rule 23(g). If Mr. Kaymark will accept only

Attorney Malakoff as his counsel, then, as the Court stated at the hearing, "[h]e may not be an appropriate class representative." (Doc. 235 at 20:15–20:17.)[10]

More to the point, the idea that a representative plaintiff can pursue his own individual claims with his own lawyer while at the same time pursuing the same claims in a representative capacity for the putative class with class counsel is entirely inconsistent with Rule 23. A representative plaintiff owes duties to the class that he cannot compromise—if anything, sometimes the representative plaintiff may have to act on behalf of the putative class in a manner that may not further his personal interests. This representative framework does not allow for an entry of appearance of counsel for Mr. Kaymark's sole benefit, which necessarily splits Mr. Kaymark's loyalty. How can he act in the best interest of the putative class while simultaneously engaging an advocate to pursue his own agenda? He cannot.

One need look no further than the events following the Court's determination that Attorney Malakoff could not serve as putative class counsel for an example of how the purported individual interests of a named plaintiff quickly come into conflict with those of the putative class. Mr. Kaymark's insistence that he be represented *only* by counsel that this Court has held unsuitable to protect the interests of the class has put this entire action at risk. If a suitable replacement representative was not found, this action may have been subject to dismissal, despite the executed Settlement Agreement. Shelton v. Pargo, Inc., 582 F.2d 1298, 1304–05 (4th Cir. 1978) (stating putative class action cannot proceed without named plaintiffs, who may not

---

[10] During the stay, the Court left the issue of securing an appropriate representative Plaintiff to Attorney Evans. (Id. at 20:9–20:20.) Attorney Evans has advised the Court that a class representative has indeed been identified, and that he agreed so serve as class counsel. (Doc. 273.)

"abandon the fiduciary role they assumed at will . . . if prejudice to the members of the class they claimed to represent would result").

Second, if Mr. Kaymark is not the representative Plaintiff, then he is merely a putative class member. And as a putative class member, Mr. Kaymark is not entitled to his own attorney in this action at this juncture because a "nonnamed class member is not a party to the class-action litigation before the class is certified." Fernando v. PayPal, Inc., No. C 10-1668, 2013 WL 2253785, at *3 (N.D. Cal. May 22, 2013) (quoting Standard Fire Ins. Co. v. Knowles, 568 U.S. 588, 593 (2013)). The filing of a notice of appearance by an attorney on behalf of a putative class member individually is therefore "improper and premature." Fernando, 2013 WL 2253785, at *4.

In Fernando, the court struck a notice of appearance filed by an attorney purportedly representing a member of the putative class, stating that without certification of the class or prior order permitting the class member's joinder or intervention, the class member remained a non-party. 2013 WL 2253785, at *3. The Fernando court also rejected the class member's argument that Rule 23(b)(2)(B)(iv), which allows a class member to elect to have counsel enter an individual appearance on the member's behalf, supported his position, because no class had yet been certified. Id. at *4 ("However, since no class has been certified in this case, the right of a class member to enter an appearance through counsel has not yet ripened.").

Further, even after a class has been certified, a district court has discretion to deny counsel's attempts to represent class members. See Moulton v. U.S. Steel, 581 F.3d 344, 353, 348 (6th Cir. 2009) (finding no error in district court's attempts at "corralling the extent of [an attorney's] involvement in the case," and stating the "dispute over [the attorney's] role was a sideshow to the main events."). Rule 23(d)(1)(C) also allows this Court to "impose conditions

on the representative parties or on intervenors" in order to properly administer a class action to resolution.

In sum, no matter the present role of Mr. Kaymark in the case, Attorney Malakoff cannot be his counsel.

### B.    Attorney Malakoff's ECF Rights Have Not Been Terminated By This Court

Since being removed as class counsel, Attorney Malakoff has repeatedly *electronically filed* emergency motions to "restore his ECF rights." (E.g., Docs. 241, 274, 277.) At no point has the Court terminated Attorney Malakoff's rights to electronically file documents in the Western District of Pennsylvania. Since December 11, 2018, Attorney Malakoff continued to receive electronic notice in cases in this District in which he is currently counsel of record, such as, for example, Trunzo v. Phelan Hallinan and Schmieg, LLP, Civil Action No. 11-1124. A review of the electronic notice receipts for all docket entries in the Trunzo matter after December 11, 2018, (Docs. 393–95), reveals that Attorney Malakoff received them all, at his e-mail address of record.

