**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

FREDERICK J. HILL, *individually and on* )
*behalf of other similarly situated current* )
*and former homeowners in Pennsylvania*, )          Civil Action No. 13-419
                                         )
                    Plaintiffs,          )
                                         )          Judge Cathy Bissoon
          v.                             )          Chief Magistrate Judge Cynthia Reed Eddy
                                         )
UDREN LAW OFFICES, P.C.,                 )
                                         )
                    Defendant.           )

## MEMORANDUM AND ORDER

### I. MEMORANDUM

Pending before the Court is Plaintiffs' Amended Motion for Default Judgment and Preliminary Approval of the Settlement Agreement.  (Doc. 343.)[1]

As Plaintiffs are well-aware, the facts of this case are unusual, to say the very least.  The parties in this case originally moved for preliminary approval of their settlement agreement in August of 2018.  (Doc. 176.)  The Court, desiring to evaluate the proposed settlement agreement and the issue of attorneys' fees concurrently, asked Magistrate Judge Eddy to mediate the issue of fees. (See Doc. 209 at 5.)  Plaintiffs' prior counsel made this impossible, (Doc. 187), and the Magistrate Judge ordered briefing on the issue.  In connection with the fees issue, Defendant's counsel brought to the Court's attention troubling conduct by Plaintiffs' then counsel.  (Docs. 206, 207.)  Ultimately, Plaintiffs' then counsel consented to being removed as class counsel.[2] (Doc. 228.)

---

[1] Plaintiffs also filed an Amendment to the exhibits attached to their Motion, substituting Exhibits 2 and 4.  (Doc. 345.)

[2] Attorney Malakoff's conduct following his consent to being removed as class counsel, which hijacked the docket in this case for several months, has already been well-documented by the Court and will not be elaborated on further here.  (See Doc. 286).

Then, the Supreme Court decided Obduskey v. McCarthy & Holthus LLP, resolving the "different views among the Circuits about application of the FDCPA to nonjudicial foreclosure proceedings," and held that "but for § 1692f(6), those who engage in only nonjudicial foreclosure proceedings are not debt collectors within the meaning of the Act." Obduskey, 139 S. Ct. 1029, 1035, 1038 (2019).  After the ruling, which abrogated the Third Circuit decision in this case (Kaymark v. Bank of America, N.A., 783 F.3d 168 (3d Cir. 2015)), the Court ordered parties to file briefs addressing why their case should not be dismissed in its entirety.  (Doc. 297.)  Upon review of the parties' briefing, the Court found good cause had been demonstrated not to dismiss this case, because Ehrheart v. Verizon Wireless, 609 F.3d 590 (3d Cir. 2010) is controlling as to whether the parties' executed Settlement Agreement continues to bind them after Obduskey.  (See Court's Order at Doc. 318.)

In addition, the transition to new class counsel took some time notwithstanding Plaintiffs' original counsel's consent to being removed as class counsel, as it also necessitated a change in the representative Plaintiff.  (Doc. 307.)  By the time this had occurred, appeals by former class counsel prevented the Court from taking any action with respect to approval of the proposed settlement.  The Court of Appeals for the Third Circuit dismissed each of former class counsel's appeals.  (Docs. 336, 337, 338.)

While those appeals were pending, and shortly after the parties first moved for preliminary approval, Defendant alleged insolvency, and Defendant's counsel withdrew from representation in April of 2019.  (Docs. 320, 323, 325.)  Thus, when Plaintiffs filed a Second Amended Complaint on April 12, 2019, to address the change in representative Plaintiff, (Doc. 324), Defendant did not answer or otherwise plead.  The Court had ordered the parties to file an Amended Joint Motion for Preliminary Approval of Settlement within 7 days of Defendant's

Answer to the Complaint, but due to the lack of Answer and withdrawal of the Defendant, the Court assumes the parties were unable to comply.  (Doc. 318.)

Against this backdrop, Plaintiffs filed a renewed Motion for Default Judgment and Preliminary Approval of Settlement, (Doc. 333), which the Court denied without prejudice to refiling.  (Doc. 341.)  In its Order, the Court outlined two issues with respect to the Motion, given the complicated posture of the case, about which it requested supplemental authority: (1) the Court's capacity to grant a motion for default judgment in the context of a class action lawsuit, and (2) how Plaintiffs planned to proceed and comply with the requirement under the Class Action Fairness Act ("CAFA") that notice be given by each Defendant participating in the proposed settlement, when Defendant has acknowledged that it would not participate in this case. (Doc. 341.)  Finally, Plaintiffs filed an Amended Motion for Default Judgment and Preliminary Settlement, (hereinafter "Motion," Doc. 343; with revised exhibits, filed under Amendment to Amended Motion for Default Judgment and Preliminary Settlement, Doc. 345), which is the instant Motion at issue.