With respect to this case, after Attorney Malakoff conceded that he was not suitable class counsel and the Court found the same, he was terminated as counsel of record. Attorneys do not receive electronic notice of filings in cases in which they do not represent any of the parties. Obviously, Attorney Malakoff retains his ECF rights, as he files all of his motions and "notices" electronically and they appear on the electronic docket. In none of these motions does Attorney Malakoff state that he tried to file a document electronically and was unable to do so.

### C.    This Court's So-Called "Factual Findings"

Attorney Malakoff has spent a great deal of time and effort arguing against alleged factual findings in this matter. In order to put these contentions to rest, the undersigned makes

clear here that she has made only a single relevant finding: that Attorney Malakoff is not qualified to serve as class counsel in this case. (Doc. 228.) This finding followed a hearing, before and during which Attorney Malakoff consented to his removal as class counsel. (See Doc. 225 at ¶¶ 6–7 (Attorney Malakoff stated that neither he nor Plaintiff would oppose appointment of John Evans as class counsel, as it is "undisputed" that Mr. Evans is exceptionally well qualified); Doc. 235 at 11:4 –11:10 (Attorney Malakoff stated that he is not suitable class counsel because he is "semi-retired," has no office, and has no full time support staff).) For the sake of clarity and thoroughness, the Court also addresses the factual findings this Court and the Magistrate Judge are alleged to have made.

      1.    Attorney Malakoff is "unable to agree" to attend the scheduled mediation

A substantial amount of Attorney Malakoff's filings have been aimed at Judge Eddy's explanatory clarification on October 24th, that the parties would not be able to mediate the issue of attorneys' fees because Attorney Malakoff refused to attend the mediation. (Doc. 187.) He argues that that Judge Eddy "may have been confused" because she determined that Attorney Malakoff was the reason that the mediation could not take place. (Doc. 235 at 15:3–15:4.)

The transcript from the conference relieves any Court from "finding" that Attorney Malakoff's refusal to participate was the reason the mediation could not go forward. That is just simply what occurred in front of the Magistrate Judge:

> THE COURT: So what that means, Mr. Malakoff, that you're going to have to pertain – you're going to have to provide to Defendants documentation in detail to support the amount that you would be requesting. But this would be – this would obviously be a compromise number that you could request, that they would say, okay, we wouldn't object to that; but to the extent you can't do that, then we'll have to go into the full briefing and the full backup.
> But from what I'm hearing, I believe what Defendant is saying is that they need some backup as to your hours and the amount of work done in order for this to be a successful endeavor.

MR. MALAKOFF: Your Honor, I don't agree, and it can't be done by Thursday. It would probably take 30 days and require tens of thousands of dollars of time. Furthermore, I'm unable to agree to proceeding until the class is fully paid the $60,000. The class settlement agreement should be enforced, and that provides a provision that those settlement discussions will – and proceedings will occur until and unless the settlement agreement has been approved, and it's not been approved.

I believe its very inappropriate to discuss fees further, knowing that they're insolvent, knowing that we have to compete against our class clients at this time. So I believe that the settlement agreement should be enforced; and if we're ordered to proceed with fee negotiations or anything inconsistent with the settlement agreement, which that is, then we are going to have to oppose it.

(Doc. 248 at 9:21–11:1.)

Even if Judge Eddy's explanation of these events is a "finding," any objection to it would be untimely. Attorney Malakoff did not address this "finding" in either set of his Objections to the Scheduling Order, which was issued as a result of his "adamant refusal," nor at any other time in the 14-day period after Judge Eddy's clarification was entered on the docket. See Rule 72(a) ("A party may serve and file objections to the order within 14 days after being served a copy. A party may not assign as error a defect in the order not timely objected to.").

On November 7, 2018, this Court referred to Judge Eddy's "adamant refusal" explanation, stating that the Scheduling Order was issued on the issue of attorneys' fees because Attorney Malakoff refused to attend the mediation. (Doc. 204.) The Court reminded Attorney Malakoff that he must obey the Magistrate Judge's orders or seek reversal through recognized procedures,[11] rather than just refuse to follow orders. (Id.) Instead of passing judgment on whether any disciplinary action was appropriate for the refusal, the undersigned left that to the discretion of Judge Eddy. (Id. ("The Court leaves to Judge Eddy's discretion any sanction she deems appropriate.").) Judge Eddy did not impose any sanction on Attorney Malakoff.