In summary, these complicated facts can be boiled down as follows.  The parties have executed a settlement agreement subject to Federal Rule of Civil Procedure Rule 23 in the context of Plaintiffs' class action lawsuit, which the parties once jointly submitted to the Court for preliminary approval.  A number of issues caused delay in the Court's review of the Settlement Agreement, including a number of appeals and an intervening Supreme Court decision.  Defendant, after executing said settlement agreement, withdrew its counsel from the case due to business closure and has ceased communications with the Court, despite a warning regarding the possibility of a default judgment.  Under the law of this Circuit, the Court is obligated to enforce an executed settlement agreement.  The Court must also protect the rights of

the class under the binding settlement agreement reached by parties under Rule 23.  Therefore, and for the reasons discussed below, Plaintiffs' Motion will be granted in part and denied in part, and the Court concludes that its limited role in resolving this case is to oversee the enforcement of the settlement agreement under Rule 23.

Plaintiffs' Motion requests a number of actions:  default judgment, preliminary approval of the settlement, conditional certification of the settlement class, appointment of settlement class counsel, authorization to disseminate notice, approval of the plan of distribution and setting of a hearing on final settlement approval.  Each shall be addressed in turn.

### A.    DEFAULT JUDGMENT

Plaintiffs move for default judgment against Defendant for its failure to answer or otherwise respond to the Second Amended Complaint and to "close the pleadings necessitated by the substitution of the class representative."  (Brief in Support of Plaintiffs' Amended Motion for Default Judgment and Preliminary Approval of the Settlement Agreement, hereinafter "Brief in Support," Doc. 344 at 2, 25-33; Motion at 2.)  It is true that Defendant's counsel filed a motion to withdraw from the case (Doc. 320); the Court ordered Defendant's counsel to supplement its motion to clarify whether Defendant would will secure other counsel, and also warned that if Defendant intends to proceed without counsel, "it may subject itself to default judgment in this matter" (Doc. 322); and Defendant's counsel filed a supplement including a declaration from Mr. Mark J. Udren confirming Defendant's counsel's withdrawal and stating that Defendant had closed as of August 2018 and had no assets (Doc. 323).  That same day, Plaintiffs filed its most recent amended complaint, which Plaintiffs represent is "identical to the Complaint filed by Dale Kaymark, except for deletion of personal information regarding Dale Kaymark, elimination of claims previously dismissed, and insertion of information unique to Mr. Hill," and that it also

"references the Settlement Agreement, of which Mr. Hill offers his approval, of course subject to the approval of this Court." (Second Amended Complaint, hereinafter "Complaint," Doc. 324 at 2.) The Court also granted Defendant's counsel's motion to withdraw as attorney. (Doc. 325.) Defendant has since failed to answer the Complaint or otherwise pled. For the reasons that follow, however, the Court will deny Plaintiffs' motion for default judgment.

First, Plaintiffs' motion for default judgment is premature. Before Plaintiffs may bring a motion for default judgment, they must first move for entry of default by the Clerk as provided by Rule 55(a) of the Federal Rules of Civil Procedure. Husain v. Casino Control Comm'n, 265 F. App'x 130, 133 (3d Cir. 2008) ("[E]ntry of default by the Clerk under Federal Rule of Civil Procedure 55(a) constitutes a general prerequisite for a subsequent default judgment under Rule 55(b)"). As such, Plaintiffs' Motion for default judgment is not properly before the Court.

Procedural defect aside, there are more fundamental reasons that the Court, even if it were able to decide Plaintiffs' Motion on the merits, cannot grant default judgment. As Plaintiffs note, Rule 55(b)(2) of the Federal Rules of Civil Procedure governs default judgments by the Court. Under the Rule, where Plaintiffs' claim is not for a sum certain or a sum that can be made certain by computation, the party must apply to the Court for a default judgment and the Court may conduct hearings or make referrals if it needs to conduct an accounting; determine the amount of damages; establish the truth of any allegation by evidence; or investigate any other matter. As Plaintiffs indicate, the threshold inquiry for the Court is "whether the unchallenged facts constitute a legitimate cause of action." Joe Hand Promotions, Inc. v. Yakubets, 3 F. Supp. 3d 261, 270 (E.D. Pa. 2014) (internal citations omitted). The Court, just as it would in evaluating Plaintiffs' claims at the motion to dismiss stage, will accept as true the "well-pleaded

factual allegations in the plaintiff's complaint, except those relating to damages, as though they were admitted or established by proof." Id. (internal citations omitted).