---

[11] Attorney Malakoff did file two sets of Objections to the Scheduling Order (Docs. 199 and 201), which the Court overruled on November 20, 2018 (see Doc. 208).

2.      Defendant's allegations regarding Attorney Malakoff's behavior

A few weeks later, Defendant's counsel brought to the Court's attention that Attorney Malakoff had sent e-mails to defense counsel demanding the amount in the Settlement Agreement be paid by them or else they would face disciplinary proceedings and possible disbarment.  (Doc. 206 at ¶¶ 2–4.)  When it reviewed Defendant's filings, the Court ordered a hearing to discuss "Defendant's allegations of exceptionally troubling behavior on the part of Plaintiff's putative class counsel."  (Doc. 207.)  This hearing was scheduled for December 11, 2018, over three weeks after the allegations appeared on the docket.  The Court also invited Attorney Malakoff to respond directly to the allegations.  (Doc. 219.)  He elected not to do so.  (Doc. 225 at ¶ 2, 3.)

Rather, Attorney Malakoff appeared at the hearing with the notion that he had already been found to have committed some misconduct.  Each time he made a statement evincing such a belief, the Court clarified that it had not made any findings on this point:

> MR. MALAKOFF:  Thank you, Your Honor.  I appreciate this opportunity.
> The Court's sua sponte order found that, as to the most serious charges, that I made extortionist threats.
> THE COURT:  First of all, the Court did not do that.
> Secondly, it seems to me you have an [sic] misunderstanding of the word [sic] "sua sponte" because the Court has not sua sponte acted on anything.  Allegations were raised by defense counsel that the Court is addressing.  That is clearly not sue [sic] sponte.

(Doc. 235 at 9:1–9:9.)

> THE COURT:  . . . what you have not yet addressed is your suitability to continue as counsel.
> MR. MALAKOFF: I'm not, in light of the Court's Orders at 204 and 206.  I made a filing late last night.  I'm semi-retired.  I don't have an office.  I don't have a full time secretary.  Excuse my multiple errors, but in any event, once the Court entered certainly its second order, I believe it was November 19th, saying that I had committed exceptionally serious charges – I think the order speaks for itself.

THE COURT: The order does speak for itself and it does not read that way, but go on.

(Id. at 11:2–11:12.)

MR. MALAKOFF: . . . I can produce, and I'm not going to, opinions showing I acted 100 percent properly. But it's not my burden. I'm right now before the Court as a charged defendant and I want all my rights.

THE COURT: Well, you are not here as a charged defendant. You are here to speak to some of the troubling behavior in this case, not limited to your interchanges with defense counsel, but also included is your decision not to follow direct orders of the magistrate judge.

(Id. at 13:22–14:5.)

Even if Attorney Malakoff remained confused on this point, the Court explicitly clarified this for Attorney Malakoff's ethics counsel, Mr. Eberle:

MR. EBERLE: Your Honor, I just have a clarification. As I said, I was just defining my role, if anything, but I just wanted, as far as sitting here, I saw two issues, one, is there a potential disciplinary issue, and with regard to that, I believe is what Mr. Malakoff has stated, there are procedures set forth in the rules at 83.3 as well as the Rules of Disciplinary Enforcement, that if such a matter would take place, that those would be followed, and I think that he was – that's what he was trying to say.

THE COURT: I understand.

MR. EBERLE: I didn't see anything take place here today –

THE COURT: That's correct.

MR. EBERLE: -- that touched upon that.

THE COURT: That is correct, you did not.

MR. EBERLE: And then the other issue was with regard to Mr. Malakoff acting as class counsel, and I believe that's what was addressed today and the only thing that was addressed today.

THE COURT: That is correct, Mr. Eberle.

MR. EBERLE: Thank you, Your Honor.

(Id. at 22:15–23:10.)