In the Second Amended Complaint, Plaintiffs allege Defendant Udren Law Offices, P.C. is a debt collector.  (Complaint at 2.)   Plaintiffs' one remaining claim is brought under the Fair Debt Collection Practices Act, 15 U.S.C. § 1692 ("FDCPA").  (Complaint at 5-6.)  While it is "not the court's responsibility to research the law and construct the parties' arguments for them," Joe Hand Promotions, Inc., 3 F. Supp. 3d at 271 (E.D. Pa. 2014) (internal citations omitted), the Court faces an unusual situation where it was made aware, when there was active Defendant's counsel in this case, of a Supreme Court decision which abrogated prior Third Circuit precedent on this topic.  The Supreme Court held, in resolving different views among the Circuits about application of the FDCPA, that "but for § 1692f(6), those who engage in only nonjudicial foreclosure proceedings are not debt collectors within the meaning of the Act."   Obduskey v. McCarthy & Holthus LLP, 139 S. Ct. 1029, 1038 (2019).  While the Court specifically abrogated Kaymark v. Bank of America, N. A., 783 F.3d 168 (3d Cir. 2015)—the Third Circuit decision in a prior iteration of this case—while discussing "different views among the Circuits about the application of the FDCPA to *nonjudicial* foreclosure proceeding," it also stated that "whether those who *judicially* enforce mortgages fall within the scope of the primary definition is a question we can leave for another day." Id. at 1035, 1039 (emphasis added).  In this case, Defendant Udren assisted Bank of America in the context of *judicial* foreclosure proceedings. (See Complaint at 2 ("BOA filed a Verified Foreclosure Complaint against Mr. Hill in Allegheny County, Pennsylvania through its attorney, Udren.").)  As such, there is enough ambiguity in the Supreme Court's ruling to conclude that Plaintiffs have brought a legitimate cause of action

against Defendant under the FDCPA in its Complaint.[3]   Next, the Court would consider the

three <u>Chamberlain</u> factors in determining whether to exercise its discretion and enter a default

judgment (<u>see</u> Brief at 25-30), but for other deficiencies in Plaintiffs' Complaint which prevents

the Court from entering default judgment described further below.

The Court cannot rule in Plaintiffs' favor based on their requests for relief in the

Complaint as plead.  Rule 54(c) of the Federal Rules of Civil Procedure states that "a default

judgment must not differ in kind from, or exceed in amount, what is demanded in the pleadings."

Plaintiffs' request for relief in its Complaint are: (1) "Declare that the Defendant Udren's actions

violated the FDCPA"; (2) "Enter judgment in Plaintiffs' favor for actual damages, costs, and

reasonable attorneys' fees as provided by the FDCPA, §1691(a)"; and (3) "Grant any further

relief as deemed just."  (Complaint at 7.)  The Court believes Plaintiffs miscited the relevant

damages provision of the FDCPA, as 15 U.S.C. §1691(a) is inapplicable.  The Court assumes

that Plaintiffs meant to cite the civil liability provision of the FDCPA, which is 15 U.S.C.

---

[3] In addition to <u>Kaymark</u>, the Supreme Court specifically abrogated two other Circuit opinions, <u>Glazer v. Chase Home Fin. LLC</u>, 704 F.3d 453 (6th Cir. 2013) and <u>Wilson v. Draper & Goldberg, P. L. L. C.</u>, 443 F.3d 373 (4th Cir. 2006) for holding the same proposition as <u>Kaymark</u>, that an entity whose only role is the enforcement of security interests is a debt collector for the purpose of all the Act's requirements.  <u>Obduskey v. McCarthy & Holthus LLP</u>, 139 S. Ct. 1029, 1035 (2019).  While the Supreme Court was considering nonjudicial foreclosure actions in its decision, all three Circuit cases involved judicial foreclosure proceedings.  (<u>See</u> Memorandum of Law of Defendant Udren Law Offices, P.C. in Response to this Court's Order to Show Cause Dated March 21, 2019, Doc. 302, at 3.)  At least one court (in the Northern District of Ohio) declined to follow <u>Obduskey</u> in the context of "security interest enforcers via judicial proceedings," determined that it was still bound by the Sixth Circuit's holding in <u>Glazer</u>, which held that "lawyers whose principal business purpose is mortgage foreclosure or who regularly perform judicial foreclosure actions meet the FDCPA definition of debt collector," and as such found that Defendant law firm was considered a debt collector under the FDCPA.  <u>Williams v. Partners for Payment Relief Inc.</u>, No. 1:19CV264, 2020 WL 973753, at *6 (N.D. Ohio Feb. 28, 2020).  As such, there is some ambiguity here as to whether <u>Obduskey</u> would dispose of Plaintiffs' claims as plead, and in the face of this ambiguity, the Court will read the complaint to contain a legitimate cause of action.