As referenced in Mr. Eberle's statement, Attorney Malakoff, the Court and defense counsel all believed that any disciplinary proceedings and factual findings related to discipline should be handled in conformance with this District's Local Rule 83.3, the Rules of Disciplinary Enforcement for Attorneys. (See also Doc. 248 at 5:2–5:3 (Defense counsel, Mr. Bart, stated he

filed the e-mails with the Court because he "thought [his] role, especially with the new local rule, was to bring [the e-mails] to Your Honor's attention."); id. at 9:12–9:14 (Attorney Malakoff stated that "in terms of the charges, I think the Court should direct charges be filed against me under Rule 83.3 and I will defend.").) The relevant portion of the Rule reads:

> When misconduct or allegations of misconduct which, if substantiated, would warrant discipline on the part of an attorney admitted to practice before this Court shall come to the attention of the District Judge or Magistrate Judge of this Court, whether by complaint or otherwise, the Chief Judge shall in his or her discretion . . . appoint as counsel attorneys . . . to investigate allegations of misconduct.

(Local Rule 83.3.B.1.)

At the conclusion of the status conference on December 11th, the Court took under advisement how to proceed with respect to the disciplinary issues raised. (Doc. 248 at 18:19–18:22 ("Well, I will take the issues that have been raised regarding the conduct of Mr. Malakoff and where we should go with respect to discipline in this case under advisement.").)[12]

However, without regard to the truth of those allegations, the Court did make its determination that Attorney Malakoff should no longer serve as class counsel:

> THE COURT: What I will say is that the record is quite clear that Mr. Malakoff should no longer serve as class counsel in this case, both for the reasons of the allegations made by defense counsel, I find that Mr. Malakoff would certainly not be effective in that role moving forward, regardless whether those are true or false; moreover, his failure to follow orders, what can only be described as rambling and disorganized pleadings and papers that Mr. Malakoff has filed in this case, coupled with his declaration today, given his semi-retirement, that he certainly does not have the resources to represent the case, the class in this case with no staff, no resources, certainly he's not best suited to represent the class.

---

[12] Three days after the hearing, on December 14th, the Court issued a Notice to the parties that "consistent with the process mandated by Local Rule 83.3" it has informed Chief Judge Hornak of the allegations made by defense counsel. (Doc. 230.) The Court mailed this Notice to Attorney Malakoff at his address of record and sent a courtesy copy via e-mail to Mr. Eberle. (Staff Notes dated 12/14/18.)

(Id. at 19:2 –19:13.)  The Court issued an Order the same day memorialized this finding.  (Doc. 228.)

Consistent with those discussions, the Court's Order also stayed the case pending appointment of new class counsel.[13]  (Id. ("Additionally, the Court hereby STAYS and ADMINISTRATIVELY CLOSES this matter until 1/23/19, during which time, John Evans, Esq. will determine whether he may assume the role of putative class counsel or, in the alternative, Plaintiff will secure alternative, qualified counsel.").)

### D.     Attorney Malakoff's Disqualification/Recusal Motions

Since Attorney Malakoff's removal as counsel of record in this case, he has filed numerous motions (and notices of intent to file more motions) seeking recusal or disqualification of the undersigned.  (E.g., Docs. 240, 268, 281.)  While the Court was under no obligation to review these motions, as Attorney Malakoff is not counsel in this case, the Court has reviewed them and determines that Attorney Malakoff has not offered any reason for recusal in these filings or any others.

Attorney Malakoff's "Motion for Disqualification," (Doc. 240), focuses on Judge Eddy's "adamant refusal" explanation, the undersigned's "sua sponte" holdings, and his disciplinary referral.  His "Notice of Joinder" reiterates these issues and also argues that that the Court's actions following his removal as counsel, including not allowing him to file documents in the

---

[13] During the stay, the Court allowed the parties to proceed with briefing the issue of attorneys' fees, as ordered by Judge Eddy's Scheduling Order.  (See Doc. 190; Doc. 204.)  Attorney Malakoff did not file a motion for his fees, and his "Notice of Election Not to Proceed with the Attorney Fee Schedule" stated that it "was Kaymark and undersigned counsel's joint decision to waive Kaymark's rights to proceed with the court allowed attorney fee process."  (Doc. 218 at 1.)  No other matters were briefed or considered during that time, and the docket in this case accurately reflects all of the Court's communications with the parties during the stay.  Indeed, any activity on the docket has been necessitated by Attorney Malakoff's unyielding filings.

case, not allowing him to be Mr. Kaymark's personal lawyer, and issuing its Order to Show

Cause, demonstrate prejudice and a lack of impartiality. (Doc. 268.)  Attorney Malakoff has

provided notice to the Court that he intends to file additional motions as well. (Docs. 280–81.)