§1692k, which also poses practical concerns for the facts of this case.  This provision, in the case of a class action, contemplates as part of the damages calculations, "such amount as the court may allow for all other class members, without regard to a minimum individual recovery, not to exceed the lesser of $500,000 or 1 centum of the net worth of the debt collector."  In addition to misciting the relevant statute, Plaintiffs have not provided the Court with what that amount might be.  With the Defendant in this instance unable to appear before the Court, as an unrepresented, defunct law firm, the Court would not be able to determine, for instance, Defendant's net worth, for the purposes of calculating appropriate relief in support of a default judgment.  As Plaintiffs remember, net worth was previously a subject of much debate, with Plaintiffs and Defendant disagreeing as to the law.  (Brief at 15-17.)

Moreover, given Plaintiffs' other requests in its Motion, it is clear to the Court that Plaintiffs are also requesting relief through enforcement of the Settlement Agreement (Doc. 343-1).  Indeed, the Settlement Agreement is referenced in the Complaint (indicating that Mr. Hill, the class representative, approves and reaffirms Settlement Agreement, at 2-3), though the Settlement Agreement is not included as part of Plaintiffs' request for relief at the end of the Complaint (Complaint at 7).  The relief provided in the Settlement Agreement differs from the relief requested in the Complaint—it contemplates a sum certain, as agreed upon by the parties, to be paid from the Defendant to the Plaintiff, and Defendant does not admit to liability.  (Settlement Agreement at 3, 7.)   As stated above, Rule 54(c) constrains a default judgment to that which does not "differ in kind from, or exceed in amount, what is demanded in the pleadings."  As such, the Court, in granting relief, is constrained to Plaintiffs' demand in the Complaint which, even broadly construed, conflicts with what is contemplated in the Settlement Agreement.  Therefore, the Court cannot both grant default judgment against Defendant and also

grant preliminary approval of the Settlement Agreement and all other relief associated with the Settlement Agreement as requested by Plaintiffs' Motion.

Plaintiffs will receive all necessary relief through the Settlement Agreement even in the absence of a default judgment.  The Settlement Agreement contemplates that, "[f]or purposes of this settlement, Plaintiffs shall be deemed the prevailing party in a successful action pursuant to 15 U.S.C. 1692k(a)(3)," and the parties agree that the amount of such entitlements will be determined by the Court upon submissions made by the parties or consent of the parties and approval of the Court.  (Settlement Agreement at 20-21.)  The Court has already entered an order to that effect adopting the Magistrate Judge's Report and Recommendation regarding Plaintiffs' Motion for Fees, and will evaluate Plaintiffs' claims for further fees, if any, as agreed to in the Settlement Agreement.  (See Court's Order at Doc. 339.)[4]

For the reasons above, Plaintiffs' Motion for Default Judgment will be denied.

**B.    PRELIMINARY APPROVAL OF SETTLEMENT**

Parties in this case executed a Settlement Agreement, agreeing to resolve their claims, and had once before filed a joint motion for preliminary approval of said Settlement Agreement, in August of 2018, (Doc. 176), before other issues as detailed above necessarily delayed the Court's decision on that motion.  Since that point in time, as discussed above, Defendant withdrew its counsel, but that does not change the Court's analysis here in reviewing the Settlement Agreement (Doc. 343-1) for preliminary approval.

---

[4] The Settlement Agreement also states that "Plaintiff's claims for attorneys' fees, costs and expert expenses are not released under this Settlement Agreement."  (Doc. 343-1 at 13), but the Court assumes that by the detailed provisions cited above, the Parties contemplated an award of attorney fees as determined by the Court.  Note 15 U.S.C. §1692k(a)(3) contemplates in the case of any successful action to enforce the foregoing liability, the "debt collector" is liable for "the costs of the action, together with a reasonable attorney's fee as determined by the court."

Under Rule 23(e) of the Federal Rules of Civil Procedure, in the class action context, settlement must be approved by the Court, which requires three steps: (1) the parties must provide the Court with information sufficient to enable it to determine whether to give notice of the proposal to the class; (2) the Court must direct notice in a reasonable manner to all class members if parties can show that the Court would likely be able to approve the proposal and certify the class for purposes of judgment on the proposal; and (3) the Court may only approve the settlement after a hearing to determine that the settlement is fair, reasonable and adequate.