All of these motions were filed after Attorney Malakoff conceded that he was not best

suited to serve as class counsel and the Court removed him from that role. (See Doc. 228.)  It is

clear to the Court that at the time that Attorney Malakoff consented to removal as class counsel,

he had a misconception that he would nonetheless be able to represent Mr. Kaymark on an

individual basis.  This has created an unfortunate situation, but it has been created by Attorney

Malakoff, not by prejudice or bias by the undersigned.[14]

A district judge should recuse herself when her "impartiality might reasonably be

questioned." 28 U.S.C. § 455(a).  However, a judge's remarks that "are critical or disapproving

of, or even hostile to, counsel, the parties, or their cases ordinarily do not support a bias or

partiality challenge." Liteky v. United States, 510 U.S. 540, 555 (1994).  Recently, the Third

Circuit found no evidence of bias requiring recusal despite a district judge's "verbal thrashing"

of defendants in a hearing, alleged ex parte communications with the plaintiff, and the

defendant's dissatisfaction with the judge's rulings.  In re Whitchurch, 639 F. App'x 772, 774–

75 (3d Cir. 2016); see also Securacomm Consulting, Inc. v. Securacom Inc., 224 F.3d 273, 278

---

[14] In his pursuit to represent Mr. Kaymark individually, Attorney Malakoff appealed two of the Court's orders to the Circuit. (See Doc. 272.)  On the same date that Attorney Malakoff filed his appeal, Attorney Evans gave notice that a substitute class representative had been identified and that he would assume the role of putative class counsel. (Doc. 273.)  On February 26th, the Circuit entered an Order stating the appeal appeared to be premature, but asked all parties to submit written responses addressing the issue within 14 days. (See Doc. 285.)  The Court, the parties, and the class are now in a position where, despite the existence of a Settlement Agreement, the Court may not be able to enter a judgment if Attorney Malakoff continues to press his appeal.  Swift action is especially important here, where Defendant's insolvency could make it more difficult for the class to recover as time passes.

(3d Cir. 2000) ("We have repeatedly stated that a party's displeasure with legal rulings does not form an adequate basis for recusal.").

The Court's rulings in this case have concerned who is a suitable attorney to serve as class counsel. At no time while determining this issue has this Court acted inappropriately. No counsel of record has raised any concern with the Court along these lines, though the Court would certainly entertain such a motion from any counsel of record. At present, as discussed above, there is no mechanism by which Attorney Malakoff is able to become counsel of record in this case. In sum, Attorney Malakoff's misunderstanding of the law in this area and his fundamental misconception of the facts are his issues, not the Court's, and therefore, recusal is not warranted.

### E.    Attorney Malakoff's Defiance of the Court's Order

Having recounted the history and governing law in this case, the Court now turns its attention to the ultimate issue before it, contempt.

District courts have the authority to sanction attorneys for disobedience as part of their inherent powers. Trial courts' inherent power "is not a broad reservoir of power, ready at an imperial hand, but a limited source; an implied power squeezed from the need to make the court function." Chambers v. NASCO, Inc., 501 U.S. 32, 42 (1991) (internal quotations omitted). The inherent powers of federal courts "are those which 'are necessary to the exercise of all others.'" Roadway Exp., Inc. v. Piper, 447 U.S. 752, 764 (1980) (quoting United States v. Hudson, 7 Cranch 32, 34 (1812)). The most prominent of these powers "is the contempt sanction, 'which a judge must have and exercise in protecting the due and orderly administration of justice and in maintaining the authority and dignity of the court.'" Roadway, 447 U.S. at 764 (quoting Cooke v. United States, 267 U.S. 517 (1812)). Discipline of attorneys who appear before it is also an

inherent power of the Court.  Fellheimer, Eichen & Braverman, P.C. v. Charter Technologies, Inc., 57 F.3d 1215, 1224 (3d Cir. 1995).