While the Court is required to review and approve a class action settlement, this review process "does not affect the binding nature of the parties' underlying agreement." Ehrheart v. Verizon Wireless, 609 F.3d 590, 593 (3d Cir. 2010) (internal citations omitted). "[J]udicial approval of a class action settlement is a condition subsequent to the contract and does not affect the legality of the proposed settlement agreement." Id. (internal citations omitted). Where "the parties have executed an agreement, a party cannot avoid its independent contractual obligations simply because a change in law confers upon it a benefit that could have altered the settlement calculus." Id. at 596; see also Curiale v. Lenox Group, Inc., No. 07-1432, 2008 WL 4899474 (E.D. Pa. Nov. 14, 2008) (granting motion for preliminary approval of class action settlement agreement despite change in law which eliminated causes of action parties had agreed to settle). (Court's Order, Doc. 318.) As discussed above, while there is some question as to whether the Supreme Court's decision in Obduskey v. McCarthy & Holthus LLP, 139 S. Ct. 1029 (2019) eliminated Plaintiffs' cause of action, there is an executed settlement agreement in this case.

Settlements are favored, particularly in class actions. Ehrheart, 609 F.3d at 593 ("[A] strong public policy exists, which is particularly muscular in class action suits, favoring settlement of disputes, finality of judgments and the termination of litigation."). The Court, in

evaluating the class settlement agreement pursuant to Rule 23, must determine whether "the proposed settlement discloses grounds to doubt its fairness or other obvious deficiencies such as unduly preferential treatment of class representatives or segments of the class, or excessive compensation of attorneys, and whether it appears to fall within the range of possible approval." In re Nat'l Football League Players' Concussion Injury Litig., 301 F.R.D. 191, 198 (E.D. Pa. 2014) (internal citations omitted). "Under Rule 23, a settlement falls within the 'range of possible approval,' if there is a conceivable basis for presuming that the standard applied for final approval—fairness, adequacy, and reasonableness—will be satisfied." Id. (internal citations omitted).

Plaintiffs argue that the Court should preliminarily approve the proposed settlement because the Settlement Agreement is a product of arm's length negotiation. (Brief at 14-15.) This is because arm's length negotiations give a presumption of fairness, and as such, "[w]hether a settlement arises from arm's length negotiations is a key factor in deciding whether to grant preliminary approval." In re Nat'l Football League Players' Concussion Injury Litig., 301 F.R.D. 191 at 199. Here, before Defendant's counsel withdrew, Plaintiffs represent that Defendant "vigorously and aggressively contested the claims in the case." (Brief at 15.) Moreover, the activity on the docket in this case independently shows Plaintiffs and Defendant litigated (and presumably negotiated) over a significant period of time before arriving at the currently executed Settlement Agreement. (See generally, docket at 2:13-cv-00419.)

Plaintiffs also argue that the Court should approve the proposed Settlement Agreement because it falls within the range for approval, it does not grant improper treatment to certain members of the class, and proceedings are sufficiently advanced to allow for adequate evaluation of a proposed settlement that would account for litigation risks. (Brief at 16-18.) The Court

finds that a settlement amount of $60,000 is within a reasonable range of approval, particularly

where parties negotiated for a significant length of time and had a fundamental disagreement

with regards to Defendant's net worth before coming to a compromise via the Settlement

Agreement.  (Brief at 15-17; Motion at 3.)  All claimants will be treated equally, receiving a pro

rata share not to exceed $600.00 per foreclosure complaint, other than an incentive award of up

to $2,500 to the representative Plaintiff.  (Brief at 18; Settlement Agreement at 17.)  Last, the

Court finds that the proceedings were sufficiently advanced for parties to have contemplated and

accounted for litigation risks.  As Plaintiffs note, "[t]he agreement to settle did not occur until

Class Counsel had conducted discovery relating to the merits of the claims, including a review of

documents and depositions of witnesses."  (Brief at 18.)  Again, as the docket makes plain, the

parties engaged in significant motions practice and various appeals.  Notably, the case was

initiated in 2013 but the Settlement Agreement was not executed until July 2018, after spending

years in litigation.  (See generally, docket at 2:13-cv-00419.)

     For the reasons above, Plaintiffs' Motion for Preliminary Approval of Settlement will be

granted.

## C.      CONDITIONAL CERTIFICATION OF THE SETTLEMENT CLASS

     Class actions may be preliminarily certified for settlement purposes, with final

certification of the class to be determined by the Court at the same time as when the Court rules

on final approval of a settlement agreement.  In re CertainTeed Corp. Roofing Shingle Prod.

Liab. Litig., 269 F.R.D. 468, 476 (E.D. Pa. 2010).  In order for a class to be certified for this

purpose, the class must comply with Rule 23.  Id.