While Attorney Malakoff's convoluted filings have created the appearance of complex questions of law and fact, there is but one before the Court: whether Attorney Malakoff had good cause for violating the Court's Orders at Docket Entries 249 and 255.  After careful review of the entire record and Attorney Malakoff's response, the Court finds that he violated the Order at Doc. 255 without good cause.

Following the Court's determination that Attorney Malakoff was not suited to be class counsel, on January 14, 2019, Attorney Malakoff attempted to enter his appearance on behalf of Mr. Kaymark and he filed several motions.  The next day, Judge Eddy struck all these filings, stating "Attorney Michael P. Malakoff was terminated by order of District Judge Bissoon. [Doc.] 228."  (hereinafter, "Striking Order," Doc. 249.)  This termination came after a hearing where Attorney Malakoff was given the opportunity to speak and in fact consented to being removed as class counsel—that is, after a hearing where Attorney Malakoff consented to being terminated from the case.  There is nothing clearly erroneous or contrary to law about Judge Eddy's Striking Order, as it effectuates the undersigned's ruling at Docket Entry Number 228.  See Rule 72(a) (requiring a district judge to "consider timely objections and modify or set aside any part of the order that is clearly erroneous.").

While it is possible that Attorney Malakoff may not have understood what his removal as class counsel meant prior to Judge Eddy's Striking Order, the undersigned made clear what the rule meant shortly thereafter when he persisted.  When Attorney Malakoff acted in defiance of this Court's ruling that he was not counsel a second time (see Docs. 252–54), the Court

explained, on January 22, 2019, exactly what it meant with respect to his involvement in this case:

> By Court Order (see Doc. 228) and pursuant to Rule 23(g), Mr. Malakoff is no longer counsel in this case. As Mr. Malakoff is no longer counsel of record, he enjoys none of the benefits of being counsel. Therefore, he is not permitted to attend any conferences. It is also observed that Mr. Malakoff has continued to file a number of notices and motions, and he is reminded that since he is no longer counsel, he is not permitted to file documents in this matter.

(Doc. 255.) A copy of this Order was sent to Attorney Malakoff at his address. (Staff Notes dated 1/22/19.) After receiving this Order, there is no doubt that Attorney Malakoff knew that he was not permitted to file any documents in this case.

Nevertheless, on February 5th, Attorney Malakoff filed "First Objections/Termination/ Motion to Disqualify" to the undersigned's Order. The Court issued its Order to Show Cause in Response stating specifically that "Attorney Malakoff shall show good cause as to why he should not be held in contempt of this Court for repeatedly violating its Orders. (See, e.g., Docs. 249, 255.)." (Doc. 262.)

The arguments in Attorney Malakoff's Response are unavailing.[15] Attorney Malakoff argued that due process was offended when "without advance notice or opportunity to be heard or defend" he was removed as counsel in the case. (Response at 6.) Attorney Malakoff had over three weeks to prepare for the hearing, and even longer to respond to Defendant's Response in Opposition detailing the allegations concerning his behavior. (See Doc. 207 (dated November 19, 2018 and scheduling the December 11th hearing).) He was given the opportunity to speak[16]

---

[15] With regard to the portions of his Response that rehash his disagreement with alleged factual findings by the Magistrate and the Court, as well as his points regarding bias and disqualification, the undersigned already addressed those points, and will not do so again here.

[16] As discussed previously, Attorney Malakoff also had notice and an opportunity to be heard on the allegations of Defendant regarding his conduct. Attorney Malakoff chose not to directly respond to them, either in writing or at the hearing, instead asking the Court to make a

and he conceded that he was not suitable class counsel. (Doc. 235 at 11:4 –11:10 (Attorney Malakoff stated that he is not suitable class counsel because he is "semi-retired," has no office, and has no full-time support staff).)

Attorney Malakoff also argues in his Response that Mr. Kaymark was left without counsel and not provided any grace period to secure new counsel, and for that reason, he had an ethical duty to continue to represent him. (Response at 6.) This is not supported by the facts. The undersigned stayed the proceedings in this case in order for new counsel to be secured. (Doc. 204.) Attorney Malakoff was at the hearing when the Court expressed that it would be staying the case pending appointment of new class counsel, and he raised no objection to proceeding in that manner at that time. (See generally Doc. 235.)