     The Court agrees with Plaintiffs that the requirements of Rule 23(a) and 23(b)(3) are

satisfied.  (Brief at 18-24.)  Rule 23(a) permits a class action if: (1) the class is so numerous that

joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class. Here, Plaintiffs allege that there are 421 class members, so joinder would be impracticable. (Brief at 19-20.) The representative Plaintiff's claims are based on FCPA violations evidenced in the "uniform, non-individualized" content of the foreclosure complaints all class members allegedly received from Defendant, thus satisfying the commonality requirement. (Id. at 20.) As Plaintiffs note, the typicality requirement is also satisfied because the representative Plaintiff's claim arises from the same alleged wrongful conduct on the part of Defendant which affected the representative Plaintiff and all class members. (Id. at 20-21.) The Plaintiffs represent that representative Plaintiff has no interests antagonistic to those of the class and has retained experienced counsel. (Id. at 21-22.)

Last, the Court must find that the class can be certified under one of the provisions of Rule 23(b). In this case, Plaintiffs state that this class should be certified under Rule 23(b)(3), because there are questions of law or fact common to class members that predominate over any questions affecting only individual members and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy. (Id. at 22.) Here, where the contents of the foreclosure complaint at issue is common to all class members, the class members' claims are identical, and a class action would, balancing fairness and efficiency, be the superior method of adjudication, class certification is appropriate.

For the reasons above, the Plaintiffs' Motion for Conditional Certification of the Settlement Class will the granted.

### D.    APPOINTMENT OF SETTLEMENT CLASS COUNSEL

Plaintiffs request appointment of settlement class counsel, (see Brief at 3, 37), but does not provide arguments in support of doing so.  Nevertheless, the Court finds no reason that Plaintiffs' Counsel—JC Evans Law, P.C.—cannot proceed as Class Counsel.  He is intimately familiar with all aspects of this litigation and is a well-recognized expert in this area.  As such, for the purposes of settlement, the Court will appoint Plaintiffs' Counsel as Class Counsel to represent the conditionally certified Settlement Class.

### E.    AUTHORIZATION TO DISSMENINATE NOTICE

Plaintiffs request authorization to disseminate notice to potential class members.  In order to grant such authorization, the Court must review the contents of the notice itself and also evaluate Plaintiffs' plan for dissemination.  "[W]here the parties seek to simultaneously certify a settlement class and settle a class action, the elements of Rule 23(c) notice (for class certification) are combined with the elements of Rule 23(e) notice (for settlement)."  Grunewald v. Kasperbauer, 235 F.R.D. 599, 609 (E.D. Pa. 2006).  Rule 23(c)(2)(B) indicates that for (b)(3) classes, the notice may be given by one or more of the following methods: United States mail, electronic means, or other appropriate means.  It further notes that notice must clearly and concisely state in plain, easily understood language: "(i) the nature of the action; (ii) the definition of the class certified; (iii) the class claims, issues or defenses; (iv) that a class member may enter an appearance through an attorney if the member so desires; (v) that the court will exclude from the class any member who requests exclusion; (vi) the time and manner for requesting exclusion; and (vii) the binding effect of a class judgment on members under Rule 23(c)(3)."  Rule 23(e) states that in the context of a class action settlement, the Court must direct notice in a reasonable manner to all class members who would be bound by the proposal on

parties' showing that the Court will likely be able to (i) approve the proposal under Rule 23(e)(3); and (ii) certify the class for purposes of judgment on the proposal.

In this case, the Court will not approve the Notice as provided because it is not clear to the Court which materials Plaintiffs are proposing to provide to class members, and in what manner.  Plaintiffs' Motion asks the Court to approve "the forms of individual notice (the "Notice") and publication notice (the "Summary Notice and Proof of Claim") to be provided to potential Class members in connection with the Settlement, copies of which are attached hereto as Exhibits 2 and 3, respectively."  (Motion at 7.).  Plaintiffs' Motion is accompanied by an Amendment submitting Revised Exhibits.  (Doc. 345.)  Plaintiffs' Revised Exhibit 2, Doc. 345-1 contains a Claim Form as part of the Notice on the last page of the Exhibit.  The original Notice, Exhibit 2, did not contain a Claim Form.  (Doc. 343-2.)  Plaintiffs' Exhibit 3 contains a Claim Form in the second half of the second page.  (Doc. 343-3.)  If Plaintiffs propose that both Revised Exhibit 2 and Exhibit 3 will be sent together, Plaintiffs should indicate to the Court whether Revised Exhibit 2 will remove the Claim Form portion to avoid redundancy.  Moreover, the Court requires more clarification regarding these two exhibits—Plaintiffs' Motion does not offer further explanation of what the purpose of the "individual notice" is vis-à-vis the "publication notice," nor whether Plaintiffs plan to send both Revised Exhibit 2 and Exhibit 3 to all potential Class members.  Also, the purpose of Exhibit 3 is not clear on its face, and it appears to the Court that it may not be a complete version of the document Plaintiffs intended to file.