With the exception of the issues of attorneys' fees, with respect to which both Mr. Kaymark and Attorney Malakoff waived an interest in participating (see Doc. 218), no other issues were undertaken during the stay, and the docket accurately reflects the communications between the Court and counsel of record during this time. Further, despite the fact that Attorney Evans—who Attorney Malakoff hoped would take over the case—has provided notice to the Court of his intent to serve as putative class counsel (Doc. 273), the Court has not lifted the stay because Attorney Evans has not formally entered his appearance. The undersigned undertook such actions in the interests of Mr. Kaymark and the putative class, as is her duty.

Finally, Attorney Malakoff argued that the Court has denied Mr. Kaymark counsel of his choice and that the Court's orders prohibiting Attorney Malakoff from serving as counsel are

---

disciplinary referral. (Doc. 225 at ¶¶ 2–3.) The Court did so, consistent with its duty and his recommendation. (See Doc. 235 10:21–10:23 ("In terms of, again, Local Rule 83.3, I think the Court should proceed as promptly as possible in bringing those charges since the charges are now on the public record."); Doc. 230 (the Court's referral pursuant to Local Rule 83.3).)

"sanctions . . . not supported by any evidence." (Response at 16–20.)  Attorney Malakoff has it half right—the Court has indeed prohibited Attorney Malakoff from serving as class counsel, and, if Mr. Kaymark remains a representative plaintiff in this case, he may not have Attorney Malakoff serve as his attorney for the reasons previously discussed.  However, Attorney Malakoff is wrong that the Court's orders prohibiting him from being Mr. Kaymark's personal attorney are "sanctions" or "not supported by evidence."  Moreover, at this stage in the litigation, if Mr. Kaymark is a mere putative class member, he has no right to counsel as a matter of law. Standard Fire Ins. Co., 568 U.S. at 593 (a putative class member is not a party to the class action-litigation before the class is certified); see also Fernando, 2013 WL 2253785, at *4 (filing of a notice of appearance by an attorney on behalf of a putative class member individually is therefore "improper and premature" before certification).

Giving Attorney Malakoff the benefit of the doubt, the Court finds that Attorney Malakoff's misunderstanding of law and the effect of his removal as class counsel may excuse his filings immediately after Judge Eddy's Striking Order.  (Doc. 252–54.)  However, there is no room for excusing his defiance of the Court's directive in at Docket Entry 255 that his removal as class counsel means he may no longer file any documents in this matter.  In light of this direct disobedience, the Court finds Attorney Malakoff to be in contempt of this Court.  Additionally, his persistent filings have distracted the Court and the parties from reaching resolution in this case, affecting the orderly administration of justice.  See Roadway, 447 U.S. at 764.

At this time, however, the Court will decline to sanction Attorney Malakoff for this disobedience.  That is, the undersigned finds no sanction is appropriate for Attorney Malakoff's contemptuous filings placed in the record prior to the filing of this Order but after the Court's Order at Docket Entry 255.  At this stage in the litigation, it is the Court's desire to direct its

attention and resources toward resolution of this case—rather than the conduct and contentions of Attorney Malakoff—for the benefit of the parties and the putative class.  **However, should Attorney Malakoff file any documents in this case without Leave of Court after this Order is filed, the undersigned will impose sanctions.**[17]

## III.    ORDER

After consideration of Attorney Michael P. Malakoff's Response to the Court's Order to Show Cause (Doc. 267), the Court finds Attorney Malakoff's unauthorized filings constituted CONTEMPT OF COURT.  While no sanction will be imposed at this time, for any future unauthorized filings by Attorney Malakoff in this matter, the Court shall impose sanctions.  Such sanctions may be both monetary and non-monetary in nature.

IT IS SO ORDERED.


March 2, 2019                                        s\Cathy Bissoon                      
                                                            Cathy Bissoon
                                                            United States District Judge


cc (via ECF e-mail notification):

All Counsel of Record

cc (via U.S. Mail):

Michael P. Malakoff, Esq.
3214 Ladoga Street
Pittsburgh, PA 15204

---

[17] The Court does not foresee there being any circumstance under which Attorney Malakoff would need to file documents in this matter moving forward prior to class certification, unless Mr. Kaymark desires to opt out of this litigation.