In addition, based on the Court's preliminary review of the Notice as provided (Revised Exhibit 2), the Notice generally complies with the relevant  requirements, but includes unnecessary detail regarding the award of attorney's fees—it is sufficient to note that class members will not be required to pay any fees to be represented by Class Counsel and that class

members may enter an appearance through an attorney they retain if they so desire, as required under Rule 23(c)(2)(B)(iv).  (Revised Exhibit 2, Doc. 345-1.)  The Notice's definition of its class also differs from the definition provided in the Settlement Agreement.  (Compare Revised Exhibit 2, Doc. 345-1 ¶ 7 with Settlement Agreement ¶ 23 at 7.)  While recognizing that Plaintiffs may have simplified the language for readability, the Court requests that the exact definition from the Settlement Agreement be used.

Plaintiffs' Motion also attaches and requests preliminary approval of a Class Action Settlement Release, Exhibit 5 (Doc. 343-5), with no indication of what Plaintiffs plan to do with this Release and what Plaintiffs need preliminary approval for.  (Motion at 7.) (Note that Plaintiffs' Motion did not include their request for approval of the Release in the heading of the Motion, so the Court will discuss this request together with its consideration of Plaintiffs' request for approval of dissemination of Notice.)  The Court is left wondering whether Plaintiffs plan to include this Release with the Notice and other materials, if any, to be sent to all potential class members.  If so, upon preliminary review, the Court finds the Release redundant of some of the information contained in the Notice and proposed Claim Form.  The Court requires clarification of the purpose of the Release in conjunction with the other questions it has posed with regards to the Notice and related materials.

The Court also requires information from Plaintiffs on their proposed method of notifying class members before it can provide approval.  Plaintiffs indicate that notice will be mailed and reference a "Notice Plan" in their proposed order, (Doc. 343-7 at 6), but does not state specifically that Notice will be mailed by United States mail anywhere in their Motion. Plaintiffs' Brief references a "Notice Plan" once in a heading, but does not provide sufficient detail about what that plan is.  (Doc. 344 at 23.)  Based on the format of Exhibit 3, Doc. 343-3,

the Court could speculate that Plaintiffs are planning on mailing notice by United States mail, but Plaintiffs have not clearly indicated in their Motion or Brief one way or another.  To add to the confusion, Plaintiffs' proposed order also contains provision referencing possible publication of notice.  (Doc. 343-7 at 6.)  Once again, the Court requires clarification from the Plaintiffs before it can authorize Plaintiffs to disseminate Notice because the Court must understand what exactly Plaintiffs propose to do.

In sum, before approving the Notice (and other materials, as Plaintiffs may propose, to be provided to all class members) and Plaintiffs' proposed plan of dissemination, the Court requires clarity on these issues: (1) what documents and accompanying forms, exactly, are Plaintiffs proposing to disseminate to all class members as Notice; (2) replacement exhibits that reflect such forms/documents that will constitute Notice; and (3) Plaintiffs' proposed plan for notifying class members.

Therefore, the Court will deny Plaintiffs' Motion for Authorization to Disseminate Notice, without prejudice to refiling.

### F.    APROVAL OF THE PLAN OF DISTRIBUTION

Plaintiffs also request approval of the Proposed Plan of Distribution of settlement funds. (Revised Exhibit 4, Doc 345-2.)  It is unclear to the Court why Plaintiffs determined this separately requires court approval, when the Settlement Agreement specifically notes that "Defendant will not oppose Distribution of the Settlement as set forth in this Settlement Agreement" and specifically includes a section detailing distribution.  (Settlement Agreement, Doc. 343-1 at 7.)  Should Plaintiffs seek Court-approval anyway, the Plaintiffs should specify why the Court should approve such plan of distribution, and clarify its reference to "paragraph five" in the Proposed Plain of Distribution.

Therefore, the Court will deny Plaintiffs' Motion for Approval of the Plan of Distribution, without prejudice to refiling.

### G.      SETTING A HEARING ON FINAL SETTLEMENT APPROVAL

The Court will set a fairness hearing for final settlement approval and final certification of the class consistent with Rule 23 for a time after Plaintiffs provide the information requested regarding Notice to the Class discussed above, such that the Court can determine whether such Notices can be distributed and by what date.  After setting the date for distribution of said Notices, the Court will set a date for a fairness hearing, recognizing that the Notices would include a date certain for the hearing.  As such, at this time, the Court is unable to set a hearing for final settlement approval.

Plaintiffs should note that due to the limitations on in-person proceedings presented by the COVID-19 virus and by virtue of the Administrative Orders entered in this District (see, e.g., "Administrative Order Concerning Jury Trials and Certain Other Proceedings Relative to COVID-19 Matters" filed at docket 2:20-mc-394), any fairness hearing may be conducted via videoconference (Zoom).

Therefore, the Court will deny Plaintiffs' Motion for Setting a Hearing on Final Settlement Approval, without prejudice to refiling.

### H.      COMPLIANCE WITH THE CLASS ACTION FAIRNESS ACT

Plaintiffs' Counsel filed a Declaration representing to the Court that they had served a notice of class action settlement pursuant to the Class Action Fairness Act, 28 U.S.C. § 1715 to the United States Attorney General and Attorneys General for a number of states on April 22, 2020.  (Doc. 346.)   In a prior Order, the Court asked for authority on Plaintiffs serving a notice rather than "each Defendant," as required by the statute, since Defendant has acknowledged it

will no longer participate in the case.  (Doc. 341.)  Plaintiffs were unable to provide prior

examples of a plaintiff serving notice other than one case in the Northern District of Ohio.  (Brief

at 35.)  Plaintiffs also argue by analogy that in a case where one defendant failed to notify

appropriate state and federal officials, but the appropriate officials did receive notice of the

settlement from another defendant, the class members were not able to show they were

prejudiced from the one defendant's failure.  (Brief at 34.)  While the Court recognizes that the

statute requires "each Defendant" to provide such notice, Plaintiffs' point that "notice is notice,"

and its assurance that Plaintiffs' Counsel "is perfectly capable of providing the requisite

documents and dates to appropriate federal and state officials as required by CAFA" is well

taken.  (Brief at 36.)  As noted above, Plaintiffs' Counsel indicated to the Court that it has

already provided the notice required under CAFA.  (Doc. 346.)  Facing a situation where there is

no other option to move the binding Settlement Agreement forward, the Court accepts Plaintiffs

providing the Notice required under CAFA.

 For all of the reasons stated above, the Court hereby enters the following:

## II. <u>ORDER</u>

 Plaintiffs' Motion (**Doc. 343**) is granted in part and denied in part, as follows.

 Plaintiffs' Motion for default judgment is **DENIED**.

 Plaintiffs' Motion for preliminary approval of the settlement is **GRANTED**.  The Court

finds that the Settlement Agreement (Doc. 343-1) appears, upon preliminary review, to be fair,

adequate, and reasonable.  Upon Plaintiffs resolving some of the issues identified herein,

including providing the Court with additional clarification regarding Notice, among other issues,

the settlement process, including the holding of a hearing for final approval, can move forward.

Plaintiffs' Motion for conditional certification of the settlement class is **GRANTED**. This action shall be maintained, for settlement purposes, as a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure, with a class defined as follows:

> Any natural person who obtained financing secured by a first mortgage with Bank of America on residential property located within the Commonwealth of Pennsylvania, which was purchased primarily for personal, family or household purposes, who were sued in foreclosure by Udren Law Offices, P.C. on behalf of Bank of America from and including February 12, 2012 and February 11, 2013 and identified by Defendant as one of the 421 foreclosures listed in its discovery responses. Excluded from the class are employees of Bank of America and Udren Law Offices, P.C., as well as employees of any parent, subsidiary, or affiliate of either Bank of America or Udren Law Offices, P.C. and all government entities.

Settlement Agreement at 7.

This conditionally-certified class action shall be maintained with Mr. Frederick J. Hill as Class Representative. The certification of the class is conditioned on final approval of the class settlement, and, in the event the settlement is not approved, the certification shall be vacated.

Plaintiffs' Motion for appointment of settlement class counsel is **GRANTED**.

Plaintiffs' Motion for authorization to disseminate notice is **DENIED**, without prejudice to refiling. Pursuant to Rules 23(c) and (e), the Court requires additional information regarding the Notice and Plaintiffs' proposed method of dissemination of said Notice before it can be approved. Plaintiffs may clarify the issues discussed above and submit revised exhibit(s) as appropriate for the Court's review.

Plaintiffs' Motion for approval of the plan of distribution is **DENIED**, without prejudice to refiling.

Plaintiffs' Motion for setting of a hearing on final settlement approval is **DENIED**, without prejudice to refiling.

IT IS SO ORDERED.

November 18, 2020                          s\Cathy Bissoon_____
                                          Cathy Bissoon
                                          United States District Judge

cc (via ECF email notification):

All Counsel of Record